ORIGINAL

2 TO CT

20
4/15/0

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEFFREY D. ALBRIGHT, et al.,     :
       Plaintiffs             : *Judge Rambo*
                          :
      v.              : ~~CIVIL NO.: 1-CV-00-878~~
                          :

DANIEL A. VIRTUE, Business Agent :
of the International Brotherhood of  :
Teamsters; INTERNATIONAL     :
BROTHERHOOD OF TEAMSTERS; :
LOCAL 776, INTERNATIONAL    :
BROTHERHOOD OF TEAMSTERS; :
And ABF FREIGHT SYSTEMS, INC., :
       Defendants           :
                          :

FILED
HARRISBURG, PA

APR 12 2002

MARY E. D'ANDREA, CLERK
Per _____
            Deputy Clerk

                          :

RICKEY A. BECHTEL,        :
       Plaintiff             :
                          :
      v.              : CIVIL NO.: 1-CV-01-0789
                          :

DANIEL A. VIRTUE, Business Agent :
of the International Brotherhood of  :
Teamsters; INTERNATIONAL     :
BROTHERHOOD OF TEAMSTERS; :
LOCAL 776, INTERNATIONAL    :
BROTHERHOOD OF TEAMSTERS; :
And ABF FREIGHT SYSTEMS, INC., :
       Defendants           :

## PLAINTIFF'S, RICKEY BECHTEL'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO CONSOLIDATE


ORIGINAL

As consistently asserted by Plaintiff, Rickey Bechtel, a single individual, the record in this case will reflect that Bechtel has maintained that consolidation in this case serves judicial economy and will in no way prejudice any of Defendants rights.  Plaintiff Bechtel has requested consolidation from the inception of this case.  Further, the outstanding discovery in question is in no way oppressive or unusual, although it does appear that at least one representative of Defendant ABF was belatedly served with the discovery.

The purpose of consolidation is to permit trial convenience and economy in administration.  *MacAlister v. Guterma* 263 F2d 65, 68 (2nd Cir. 1958), *see Johnson v. Manhattan Ry. Co.*289 US 479, 496, 53 SCt 721, 77 L.Ed. 1331 (1933).  Plaintiff Bechtel maintains that the consolidation of the two cases would permit convenience and economy because the facts and the issue at the heart of both cases are strikingly similar.  There are questions of law and fact common to both action  These questions of law and fact include, but are not limited to the fact that the operation of the terms of the Collective Bargaining Agreement pertaining to lay-offs and recalls (§5.2 and 5.5) are all applicable in both cases.  Further, the provisions regarding the general seniority are applicable in both cases.  The issue in both cases involves the related conduct of the parties.  The same National Labor

Agreement was involved, the same local cartage agreement, the same administration of the layoff and recall mechanism, the same terminal, shutdown and recall is involved.  Notwithstanding the representation of separate seniority lists, for the dock and the over the road drivers, it is believed that there is one general company seniority list maintained at the terminal.  Further, Bechtel's layoff and the ABF layoff's which resulted in the issues presently before the court, involve the same successor employer (ABF), ABF employees and the same grievance mechanisms, shared disposition, including reliance on the same grievance/arbitration, and timeliness issues.  The indication that the Bechtel was not properly recalled, but solicited a return to work at the facility under the same layoff status, coupled with the fact that ABF, during his layoff, characterized him as an ABF employee is a shared act and segment, at least common evidentiary issues.  This supports Plaintiff's view that the case involves the same layoff, the same terminal, the same recall mechanism, the same seniority provisions; therefore, the common issues predominate.

While Bechtel worked on the dock in the same facility as did the ABF Plaintiffs (over the road drivers), he also performed some driving activities. The factual differences, such as dock versus over the road, are minor differences when the factual similarities are abundant in both cases.

Defendants claim that the difference in how the both plaintiffs discovered the potential for recall is one determinative issue here. It is not. No ABF plaintiff elected to pursue this issue in a timely fashion. The issue of how seniority was tracked and also allocated is a common issue. It is believed that the terminal maintained, inter alia, a seniority list for all workers at the terminal, regardless of what position they held.

Defendant's allege that Bechtel never worked for ABF (Defendant's Brief in Opposition, p.5) Bechtel, however was told by either the Union Representatives or ABF that he was a company employee at the time of the closing of the Carlisle facility that the employees were ABF employees. Bechtel was under the protection of the same labor agreement and same recall mechanism. The closing of the Carlisle facility involved the same layoffs; the same options and the employees were all treated in the same fashion.

As for defendant's allegation that the consolidation request is an "ill-disguised attempt to extend discovery," the information developed from the sixteen plaintiffs in ABF have substantially obviated any need for Bechtel to conduct any extensive independent discovery.[1] The extension of Bechtel's discovery is not the objective of the request, Bechtel has always desired

---

[1] Further, the discovery in question is in no way oppressive or unusual.

consolidation ab initio, even while ABF was pending in the Third Circuit. Thus, the assorted motive, of the extension of discovery in Bechtel is not at the heart of this matter. Bechtel's need for an economical means of adjudicating his virtually identical claims, lies at the heart of this argument.

Rule 42(a) of the Federal Rules of Civil Procedure gives the Court the broad power to consolidate actions involving common questions of law or fact if, in its discretion, such consolidation would facilitate the administration of justice. *Ellerman Lines, Ltd. V. Atlantic & Gulf Stevedores, Inc.,* 339 F.2d 673, 675 (3rd Cir. 1964), *cert. denied,* 382 US 812 (1965). In the case of *Waste Distillation Technology v. Pan American Res.,* 775 F.Supp. 759 (D.Del.1991) the court held that in the two pending cases the administration of justice would be best served by consolidation. *Id.* at 761. The *Waste Distillation* case involved the same plaintiff, an identical factual setting, the same witnesses, documents, and exhibits. The two actions also asserted identical legal issues. *Id.*

Even though there are a peripheral factual differences between these two case, the same defendants, the same terminal, the same terminal closure issues, the same provisions of the same labor agreement, the same grievance mechanisms, the same overall seniority list, the same witnesses, documents and exhibits, and the same "timeliness" issues exist. Plaintiffs in both sides

5

are pursuing Del.Costello litigation against the same Defendants and view the legal issues as identical in the two cases at bar.  An examination of Plaintiff's respective complaints stresses this analysis.Consolidation is appropriate in this case in accordance with the holding in *Waste Distillation*. "Consolidation will encourage orderly consistent disposition, save witness time and expense, avoid duplicitous filings, and eliminate the risk of inconsistent results between the two proceedings. Here, the common issues predominate.

Therefore, the Plaintiff, Rickey Bechtel, respectfully requests this Honorable Court hold that Consolidation of the two pending suits is appropriate.

Respectfully submitted,

Robert S. Mirin, Esquire
AHMAD & MIRIN
PA ID#25305
8150 Derry Street
Harrisburg, PA 17111
(717) 909-4343

Date: 4/12/00

## CERTIFICATE OF SERVICE

I, Robert S. Mirin, Esquire, do hereby certify that on the ___10th___ day of

___April___, 2002, I served a true and correct copy of the foregoing

PLAINTIFF'S, RICKEY BECHTEL'S REPLY BRIEF IN SUPPORT

OF PLAINTIFF'S MOTION TO CONSOLIDATE, on the following person(s) and in the

following manner:

**VIA FIRST-CLASS MAIL**

James A. McCall, Special Counsel
International Brotherhood of teamsters
25 Louisiana Avenue, N.W.
Washington, DC 2001

Ira Weinstock
800 North 2nd Street
Harrisburg, PA 17102

Vincent Candiello
Morgan, Lewis & Bockius, LLP
One Commerce Square
417 Walnut Street
Harrisburg, PA 17101

Joseph E. Santucci, Jr.
Mary D. Walsh
Morgan, Lewis & Bockius, LLP
111 Pennsylvania Ave, N.W.
Washington, DC 2004

Robert S. Mirin, Esquire

2

**CHAUFFEURS, TEAMSTERS AND HELPERS**
**Local Union No. 776**

AFFILIATED WITH THE

International Brotherhood of Teamsters
2552 JEFFERSON STREET
HARRISBURG, PA 17110-2505

THOMAS B. GRIFFITH
PRESIDENT AND BUSINESS AGENT

DALE H. CRUM
SECRETARY TREASURER AND BUSINESS AGENT

THOMAS VINSON
VICE PRESIDENT

ANDREW C. REILEY
RECORDING SECRETARY

MELVIN HARRIS
TRUSTEE

TERRY L. KING
TRUSTEE

JEANETTE WATERS
TRUSTEE

BUSINESS AGENTS

JOHN L. FOGLE
CARLOS N. RAMOS, II
CHARLES SHUGHART
GEORGE F. SMART, SR.
RUSSELL A. STEPP
DANIEL A. VIRTUE

October 12, 1995

Dear Carolina Employee:

This letter is important.  Please take the time to read it.

Surely you're aware that ABF and Carolina Freight recently merged their operations. Because of that merger, a change of operations was held on September 14/15, 1995.

