● ORIGINAL ●

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| RICKEY A. BECHTEL, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| DANIEL A. VIRTUE, Business Agent of the ) | **Case No. 3:01-CV-789** |
| International Brotherhood of Teamsters; ) | **Judge Sylvia H. Rambo** |
| INTERNATIONAL BROTHERHOOD OF ) | |
| TEAMSTERS; LOCAL 776, ) | **FILED** |
| INTERNATIONAL BROTHERHOOD OF ) | **HARRISBURG** |
| TEAMSTERS; ABF FREIGHT SYSTEM, ) | |
| INCORPORATED, ) | APR 1 5 2002 |
| ) | |
| **Defendants.** ) | MARY E. D'ANDREA, CLERK |
| ) | Per_____ |
| | DEPUTY CLERK |

## DEFENDANT ABF FREIGHT SYSTEM, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant ABF Freight System, Inc. ("ABF") hereby submits this Memorandum of Points and Authorities in Support of its Motion for Summary Judgment.

## I.    PROCEDURAL HISTORY

On May 4, 2000, Plaintiff, Rickey A. Bechtel, filed a Complaint in this Court, alleging a "hybrid" breach of the duty of fair representation claim against Defendants Daniel A. Virtue ("Virtue"), Local 776, International Brotherhood of Teamsters ("Local 776"), and the International Brotherhood of Teamsters ("IBT"),

and a breach of a collective bargaining agreement claim against ABF, pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. §185. The Court issued a scheduling Order on October 4, 2001 and the parties completed discovery on April 1, 2002.[1] Defendant ABF Freight System, Inc.'s ("ABF") now files this Motion for Summary Judgment on all counts.

## II. STATEMENT OF FACTS

ABF refers the Court to its Statement of Undisputed Material Facts filed contemporaneously with ABF's Motion for Summary Judgment.[2]

## III. STATEMENT OF QUESTIONS INVOLVED

This case presents two questions: (1) did ABF breach the terms of the National Master Freight Agreement ("NMFA") when, in accordance with the decision of a Multi-Region Change of Operations Committee, it afforded Plaintiff transfer rights under Article 5, Section 5 of the NMFA rather than recall rights under Article 5, Section 2 of the NMFA; and (2) did Virtue, Local 776, and the IBT breach their duty of fair representation in processing Plaintiff's grievance.

---

[1]     On March 21, 2002, Plaintiff filed a Motion to Consolidate this matter with Albright et. al. v. Virtue, et. al., Case No. 1:CV-00-878. Defendants ABF, Local 776, and the IBT filed oppositions to Plaintiff's motion. The Motion to Consolidate currently is pending before the Court.

[2]     References to ABF's Statement of Undisputed Material Facts are indicated as "Facts at __." References to the Affidavit of Steven J. Froias appear as "Froias Aff. at __," and references to Plaintiff's deposition appear as "Bechtel Tr. at __."

The undisputed evidence establishes that ABF, at all material times, acted in accordance with the terms of the NMFA and the September 19, 1995 decision of the Multi-Region Change of Operations Committee addressing the ABF/Carolina acquisition and merger. In addition, Defendants Virtue, Local 776, and the IBT fairly and effectively represented Plaintiff in all proceedings. Accordingly, summary judgment should be entered for all Defendants.

## IV.  ARGUMENT

### A.  Introduction

Plaintiff has filed a so-called "hybrid" breach of contract/breach of duty of fair representation ("DFR") action against the Defendants based on: (1) ABF's alleged failure to offer Plaintiff work at ABF's Carlisle, PA terminal and (2) Virtue, Local 776, and the IBT's alleged failure to represent Plaintiff fairly at all stages of the grievance process. Plaintiff's claim is unsupported by the record and should be rejected.

