● ORIGINAL ●

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICKEY A. BECHTEL, | ) |
| Plaintiff, | ) |
| v. | ) |
| DANIEL A. VIRTUE, Business Agent of the International Brotherhood of Teamsters; INTERNATIONAL BROTHERHOOD OF TEAMSTERS; LOCAL 776, INTERNATIONAL BROTHERHOOD OF TEAMSTERS; ABF FREIGHT SYSTEM, INCORPORATED, | ) Case No. 3:01-CV-789<br>) Judge Sylvia H. Rambo |
| Defendants. | ) |

FILED
HARRISBURG

APR 16 2002

MARY E. D'ANDREA, CLERK
Per ____
DEPUTY CLERK

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
DEFENDANT ABF FREIGHT SYSTEM, INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, Defendant ABF Freight System, Inc. ("ABF") hereby submits this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment.

1. Defendant ABF Freight System, Inc. ("ABF") is a national freight common carrier whose drivers and dock employees are represented by various local unions affiliated with the International Brotherhood of Teamsters ("IBT"), including Teamster Local 776 ("Local 776"), located in central Pennsylvania. Complaint ¶ 4(3).

2.   ABF and Local 776 are parties to the National Master Freight Agreement ("NMFA"). Exhibit 1. The NMFA is the national collective bargaining agreement between Trucking Management, Inc. ("TMI"), a multi-employer association which serves as the collective bargaining representative for the major less-than-truck load ("LTL") common carriers, including ABF, and the Teamsters National Freight Industry Negotiating Committee ("TNFINC"), which negotiates the agreement on behalf of over 100 Teamster Local Unions, including Teamsters Local 776. Affidavit of Steven J. Froias ("Froias Aff.") ¶2, attached hereto as Exhibit 2.

3.   The NMFA, along with its area supplements, governs the terms and conditions of employment for all Teamster-represented employees in the trucking industry who work for NMFA-covered carriers.

4.   Plaintiff Rickey Bechtel ("Bechtel") was hired by Carolina Freight Carriers Corp. ("Carolina") as a casual dockworker in the Fall of 1985. Bechtel Tr. at 11.[1] He moved to permanent employment as a dockworker in February 1986. Bechtel Tr. at 12. Although Bechtel became qualified to drive over-the-road trucks

---

[1] "Bechtel Tr. at ___" refers to the transcript of the Deposition of Rickey Bechtel taken on March 7, 2002, excerpts attached hereto as Exhibit 3.

2

while he was employed by Carolina, Bechtel never worked as a driver at Carolina. Bechtel Tr. at 14.

5.   Bechtel is a member of Local 776. He joined Local 776 when he began working for Halls Motor Freight in 1979. Bechtel Tr. at 8.

6.   In May 1995, Carolina closed its Carlisle, PA terminal. Froias Aff. ¶4; Bechtel Tr. at 23. Prior to the facility's closure, Carolina employees at the Carlisle terminal were given the opportunity to transfer to other Carolina facilities or accept a layoff at Carlisle. Bechtel elected not to transfer to another facility because he did not want to move out of the area. As a result, Bechtel was laid off from Carolina. Froias Aff. ¶4; Bechtel Tr. at 21, 23, 126, 143. Exhibits 4, 5.

7.   In July 1995, two months after the closure of Carolina's Carlisle, PA terminal, Arkansas Best Corp., the parent company of ABF, announced that it was acquiring WorldWay Corp., the parent company of Carolina. As a result of this acquisition, ABF and Carolina were merged, with ABF being the surviving carrier. Froias Aff. ¶5.

8.   Both ABF and Carolina were parties to the NMFA. The NMFA contains several provisions that set forth the procedures to be followed when there is a change in operations resulting from a combination of terminals or over-the-road operations. Article 8, Section 6 of the NMFA requires that a change of operations be approved by a Change of Operations Committee, which is comprised

3

of an equal number of Union and Employer representatives. The Committee's primary task is to determine the proper application of seniority for employees affected by the change of operations, in compliance with the NMFA. Decisions of the Change of Operations Committee are final and binding. Exhibit 1, Article 8, Section 6. In addition, the Change of Operations Committee retains authority to hear and decide future grievances that arise from a previous decision of the Committee. Froias Aff. ¶3; Exhibit 1, Article 8, Section 6.

