ORIGINAL

→ to cv

FILED
HARRISBURG, PA

APR 1 5 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,                            :
                                              :
                              Plaintiff,      :
                                              :
                                              :
            vs.                               :
                                              :   No. 1:01-CV-789
                                              :
DANIEL VIRTUE, Business Agent of the          :
International Brotherhood of Teamsters;        :   Judge Sylvia H. Rambo
INTERNATIONAL BROTHERHOOD OF   :
TEAMSTERS; LOCAL 776,                         :
INTERNATIONAL BROTHERHOOD OF   :
TEAMSTERS; and ABF FREIGHT                    :
SYSTEM, INCORPORATED,                         :
                                              :
                              Defendants.  :


## STATEMENT OF MATERIAL FACTS

1.    Plaintiff, Rickey A. Bechtel, (hereinafter Plaintiff) initiated this action on

      May 4, 2001 by filing his Complaint in the United States District Court for

      the Middle District of Pennsylvania.  *See* Bechtel Exhibit No. 7.

2.    Defendants, Daniel Virtue; International Brotherhood of Teamsters; and Local Union No. 776, International Brotherhood of Teamsters filed their Answer on August 7, 2001.

3.    Plaintiff was a platform/jockey employee employed by Carolina Freight Carriers Corporation (hereinafter Carolina Freight), at the Carlisle, Pennsylvania facility in 1995.  *See* Plaintiff's Complaint at 4.

4.    Plaintiff was also a member of Local Union No. 776 during his employment by Carolina Freight.  *See* Bechtel Dep. Tr. p. 8, ll. 18-23.

5.    On or about May 21, 1995, Carolina Freight closed its facility located at One Carolina Way, Carlisle, Pennsylvania 17013.  *See* Bechtel Exhibit No. 3, Shughart Affidavit at ¶ 3.

6.    The employees covered by the National Master Freight Agreement (hereinafter NMFA), including the above-named Plaintiff, at Carolina Freight's Carlisle facility were either laid off or were offered employment at one of Carolina Freight's other facilities.  *See* Bechtel Exhibit Nos. 4, 5, 6, Shughart Affidavit at ¶ 4.

8.    On September 25, 1995, ABF Freight System, Incorporated's (hereinafter ABF) parent company purchased Carolina Freight and merged its operations

with other companies owned by ABF's parent company. *See* Bechtel Dep. Tr. p. 28, ll. 17-20, Shughart Affidavit at ¶ 4.

9.   Under Article 5, Section 5 of the NMFA, former Carolina Freight employees, who were on a letter of layoff, could seek employment at ABF by notifying ABF, in writing, of their interest in a transfer opportunity. *See* Shughart Affidavit at ¶ 9.

10.   Local Union No. 776 Business Agent Charles Shughart (hereinafter Business Agent Shughart), wrote a letter to Mr. Bechtel advising him of his recall rights and provided a form letter for Mr. Bechtel to use. *See* Bechtel Exhibit No. 4, Shughart Affidavit at ¶ 9.

11.   Plaintiff notified ABF in writing that he was interested in working at the ABF Carlisle/Camp Hill facility on October 15, 1995. *See* Bechtel Exhibit No. 5.

12.   On November 8, 1995, in accordance with paragraph seven (7) of the ABF Multi-Region Change of Operations decision[1] (*See* Bechtel Exhibit No. 14),

---

[1]   Paragraph seven (7) of the ABF Multi-Region Change of Operations decision provides:  The following provisions will apply to any employee laid-off as a result of this change of operations and to any other employee currently laid-off, and to any employee laid-off after this change of operations, for the life of the 1994-1998 NMFA:

Plaintiff was offered an opportunity to transfer to permanent employment in numerous other ABF facilities. *See* Bechtel Exhibit No. 6.

13. Plaintiff, however, declined this job offer and decided to remain in layoff status. *See* Bechtel Exhibit No. 6.

14. After having "learned by word of mouth" that ABF was hiring at its Carlisle facility, Plaintiff filed a grievance on February 20, 2000 grieving that he had not been contacted for any available work opportunities at ABF. *See* Bechtel Exhibit Nos. 7, 8, Shughart Affidavit at ¶ 11.

