IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICKEY A. BECHTEL,<br>　　　Plaintiff, | : DOCKET NO.: 3:01-CV-789<br>:<br>: |
| 　　　　v. | : JUDGE SYLVIA H. RAMBO<br>: |
| DANIEL A. VIRTUE, Business Agent<br>Of the International Brotherhood of<br>Teamsters; INTERNATIONAL<br>BROTHERHOOD OF TEAMSTERS;<br>LOCAL 776, INTERNATIONAL<br>BROTHERHOOD OF TEAMSTERS;<br>ABF FREIGHT SYSTEM, INC.<br>　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**PLAINTIFFS' RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS SUBMITTED IN SUPPORT OF DEFENDANT ABF FREIGHT SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, Plaintiff, Rickey A. Bechtel, by and through his attorney, Robert S. Mirin of AHMAD & MIRIN, hereby submits this response to the statement of undisputed material facts submitted in support of Defendant, ABF Freight System, Inc.'s ["ABF"] motion for summary judgment.

1. Admitted.

2. Admitted. However, by way of further response, it is averred that the National Motor Freight Agreement [hereinafter referred to as the "NMFA"] is interpreted and administered, to a substantial degree, by Defendant International Brotherhood of Teamsters.



3. Admitted. However, by way of further response, the change of operation at issue in this litigation was completed in 1995 under a different NFMA labor agreement that by its terms, conferred certain rights upon Plaintiff Bechtel and other "laid-off" Carolina Freight employees. Thus, it is admitted that the current NMFA normally governs ongoing terms and conditions of employment for employees in the trucking industry who work for NMFA carriers. However, in the case of layoffs and recalls, it is submitted that those rights are established as "conferred" under the prior collective bargaining agreement and a completed change of operation in 1995. Furthermore, neither Plaintiff Bechtel nor any Carolina Freight employee was noticed or advised that their rights were diminished by the subsequent NMFA, as apparently contended by the Defendants in this matter.

4. Admitted.

5. Admitted.

6. Admitted. However, by way of further response, as of October 25, 1995, Local Union 776 indicated to Plaintiff Bechtel, referencing letters dated October 10, 1995 and November 9, 1995 from Defendant ABF to Plaintiff Bechtel, that he was to be treated as a "laidoff" ABF employee for all intents and purposes including the accrual of five (5) years of recall rights under the NMFA in force at that time.

7. Admitted. Although, at various times in other litigation involving seniority rights arising from the Carolina merger, ABF contended, inter alia, that its acquisition of Carolina Freight was not a "merger" in legal terms. This position was unsuccessfully maintained in the recent Third Circuit Court of Appeals, Albright v. Virtue decision. [See Plaintiffs' Exhibit "Q"]

8. Admitted. However, the language of Article 8, Section 6 of the NMFA, requiring that a change of operations must be approved by a Change of Operations Committee, does not preclude grievances under Article 8, Section 4 regarding the NMFA grievance procedure as reflected in the agreement in force between April 1. 1994 and March 31, 1998 and the current agreement. In fact, said language does not preclude the filing of grievances by employees under the seniority provisions of the NMFA. Thus, the power of the referenced [new] Change of Operations Committee to "determine the proper application of seniority for employees affected by the change of operations, in compliance with the NMFA", while final and binding, does not indicate that their authority vis a vis recall rights or recall from layoffs is similarly final and binding. Furthermore, ABF's Exhibit "1", in support of ABF's motion for summary judgment and relying on Article 8, suggests that the language referenced in Section 6 does not pertain to an individual employee's rights to challenge the failure of the company to follow recall from layoff rights as articulated and affirmed in Article 5, Section 1(b) of the NMFA in force at that time and now.

9. Admitted. However, the correspondence from Defendant ABF in November of 1995 suggests that the parties treated laid-off Carolina Freight employees, including those laid off from the Carlisle facility, as ABF "bargaining unit" employees for purposes of layoffs and recalls. The assertions of Steven J. Froias are at odds with the "admissions" reflected by and embodied within the correspondence from ABF to plaintiff during the fall of 1995. [See Plaintiff's Exhibits U and V) By way of further response, as referenced in Defendant Unions' footnote 1 at pages 3 and 4 in its "Statement of [Undisputed] Material Facts", Defendant Unions indicate that ABF

agree[d] to extend the provisions of Article 5, Section 5 of the NMFA to any bargaining employee, which would include laid-off employees with recall rights.

> "...ABF also agree[d] to extend the right of transfer under Article 5 Section 5 of the NMFA to any ABF location in the Central, Eastern and Southern regions as opposed to within the Regional [local] area. Transfers shall be offered on the basis of bidding seniority, by classification. The committee approve[d] these extensions of the provisions of Article 5, Section 5 and agree[d] that such extensions are limited solely to this change of operations and have no precedential effect...."

