**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

No. 3:01-CV-789

RICKEY BECHTEL,
Plaintiff

v.

DANIEL VIRTUE, Business Agent of the
International Brotherhood of Teamsters;
INTERNATIONAL BROTHERHOOD
OF TEAMSTERS; LOCAL 776;
INTERNATIONAL BROTHERHOOD
OF TEAMSTERS; and ABF FREIGHT
SYSTEM, INCORPORATED,
Defendants

FILED
HARRISBURG, PA
MAY 24 2002
D'ANDREA, CLERK

PLAINTIFF, RICKEY BECHTEL'S RESPONSE IN OPPOSITION TO
DEFENDANT ABF'S MOTION FOR SUMMARY JUDGMENT

Robert S. Mirin, Esquire
AHMAD & MIRIN
PA I.D. No. 25305
8150 Derry Street
Harrisburg, PA 17111
(717) 909-4343



<u>**PLAINTIFF, RICKEY BECHTEL'S RESPONSE IN OPPOSITION TO DEFENDANT ABF'S MOTION FOR SUMMARY JUDGMENT**</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff, Rickey Bechtel, hereby submits this Memorandum in Opposition to Summary Judgment.

**I.    PROCEDURAL HISTORY**

After learning on or about December 28, 2000, or shortly thereafter that his recall-from-layoff grievance was denied and final, Plaintiff, Rickey Bechtel filed a Complaint on May 4, 2001. The Complaint alleges a "hybrid" breach of the duty of fair representation claim against Defendants' Daniel Virtue ("Virtue"), Local 776, International Brotherhood of Teamsters ("Local 776"), and the International Brotherhood of Teamsters ("IBT"); and included a breach of the collective bargaining agreement claim against ABF, pursuant to §301 of the Labor Management Relations Act, 29 U.S.C. §185. The Court issued a scheduling Order on October 4, 2001 and the parties completed discovery on April 1, 2002.

**II.    STATEMENT OF FACTS**

Plaintiff respectfully refers the Court to Defendants' Statement of Undisputed Material Fact and Plaintiff's responses.

**III.    STATEMENT OF QUESTIONS INVOLVED**

The record before the Court reflects several areas of material facts which are disputed, thus summary judgment is inappropriate.

    1.    THAT DEFENDANTS', IN BAD FAITH, INVIDIOUSLY SOUGHT TO AVOID THEIR JOINT CONTRACTUAL OBLIGATIONS TO MAINTAIN AND ADMINISTER RECALL-FROM-LAYOFF RIGHTS.

1

2. THAT DEFENDANTS' IMPROPERLY PROCESSED PLAINTIFF'S GRIEVANCE THEREBY LIMITING HIS GRIEVANCE RELATED RIGHTS AND REMEDIES.

3. THAT DEFENDANTS' FAILED TO ARTICULATE OR STATE ANY BASIS FOR THE DISPOSITION OF PLAINTIFF'S GRIEVANCE; THEREBY PRECLUDING PLAINTIFF FROM ASSESSING OR EXERCISING ANY OPTIONS CONCERNING THAT DISPOSITION.

4. THAT THE GRIEVANCE IN QUESTION WAS A RECALL-FROM-LAYOFF GRIEVANCE AS DISTINGUISHED FROM A "SENIORITY GRIEVANCE". AS INDICATED BY PLAINTIFF'S RESPONSES TO DEFENDANTS' STATEMENTS OF MATERIAL FACTS; THESE ISSUES ARE NOT MERE ASSERTIONS OR POSITION BUT REFLECT SUBSTANTIAL AREAS OF DISPUTE.

5. THAT THE INTERNATIONAL UNION IS A PROPER PARTY DEFENDANT AS THE ENTITY WHICH CREATED AND OVERSEES THE LOCAL UNION AND ADMINISTERS ASPECTS OF THE NMFA (SEE ALBRIGHT AFFIDAVITS, EXHIBITS A-P).

6. DEFENDANT DANIEL VIRTUE'S AUTHORITY OVER AND CONTROL OF LOCAL 776 (SEE, FOR EXAMPLE, ALBRIGHT AFFIDAVITS, EXHIBITS A-P).