As a result of the decision from the change of operations committee, the Carolina employees who are laid off at Carlisle, Pa will have certain rights to future work opportunities with ABF.  Article 5, Section 5 of the NMFA addresses those rights.  Those work opportunities will be offered to laid off Carolina employees in seniority order.  However, it is necessary that you notify ABF in writing of your desire to be offered available work.

Enclosed is a form letter and an envelope.  If you desire to be offered available work, you must complete the letter and mail it to ABF **as soon as possible.**  If you desire, you may also draft your own letter instead of using the form letter.  It is your choice to send the letter via regular mail or certified mail.  In either case, I suggest that you keep a copy of the letter as your file copy.

You should mail the letter to ABF today.  On October 16, 1995, the Company will begin compiling the list of employees who desire available work.

If you have any questions, please feel welcome to contact us.

Sincerely,

Charles Shughart
Business Agent

 **ABF FREIGHT SYSTEM, INC.**
P. O. Box 10048
Fort Smith, AR 72917-0048
(501) 785-8700

November 9, 1995

Certified Mail No. Z 093 690 533
Return Receipt Requested

Mr. Rickey Bechtel
2072 Locust Lane
Hummelstown, PA 17036

Re:   Article 5, Section 5 Job Offer in Accordance with
      ABF Multi-Region Change of Operations MR-CO-38-9/95

Dear Mr. Bechtel:

In accordance with paragraph 7 of the decision in the above referenced
change of operations, on November 8, 1995, you were contacted and offered
an opportunity to transfer to permanent employment in your classification
at Waco, Omaha, Brattleboro, New Haven, Cedar Rapids, Waterbury, Fairfield,
Minneapolis or Newark.

This letter is to confirm that you elected to decline the job offer and to
remain in layoff status at Carlisle, PA.

Sincerely yours,

Gordon Ringberg, Director
Industrial Relations

cbf

cc:   John Dale, Vice President-Transportation/Industrial Relations

      Teamsters Local Union No. 776
      Certified Mail No. Z 093 690 525
      Return Receipt Requested

PHIL FERRANTE
VICE PRESIDENT

BRAD LINDSAY
RECORDING SECRETARY

HARVEY WHITE
TRUSTEE

MIKE HORD
TRUSTEE

THOMAS VINSON
TRUSTEE

BUSINESS AGENTS

CARLOS N. RAMOS, II
CHARLES SHUGHART
ROBERT J. SNYDER, JR.
RUSSELL A. STEPP
DANIEL A. VIRTUE

# CHAUFFEURS, TEAMSTERS AND HELPERS
## LOCAL UNION NO. 776

"AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS"

2552 JEFFERSON STREET, HARRISBURG, PA 17110-2505

THOMAS B. GRIFFITH
PRESIDENT AND BUSINESS AGENT

JOHN L. FOGLE, II
SECRETARY TREASURER AND BUSINESS AGENT

July 18, 2000

Rickey Bechtel
2072 Locust Lane
Hummelstown, PA 17036

Ref:    Your Grievance 94530

Dear Rickey:

Enclosed is a copy of the brief for the above referenced grievance. I think all the revisions you requested have been accomplished. Please review it and advise me if it is correct or if additional changes are necessary. Since time is short, a prompt response would be appreciated. If I am not available, please leave a message with the office staff.

Sincerely,

Charles Shughart
Business Agent

TELEPHONE (717) 233-8766
(800) 692-6280
FAX (717) 233-6023

---

**TEAMSTERS LOCAL 776**

**VS**

**ABF FREIGHT SYSTEMS**

**Grievance 94530**
**(Rickey A. Bechtel)**

---

Gentlemen of the Committee:

Grievance number 94530 reads as follows:

> *I am filing this grievance due to the fact that I am a laid off ABF employee at Carlisle, PA (see attached letter marked Exhibit 1). It has come to my attention that ABF is hiring at the Carlisle, PA terminal and I am filing this because I have not been contacted for any available work opportunities. Under the National Master Freight Agreement that was in effect in 1995 when I was laid off, Article # 5, Section # 2 states that "If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall, such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes".* (Exhibit 1)

Note: The grievant amended the grievance at Company level grievance discussions on April 5, 2000 to include a claim for "all monies due" (Exhibit 2).

The grievant was a full-time dock / jockey employee with Carolina Freight at the Carlisle, Pennsylvania breakbulk terminal. His seniority date was February 1, 1986.

In May, 1995, Carolina Freight Carriers terminated their breakbulk operations at the Carlisle, Pennsylvania terminal. All remaining employees not previously laid-off were placed on layoff status (Exhibit 3).

On July 10, 1995, it was announced that ABF Freight Systems, Inc would acquire Carolina Freight Carriers and Red Arrow Freight Lines. On September 14 and 15, 1995, the issues concerning the change of operations were presented at a meeting held in Chicago. At the change of operations, Local 776 addressed concerns about the previously laid off employees at the Carolina terminal at Carlisle (Exhibit 4).

On December 29, 1998, the Fourth Circuit Court of Appeals issued its decision that Carolina employees be dovetailed with the ABF employees, not entailed and this should finally bring to an end this seniority dispute (Exhibit 5).

Mr. Bechtel has filed this grievance, claiming that ABF is violating the term of Article 5, Section 2 (c) (2) (of the 94 - 98 NMFA). That language reads as follows:

> In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be similarly "dovetailed" by appropriate classification. If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes. Seniority rosters previously combining job classifications shall be continued unless otherwise agreed.

Obviously, Mr. Bechtel was on a letter of layoff from Carolina Freight at the time the ABF merger / acquisition took place. When that occurred, it would seem that ABF assumed the debts, liabilities and contractual obligations previously held by Carolina Freight. One aspect of those contractual obligations is the recall rights of Carolina employees who were previously placed in layoff status by Carolina. As such, Mr. Bechtel should by entitled to recall rights under Article 5, Section 2.

Should there be any question that Mr. Bechtel was on layoff from ABF, the attached letter clearly indicates his layoff status (Exhibit 6). It reads in part:

> *This letter is to confirm that you elected to decline the job offer and to remain in **layoff** status at Carlisle, PA*

Attached is a copy of a seniority list from the ABF terminal at Carlisle, Pennsylvania (Exhibit 7). As can be determined from the list, ABF has hired 108 employees who have a seniority date of November, 1998 or later. Approximately 31 of those individuals currently work in the dock / local classification.

In view of the clear and undisputable facts related to this grievance, we respectfully request that the Committee uphold the claim of the grievant, placing him on the seniority roster with a date of February 1, 1986. He should be compensated for lost wages and benefits from November 12, 1998.

Respectfully Submitted

Charles Shughart
Business Agent

-3-

   I am filing this grievance due to the fact that I am a laid off A.BF. employee at Carlisle, Pa ( see attached letter marked exhibit#1). It has come to my attention that A.B.F. is hiring at the Carlisle,Pa terminal and I am filing this because I have not been contacted for any available work opportunities. Under the National Master Freight Agreement that was in affect in 1995 when I was laid off Article # 5 Section # 2 states that " If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes

Attachments : 1 grievance, 1 exhibit letter, & 1 letter requesting a written decision from local #776

Z 367 034 857

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

| | |
|---|---|
| Sent to | *Teamsters Local 276* |
| Street & Number | *Hbg Pa 17 10 t.* |
| Post Office, State, & ZIP Code | |
| Postage | $ 55 |
| Certified Fee | 1 40 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | 1.25 |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ 3.20 |
| Postmark or Date | |

PS Form **3800**, April 1995

Gentlemen,

In review of the facts, which were presented here, I would like to summarize what we have discussed. First of all, I have a paper from ABF stating that I declined work elsewhere and would remain laid off a Carlisle, PA ~~strikethrough~~ Second, contractually, I have recall rights for 5 years from date of lay off which was still in effect when I addressed this situation. I was made aware of this situation on February 18, 2000 and immediately proceeded to file this grievance. When the grievance was heard at the local level, it was at that point that I was made aware that ABF had hired employees on the local side as far back as 1998 so then I proceeded to send a letter to Mr. Schugart and requested a copy of the April, 2000 seniority list from ABF Freight at the Carlisle, Pa terminal. ~~This is a copy of the seniority list that is the list up~~ There is something else that is very important in rendering a decision on this case and that is this document ~~strikethrough~~ which states that the United States court of appeals for the Fourth District heard this case involving this same situation on seniority where the ABF employees had filed against the Carolina Employees claiming the employees from Carolina should not "DOVETAIL", however the Fourth District Court argued the case on October 28, 1998 and rendered a decision on the case on December 29, 1999. It was docketed under the title of George, it al v Ron Carey. The judges who heard the case were Wilkinson, Chief Judge, and Luttig and Motz, Circuit Judges. These judges made the decision that the Carolina Employees will be DOVETAILED into their seniority positions.