The entire basis for Plaintiff's claim is that he "disagrees" with the Multi-Region Change of Operations Committee's ("Committee") decision denying his grievance. Froias Aff., Exhibit A; Bechtel Tr. at 115-16.[3/]  Disagreement with the

---

[3/]    Pursuant to the NMFA, the Multi-Region Change of Operations Committee was responsible for determining the proper application of seniority for the over 16,000 employees at 500 freight terminals affected by the ABF/Carolina change of operations. See Gorge v. Carey, 166 F.3d 1209 (4th Cir. 1998). The Committee

Committee's decision standing alone, however, is insufficient to support a "hybrid" DFR/breach of contract action.  To overcome the Committee's final and binding decision, Plaintiff must present evidence to prove that Virtue, Local 776, and the IBT[4/] breached their duty of fair representation and that ABF breached the NMFA.  Here, Plaintiff has presented absolutely no legal or factual basis to support any of his claims against ABF, Virtue, Local 776, or the IBT.  Accordingly, summary judgment should be entered for all Defendants.

### B.    Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v Catrett, 477 U.S. 317, 322 (1986).  A defendant is not required to negate plaintiff's claim; rather, it only must point out that plaintiff's evidence is insufficient to carry his burden of persuasion at trial.  Lawrence v. National Westminster Bank N.J., 98 F.3d 61, 69 (3d Cir. 1996).  After a defendant meets its initial burden, a plaintiff must present competent evidence designating "specific facts showing that there is a

---

retained jurisdiction to resolve seniority disputes arising out of its decision.  Facts ¶8.

4/    Virtue, Local 776, and the IBT, on occasion, will be referred to collectively as "the Union."

genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324 (citation omitted).   Unsupported

assertions, conclusory allegations, and mere suspicious beliefs are not sufficient to

survive a motion for summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477

U.S. 242, 250-52 (1986); <u>Schoch v. First Fidelity Bancorporation</u>, 912 F.2d 654,

657 (3d Cir. 1990).  In this case, Plaintiff fails to present any genuine issues of

material fact and Defendants are entitled to judgment as a matter of law.

  C. <u>Plaintiff Fails to Establish the Required Elements of a "Hybrid"</u>
    <u>Breach of Duty of Fair Representation/Breach of Contract Claim</u>

  A "hybrid" Section 301 suit involves two independent but intertwined

causes of action.  <u>DelCostello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151, 164-65

(1983).  To prevail, a plaintiff must prove: (1) that the union breached its duty of

fair representation; <u>and</u> (2) that the employer breached its collective bargaining

agreement.  <u>Id.</u> at 165.   Furthermore, a plaintiff must show that the union's breach

affected the integrity of the grievance/arbitration process.  <u>See</u> <u>Hines v. Anchor</u>

<u>Motor Freight, Inc.</u>, 424 U.S. 554, 568 (1976).

  Absent the union's breach of the duty of fair representation, an employer is

allowed to rely on the finality provision of the grievance and arbitration provisions

in the collective bargaining agreement.  <u>See</u> <u>Hines</u>, 424 U.S. at 567; <u>Humphrey v.</u>

<u>Moore</u>, 375 U.S. 335, 350-51 (1964) (upholding a joint committee decision

resolving a seniority dispute where the evidence failed to show a breach by the

union of its duty of fair representation).   Thus, absent a showing that Virtue, Local

776, and the IBT breached their duty of fair representation, the final and binding

decision of the Multi-Region Change of Operations Committee denying Plaintiff's

grievance must stand.

    1.    Plaintiff Fails to Establish That the Union Defendants
            Breached Their Duty of Fair Representation

Plaintiff alleges that the Union Defendants Local 776 and the IBT "breached

their duty of fair representation by refusing to further process Mr. Bechtel's

grievance up to and including arbitration proceedings." Complaint ¶27.  Plaintiff

additionally alleges that Local 776 failed "to fairly represent Plaintiff" and that the

IBT, who is responsible for "the creation and oversight of the local union . . . failed

to insure the fair representation of Plaintiff."  Complaint ¶29.  Plaintiff failed to

produce any support for these theories, however, and they should be dismissed.

To establish a breach of the duty of fair representation a plaintiff must show

that the "union's conduct toward a member of the collective bargaining unit is

arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190

(1967).  A union's actions are considered arbitrary only if "in light of the factual

and legal landscape" they are "so far outside a wide range of reasonableness as to

be irrational." Air Line Pilots v. O'Neill, 499 U.S. 65, 67 (1991); see Garcia v.