9. In late August 1995, a Change of Operations Committee ("Committee") was appointed to consider the proposed change of operations plan submitted by ABF as a result of the ABF/Carolina acquisition and merger. Among other issues, the Committee had the authority under the NMFA to resolve and decide seniority issues arising from the change of operations. Exhibit 1, Article 8, Section 6. The Committee held hearings on September 14 and 15, 1995. At these hearings, each Teamster Local Union impacted by the change, including Local 776, had the opportunity to comment on ABF's proposed plan. In its presentation to the Committee, Local 776 specifically addressed ABF's position that the Carolina employees on layoff from Carlisle did not have recall rights with ABF. Exhibit 6 at 644-46. Local 776 argued that these individuals should have recall rights under the NMFA. Thus, the Committee had full knowledge of the status of laid off Carolina employees at Carlisle at the time that it rendered its decision.

4

10. The Committee issued a decision on September 19, 1995, in which it determined that ABF and Carolina seniority rosters should be dovetailed. Froias Aff., Exhibit A. Specifically, the Committee's decision directed that in accordance with Article 5, Section 2 of the NMFA, "the seniority lists at domiciles and terminals <u>affected by this change of operations</u> shall be grouped by dovetailing as reflected on the exhibits contained in the proposed change of operations. . . ." Froias Aff., Exhibit A at 1 (emphasis added). The committee further stated that "every facility whose work has been merged with the work of another facility must be grouped with that facility." Froias Aff., Exhibit A at 2.

11. Carolina closed its terminal in May 1995, five months prior to the ABF/Carolina merger. Exhibit A to the Proposed Seniority Application, attached to the Committee's September 19, 1995 decision, shows the number of active and inactive ABF and Carolina employees at the time of the ABF/Carolina merger. Froias Aff. Exhibit A. For Carlisle, PA, there were 328 total ABF employees and zero total Carolina employees. Because Carolina's terminal was closed prior to the Carolina/ABF merger, and there were no Carolina employees at Carlisle at the time of the merger, Carolina's Carlisle terminal was not merged with any ABF terminal. Froias Aff. ¶8, Exhibit A.

12. In an effort to provide employment opportunities for other laid off employees, including Carolina employees on layoff, the Change of Operations

5

Committee decided to extend the transfer rights of Article 5, Section 5 of the NMFA to all laid off bargaining unit employees, for the life of the 1994-1998 NMFA. Froias Aff., Exhibit A, ¶ 7A. Usually, Article 5, Section 5 is applied only to over-the-road drivers. Exhibit 1, Article 5, Section 5. Under the Committee's September 19, 1995 decision, however, all laid off bargaining unit employees, who submitted a written request for work opportunities, were eligible for work opportunities at ABF terminals throughout its system. Exhibit 1, Article 5, Section 5; Froias Aff. ¶9, Exhibit A ¶7A.

13. The ABF/Carolina merger was completed on September 25, 1995. Froias Aff. ¶6. In October 1995, Local 776 sent a letter to all former Carolina Carlisle employees, including Bechtel, specifically informing them that pursuant to the Committee's decision, they had transfer rights under Article 5, Section 5 of the NMFA. Froias Aff., Exhibit B. Attached to this letter was a form that the former Carolina Carlisle employees could fill out and submit to ABF in order to request work opportunities under Article 5, Section 5. Exhibit 7. Bechtel filled out this form, signed it, and submitted it to ABF. Exhibit 7; Bechtel Tr. at 34-35. Bechtel never sought additional information from ABF regarding the form or his recall rights prior to submitting this request for work opportunities. Bechtel Tr. at 37.

14. In November 1995, an ABF representative called Bechtel to offer him work opportunities at ABF terminals in Waco, TX, Omaha, NE, Brattleboro, VT,

6

New Haven, CT, Cedar Rapids, IA, Waterbury, CT, Fairfield, CT, Minneapolis, MN, or Newark, NJ. Bechtel Tr. at 41. Exhibits 7, 8. Bechtel declined those opportunities. Bechtel Tr. at 41; Exhibits 7, 8. Bechtel did not submit another request for work opportunities to ABF and was not contacted by ABF for any additional work opportunities. Bechtel Tr. at 42-43.