15. Grievances falling under Article 1 through 39 of the NMFA follow the following grievance procedure: Traditionally, the Union Representative or Steward meets with the Employer in an attempt to resolve the grievance. If the Employer and the Union Representative or Steward, fail to resolve the

---

A. ABF agrees to extend the provisions of Article 5, Section 5 of the NMFA to any bargaining unit employee. ABF also agrees to extend the right to transfer under Article 5, Section 5 of the NMFA to any ABF location in the Central, Eastern and Southern Regions, as opposed to within the Regional Area. Transfers shall be offered on the basis of bidding seniority, by classification. The Committee approves these extensions of the provisions of Article 5, Section 5, and agrees that such extensions are limited solely to this change of operations and have no precedential effect.

B. Pension and Health & Welfare contributions paid on behalf of an employee transferring under this paragraph shall be paid to the funds to which the contributions were made prior to the employee's change of domicile. *See* Bechtel Exhibit No. 14.

matter, the grievance is submitted to the Eastern Region Joint Area Committee. The Eastern Region Joint Area Committee will hear the grievance and either decide the matter or refer such grievances to the Change of Operations Committee. Article 8, Section 6 of the NMFA for the period of April 1, 1998 through March 31, 2003 provides in relevant part: The Change of Operations Committee shall have the authority to determine the seniority of the employees affected and such determination shall be final and binding. *See* Shughart Affidavit at ¶ 13.

16.    Here, Plaintiff's grievance was not resolved in negotiations with ABF nor was the grievance resolved at Eastern Region Grievance Committee (hereinafter ERGC). *See* Bechtel Exhibit Nos. 13, 25.

17.    The ERGC referred Plaintiff's grievance to the National Multi-Region Change of Operations Violations Committee, which Committee is the final step in the grievance process (hereinafter Change of Operations Committee). *See* Bechtel Exhibit No. 25.

18.    Daniel Virtue, the IBT, and Local Union No. 776 processed Plaintiff's grievance in accordance with the terms and provisions of the parties' Supplemental Agreement.

19.    By letter dated February 29, 2000, Business Agent Shughart notified Plaintiff that Plaintiff's grievance had been received and forwarded to ABF. *See* Bechtel Exhibit No. 10; Bechtel Dep. Tr. p. 167, ll. 18-21, Shughart Affidavit at ¶ 12.

20.    On March 29, 2000, Business Agent Shughart sent correspondence to Plaintiff confirming that Plaintiff's grievance would be discussed at the company level on Wednesday, April 5, 2000 at 9:00 a.m.  *See* Bechtel Exhibit No. 12; Bechtel Dep. Tr. p. 168, ll. 3-16, Shughart Affidavit at ¶ 14.

21.    Plaintiff's grievance was not resolved at the company level and Business Agent Shughart notified Plaintiff of such in a detailed letter dated April 5, 2000. *See* Bechtel Exhibit No. 13; Bechtel Dep. Tr. p. 169, ll. 3-6, Shughart Affidavit at ¶ 15.

22.    Business Agent Shughart complied with all of Plaintiff's requests in regard to the instant matter.  For instance, on May 17, 2000, Plaintiff addressed a letter to Business Agent Shughart requesting a seniority list of union employees at ABF in Carlisle and a layoff list of the Carolina Freight employees. *See* Bechtel Exhibit No. 15, Shughart Affidavit at ¶ 16.

23.    Business Agent Shughart responded to the above letter on May 24, 2000 and stated that, although a Carolina Freight list was not likely to be found, the

ABF list would be forwarded to Plaintiff upon Business Agent Shughart's receipt of said list. *See* Bechtel Exhibit No. 16.

24. Business Agent Shughart requested the seniority list from ABF on May 24, 2000. *See* Bechtel Exhibit No. 18, Shughart Affidavit at ¶ 18.

25. Business Agent Shughart received the seniority list on June 5, 2000 and forwarded the list to Plaintiff on June 15, 2000. *See* Bechtel Exhibit Nos. 17, 19, Shughart Affidavit at ¶ 19.

26. On June 15, 2000, Business Agent Shughart notified Plaintiff that Plaintiff's grievance was scheduled to be presented at the Eastern Region Grievance Committee (hereinafter ERGC) during the week of July 24 – 27, 2000. *See* Bechtel Exhibit No. 19, Shughart Affidavit at ¶ 20.

27. In preparation for this hearing, Business Agent Shughart met with Plaintiff on two separate occasions to review the brief that was to be presented to the ERGC. *See* Bechtel Dep. Tr. p. 78, ll. 4-19, Shughart Affidavit at ¶ 21.