Thus indicating that the subject matter of the agreement was the broadening of rights to any ABF location as well as limited rights within a regional area. Furthermore, said language in no way interfered with, affected or otherwise limited the governing provisions of Article 5, Section 1 (b) providing that seniority rights continue for a five year period from the date of the layoff. The recall rights, as explained to Plaintiff Bechtel and other Carolina Freight employees at the time of the 1995 actions involving Carolina Freight and ABF, dictated that recall rights extended for a 5-year period from the inception of the employee's first day of layoff and was not, in fact, limited to the duration of that labor agreement.

10. Admitted.

11. Controverted. Bargaining unit employees, including those on "layoff" status of up to five (5) years in duration, also retained accrued and accruing seniority as well as recall rights. References on the "list" in question should have included Plaintiff Bechtel and reflected <u>only</u> an <u>employer's</u> analysis at some point in time. In addition, there is no indication that <u>Froias</u> was directly involved with ABF in the 1995 change of operations. Furthermore, the reemployment of numerous laid off Carolina

Freight/Carlisle facility employees during 1998-1999 establishes that the assertion is erroneous.

12. Admitted that the <u>1995</u> change of operation operated as indicated.

13. This averment, and several other "undisputed" facts, are compound and complex, as opposed to the Fed.R.Civ.P. requirement of a simple "i.e. nuclear" fact. However, it is admitted, to the extent that this averment recites a date of a meeting and a letter that was sent in October of 1995 to Carlisle employees, including Plaintiff Bechtel. However, it is controverted that Plaintiff Bechtel was clearly advised that he had to submit or seek any additional information from ABF concerning the recall rights under the labor agreement. In fact, the language pertaining to proposed seniority application, which was a part of the 1995 change of operation documents in relevant part "…the same principles, as outlined above, shall apply to combining the over-the-road seniority lists, office and maintenance groups were appropriate as well as the transfer opportunity involving any of those respective classifications…the company will establish a master inactive list comprised of all employees on layoff with ABF/Carolina or ABF/Red Arrow on the date this change is implemented. After the master active list set forth above is exhausted, all future job opportunities shall offered in light of seniority to the employees on the master inactive list and upon proper recall, they shall be dovetailed into the master active list…." [Plaintiff's Exhibit "S"] Said document appears at page 68 of the Unions' exhibits and reflects an understanding and an arrangement at odds with the representations by Froias' affidavit, as referenced in the ABF's "undisputed" material fact 13. There is nothing in the seniority application language suggesting that the employee had any obligation

beyond initial laid off status at the time of the merger of Carolina Freight and ABF regardless of whether that laid off status was as an employee of Carolina Freight or ABF [See Plaintiff's Exhibit " ", consisting of page 68 as extracted from the Unions' exhibits.]

14. Admitted. As noted above, it is indicated by the documents reflected in the change of operations materials as well as the terms of the NMFA, particularly Article 5 Section 1(b), that the rights conferred required no more than the status of "laid off employee from Carolina Freight". In this case, Plaintiff Bechtel satisfies that requirement. Nothing reflected in ABF's correspondence to Plaintiff Bechtel, as evidenced in his November 9, 1995 letter [certified mail #Z 093 690 533], in any way suggested that any further response or reply of any sort was required of Plaintiff Bechtel in order to maintain his recall from layoff rights under the NMFA.

15. Admitted.

16. Admitted.

17. Admitted. By way of further response, while it is agreed that there was a position taken that only Article 5 Section 5 applied to recall rights, it is respectfully submitted that once an employee is recalled, and the annual seniority bidding process take place, any recall and seniority rights revert to their normal status under Article 5 Section 2 of the NMFA. This position is at least inferentially supported by the language in Article 5 Section 5, preserving even ab initio the full company seniority of any recalled employee. Obviously, it would be chaotic to revert to Article 5 Section 2 rights for bid purposes on an ad hoc basis and it is respectfully submitted that plaintiff and other Carolina Freight employees reasonably believed that their rights under

Article 5 Section 2 would be restored at the time of the annual [structure] bid process. By way of further reply, the self-serving entries ostensibly reviewed with Plaintiff Bechtel on the day in question are at odds with ABF correspondence as generated and transmitted to Plaintiff Bechtel in November of 1995. Furthermore, as noted in Plaintiff Bechtel's affidavit, the position or reason for denying his grievance was never explained to him throughout the grievance process. It is admitted, by way of further reply, that the grievance was referred to the Eastern Region Joint Area Committee for hearing.

18. Admitted. However, by way of further response, it is noted in Plaintiff Bechtel's response to the Unions' statements of "undisputed" material facts, Plaintiff Bechtel relied upon the Unions' business agent [local and international] to fully articulate and protect his rights as conferred upon him under the NMFA in force at the time of his layoff. It is further noted that the provisions of Article 5 Section 1(b) were ferried over to the current NMFA [See Defendant's Exhibit "1"]

19. Admitted. By way of further response, it is noted in the transcript of his deposition and as referenced by the Unions' statement, Plaintiff Bechtel relied upon the agents for the local and international union to fully implement his rights. It should be further noted that Plaintiff Bechtel was operating under a collective bargaining agreement with which he was not familiar -- having been laid off prior to its inception but having recall rights extending into a portion of the period covered by the current agreement. Additionally, both the company and the local union in essence invidiously denied Bechtel information relevant to the framing processing and status of his grievance in order to further promote the objective of obtaining newer, cheaper employees because

those who would return from layoff were compensated at a higher rate of pay and benefits than were newer employees under the two tier compensation agreement between the Unions and the company.