## IV. ARGUMENT

Summary judgment is properly granted to the moving party only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A party seeking summary judgment always bears the burden of identifying the basis for its motion, along with evidence clearly demonstrating the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 202 (1986). Once and only if the moving party has satisfied this requirement, Fed.R.Civ.P. 56(e)

requires the nonmoving party to supply sufficient evidence, beyond bare allegations, to demonstrate to existence of disputed issues of material fact. *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d.Cir.1996). During this process, all the relevant evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 47 U.S. at 248, 106 S.Ct. at 2514. It is important to note that "this standard is applied [in non-movant's favor] with added vigor in employment related cases where intent and credibility are crucial issues." *Stewart v. Rutgers, The State University*, 120 F.3d 426, 431 (3d.Cir. 1997).

The Supreme Court has held that the appropriate statute of limitations, for a §301 "hybrid" action asserting a violation of the collective bargaining agreement and a union's breach of its duty to fairly represent the employee, is six (6) months. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983). The accrual of the cause of action for both the claims is viewed as simultaneous as they are so intertwined that to prevail in one, the other must be proven. *Id*.

Under §301, an employee is required to attempt to exhaust any grievance or arbitration remedies provided for in the collective bargaining agreement, *Id.* a 163, which Plaintiff has attempted, only to learn that defendants' collective machinations have deprived him of a full grievance process review under Article 8 of the collective bargaining agreement.

In this unfair representation claim, this issue triggers an employee's right to bring a judicial action, even notwithstanding his failure to exhaust contractual remedies. *Vaca v. Sipes*, 386 U.S. 171, 185-186 (1976). In this case the unfairness of the Union's representation and the machinations of the defendants' was not apparent until the Union's December 28, 2000 letter to Plaintiff (Union's Exhibit @ Page 68).

An employee's right to litigate may also be triggered when there is an unfavorable outcome in the grievance or arbitration proceedings. *DelCostello*, 462 U.S. at 164. The Supreme Court has created a case by case - fact intensive - standard to determined when such a cause of action accrues. In §301 actions, the courts have held that the statutory period begins when "…the Plaintiff receives notice that the Union will proceed no further with the grievance…" *Bruch v. Untied Steelworkers of America*, 583 F. Supp. 668, 670 (E.D. Pa. 1984). The statute of limitations begins to run only when "… the futility of further union appeals became apparent or should have become apparent…" *Scott v. Local 863, International Brotherhood of Teamsters*, 725 F.2d. 226, 229 (3d.Cir. 1984).

Under *DelCostello*, an employee may seek the assistance of the Courts when the futility of further grievance proceedings becomes obvious. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983). Plaintiff sought, unsuccessfully, to return under established recall-from-layoff rights of five (5) years duration. Plaintiff grieved promptly and deferred to the Union's expertise and representation. Plaintiff had not been recalled under the current agreement and was not made aware of an apparently new change of operation process which provided fewer rights than the grievance procedure. Also, while the basis of the grievance decision was never explained to Plaintiff, it appears to have deprived him of Article 5 §5 rights.

When a union breaches its duty of fair representation, an employer may be allowed to rely on the finality provision of the grievance and arbitration provisions in the collective bargaining agreement. See *Hines v. Anchor Motor Freight, Inc.* 424 U.S. 554, 567 (1976). But, in this case no independent, final and binding arbitration occurred.

If a Union's conduct toward a member of the collective bargaining unit is arbitrary, invidious, discriminatory, or in bad faith, it constitutes a breach of the duty of fair representation.

4

*Vaca v. Sipes* at 190. A Union's actions are considered arbitrary when they are so [outside] the range of reasonableness as to be irrational. *Air Line Pilots v. O'Neill*, 499 U.S. 65, 67 (1991); see *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995); *Johnson v. United Steelworkers of America*, 843 F. Supp 944, 946 (M.D. Pa. 1994).