In closing, gentlemen, I ask that you review all the facts present here and make a decision in favor of me the grievant and I be placed back to work on the local side at ABF Freight at Carlisle, PA with my original seniority date of February 01, 1986 and for any money due me.

Thank you for your time.

PHIL FERRANTE
VICE PRESIDENT

BRAD LINDSAY
RECORDING SECRETARY

HARVEY WHITE
TRUSTEE

MIKE HORD
TRUSTEE

THOMAS VINSON
TRUSTEE

# CHAUFFEURS, TEAMSTERS AND HELPERS
# LOCAL UNION NO. 776

"AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS"

2552 JEFFERSON STREET, HARRISBURG, PA 17110-2505

THOMAS B. GRIFFITH
PRESIDENT AND BUSINESS AGENT

JOHN L. FOGLE, II
SECRETARY TREASURER AND BUSINESS AGENT

BUSINESS AGENTS

CARLOS N. RAMOS, II
CHARLES SHUGHART
ROBERT J. SNYDER, JR.
RUSSELL A. STEPP
DANIEL A. VIRTUE

December 28, 2000

Rickey Bechtel
2072 Locust Lane
Hummelstown, PA 17036

Ref:  Grievance 94530

Dear Rickey:

In reply to your letter dated December 6, 2000, it is my understanding that the decision issued by the Change of Operations Committee is final. The grievance procedure does not provide for the appeal of a decision that is issued by a majority of the Committee members.

I have enclosed the papers presented by the Company at the hearing.

Please contact me if you have any questions.

Sincerely,

Charles Shughart
Business Agent

#29

TELEPHONE (717) 233-8766
(800) 692-6280

ABF
EMPLOYER BRIEF

MRC COMMITTEE
CASE NO. ERJAC C-149-00
ABF CASE NO. 042-040-MR-00
LOCAL UNION 776 VS ABF  (RICKEY BETCHEL)

The Union is claiming a violation of Article 5, Section 2 of the NMFA.
They have not provided the Company with a date for this alleged violation.

I have attached a copy of the article in question. This article deals with
"MERGERS OF COMPANIES-GENERAL". Specifically Section 2 ©
reads in part "IN THE APPLICATION OF THIS SECTION, WHEN
TERMINALS OR OPERATIONS OF TWO OR MORE COMPANIES
ARE COMBINED, AS REFERRED TO ABOVE, THE FOLLOWING
GENERAL RULES SHALL BE APPLIED BY THE EMPLOYER AND
LOCAL UNIONS".

In this case there was no merger of terminals in the Carlisle, PA area.
Carolina had closed their terminal 5 months before the ABF, Carolina, Red
Arrow, Change of Operations.  This fact is not in dispute.

Attached is a copy of that Change decision (MR-CO-38-9/95).  I would like
to review Item #1A with the Committee.  As you can see it is very specific
about combining terminals and seniority lists affected by the Change.  It
further reads "EVERY FACILITY WHOSE WORK HAS BEEN MERGED
WITH THE WORK OF ANOTHER FACILITY".

Also attached are copies of pages V and -2- of that Change.  There is no
reference to any Carolina facility in Carlisle, PA because none existed at the
time of the Change.

On October 12, 1995 the Union sent the attached letter to all Carolina
employees layed off when Carolina closed the Carlisle, PA terminal.  This
letter reviews the rights of these employees concerning the ABF, Carolina,
Red Arrow Change decision.  In the Change decision all employees from all
three Companies were afforded Article 5, Section 5 rights, this included road,

city. mechanics and clerical employees.  The former Carolina employees were not afforded Article 5, Section 2 rights.

There was no merger of terminals in Carlisle, PA, and Article 5, Section 2 has no application.  We respectfully request the claim of the Union be denied.

# ARTICLE 5.

## Section 1. Seniority Rights

(a) The application of seniority which has been accrued herein shall be established in the Supplemental Agreements.

(b) Seniority shall be broken only by discharge, voluntary quit, retirement, or more than a five (5) - year layoff.

(c) This Section shall apply to all Supplemental Agreements.

## Section 2. Mergers of Companies-General

(a) In the event the Employer is a party to a merger of lines, seniority of the employees who are affected thereby shall be determined by mutual agreement between the Employer and the Local Unions involved.

In the application of this Section, it is immaterial whether the transaction is called a merger, purchase, acquisition, sale, etc. Further, it is also immaterial whether the transaction involves merely the purchase of stock of one (1) corporation by another, with two (2) separate corporations continuing in existence.

(b) If such merger of companies results in the combination of terminals or over-the-road operations, a change of operations shall be submitted to the Co-Chairmen of the National Grievance Committee for assignment to an appropriate Change of Operations Committee established pursuant to Article 8, Section 6. The Change of Operations Committee shall retain jurisdiction for one (1) year after the effective date of the Committee decision and shall have the authority to amend its decision in the event of a substantial change in the amount of work to be performed at the terminals or over-the-road operations which were combined.

## Combining of Terminals or Operations as a Result of Merger of Companies

(c) In the application of this Section, when terminals or operations of two (2) or more companies are combined, as referred to above, the following general rules shall be applied by the Employer and the Local Unions, which general rules are subject to modification pursuant to the provisions of Section 4 of this Article:

21

TITAN ELECTRONIC MAIL

```
E. 09/19/95
E. 15.37 EST
    LCL/TERM-ID 373
1. LCL/TERM-ID TPI                    TPI1
.   PRINCIPAL OFFICER
E   001      MSG NMBR 431
```


THE PRINCIPAL OFFICERS OF THE FOLLOWING LOCAL UNIONS:

7, 20, 24, 26, 40, 41, 43, 50, 75, 89, 92, 100, 116, 120, 135, 147, 160, 164, 200, 215, 236  238, 245, 279, 299, 301, 325, 332, 339, 346, 364, 371, 377, 406, 407, 413, 414, 460, 534, 544, 554, 563, 574, 580, 600, 614, 627, 637, 651, 662, 673, 688, 695, 696, 697, 705, 710, 722, 749, 795, 823, 833, 908, 916, & 957 OF THE CENTRAL REGION

22, 25, 28, 29, 30, 42, 59, 61, 71, 107, 110, 118, 170, 171, 175, 182, 191, 229, 249, 251, 294, 312, 317, 340, 355, 375, 384, 391, 397, 401, 404, 429, 430, 437, 443, 445, 449, 470, 493, 500, 509, 529, 538, 557, 560, 592, 597, 633, 639, 649, 653, 671, 676, 677, 687, 693, 701, 707, 764, 771, 773, 776, 789, 822, & 992 OF THE EASTERN REGION

5, 79, 217, 270, 373, 385, 390, 402, 480, 512, 515, 519, 523, 528, 549, 568, 577, 612, 657, 667, 728, 745, 878, 886, 891, 920, 968, 988, & 991 OF THE SOUTHERN REGION

961 OF THE WESTERN REGION


ABF FREIGHT SYSTEM, INC. — MULTI—REGION CHANGE OF OPERATIONS DECISION IN CASE NO. MR—CO—38—9/95

: SISTERS AND BROTHERS:

 FOLLOWING IS THE DECISION RENDERED BY THE MULTI—REGION CHANGE OF :ATIONS COMMITTEE IN THE ABOVE REFERENCED CASE.  UPON RECEIPT OF THIS SION PLEASE COPY AND DISTRIBUTE TO ALL ABF AND CAROLINA FREIGHT : SITES FOR IMMEDIATE POSTING:

MULTI—REGION CHANGE OF OPERATIONS COMMITTEE ADOPTED A MOTION THAT COMPANY'S PROPOSED CHANGE OF OPERATIONS BE APPROVED AS MODIFIED CLARIFIED BY THE COMPANY ON THE RECORD WITH THE FOLLOWING PROVISOS:

 THIS CHANGE OF OPERATIONS INVOLVES A TRANSACTION WITHIN THE MEANING OF ARTICLE 5, SECTION 2(A)—(C) OF THE NMFA:

A.   THE COMMITTEE DIRECTS THAT, IN ACCORDANCE WITH THE PROVISIONS OF ARTICLE 5, SECTION 2(A)—(C), ARTICLE 5, SECTION 3, AND ARTICLE 8, SECTION 6(G) OF THE NMFA, THE SENIORITY LISTS AT DOMICILES AND TERMINALS AFFECTED BY THIS CHANGE OF OPERATIONS SHALL BE GROUPED FOR DOVETAILING AS REFLECTED ON THE EXHIBITS CONTAINED IN THE PROPOSED CHANGE OF OPERATIONS, (AS CLARIFIED OR CORRECTED ON THE RECORD), AND AS PROVIDED IN ARTICLE 5, SECTION 2(C) OF THE NMFA.  DOVETAILING APPLIES TO ALL BARGAINING UNIT EMPLOYEES AFFECTED BY COMBINING OR ELIMINATING

TITAN ELECTRONIC MAIL

DATE. 09/19/95
TIME. 15.37 EST
J.   LCL/TERM-ID 373
FROM. LCL/TERM-ID TPI        TPI1
JR.  PRINCIPAL OFFICER
AGE  002      MSG NMBR 431

ABF AND CAROLINA FREIGHT CARRIERS/RED ARROW FACILITIES AND
INCLUDES ALL MAINTENANCE AND OFFICE EMPLOYEES. EVERY FACILITY
WHOSE WORK HAS BEEN MERGED WITH THE WORK OF ANOTHER FACILITY
MUST BE GROUPED WITH THAT FACILITY.  THIS PARAGRAPH DOES NOT
APPLY TO LOCAL UNIONS 673, 705 AND 710 (DOCK AND OFFICE),
WHICH ARE NOT SIGNATORY TO THE NMFA.