Zenith Electronics Corp., 58 F.3d 1171, 1176 (7th Cir. 1995); Johnson v. United

Steelworkers of America, 843 F. Supp 944, 946 (M.D. Pa. 1994).  "Mere

negligence or poor judgment on the part of the union will not support a claim of

unfair representation." <u>Black v. Ryder/P.I.E. Nationwide, Inc.</u>, 15 F.3d 573, 584 (6th Cir. 1994)(citation omitted); <u>See</u> <u>Bazarte v. United Transportation Union</u>, 429 F.2d 868, 872 (3d Cir. 1980).  In sum, a plaintiff alleging a DFR breach "faces a heavy burden."  <u>In re ABF Labor Contract Litigation</u>, 988 F. Supp. 556, 564 (D. Md.) (1997), <u>aff'd per curiam sub nom.</u>, <u>Gorge v. Carey</u>, 166 F.3d 1209 (4th Cir. 1998).  Absent proof of a breach, the Court need not even examine the breach of contract claim.  <u>See</u> <u>Johnson</u>, 843 F. Supp. at 949.

> a.    The Union Fairly Represented Plaintiff at All Stages of the Grievance Process

Contrary to Plaintiff's assertions, Local 776 fairly represented Plaintiff at all stages of the grievance process and exhausted all contractually available forums for obtaining a resolution of Plaintiff's grievance.  Upon receiving Plaintiff's grievance, Local 776 Business Agent Charles Shughart wrote a letter to Plaintiff informing him that his grievance was being forwarded to ABF.  Facts ¶16. Shughart arranged a meeting with an ABF representative to discuss a resolution of the grievance.  Facts ¶17.  When a resolution was not reached, he submitted the case to the Eastern Region Joint Area Committee ("ERJAC") for hearing.  Facts ¶17.

Prior to the ERJAC hearing, Shughart asked Bechtel to "lay out" what he wanted presented at the hearing.  Facts ¶18.  He met with Bechtel on more than one occasion to discuss the presentation of Bechtel's grievance and to draft the

brief to be submitted to the ERJAC.  Facts ¶18.  Shughart drafted Bechtel's

ERJAC brief based on language and documents submitted by Bechtel.  Facts ¶19.

He sent Bechtel a draft of the brief for his review and incorporated Bechtel's

comments and handwritten changes into the final document that was submitted to

the ERJAC.  Facts ¶19.  The brief contained seven exhibits in support of Bechtel's

claim.  Facts ¶20.

Shughart presented Bechtel's case at the ERJAC hearing.  Facts ¶20.  In his

presentation, Shughart quoted from Bechtel's brief and fielded questions from the

ERJAC.  Facts ¶20.  He vigorously argued that Bechtel had recall rights under the

NMFA because he was on a letter of layoff from Carolina at the time of the

ABF/Carolina merger.  Furthermore, he encouraged Bechtel to make a statement

on his own behalf, which Bechtel did.  Facts ¶20.

The ERJAC referred Bechtel's grievance to the Multi-Region Change of

Operations Committee, as the case involved an interpretation of the Committee's

September 19, 1995 decision.  Shughart continued to pursue Bechtel's asserted

right to be recalled by ABF before the Committee.  Facts ¶8, 22.  In his

presentation, Shughart quoted from Bechtel's brief and the transcript from the

September 1995 Change of Operations Committee decision, which resolved

seniority issues stemming from the ABF/Carolina merger, and he presented the

Committee with several exhibits.  Facts ¶22.  By Bechtel's own admission, he

thought that Shughart covered everything "very well," and thought that he had the opportunity to say everything that he wanted to say in support of his case.   Facts ¶22.