15. In February 2000, Bechtel saw a sign indicating that ABF was hiring at its Carlisle, PA terminal. Bechtel Tr. at 44. Bechtel called his friend, Ray Snyder, a former Carolina employee, and current driver at ABF's Carlisle terminal, who informed him that ABF was in fact hiring. Bechtel Tr. at 46-47.

16. On February 20, 2000, Bechtel filed a grievance, alleging that he was a laid-off employee at Carlisle, PA, who had not been contacted for any work opportunities. Exhibit 9; Bechtel Tr. at 45. This grievance was received by Local 776, the union responsible for processing Bechtel's grievance, and forwarded to ABF. Exhibit 10; Bechtel Tr. at 114. Local 776 Business Agent Charles Shughart ("Shughart") was the primary individual responsible for handling Bechtel's grievance. Bechtel Tr. at 56. Bechtel never discussed his grievance with anyone at the IBT. Bechtel Tr. at 114.

17. On April 5, 2000, Shughart and Bechtel met with ABF representatives at ABF's Carlisle terminal to discuss Bechtel's grievance. Exhibit 11; Bechtel Tr. at 58. At that meeting, ABF representatives informed Bechtel that his grievance

7

was denied. The ABF representatives stated that the former employees at Carolina's Carlisle terminal, including Bechtel, did not have recall rights under Article 5, Section 2 of the NMFA, but had rights under Article 5, Section 5. Bechtel Tr. at 59-60. ABF representatives showed Bechtel the Attachment to the Change of Operations Committee Decision, which indicated that at the time of the merger, there were zero employees at Carolina's Carlisle facility. Bechtel Tr. at 60, 64; Froias Aff., Exhibit A at Exhibit A. The grievance was referred to the Eastern Region Joint Area Committee ("ERJAC") for hearing. Exhibit 12.

18. Prior to the ERJAC hearing, Shughart and Bechtel worked to prepare a written brief to submit to the grievance panel. Shughart asked Bechtel to "lay out" what he wanted presented at the hearing. Bechtel Tr. at 72. Bechtel, with the assistance of Ray Snyder, drafted detailed language stating that he contractually had five years of recall rights and should have been offered work under Article 5, Section 2 of the NMFA. Bechtel Tr. 71; Exhibit 12. Bechtel requested employment at ABF's Carlisle terminal with full Carolina seniority. Exhibit 13.

19. Bechtel and Shughart met to discuss the presentation of Bechtel's grievance and draft the final version of the brief. Bechtel Tr. at 69, 173-74. Bechtel showed Shughart the language he had drafted and supplied Shughart with documents for use in preparing the brief. Bechtel Tr. at 72. Shughart drafted a brief based on the information provided by Bechtel and sent Bechtel a draft of the

8

brief for his review. Bechtel Tr. at 72, 77-78; Exhibit 14. Bechtel made comments and handwritten changes to the draft. Bechtel Tr. at 80. Shughart incorporated all of Bechtel's changes and included in the brief all of the information requested by Bechtel. Bechtel Tr. at 80, 176-77; Exhibit 15. Bechtel thought that the brief to the ERJAC accurately and fairly presented his claim, and that nothing he asked Local 776 to include was omitted. Bechtel Tr. at 80; Exhibit 16.

20.   On July 25, 2000, the ERJAC heard Bechtel's grievance. Exhibit 17. Shughart presented Bechtel's case at the ERJAC. Bechtel Tr. at 81; Froias Aff. ¶13. In his presentation, Shughart quoted from Bechtel's brief, which was submitted to the ERJAC with seven attached exhibits, and fielded questions from the ERJAC. Bechtel Tr. at 82; Exhibit 16. He argued that Bechtel had recall rights under Article 5, Section 2 because he was on a letter of layoff from Carolina at the time of the ABF/Carolina merger. Bechtel made a statement on his own behalf, requesting that he be placed at work at ABF's Carlisle terminal with his original Carolina seniority date. Bechtel Tr. at 75-76; Exhibit 18.