28. Business Agent Shughart also sent Plaintiff a copy of the ERGC brief on July 18, 2000 for any final revisions by Plaintiff. *See* Bechtel Exhibit Nos. 22, 23, Shughart Affidavit at ¶ 22.

29. Plaintiff approved the brief and testified that the brief "fairly presented" Plaintiff's case. *See* Bechtel Dep. Tr. p. 80, ll. 14-24.

30.    Plaintiff's case was heard before the ERGC on July 25, 2000, at which time, the ERGC referred Plaintiff's case to the National Multi-Region Change of Operations Violations Committee (hereinafter Change of Operations Committee). *See* Bechtel Exhibit No. 25, Shughart Affidavit at ¶ 24.

31.    On September 26, 2000, Business Agent Shughart advised Plaintiff that Plaintiff's grievance would be presented to the Change of Operations Committee on October 26 – 27, 2000. *See* Bechtel Exhibit No. 26, Shughart Affidavit at ¶ 25.

32.    On October 27, 2000, Business Agent Shughart presented Plaintiff's grievance to the Change of Operations Committee. Thereafter, the Change of Operations Committee denied Plaintiff's grievance. *See* Bechtel Exhibit No. 28, Shughart Affidavit at ¶ 26.

33.    In reply to Plaintiff's request of December 6, 2000 to appeal the Change of Operations Committee's decision, Business Agent Shughart notified Plaintiff by letter dated December 28, 2000 that the decision issued by the Change of Operations Committee was final and that the grievance procedure does not provide for the appeal of a decision that is issued by a majority of

the Committee members.[2] *See* Bechtel Exhibit No. 29, Shughart Affidavit at ¶ 29.

34.   Named Defendant Daniel Virtue was not involved in the processing of Plaintiff's grievance and at no time represented himself as such; Plaintiff was unable to articulate any involvement of Mr. Virtue in the handling of Plaintiff's grievance. *See* Bechtel Dep. Tr. p. 170, ll. 12-23.

35.   Article 1, Section 2 of the NMFA provides in relevant part: "The Union consists of any Local Union which may become a party to this Agreement and any Supplemental Agreement as hereinafter set forth." Defendants, Daniel Virtue and the International Brotherhood of Teamsters, are not parties to the National Master Freight Agreement. *See* Shughart Affidavit at ¶ 8.

36.   Plaintiff testified that, at no time, did Plaintiff discuss his grievance with anyone from the International Brotherhood of Teamsters (hereinafter IBT) nor did Plaintiff consider the IBT responsible for processing Plaintiff's grievance. *See* Bechtel Dep. Tr. p. 114, ll. 1-12.

---

[2] Article 8, Section 6 of the NMFA for the period of April 1, 1998 through March 31, 2003 provides in relevant part: The Change of Operations Committee shall have the authority to determine the seniority of the employees affected and such determination shall be final and binding.

37.    Plaintiff testified at his deposition that he filed the instant lawsuit because

Plaintiff disagreed with the decision of the Change of Operations Committee

not for the reasons set forth in Plaintiff's Complaint.  *See* Bechtel Dep. Tr. p.

115, 116, ll. 12-25, 1-23.

Respectfully Submitted,

**IRA H. WEINSTOCK, P.C.**
800 North Second Street
Harrisburg, PA  17102
Phone:  717-238-1657


By: _____
IRA H. WEINSTOCK
Attorney I.D. No. 01602


By: _____
JASON M. WEINSTOCK
Attorney I.D. No. 69272

## CERTIFICATE OF SERVICE

I, Ira H. Weinstock, Esquire, hereby certify that upon the date stated below, I served the attached Defendants' Statement of Material Facts upon the persons named below, at the stated addresses, by first class postage paid United States mail.

Robert S. Mirin, Esquire
**AHMAD & MIRIN**
8150 Derry Street, Suite A
Harrisburg, PA 17111

James A. McCall, Esquire
International Brotherhood of Teamsters
25 Louisiana Avenue, N.W.
Washington, D.C. 20001

Vincent Candiello, Esquire
**MORGAN, LEWIS & BOCKIUS, L.L.P.**
One Commerce Square
417 Walnut Street
Harrisburg, PA 17101-1904

Joseph E. Santucci, Jr., Esquire
Mary D. Walsh, Esquire
MORGAN, LEWIS & BOCKIUS
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

_Ira H. Weinstock_
IRA H. WEINSTOCK

Dated: April 15, 2002