20. Agreed.

21. Agreed. However, by way of further response, it is noted that the parties were well aware that Plaintiff Bechtel had, as a bargaining unit employee, recall rights under Article 5, Section 5 which, Plaintiff Bechtel contends brought him back through the door and governed his status until such time as the annual bidding process occurred at which time he would have reverted to his rights under Article 5 Section 2 of the labor agreement.

22. Agreed. However, by way of further response, it is noted that the parties did not administer their relevant agreement and principals fully and in good faith but instead sought invidiously to obviate and vitiate the rights conferred upon Plaintiff Bechtel under Article 5 Section 1 in both NMFAs, [i.e. the one in force at the time of the initial layoff and the one in force as of the date of Plaintiff Bechtel's grievance.]

23. It is agreed that the arguments as articulated are reflected in the record of the proceeding. Said arguments were at odds with the correspondence and directions supplied to Plaintiff Bechtel by ABF as early as November of 1995 and earlier during the course of the merger of Carolina Freight with ABF.

24. Controverted. It is admitted that the multi-regional Change of Operations Committee ostensibly denied Plaintiff Bechtel's grievance; however, the basis of that denial was not articulated to him and it is admitted that any such termination is at odds with the provisions applying recall rights to all bargaining unit employees including those in

layoff status and it is respectfully submitted that the decision of the multi-regional Change of Operations Committee was an invidious effort to vitiate and deprive Plaintiff Bechtel and other Carolina Freight employees of their rights under the merger of Carolina Freight and ABF.

25. Admitted.  However, it is noted that the selection of the Change of Operations Committee to deal with a completed change of operations under a prior NMFA is to be at odds with both the letter and spirit of the language of the NMFA covering the period of the layoff [i.e. 1995].  Thus the selection of and acquiescence to the use of change of operations committee to deal with a concluded change of operations under a prior agreement invidiously attempted to deprived CF employees of their opportunities for recall under the seniority provisions of the controlling NMFAs both of which provide for 5 years of recall rights.  It should further be noted that Article 5 Section 2 [c2] creates a layoff seniority list which, according to the admissions of the parties, was not created or maintained in this case.  The language appearing at page 20 of the NMFA for the period of April 1, 1994 through March 31, 1998, provides that "layoff seniority lists [2] in addition the inactive seniority rosters [employees who are on letter of layoff] shall be similarly dovetailed by appropriate classification. If additional employees are required after the active list is exhausted, it shall be recalled from such inactive seniority roster and after recall such employees will be dovetailed into the active seniority roster with their continuous classification, route or city, seniority dates that they are currently exercising which shall then be exercised for all purposes.  Seniority rosters previously combining job classifications shall continue unless otherwise agreed…."  The aforementioned language clearly

establishes that, as a laid off Carolina Freight employee at the time of the CF/ABF merger the decision of the multi-region Change of Operations Committee is not only clearly erroneous but is invidiously predicated upon a desire to obtain new hires contrary to the contractual agreements of the parties [See Ex "1" of the employer's exhibits reflecting extracted Article 5 and Article 8 of the applicable NMFA covering the period of 1995.]

26. Admitted. However by way of further response, it is submitted that the decision to refer Plaintiff Bechtel's grievance to the Change of Operations Committee rather than to process it under the NMFA regular grievance procedure was an effort to invidiously deprive Plaintiff Bechtel of the right of appeal to Teamster's International in Washington, DC and to effectively preclude any possibility of further consideration of the invidious and improper decision.

27. Admitted as stated. However, it is controverted that employer was privy to discussions between Shugart and Plaintiff Bechtel and it is further submitted that the evidence reflects that the fashioning of, handling of and processing of Plaintiff Bechtel's grievance was calculated to defeat his recall from layoff rights and seniority rights under both NMFAs. It is controverted that a thorough job was done of presenting, considering or deciding Plaintiff Bechtel's grievance and in fact, as noted above, the effect of the multi-region Change of Operations Committee unexplained decision was to invidiously deprive Plaintiff Bechtel of rights conferred on him by the NMFA and the seniority provisions under the completed 1995 change of operations. It is further noted that the letter declining any further appeal of the grievance decision was supplied to Plaintiff Bechtel on 12-27-2000 [or less than 6 mos. prior to the filing

of a complaint in this matter. [see plaintiff's Exhibit 29 attached to employer's exhibits as employer's exhibit 2].

By: /s/ Robert S. Mirin
Robert S. Mirin
ID#25305
AHMAD & MIRIN
8150 Derry Street
Harrisburg, PA 17111
(717) 909-4343