The Courts have acknowledged the difficulty individual plaintiff's in a *DelCostello* situation may face because "…requiring an employee to sue his Union as soon as he discovers the Union's breach would place the employee in a untenable situation - if he waits to sue the Union he may lose the right to do so, but if he sues the Union immediately he may antagonize the best possible champion for his cause…" *Childs v. Pennsylvania Federation Brotherhood of Maintenance Way Employees*, 831 F.2d 429, 435 (3d.Cir. 1987). Judge Becker voiced similar concerns that there may be "…no statutes, regulations, or other forms of clear, written notice which exist that warn the Plaintiff of his peril." *Scott*, 725 F.2d at 230. Judge Becker further expressed concern that "…union officials may well be equivocal or contradictory in their communications to dissatisfied members and may send such communications through persons within the internal union hierarchy whose authority to bind the union is hazy at best. As a result, the potential suitor will not know when exhaustion is futile…" *Id.* Here, for example, the ERJAC decision as reflected in the submission form is ambiguous and states no disposition. However, it was referenced as the basis for the National Change of Operation Committee's decision. All of these considerations apply in this case and on the state of the record operates to preclude the requested grant to summary judgment.

There are a number of disputed material facts which preclude summary judgment here:

    a.    Parties are in dispute as to which aspect of the collective bargaining agreement should have been used to dispose of Plaintiff's grievances (the standard grievance

5

process which Plaintiff believed was being applied or the National Change of Operations Committee process from which, at least according to Defendants' interpretation, there is no appeal right).

  b. As to whether or not the current Labor Agreements provisions providing for a National Change of Operation Committee were applied appropriately and in a non-invidious fashion, to a change of operation which was completed under a prior labor agreement and which involved rights accruing in 1995.

  c. Whether or not the basis of the disposition of Plaintiff's grievance deprived him of rights conferred upon him in 1995 to a five (5) year recall window by, inter alia, apparently analyzing his rights only under Article 5 §2 of the labor agreement.

  d. There is also a dispute concerning the inter-relationship and applicability of Article 52 and Article 55 of the labor agreement. While Defendants' position is not particularly clear, Plaintiff takes the position that the rights under Article 5, §5 allow an employee to be recalled when appropriate. However, until the annual bids occur and all employee seniority rights are evaluated and adjusted, per the annual bid process, the recalled employees Article 5 §2 rights do not resurrect.

  e. Nowhere in the grievance process is the basis for the decision articulated or set forth for Plaintiff to obtain an intelligent evaluation from any individual, they may choose to consult, concerning the disposition of the grievance in question.

  f. Plaintiff asserts that the company and the union invidiously conspired to avoid their contractual obligations to maintain and administer a recall list and in fact that no recall list, as required, was maintained.

6

g.  The Parties are in dispute concerning the obligation of Plaintiff to independently communicate with the employer concerning their ongoing interest in recall from layoff when the language, viewed as governing by Plaintiff, appears to provide for an absolute right of recall during the five (5) year period after the active seniority list is, in fact, exhausted (see Article 5, pertaining to seniority) and its administration of the layoff list which the Defendants' admit did not exist (See Plaintiff's Exhibit X).

h.  The parties are in dispute as to whether or not the disposition of Plaintiff's grievance reflected an invidious and improper effort to co-opt Plaintiff's recall rights as because Plaintiff was a Carolina Freight Employee seeking to return to an ABF facility, as is allowed under the collective bargaining agreement and the 1995 Change of Operation.

Plaintiff contends that the record reflects and supports their assertion that he made a valid, timely, non-frivolous attempts to pursue his contractually-based seniority claims. See, *Adkins v. Intern Union of Elec., Radio and Mach.*, 769 F.2d 330 (6$^{th}$Cir. 1985) (Which held that there was no accrual of the claim and this statute does not commence to run so long as Plaintiff was making a valid, timely, and non-frivolous attempt to pursue their contractual remedies in good faith); see also, *Childs*, 831 F.2d 429 (Holding that, while one may bring suit prior to exhausting internal remedies, there is not a duty to do so.)

It is noted in the case of *William Scott, wt al. V. Local 863, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America,* 725 F.2d 266, 230 (3d Cir. 1984):

> The twin defenses of failure to exhaust and the statute of limitations combined to give the litigant a narrow window in which to file suit, here there is no guarantee that the statutes, regulations, or other forms of clear written notice will exist that warn Plaintiff of his peril. On the contrary, precisely because the majority here has allowed it to benefit them in litigation, union officials may well be equivocal or contradictory in their communications through persons within the internal

7

union hierarchy whose authority to bind the union is at best hazy. As a result, the potential suitor will not know when exhaustion is futile...