B.   DOVETAILING SHALL BE ACTIVE TO ACTIVE, INACTIVE TO INACTIVE, BY
     CLASSIFICATION.  THOSE EMPLOYEES WHO WERE ON LETTER OF LAYOFF
     (OR THE EQUIVALENT THEREOF UNDER THOSE SUPPLEMENTS WHERE
     LETTERS OF LAYOFF ARE NOT UTILIZED) ON AUGUST 11, 1995, SHALL
     BE CONSIDERED AS INACTIVE FOR THE PURPOSES OF THIS DECISION,
     EVEN IF THEY HAVE BEEN USED FOR TEMPORARY WORK OR RECALLED
     PRIOR TO THE EFFECTIVE DATE OF THE CHANGE OF OPERATIONS.  ANY
     EMPLOYEES LAID OFF AFTER AUGUST 11, 1995, BUT BEFORE THE
     EFFECTIVE DATE OF THE CHANGE OF OPERATIONS SHALL BE CONSIDERED
     TO BE ACTIVE AND SHALL RETAIN THEIR RESPECTIVE POSITIONS ON
     THE DOVETAILED ACTIVE LISTS.  ANY EMPLOYEE ON LONG TERM
     DISABILITY SHALL BE CONSIDERED AS ACTIVE IF HIS SENIORITY
     DATE WOULD HAVE PUT HIM/HER ON THE ACTIVE LIST.

C.   A MASTER ACTIVE/LAID OFF POOL SHALL BE CREATED AND SHALL
     CONSIST OF THOSE OVER-THE-ROAD DRIVERS WHO WERE ACTIVE ON
     AUGUST 11, 1995, AT EITHER ABF, CAROLINA OR RED ARROW AND
     WHO WERE LAID OFF AS A DIRECT RESULT OF IMPLEMENTATION OF
     THIS CHANGE OF OPERATIONS.

     A MASTER INACTIVE/LAID OFF POOL SHALL BE CREATED AND SHALL
     CONSIST OF THOSE OVER-THE-ROAD DRIVERS WHO WERE IN LAYOFF
     STATUS ON AUGUST 11, 1995, AT EITHER ABF, CAROLINA OR RED
     ARROW, REGARDLESS OF WHY THEY WERE LAID OFF.

     AFTER IMPLEMENTATION, ANY ADDITIONAL JOB OPENINGS AT A ROAD
     DOMICILE WHERE EMPLOYEES IN EITHER POOL ARE ON LAYOFF SHALL
     BE OFFERED IN LINE OF SENIORITY TO SUCH EMPLOYEES FROM THAT
     DOMICILE, FIRST TO EMPLOYEES ON THE MASTER ACTIVE/LAID OFF
     POOL AND THEM TO EMPLOYEES ON THE MASTER INACTIVE/LAID OFF
     POOL.

     JOB OPENINGS AT ANY DOMICILE OTHER THAN WHERE EMPLOYEES ARE
     PRESENTLY LAID OFF SHALL BE OFFERED FIRST, DURING THE WINDOW
     PERIOD, IN LINE OF SENIORITY TO THOSE EMPLOYEES ON THE MASTER
     ACTIVE/LAID OFF POOL AND THEN, IF NOT FILLED, IN LINE OF
     SENIORITY TO THOSE EMPLOYEES ON THE MASTER INACTIVE/LAID OFF
     POOL.

     SUCCESSFUL BIDDERS SHALL RELINQUISH THEIR SENIORITY AT THEIR
     PRESENT ROAD DOMICILE UNDER THIS PROVISION AND SHALL BE
     DOVETAILED WITH THEIR CURRENT BIDDING SENIORITY DATE AT THE
     ROAD DOMICILE THEY BID.  ALL OF THE PROVISIONS OF ARTICLE 8,

TITAN ELECTRONIC MAIL

E. 09/19/95
1E. 15.37 EST
    LCL/TERM-ID 373
)M. LCL/TERM-ID TPI                TPI1
R. PRINCIPAL OFFICER
)E  003      MSG NMBR 431


SECTION 6 SHALL APPLY TO SUCH TRANSFER.

ANY EMPLOYEE IN EITHER POOL WHO REFUSES THE OFFER OF A WORK
OPPORTUNITY UNDER THIS PROVISION SHALL NOT BE OFFERED A SECOND
OPPORTUNITY TO TRANSFER BUT SHALL REMAIN ON THE LIST ONLY FOR
RECALL TO HIS PRESENT ROAD DOMICILE.

THE WINDOW PERIOD SHALL BE FOR ONE (1) YEAR.  THE COMMITTEE SHALL
RETAIN JURISDICTION TO EXTEND THE WINDOW PERIOD IF CIRCUMSTANCES
WARRANT.  AS STATED BY ABF ON THE RECORD, THE WINDOW PERIOD SHALL
ALSO APPLY TO FULL LOCAL CARTAGE POSITIONS THAT BECOME AVAILABLE
AT LOCATIONS WHERE INSUFFICIENT WORK FOR A FULL POSITION WAS
ORIGINALLY TRANSFERRED AT THE TIME OF IMPLEMENTATION OF THIS
DECISION.  ONLY LOCAL CARTAGE EMPLOYEES FROM THE LOCATION FROM
WHICH THE WORK WAS ORIGINALLY TRANSFERRED SHALL BE ELIGIBLE TO FILL
SUCH POSITIONS.  THE PROVISIONS OF ARTICLE 8, SECTION 6 SHALL
APPLY.

PENSION AND HEALTH & WELFARE CONTRIBUTIONS PAID ON BEHALF OF
AN EMPLOYEE TRANSFERRING UNDER THIS DECISION SHALL BE PAID TO THE
FUNDS TO WHICH THE CONTRIBUTIONS WERE MADE PRIOR TO THE
EMPLOYEE'S CHANGE OF DOMICILE.

ANY REBIDDING SHALL BE HANDLED BY THE LOCAL UNION AND ABF.

SOUTHERN MODIFIED SENIORITY SHALL BE EXCERCISED UPON IMPLEMENTATION
OF THE CHANGE OF OPERATIONS.

AN EMPLOYEE REDOMICILING TO AN EASTERN REGION AREA DOMICILE POINT
THAT MAINTAINS A SINGLE SENIORITY BOARD (I.E. COMBINATION ROAD
AND LOCAL) SHALL REMAIN IN THAT JOB CLASSIFICATION WITH WHICH
HE REDOMICILED FOR A PERIOD OF (1) ONE YEAR, UNLESS THE ANNUAL
JOB BID AT THAT DOMICILE TAKES PLACE AT LEAST NINE (9) MONTHS
AFTER REDOMICILE.

THE FOLLOWING PROVISIONS WILL APPLY TO ANY EMPLOYEE LAID-OFF AS
A RESULT OF THIS CHANGE OF OPERATIONS AND TO ANY OTHER EMPLOYEE
CURRENTLY LAID-OFF, AND TO ANY EMPLOYEE LAID OFF AFTER THIS CHANGE
OF OPERATIONS, FOR THE LIFE OF THE 1994-1998 NMFA:

A.  ABF AGREES TO EXTEND THE PROVISIONS OF ARTICLE 5, SECTION 5
    OF THE NMFA TO ANY BARGAINING UNIT EMPLOYEE.  ABF ALSO AGREES
    TO EXTEND THE RIGHT TO TRANSFER UNDER ARTICLE 5, SECTION 5
    OF THE NMFA TO ANY ABF LOCATION IN THE CENTRAL, EASTERN AND
    SOUTHERN REGIONS, AS OPPOSED TO WITHIN THE REGIONAL AREA.
    TRANSFERS SHALL BE OFFERED ON THE BASIS OF BIDDING SENIORITY,
    BY CLASSIFICATION.  THE COMMITTEE APPROVES THESE EXTENSIONS
    OF THE PROVISIONS OF ARTICLE 5, SECTION 5, AND AGREES THAT
    SUCH EXTENSIONS ARE LIMITED SOLELY TO THIS CHANGE OF
    OPERATIONS AND HAVE NO PRECEDENTIAL EFFECT.