In his deposition Bechtel admitted that throughout the grievance process Shughart: (1) provided Bechtel with all information that he requested in a reasonable amount of time; (2) answered all of Bechtel's questions; (3) and provided Bechtel the opportunity to review and comment on all documents submitted to the ERJAC and Multi-Region Change of Operations Committee. Facts ¶26.  Bechtel admitted that Shughart did a thorough job of presenting the case.  Facts ¶26.  In Bechtel's own words: "it looked like he was fighting for what I wanted."  Bechtel Tr. at 78.  Finally, Bechtel believed that the brief presented to the two Committees "fairly presented" his case.  Bechtel Tr. at 80.

Simply stated, Plaintiff has presented absolutely no evidence to support his claim that the Union breached its duty of fair representation.  Plaintiff cannot establish that the Union acted irrationally, dishonestly, or discriminatorily.  By Plaintiff's own admission, his business agent fought for his rights and did a thorough job in presenting his case <u>twice</u>.  Facts ¶26, Bechtel Tr. at 78.  <u>See</u> <u>Bazarte</u>, 429 F.2d at 872 (holding that union did not breach its duty of fair representation where representative argued case at local grievance committee hearing and elected not to pursue the grievance further after determining that

plaintiff's case was hopeless); <u>Johnson v. United Steelworkers of America</u>, 843 F.

Supp. 944, 948 (M.D. Pa. 1994)(no DFR violation where plaintiff disagreed with

the manner in which the union representative argued his case).

Furthermore, Plaintiff's claim that the Union refused to take Mr. Bechtel's

grievance to arbitration is baseless.  Plaintiff's grievance arose from ABF's

implementation of the September 19, 1995 decision of the Multi-Region Change of

Operations Committee, which retained jurisdiction to settle all seniority disputes

arising from its decision.  Facts ¶8.  In addition, under the NMFA, arbitration is

appropriate only in the event of a committee deadlock.  <u>See</u> Exhibit 1, Article 8,

Section 2.    Here, Local 776 processed Plaintiff's grievance through all levels of

the grievance process available to it—(1) the Company level; (2) the ERJAC level;

and (3) the Multi-Region Change of Operations Committee level.  Facts ¶¶ 17, 20,

22.  And the Committee issued a final and binding decision denying the grievance.

Accordingly, neither Plaintiff nor his Union had the ability to further process his

grievance.

> 2.    Plaintiff Fails To Establish That Defendant ABF Breached the
> Terms of the NMFA

Plaintiff's allegation that Defendant ABF failed to observe the provisions the

NMFA and the Supplemental Agreement in making recalls from layoffs has no

merit.  First, as demonstrated above, Plaintiff cannot establish that the Union

Defendants breached their duty of fair representation.  Accordingly, the final and

binding decision of the Multi-Region Change of Operations Committee denying

Plaintiff's grievance must be upheld and is immune from challenge.  See Hines,

424 U.S. at 567; Griesmann v. Chemical Leaman Tank Lines, Inc., 776 F.2d 66,

(3d Cir. 1985)(stating that the district court must defer to a joint committee

decision unless the union breached its duty of fair representation before the

committee).

Second, the evidence clearly demonstrates that ABF did not breach the terms

of the NMFA.  Rather, ABF correctly applied the recall and seniority provisions of

the NMFA in accordance with the September 19, 1995 decision of the Multi-

Region Change of Operations Committee.

> a.    The Multi-Region Change of Operations Committee Is
> Charged With Determining the Application of Seniority
> For Individuals Impacted By the ABF/Carolina Change
> of Operations

The Change of Operations Committee, appointed in August 1995 to consider

the proposed change of operations plan submitted by ABF as a result of the

ABF/Carolina acquisition and merger, had the sole authority under the NMFA to

resolve and decide seniority issues arising from the change of operations.  Facts ¶9;