21.   Steven J. Froias, a Director of Industrial Relations for ABF, presented ABF's case and submitted a brief on behalf of the Company. Froias Aff. ¶13. Froias argued that Mr. Bechtel had no recall rights under Article 5, Section 2 because the Carolina Carlisle terminal closed prior to the ABF/Carolina acquisition and merger, and thus there was no merger of terminals in Carlisle. Froias Aff. ¶13.

9

At the conclusion of the hearing, the ERJAC issued a decision, referring Bechtel's case to the National Multi-Region Change of Operations Violations Committee. Froias Aff., Exhibit D.

22. The Multi-Region Change of Operations Violations Committee heard Bechtel's grievance on October 27, 2000. Shughart presented Bechtel's case at this hearing. In his presentation, Shughart quoted from both Bechtel's brief and the transcript from the September 1995 Change of Operations Committee decision, which addressed the ABF/Carolina merger. Froias Aff., Exhibit E at 64-66. Shughart also presented the Committee with several exhibits, including a list of employees laid off from Carolina, the letter from ABF confirming that Bechtel elected to decline a work opportunity, and a copy of the transcript from the Change of Operations Committee's September 1995 hearing. Froias Aff. Exhibit E at 63-70; 76-77. Bechtel thought that Shughart covered everything "very well." Bechtel Tr. at 88. Bechtel made a statement at the hearing, reiterating his comments from the ERJAC hearing. Bechtel Tr. at 86. He thought that he had the opportunity to say everything that he wanted to say in support of his case. Bechtel Tr. at 116.

23. Steven Froias presented ABF's case at the hearing. Froias Aff. at ¶15, Exhibit E. Froias again argued that Mr. Bechtel had no recall rights under Article 5, Section 2 because the Carolina Carlisle terminal closed prior to the

10

ABF/Carolina acquisition and merger, and thus there was no merger of terminals in Carlisle. Froias Aff. ¶13; Exhibit E at 71-76, 77-82.

24. At the conclusion of the hearing, the Multi-Region Change of Operations Committee denied Mr. Bechtel's grievance in accordance with the September 19, 1995 decision rendered by the Multi-Region Change of Operations Committee regarding the ABF/Carolina change of operations. Froias Aff. ¶16; Exhibit F. Bechtel received notice of the Committee's decision from the Union by letter dated November 8, 2000. Bechtel Tr. at 87-88; Exhibit 19.

25. Disappointed with the Committee's decision, Bechtel wrote Shughart in December 2000 to find out if there were any other avenues that he could pursue. Bechtel Tr. at 88-89. Shughart wrote back stating that it was his understanding that "the decision issued by the Change of Operations Committee is final. The grievance procedure does not provide for the appeal of a decision that is issued by a majority of the Committee members." Exhibit 20. Shughart attached to this letter all of the papers presented by ABF at the hearing. Bechtel admits that he did not know of any other avenue to pursue after the Committee's decision. Bechtel Tr. at 154.

26. Throughout the grievance process, Shughart provided Bechtel with all information that he requested in a reasonable amount of time. Bechtel Tr. at 111, 169-70. He answered all of Bechtel's questions. Bechtel Tr. at 154-55. He

provided Bechtel the opportunity to review and comment on all documents submitted to the ERJAC and Multi-Region Change of Operations Committee. Bechtel Tr. at 173-74. To the best of Bechtel's knowledge, Shughart did a thorough job of presenting the case. Bechtel Tr. at 117. Bechtel thinks that the brief he and Shughart prepared "fairly presented" his argument to the respective grievance committees. Bechtel Tr. at 80.

27. Bechtel filed this Complaint on May 4, 2001.

Respectfully submitted,

*/s/ Vincent Candiello*

Joseph E. Santucci, Jr. (*pro hac vice*)
Mary D. Walsh (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202)739-5398

Vincent Candiello
MORGAN, LEWIS & BOCKIUS LLP
One Commerce Square
417 Walnut Street
Harrisburg, PA 17101-1904
(717) 237-4000

Attorneys for Defendant
ABF Freight System, Inc.

Date: April 15, 2002