Given the fact that the "hybrid" §301 actions merge two distinct issues - employer conduct and union conduct - the grievance's ambiguous course of action, until clear, did not otherwise impose a time limitation or trigger the statute of limitations period until December 28, 2000. Thus, at the time of filing of the Complaint, the state of affairs was "sufficient to support the filing of a Complaint. *Matter v. Bethlehem Steel Corporation*, 797 F.Supp 441 (W.D. Pa 1992). The averments of the complaint and supporting evidence, fairly taken in the Fed.R.Civ.P. 12(b)(6) and Rule 56 support his action as timely.

In *Balsavage v. Ryder Truck Rental, Inc.*, 712 F. Supp. 461 (D.N.J. 1989), the Court held, while denying a motion for summary judgment, that where the facts are such that the worker was mislead as to the union's position, the pattern involved disputed fact questions which precluded Fed.R.Civ.P. 12(b)(6) relief or a Rule 56 grant of summary judgment. That rationale should apply in this case.

The case of *Grasty v. Amalgamated Clothing and Textile Workers Union, AFL-CIO, CLC*, 828 F.2d 123 (3d Cir. 1987), Judge Sloviter indicated that the futility of further union appeals <u>must</u> be apparent. Given the communications of record here, that was not an issue which should be determined adversely to Plaintiff. It is noted in *Valdino v. A. Valey Engineers*, 903 F.2d (3d Cir. 1990) "...the limitations period commences when 'the Plaintiff receives notice that the union will proceed no further with the grievance'". On the facts here that cannot be said to be at any point prior to December 28, 2000.

Other factors buttress Plaintiff's position:

1.   The International Brotherhood of Teamsters' grievance procedure is much more complex and multi-faceted than the general, straight line, grievance arbitration procedures found

8

in most labor agreements[1]. Thus, there are procedures ad groupings by city, region, by industry served and at the national level; all of which involve a process more in the nature of "horse trading" than review and disposition by an independent arbitrator in a final and binding arbitration format. See and Compare, *Alexander v. Gardner - Denver Co,* 415 U.S. 36 (1974) and *Collyer Insulated Wire,* 192 NLRB 837 (1971), 77 LLRM 1931, for a general deferral analysis.

      As a part of the Article 8 process, independent binding arbitration comes into play, at the national level. Thus, throughout the so-called grievance procedure, even at the regional levels, there is no independent final and binding arbitration but merely a barter-like exchange of positions by and in-between the employer and local unions resulting in some degree of agreement or non-agreement or further appeal. Also, Defendants' use of the National Change of Operations Committee deprived Plaintiff of any access to independent binding arbitration.

    2.    A second consideration, militating in favor of Plaintiff's view of his rights and obligations under *DelCostello*, is the fact that Plaintiff, a non-attorney, relied upon the Union's expertise. They have no administrative or support structure for him.

    3.    Lastly, the six (6) month statute of limitations, finding its origins in administrative law, is extremely short. The Plaintiff in this case had no experience with legal matters of this type. Any effort to bar Plaintiff's claim would work a great inequity on the Plaintiff and promote a policy that union members should immediately take a posture of distrust towards their union or risk the running of the extremely short statute of limitations and loss of the claim. Such an

---

[1] See Articles 7 and 8 of the Master Agreement, §'s 1 and 2 (ap-396); Article 5, §4(d) (ap-399); Article 8 in unredacted form (ap-401); Article 35 §3(k) (ap-420); and Article 43 (ap424).

approach is obviously at odds with strong established federal policy deferring to the contract's arbitration process as a process engendering due process and integrity.

Plaintiff is only guilty of believing what he was told, specifically that the union was proceeding in processing the grievance. He had no experience or independent legal advice in matters of this sort until he consulted counsel. Plaintiff had no point of reference to determine if the time period that the union was taking to process his grievance was such that he should conclude his continued trust in the union was futile.

## V.  CONCLUSION

For the foregoing reasons Summary Judgment is inappropriate.

Respectfully submitted,

_____
Robert S. Mirin, Esquire
**AHMAD & MIRIN**
PA I.D. No. 25305
8150 Derry Street
Harrisburg, PA 17111
(717) 909-4343

Date: 5/24/02

10