TITAN ELECTRONIC MAIL

```
DATE. 09/19/95
TIME. 15.37 EST
TO.   LCL/TERM-ID 373
FROM. LCL/TERM-ID TPI            TPI1
FOR.  PRINCIPAL OFFICER
PAGE  004     MSG NMBR 431
```

    B.  PENSION AND HEALTH & WELFARE CONTRIBUTIONS PAID ON BEHALF
       OF AN EMPLOYEE TRANSFERRING UNDER THIS PARAGRAPH SHALL BE
       PAID TO THE FUNDS TO WHICH THE CONTRIBUTIONS WERE MADE PRIOR
       TO THE EMPLOYEE'S CHANGE OF DOMICILE.

8.    QUALIFIED BIDDERS ON LONG TERM DISABILITY (LTD) AT THE TIME OF ANY
    BID SHALL BE ALLOWED TO BID.  IF SUCCESSFUL LTD BIDDERS ARE UNABLE
    TO CLAIM THEIR BID ON THE DATE OF IMPLEMENTATION, A HOLD-DOWN BID
    WILL BE ALLOWED.  THIS HOLD-DOWN BID WILL BE OFFERED TO THE
    REMAINING ACTIVE EMPLOYEES AT THE LTD'S CURRENT LOCATION AND
    CLASSIFICATION.  THE SUCCESSFUL HOLD-DOWN BIDDER SHALL BE
    DOVETAILED.  WHEN THE LTD RETURNS TO WORK AND CLAIMS HIS BID,
    THE "HOLD-DOWN" EMPLOYEE MAY EITHER REMAIN AT THE HOLD-DOWN
    LOCATION UNDER PROVISIONS OF ARTICLE 5, SECTION 5 WITH A BIDDING
    SENIORITY DATE CONSISTENT WITH THE DATE OF IMPLEMENTATION OF THIS
    CHANGE OF OPERATIONS OR RETURN TO HIS ORIGINAL LOCATION WITH HIS
    ORIGINAL BIDDING SENIORITY DATE.  THE "HOLD-DOWN" EMPLOYEE MAY
    NOT RETURN TO A LOCATION WHERE THE CLASSIFICATION FROM WHICH HE
    BID HAS BEEN ELIMINATED.

    ABF SHALL NOT BE RESPONSIBLE FOR THE MOVING EXPENSES OF THE
    EMPLOYEE FILLING THE HOLD DOWN BID UNLESS AND UNTIL SUCH TIME
    AS IT IS DETERMINED THAT THE EMPLOYEE ON LTD WILL NEVER BE ABLE
    TO CLAIM HIS BID AND THE HOLD-DOWN BIDDER BECOMES A REGULAR
    PERMANENT EMPLOYEE AT THE HOLD-DOWN LOCATION.

9.    IN RESPONSE TO THE QUESTION RAISED BY LOCAL UNION 41 ON THE
    RECORD. THE COMMITTEE SPECIFICALLY FINDS THAT ARTICLE 43, SECTION 1
    OF THE CENTRAL STATES OVER-THE-ROAD AND LOCAL CARTAGE SUPPLEMENTS
    SHALL APPLY IN DETERMINING THE RECALL RIGHTS OF LAID-OFF EMPLOYEES.

10.   INTERLINING SHALL BE HANDLED AS FOLLOWS:

    A.  WHERE BOTH ABF AND CAROLINA FREIGHT CARRIERS/RED ARROW ARE
       INTERLINING TO SERVICE AN AREA, ABF MAY CONTINUE TO INTERLINE.

    B.  WHERE ABF IS PRESENTLY SERVICING AN AREA WITH ITS OWN
       EMPLOYEES AND CAROLINA FREIGHT CARRIERS/RED ARROW ARE
       INTERLINING INTO THAT AREA, ABF SHALL CONTINUE TO SERVICE
       THE AREA WITH ITS OWN EMPLOYEES.

    C.  WHERE ABF IS PRESENTLY INTERLINING TO SERVICE AN AREA, AND
       CAROLINA FREIGHT CARRIERS/RED ARROW ARE SERVICING THAT AREA
       WITH THEIR OWN EMPLOYEES, ABF SHALL SERVICE THE AREA WITH
       ITS OWN EMPLOYEES.

    D.  ABF AND THE LOCAL UNIONS SHALL MEET TO RESOLVE ANY DISPUTES
       ABOUT WHETHER INTERLINING IS JUSTIFIED IN THE SITUATIONS
       OUTLINED ABOVE.  IF THE PARTIES FAIL TO RESOLVE THEIR
       DIFFERENCES, THE DISPUTE WILL BE RESOLVED THROUGH THE
       GRIEVANCE PROCEDURE.  UNTIL THERE IS A FINAL DISPOSITION OF

TITAN ELECTRONIC MAIL

DATE. 09/19/95
TIME. 15.37 EST
TO.   LCL/TERM-ID 373
FROM. LCL/TERM-ID TPI                    TPI1
FOR.  PRINCIPAL OFFICER
PAGE  005      MSG NMBR 431

THE GRIEVANCE, INTERLINING SHALL CONTINUE IN SITUATIONS
OUTLINED IN SUB-PARAGRAPH A, ABOVE, AND SHALL BE PROHIBITED
IN SITUATIONS OUTLINED IN SUBPARAGRAPHS B AND C, ABOVE.

E.  WHERE ABF PROVIDED LOCAL CARTAGE SERVICE WITHIN A CITY WITH
    LOCAL CARTAGE/DRAYAGE SUBCONTRACTORS, AND CAROLINA FREIGHT
    CARRIERS/RED ARROW SERVICED THAT CITY WITH THEIR OWN
    EMPLOYEES, ABF SHALL SERVICE THE AREA SOLELY WITH ITS OWN
    EMPLOYEES, INCLUDING BUT NOT LIMITED TO THE AREA CURRENTLY
    SERVICED BY LOCAL UNION 707.

11. THE COMMITTEE FINDS WITH REGARD TO THE CINCINNATI, FLORENCE,
AND DAYTON TERMINALS, THE FOLLOWING SHALL APPLY:

THE CAROLINA, FLORENCE, AND CINCINNATI TERMINAL SENIORITY LISTS
SHALL BE DOVETAILED IN ACCORDANCE WITH CURRENT BIDDING SENIORITY.

DURING THE WINDOW PERIOD, THE FIRST THIRTEEN (13) POSITIONS
ADDED TO THE DAYTON SENIORITY LIST SHALL BE OFFERED IN LINE OF
SENIORITY TO THE CINCINNATI TERMINAL SENIORITY LIST AND THE
SUCCESSFUL BIDDERS SHALL BE DOVETAILED.

12. THE COMMITTEE FINDS THAT THE ABF INTERMODAL DECISION IN CASE
NO. MR-ICO-1-6/95 WAS BASED ON ABF'S PRESENT AND PROPOSED
INTERMODAL OPERATIONS AT THE TIME OF THE INTERMODAL HEARING,
WHICH OCCURRED BEFORE THE MERGER INVOLVED IN THIS CHANGE OF
OPERATIONS.   THEREFORE, THE COMMITTEE REFERS TO THE NATIONAL
INTERMODAL COMMITTEE THE QUESTION OF WHETHER THE CHANGE OF
OPERATIONS APPROVED BY THE COMMITTEE IN THIS DECISION AFFECTS
THE TERMS OF THE INTERMODAL DECISION IN CASE NO. MR-ICO-1-6/95,
AND IF SO, WHAT MODIFICATIONS SHOULD BE MADE.

AS LONG AS ANY DISPLACED ROAD DRIVER IS ON INVOLUNTARY LAYOFF
STATUS AT DALLAS, TX, THE RESTRICTIONS OF ARTICLE 29, SECTION 1
OF THE NMFA (CLEAN AND DIRTY RULE) SHALL REPLACE THE RAILING
AUTHORITY OF ARTICLE 29, SECTION 3 OF THE NMFA.

THE PROVISIONS OF ARTICLE 29, SECTION 1 SHALL APPLY TO ABF'S NEW
CHICAGO ROAD DOMICILE.

13. THE COMMITTEE EXPRESSLY DISAPPROVES ABF'S PROPOSAL TO USE VENDORS
TO PERFORM MAINTENANCE WORK WITH MAINTENANCE BARGAINING UNIT
EMPLOYEES ON INVOLUNTARY LAYOFF STATUS.   THE APPLICABLE
COLLECTIVE BARGAINING AGREEMENT OPERATIVE AT THE TIME OF THE
CHANGE OF OPERATIONS SHALL CONTINUE IN EFFECT, INCLUDING THE
CONTRACT'S SUBCONTRACTING PROVISIONS.

14. ABF SHALL PROTECT THE CAROTRANS WORK OPPORTUNITY PRESENTLY
PERFORMED BY CAROLINA AT JACKSONVILLE, MIAMI, AND HOUSTON WITH
ABF BARGAINING UNIT EMPLOYEES.