Exhibit 1, Article 8, Section 6(d).  The Committee held hearings on September 14

and 15, 1995 and issued a decision on September 19, 1995, in which it determined

that in accordance with Article 5, Section 2 of the NMFA, "the seniority lists at

domiciles and terminals affected by this change of operations shall be grouped by

dovetailing as reflected on the exhibits contained in the proposed change of operations. . . ." Facts ¶10, Froias Aff., Exhibit A.   The Committee further stated that "every facility <u>whose work has been merged</u> with the work of another facility must be grouped with that facility." Froias Aff., Exhibit A at 2 (emphasis added). Attached to the Committee's decision was an exhibit indicating that at the time of the merger, there were 328 ABF employees and zero total Carolina employees in Carlisle, PA. Facts ¶11. This document accurately reflected the closure of Carolina's Carlisle terminal in May 1995, five months prior to the ABF/Carolina merger. Facts ¶11. Because Carolina's Carlisle facility did not exist at the time of ABF's acquisition of Carolina, it was not merged with any ABF terminal, and employees previously laid off from Carolina's Carlisle terminal had no recall rights under Article 5, Section 2 of the NMFA. Facts ¶11; Exhibit 1, Article 5, Section 2.

In an effort to provide employment opportunities for other laid off employees, including Carolina's former Carlisle employees, the Change of Operations Committee decided to extend the transfer rights of Article 5, Section 5 of the NMFA to them for the life of the 1994-1998 NMFA. Facts ¶12. Usually, Article 5, Section 5 is applied only to over-the-road drivers. Facts ¶12. Under the Committee's decision, however, all laid off Carolina employees, who submitted a written request, were eligible for work opportunities at ABF terminals throughout

its system.  Facts ¶12; Exhibit 1, Article 5, Section 5.  This provision applied to

employees laid off from Carolina's closed Carlisle terminal.  Facts ¶12.

b.    ABF Properly Implemented The Multi-Region
Change of Operations Committee's Decision

Pursuant to the NMFA, the decision of the Committee was final and binding

on ABF.  Facts ¶8.  As such, ABF adhered to the terms of the NMFA and the

Committee's decision by affording Plaintiff transfer rights under Article 5, Section

5 of the NMFA at nine other ABF facilities on November 8, 1995.  Froias Aff. ¶12.

And as other courts have found in a quite similar context, "ABF cannot be found to

have violated the NMFA by complying with a decision reached by the

Committee."  In re ABF Labor Contract Litigation, 988 F. Supp at 568; Gorge v.

Carey, 166 F.3d 1209, 1998 WL 917085 at **3 (4th Cir. 1998)("[T]he company's

adherence to the final decision of the committee was not itself a breach.").

Plaintiff's argument that he should have recall rights under Article 5, Section

2 because ABF merged with Carolina completely ignores the fact that Carolina did

not have a Carlisle facility at the time of the merger.  The Committee properly

found that Article 5, Section 2 rights applied only to merged terminals, and as an

exhibit to the Committee's decision clearly indicates, Carolina had no employees

at Carlisle at the time of the merger.  Facts ¶11.  Plaintiff's rights as a laid off

Carolina Carlisle dockworker were governed solely by the Committee's decision,

which extended him opportunities pursuant to Article 5, Section 5 of the NMFA.

13

Plaintiff has not and cannot present any facts to prove that ABF breached its obligation to afford him those transfer opportunities.  Given the fact that ABF did not acquire Carolina's closed Carlisle terminal, these were the only rights to which Plaintiff was entitled.  The mere fact that Plaintiff disagrees with the Committee's decision and cannot understand why he had no recall rights at ABF's Carlisle terminal is not sufficient to establish a breach of contract claim.  Bechtel Tr. at 94, 115.  See Liberty Lobby, Inc., 477 at 250-52.  Accordingly, Plaintiff's breach of contract claim fails.

## V.  CONCLUSION

For the foregoing reasons, Defendant ABF respectfully requests that this Court grant ABF's Motion for Summary Judgment and dismiss Plaintiff's claims in their entirety, with prejudice.

Respectfully submitted,

Vincent Candiello
MORGAN, LEWIS & BOCKIUS LLP
One Commerce Square
417 Walnut Street
Harrisburg, PA 17101-1904
(717) 237-4000


Dated: April 15, 2002

Joseph E. Santucci, Jr. (*pro hac vice*)
Mary D. Walsh (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5398

Attorneys for Defendant
ABF Freight System, Inc.