15. AS LONG AS ANY DISPLACED OVER-THE-ROAD DRIVER IS ON INVOLUNTARY

TITAN ELECTRONIC MAIL

DATE. 09/19/95
TIME. 15.37 EST
TO.    LCL/TERM-ID 373
FROM. LCL/TERM-ID TPI                TPI1
FOR.   PRINCIPAL OFFICER
PAGE   006      MSG NMBR 431

LAYOFF STATUS AS A RESULT OF THIS CHANGE OF OPERATIONS, THE COMPANY, ONLY TO THE EXTENT ALLOWED BY AN APPLICABLE SUPPLEMENTAL AGREEMENT, MAY USE CITY DRIVERS TO RUN THE ROAD, BUT ONLY AT ESTABLISHED ROAD DOMICILES.  THIS PRACTICE SHALL NOT VIOLATE THE ESTABLISHED ORDER OF CALL AT THE APPLICABLE ROAD DOMICILE.

16.  EMPLOYEES WHO HAVE BEEN DISCHARGED, AND WHOSE DISCHARGE IS PENDING ADJUDICATION UNDER THE GRIEVANCE PROCEDURE, SHALL BE OFFERED THE OPPORTUNITY TO BID.

17.  UNION AND NON-UNION OFFICE EMPLOYEES SHALL BE DOVETAILED AS SET OUT IN PARAGRAPH 1 OF THIS DECISION.  THE UNION EMPLOYEES SHALL CONTINUE TO BE COVERED BY ALL PROVISIONS OF THEIR RESPECTIVE COLLECTIVE BARGAINING AGREEMENTS, INCLUDING BUT NOT LIMITED TO, WAGES AND BENEFITS.  IN ANY CASE WHERE A FUND WILL NOT ACCEPT CONTRIBUTIONS FROM ABF FOR UNION EMPLOYEES, THE COMMITTEE WILL DETERMINE THE STEPS NECESSARY TO ASSURE THAT ABF PROVIDES BENEFITS EQUIVALENT TO THOSE PROVIDED TO SUCH EMPLOYEES BEFORE TRANSFER.

18.  DOCK EMPLOYEES WHO ARE ADVERSELY AFFECTED BY THIS CHANGE OF OPERATIONS AND MUST BE CDL QUALIFIED IN ORDER TO TRANSFER AND ELECT TO BID, SHALL BE PROVIDED A 60-DAY PERIOD, COMMENCING SEPTEMBER 19, 1995, DURING WHICH PERIOD SUCH EMPLOYEES WILL EITHER BECOME CDL QUALIFIED OR FORFEIT ANY RIGHTS TO FILL THE BID UNDER THIS DECISION.  DURING THIS PERIOD, ABF IS INSTRUCTED TO PROVIDE ADEQUATE EQUIPMENT AND TRAINING PERSONNEL TO COMPLY WITH THIS PARAGRAPH.

19.  AS A RESULT OF LOCAL 25'S HAVING ATTAINED BARGAINING UNIT JURISDICTION AT THE BURLINGTON, MASSACHUSETTS FACILITY, WHICH RESULTS IN TWO FACILITIES BEING UNDER LOCAL UNION 25'S JURISDICTION, THE PROVISIONS OF ARTICLE 43, SECTION 1(A) OF THE CURRENT NEW ENGLAND SUPPLEMENTAL FREIGHT AGREEMENT SHALL APPLY.

20.  THE COMMITTEE DIRECTS ABF TO GIVE THE LOCAL UNIONS FULL DETAILS CONCERNING ANY 401(K) PLAN COVERING CAROLINA FREIGHT CARRIERS OR RED ARROW EMPLOYEES AND TO KEEP IN EFFECT ANY SUCH PLAN, UNTIL ABF ESTABLISHES AN EQUIVALENT PLAN.  THE COMMITTEE ALSO DIRECTS ABF TO PROVIDE THE LOCAL UNIONS FULL DETAILS REGARDING THE PRIOR PENSION PLAN FOR RED ARROW EMPLOYEES.

21.  THE REQUEST OF LOCAL UNION 200 TO ALLOW A MEMBER TO EXERCISE COMPANY SENIORITY IS DENIED.

22.  THE ISSUED RAISED BY LOCAL UNION 61 REGARDING THE APPLICABLE PEDDLE RADIUS FOR CITY DRIVERS (50 OR 75 MILES) IS REFERRED TO THE PARTIES FOR RESOLUTION.  ANY DIFFERENCES WILL BE RESOLVED THROUGH THE GRIEVANCE PROCEDURE.

23.  ABF'S REQUEST FOR A TRIAL PERIOD TO DETERMINE FREIGHT FLOW FOR BIDDING PURPOSES IS REFERRED BACK TO THE LOCAL UNIONS AND ABF

TITAN ELECTRONIC MAIL

ATE. 09/19/95
IME. 15.37 EST
O.   LCL/TERM-ID 373
ROM. LCL/TERM-ID TPI
OR.  PRINCIPAL OFFICER          TPI1
AGE  007    MSG NMBR 431

FOR RESOLUTION, WITH BIDS TO BE POSTED WITHIN 60 DAYS OF
IMPLEMENTATION, OR SOONER WHEREVER POSSIBLE.

4.   THE COMMITTEE FINDS THAT THERE ARE NO CIRCUMSTANCES THAT WOULD
     ALLOW ANY EMPLOYEE WHO HAD RELOCATED UNDER A PREVIOUS CHANGE OF
     OPERATIONS DECISION OR UNDER THE PROVISIONS OF ARTICLE 5,
     SECTION 5 OF THE NMFA TO RETREAT TO THE EMPLOYEE'S FORMER
     TERMINAL/DOMICILE.  ACCORDINGLY, THE REQUESTS BY THE VARIOUS
     LOCAL UNIONS TO ALLOW EMPLOYEES TO RETREAT ARE SPECIFICALLY
     DENIED.

5.   THIS CHANGE OF OPERATIONS MAY BE IMPLEMENTED NO SOONER THAN
     SEPTEMBER 25, 1995.

6.   THIS MULTI-REGION CHANGE OF OPERATIONS COMMITTEE SHALL RETAIN
     JURISDICTION ON ALL ISSUES THAT MAY ARISE UNDER THIS DECISION
     DURING THE TERM OF THE CONTRACT.  ALL GRIEVANCES SHALL BE FILED
     WITH THE APPROPRIATE REGIONAL JOINT AREA COMMITTEE, TO BE HEARD
     BY THE MULTI-REGION CHANGE OF OPERATIONS COMMITTEE.

LEASE SEND ACKNOWLEDGMENT OF THIS MESSAGE BY TITAN (TITAN TERMINAL
DDRESS:  IUFI. OR _____ .___. _____.

RATERNALLY,

ENNIS C. SKELTON, DIRECTOR
ATIONAL FREIGHT DIVISION
C:  - RON CAREY, CHAIRMAN, TNFINC
    - CHUCK PISCITELLO, ASSISTANT DIRECTOR, NATIONAL FREIGHT DIVISION
    - FRANK BUSALACCHI, ACTING REGIONAL FREIGHT COORDINATOR
      CENTRAL REGION OF TEAMSTERS. C/O TEAMSTERS LOCAL UNION NO. 200
    - DANIEL W. SCHMIDT, REPRESENTATIVE, EASTERN REGION OF TEAMSTERS
    - FRANK HOPKINS, REGIONAL FREIGHT DIVISION COORDINATOR,
      SOUTHERN REGION OF TEAMSTERS, C/O ANNIE HOPKINS, SECRETARY, LOCAL
      UNION NO. 519
    - JIM ROBERTS, REGIONAL FREIGHT DIVISION COORDINATOR
      WESTERN REGION OF TEAMSTERS
    - BOB KNOX, THE GENERAL PRESIDENT'S PERSONAL REPRESENTATIVE
      CENTRAL REGION OF TEAMSTERS
    - JAMES A. MCCALL, IBT LEGAL DEPT.
    - RICK BANK, SPECIAL COUNSEL TO THE GENERAL PRESIDENT

## PROPOSED SENIORITY APPLICATION

The following proposal is based on the general principle that employees who are dovetailed on the date of implementation are those who are bringing work load to follow, so that the list into which they dovetail should not be adversely affected based on the current economic levels.

At common terminal points for local cartage operations, the company will ascertain the work load that ABF can reasonably expect to retain at the time of combining employees. ABF will prepare a Master Active List of its employees and will then prepare a Master Active List of the Carolina employees and the Red Arrow employees, and all three lists will be based on the date this change is implemented. The Company will then offer job opportunity at ABF in numbers equivalent to the work load coming to ABF, by seniority, to the applicable Carolina or Red Arrow Master Active List and they shall be dovetailed into the ABF Master Active List. Those employees on the Carolina or Red Arrow Master Active List who are not offered job opportunity due to insufficient work load to transfer shall remain on such Master Active Seniority List and shall be offered work opportunity as it arises and when permanent job opportunity arises they shall be recalled and dovetailed.

The Company will also establish a Master Inactive List comprised of all employees on lay-off at ABF and Carolina or ABF and Red Arrow on the date this change is implemented. After the Master Active List set forth above has been exhausted, all future job opportunities shall be offered, in line of seniority, to the employees on the Master Inactive List and, upon proper recall, they shall be dovetailed into the Master Active List.

At all other ABF locations which involve Carolina or Red Arrow employees, the same general principle shall apply, i.e., only the number of Carolina or Red Arrow employees equivalent to actual work load transferred will be offered to the Carolina or Red Arrow Master Active List on the first day of the combined operations.

The same principle as outlined above shall apply to combining over-the-road seniority lists, office and/or maintenance groups, where appropriate, as well as to transfer opportunity involving any of those respective classifications.

Therefore, as a general rule:

    Where only one (1) of the three (3) companies has a terminal location, the employees at that location will remain as they are. (See Exhibit "A" in the section on local cartage operations.)

    Where there are dual facilities in any one location or area, the aforementioned seniority application will prevail. (See Exhibit "B" in the section on local cartage operations.)

    Where there are apparent exceptions to the general rule, these will be resolved in Exhibit "C" in the section on local cartage operations.

8/24/95

### Exhibit "A"
### Employee Analysis (Single)
### Local Cartage

| Terminal | | ABF Freight Active | L/O | Total | Carolina/Red Arrow Active | L/O | Total | Empl. Rqmts. |
|---|---|---|---|---|---|---|---|---|
| ABILENE | TX | 2 | 0 | 2 | | | | 2 |
| AKRON | OH | 19 18 | 0 | 19 18 | | | | 19 18 |
| ALEXANDRIA | LA | 3 | 0 | 3 | | | | 3 |
| AMARILLO | TX | 5 | 0 | 5 | | | | 5 |
| ASHTABULA | OH | 3 | 1 | 4 | | | | 4 |
| BEAUMONT | TX | 5 | 0 | 5 | | | | 5 |
| BENTON HARBOR | MI | 3 | 0 | 3 | | | | 3 |
| BILOXI | MS | 4 | 0 | 4 | | | | 4 |
| BINGHAMPTON | NY | 7 | 0 | 7 | | | | 7 |
| BOWLING GREEN | KY | 3 | 0 | 3 | | | | 3 |
| BROOKLYN PARK | MN | 13 | 0 | 13 | | | | 13 |
| BROWNSVILLE | TX | 4 | 0 | 4 | | | | 4 |
| BRYAN | OH | 3 | 0 | 3 | | | | 3 |
| BUTLER | PA | 4 | 0 | 4 | | | | 4 |
| CADILLAC | MI | 3 | 0 | 3 | | | | 3 |
| CAMP HILL | PA | 96 | | 96 | | | | 62 |
| CANTON | OH | 11 | 2 | 13 | 4 | 0 | 4 | 12 |
| CAPE GIRARDEAU | MO | 8 5 | 0 3 | 8 | | | | 8 5 |
| CARLISLE | PA | 328 | 0 | 328 | | | | 296 |
| CARLLS CORNER | NJ | 1 | 0 | 1 | | | | 1 |
| CEDAR RAPIDS | IA | 8 | 0 | 8 | | | | 8 |
| CHAMPAIGN | IL | 4 | 0 | 4 | | | | 4 |
| CHARLESTON | SC | 5 | 0 | 5 | | | | 5 |
| CHESTER | PA | 21 | 0 | 21 | | | | 21 |
| COLUMBUS | NE | 2 | 0 | 2 | | | | 2 |
| CORPUS CHRISTI | TX | 2 | 0 | 2 | | | | 2 |
| DAYTON | OH | 227 | 0 | 227 | | | | 227 |
| DECATUR | IL | | | | 4 | 2 | 6 | 0 |
| DUBOIS | PA | 4 | 0 | 4 | | | | 4 |
| DULUTH | MN | 2 | 0 | 2 | | | | 2 |
| EAGAN | MN | 20 | 0 | 20 | | | | 20 |
| EAU CLAIRE | WI | 3 | 0 | 3 | | | | 3 |
| EFFINGHAM | IL | 2 | 0 | 2 | | | | 2 |
| EL DORADO | AR | 3 | 0 | 3 | | | | 3 |
| EL PASO | TX | 15 | 0 | 15 | | | | 15 |
| ELGIN | IL | 11 | 0 | 11 | | | | 10 11 |
| ELMIRA | NY | 5 | 0 | 5 | | | | 5 |
| FAIRFIELD | IA | 3 | 1 | 4 | | | | 3 |
| FAIRMONT | WV | 4 | 0 | 4 | | | | 4 |
| FARGO | ND | 3 | 0 | 3 | | | | 3 |
| FAYETTEVILLE | AR | 8 | 0 | 8 | | | | 8 |
| FEDERALSBURG | MD | 5 | 0 | 5 | 5 | 0 | 5 | 5 |
| FLORENCE | KY | | | | 5 | 0 | 5 | |
| FT. SMITH | AR | 11 | 0 | 11 | | | | 11 |
| GRAND ISLAND | NE | 4 | 0 | 4 | | | | 4 |

**THOMAS VINSON**
VICE PRESIDENT

**ANDREW C. REILEY**
RECORDING SECRETARY

**MELVIN HARRIS**
TRUSTEE

**TERRY L. KING**
TRUSTEE

**JEANETTE WATERS**
TRUSTEE

LOCAL UNION NO. 776

AFFILIATED WITH THE

International Brotherhood of Teamsters
2552 JEFFERSON STREET
HARRISBURG, PA 17110-2505

THOMAS B. GRIFFITH
PRESIDENT AND BUSINESS AGENT

DALE H. CRUM
SECRETARY TREASURER AND BUSINESS AGENT

BUSINESS AGENTS

JOHN L. FOGLE
CARLOS N. RAMOS, II
CHARLES SHUGHART
GEORGE F. SMART, SR.
RUSSELL A. STEPP
DANIEL A. VIRTUE

October 12, 1995

Dear Carolina Employee:

This letter is important. Please take the time to read it.

Surely you're aware that ABF and Carolina Freight recently merged their operations. Because of that merger, a change of operations was held on September 14/15, 1995.

As a result of the decision from the change of operations committee, the Carolina employees who are laid off at Carlisle, Pa will have certain rights to future work opportunities with ABF. Article 5, Section 5 of the NMFA addresses those rights. Those work opportunities will be offered to laid off Carolina employees in seniority order. However, it is necessary that you notify ABF in writing of your desire to be offered available work.

Enclosed is a form letter and an envelope. If you desire to be offered available work, you must complete the letter and mail it to ABF **as soon as possible.** If you desire, you may also draft your own letter instead of using the form letter. It is your choice to send the letter via regular mail or certified mail. In either case, I suggest that you keep a copy of the letter as your file copy.

You should mail the letter to ABF today. On October 16, 1995, the Company will begin compiling the list of employees who desire available work.

If you have any questions, please feel welcome to contact us.

Sincerely,

Charles Shughart
Business Agent

*Boire   Norman   T*
*(last)   (first)   (m.i.)*

*710 Charles Rd*
*street /P.O. Box*

*Dauphin   Pa   17018*
*(city)   (state)   (zip)*

*717-921-8605   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*
*(home phone)   (social security #)*

*10/19/95*
*(date)*

Steve Walters, Terminal Manager
ABF Freight Systems
P.O. Box 1925
New Kingstown, Pa  17072

Ref:    Employment opportunities under Article 5, Section 5 of the NMFA

Dear Mr. Walters:

.......... .. .... opportunities that become available at ABF

I am interested in available work at the below areas:  (Mark only one block).

      [X]    Carlisle/Camp Hill, Pa only
      [ ]    All terminals in ABF's system

I am a qualified:     [X]    Road Driver
                  [ ]    Jockey
                  [ ]    Dockworker

Sincerely,

*(Signature)*

(Mail to ABF at above address.)

$\cancel{L}77^b$

## EASTERN REGION JOINT AREA COMMITTEE

Established in accordance with the terms and conditions of the National Master Freight Agreement and the CENT. PA Supplemental Agreement, entered into by and between the Local Union and carriers engaged in City Pickup and Delivery and/or Over-the-Road Freight Operations.

DOCKET NO. C-149-00

IN THE MATTER OF THE DISPUTE BETWEEN

TEAMSTERS LOCAL NO. 776
HARRISBURG, PA

SUBMISSION FORM

and

ABF FREIGHT SYSTEM, INC.

We, the undersigned, parties to the National Master Freight Agreement and the CENT. PA  Supplemental Agreement, hereby agree to submit the dispute to arbitration under the Rules of Procedure prescribed by the Eastern Region Joint Area Committee, by virtue of its authority, as set forth in Article 43 and        of the CENT. PA  Supplemental Agreement, the following:

On behalf of Rickey Bechtel, Union alleges violation of Article 5; requesting grievant be returned to proper seniority with all lost wages, benefits.

The undersigned further agree that a majority decision of the Eastern Region Joint Area Committee in the above dispute will be final, conclusive and binding with no appeal and, further, that neither party will attempt through any overt acts, to void the decision rendered.

The undersigned also agree that failure to comply with the decision of a majority of the Committee within ten (10) days of the date of the decision will result in the loss of all contract rights, privileges and benefits due them under Article 43 of the  CENT. PA  Supplemental Agreement.

Date          July 25, 2000

Employer      ABF FREIGHT SYSTEM, INC.          Local Union    776

Signed by     Steven J. Froias, Labor Rels.      Signed by      Charles Shughart, B. A.

## DECISION

The Panel, in executive session, motion made, seconded and carried that this case is referred to the National Multi-Region Change of Operations Violations Committee. Cost split.

R. L. SCHAEFFER
Employer Co-Secretary

NICHOLAS PICARELLO
Union Co-Secretary

JULY 25, 2000
Date

JULY 25, 2000
Date

Gentlemen,

In review of the facts, which were presented here, I would like to summarize what we have discussed. First of all, I have a paper from ABF stating that I declined work elsewhere and would remain laid off a Carlisle, PA ~~strikethrough~~ Second, contractually, I have recall rights for 5 years from date of lay off which was still in effect when I addressed this situation. I was made aware of this situation on February 18, 2000 and immediately proceeded to file this grievance. When the grievance was heard at the local level, it was at that point that I was made aware that ABF had hired employees on the local side as far back as 1998 so then I proceeded to send a letter to Mr. Schugart and requested a copy of the April, 2000 seniority list from ABF Freight at the Carlisle, Pa terminal. ~~This is a copy of the seniority list that is the list up~~ There is something else that is very important in rendering a decision on this case and that is this document ~~strikethrough~~ which states that the United States court of appeals for the Fourth District heard this case involving this same situation on seniority where the ABF employees had filed against the Carolina Employees claiming the employees from Carolina should not "DOVETAIL", however the Fourth District Court argued the case on October 28, 1998 and rendered a decision on the case on December 29, 1999. It was docketed under the title of George, it al v Ron Carey. The judges who heard the case were Wilkinson, Chief Judge, and Luttig and Motz, Circuit Judges. These judges made the decision that the Carolina Employees will be DOVETAILED into their seniority positions.

In closing, gentlemen, I ask that you review all the facts present here and make a decision in favor of me the grievant and I be placed back to work on the local side at ABF Freight at Carlisle, PA with my original seniority date of February 01, 1986 and for any money due me.

Thank you for your time.

RICKEY A BECHTEL
2072 LOCUST LANE
HUMMELSTOWN      PA 17036

# Earnings Statement

Period End   Pay Date   Check Number
05/27/95     06/08/95   9149533

CAROLINA FREIGHT CARRIERS CORPORAT
1201 EAST CHURCH STREET
CHERRYVILLE, NC 28021-0697

|  | Federal | State | Local | Location |
|---|---|---|---|---|
| Social Security Number | S | S | S | CF1039 |
| Taxable Marital Status: |  |  |  |  |
| 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   Number of Exemptions: | 0 | 0 | 0 | |

| Earnings | Rate | Hours | This Period | Year to Date |
|---|---|---|---|---|
| ADV VACATIO | 17.7200 | 135.00 | 2,392.20 | 2,392.20 |
| BIRTHDAY |  |  |  | 139.36 |
| CHRSTMAS DA |  |  |  | 278.72 |
| JURY DUTY |  |  |  | 696.80 |
| NEW YEAR DA |  |  |  | 139.36 |
| PERSONAL DA | 17.7200 | 24.00 | 425.28 | 425.28 |
| WORK |  |  |  | 7,525.44 |

| Deductions | This Period | Year to Date |
|---|---|---|
| CARLISLE | 28.17 | 115.9 |
| FIT | 516.40 | 2,168.5 |
| MEDCARE | 40.85 | 168.1 |
| OASDI | 174.68 | 719.0 |
| SDI42 | 3.10 | 12.7 |
| SIT42 | 78.88 | 324.6 |
| CARL. TAX |  | 10.0 |
| NATIONAL DR | 1.00 | 15.0 |
| UNION DUES |  | 144.0 |

| Totals | Gross Pay | Taxable Wages | Taxes | Deductions | Net Pa |
|---|---|---|---|---|---|
| This Period | $2,817.48 | $2,817.48 | $842.08 | $1.00 | $1,974. |
| Year to Date | $11,597.16 | $11,597.16 | $3,509.10 | $169.00 | $7,919.0 |

CF1039
RICKEY A BECHTEL
2072 LOCUST LANE
HUMMELSTOWN      PA 17036



TEAMSTERS LOCAL 776

VS

ABF FREIGHT SYSTEMS

Grievance 94532
(Thomas Schildt)

Gentlemen of the Committee:

Grievance number 94532 reads as follows:

*I am filing this grievance due to the fact that I am a laid off ABF employee at Carlisle, PA (see attached letter marked Exhibit A). It has come to my attention that ABF is hiring at the Carlisle, PA terminal and I am filing this because I have not been contacted for any available work opportunities. Under the National Master Freight Agreement that was in effect in 1995 when I was laid off, Article # 5, Section # 2 states that "If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall, such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes".*
(Exhibit 1)

Note: The grievant amended the grievance by letter dated April 10, 2000 to include a claim for "all monies due" (Exhibit 2).

The grievant was a full-time dock employee with Carolina Freight at the Carlisle, Pennsylvania breakbulk terminal. His seniority date was January 11, 1988. In May, 1995, Carolina Freight Carriers terminated their breakbulk operations at the Carlisle, Pennsylvania terminal. All remaining employees not previously laid-off were placed on layoff status.

On July 10, 1995, it was announced that ABF Freight Carriers, Inc would acquire Carolina Freight Carriers and Red Arrow Freight Lines. On September 14 and 15, 1995, the issues concerning the change of operations were presented at a meeting held in Chicago. At the change of operations, Local 776 addressed concerns about the previously laid off employees at the Carolina terminal at Carlisle (Exhibit 3).

Mr. Schildt has filed this grievance, claiming that ABF is violating the term of Article 5, Section 2 (of the 94 - 98 NMFA). That language reads as follows:

> In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be similarly "dovetailed" by appropriate classification. If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes. Seniority rosters previously combining job classifications shall be continued unless otherwise agreed.

Obviously, Mr. Schildt was on a letter of layoff from Carolina Freight at the time the ABF merger / acquisition took place. When that occurred, it would seem that ABF assumed the debts, liabilities and contractual obligations previously held by Carolina Freight. One aspect of those contractual obligations is the recall rights of Carolina employees who were previously placed in layoff status by Carolina. As such, Mr. Schildt should by entitled to recall rights under Article 5, Section 2.

Should there be any question that Mr. Schildt was on layoff from ABF, the attached letter (Exhibit 4) clearly indicates his layoff status. It reads in part:

> *This letter is to confirm that you elected to decline the job offer and to remain in **layoff** status at Carlisle, PA*

Attached is a copy of a seniority list from the ABF at Carlisle, Pennsylvania (Exhibit 5). As can be determined from the list, ABF has hired 84 employees who have a seniority date of April, 1999 or later. Approximately 30 of those individuals work in the dock / local classification.

In view of the clear and undisputable facts related to this grievance, we respectfully request that the Committee uphold the claim of the grievant.

Respectfully Submitted


Charles Shughart
Business Agent

# EXHiBiT 4

THOMAS M SCHILDT
5486 BEAGLE ROAD
ELIZABETHTOWN    PA 17022

## Earnings Statement

Period End    Pay Date    Check Number
03/18/95      03/30/95    9085846

CAROLINA FREIGHT CARRIERS CORPORATI
1201 EAST CHURCH STREET
CHERRYVILLE, NC 28021-0697

| | Federal | State | Local | Location |
|---|---|---|---|---|
| Taxable Marital Status: | M | M | M | CF1039 |
| Number of Exemptions: | 3 | 3 | 3 | |

Social Security Number
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

| Earnings | Rate | Hours | This Period | Year to Date |
|---|---|---|---|---|
| BIRTHDAY | | | | |
| CHRSTMAS DA | | | | 139.36 |
| NEW YEAR DA | | | | 278.72 |
| SICK | | | | 139.36 |
| WORK | 17.4200 | 7.00 | 121.94 | 278.72 |
| | | | | 4,442.10 |

| Deductions | This Period | Year to Date |
|---|---|---|
| CARLISLE | 1.22 | 52.79 |
| FIT | | 452.66 |
| MEDCARE | 1.76 | 76.53 |
| OASDI | 7.56 | 327.25 |
| SDI42 | 0.14 | 5.81 |
| SIT42 | 3.41 | 147.78 |
| CARL TAX | | 10.00 |
| NATIONAL DR | 1.00 | 9.00 |
| UNION DUES | | 72.00 |

| Totals | Gross Pay | Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| This Period | $121.94 | $121.94 | $14.09 | $1.00 | $106.85 |
| Year to Date | $5,278.26 | $5,278.26 | $1,062.82 | $91.00 | $4,124.44 |

CF1039
THOMAS M SCHILDT
5486 BEAGLE ROAD
ELIZABETHTOWN    PA 17022