

JUDGE'S COPY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

### No. 1:01-CV-789

---

**RICKEY BECHTEL**
**Plaintiff**

v.

**DANIEL A. VIRTURE, Business Agent of the**
**International Brotherhood of Teamsters;**
**INTERNATIONAL BROTHERHOOD OF**
**TEAMSTERS; LOCAL 776,**
**INTERNATIONAL BROTHERHOOD OF**
**TEAMSTERS; ABF FREIGHT SYSTEM,**
**INCORPORATED**
**Defendants**

FILED
HARRISBURG, PA

MAY 24 2002

MARY E. D'ANDREA, CLERK

---

### PLAINTIFF'S EXHIBITS

---

### VOLUME I

Robert S. Mirin, Esquire
PA ID# 25305
8150 Derry Street
Harrisburg, PA 17111
(717) 909-4343
Attorney for Plaintiff

# TABLE OF CONTENTS

**EXHIBIT**

Rickey A. Bechtel's Affidavit ....................................................................... A

Affidavit of Jeffery D. Albright and Attached Exhibits .................................. B

Affidavit of Norman T. Boire and Attached Exhibits .................................... C

Affidavit of Gary M. Dietz and Attached Exhibits ....................................... D

Affidavit of William H. Erdman and Attached Exhibits ................................. E

Affidavit of Michael Fritz and Attached Exhibits ......................................... F

Affidavit of A. Ronald Frombaugh and Attached Exhibits ........................... G

Affidavit of Allen W. Landis and Attached Exhibits ..................................... H

Affidavit of Lowell C. McGuire and Attached Exhibits ................................. I

Affidavit of Walter R. Minich and Attached Exhibits ................................... J

Affidavit of Raymond C. Nevins and Attached Exhibits ............................... K

Affidavit of Stanley L. Nye and Attached Exhibits ....................................... L

Affidavit of Keith E. Sgrignoli and Attached Exhibits .................................. M

Affidavit of Ray G. Synder, Jr. and Attached Exhibits ................................. N

Affidavit of Vincent Ramirez, Jr. and Attached Exhibits .............................. O

Affidavit of Lawrence D. Welker and Attached Exhibits ............................... P

Third Circuit Court's Decision in Albright ................................................... Q

Article 7 of the Collective Bargaining Agreement..............................................R

Proposed Seniority Application..................................................................S

Carlisle Platform Seniority List of
March 10, 1995 .......................................................................................T

Chauffeurs, Teamsters and Helpers Local Union No. 776
Letter to Carolina Employees dated October 12, 1995
Re: ABF and Carolina Freight merger..........................................................U

ABF letter to Rickey Bechtel dated November 9, 1995
Re: Article 5, Section 5 Job Offer in Accordance with ABF
Multi-Region Change of Operations ..............................................................V

International Brotherhood of Teamsters letter to All Freight
Local Unions dated January 7, 1999
Re: Fourth Circuit Decision in the ABF/Carolina Litigation.......................... W

ABF letter to Charles Shughart with Attached Exhibits of
Seniority roster dated June 5, 2000 ...............................................................X

Eastern Region Joint Area Committee decision dated
July 25, 2000 ...........................................................................................Y

ABF 1995 Change of Operations materials....................................................Z

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,                    :     NO.   3:01-CV-789
          **Plaintiff**         :
                                 :     **JURY TRIAL DEMANDED**
          v.                  :
                                 :
DANIEL A. VIRTUE, Business Agent of the  :
International Brotherhood of Teamsters;    :
INTERNATIONAL BROTHERHOOD OF            :
TEAMSTERS; LOCAL 776, INTERNATIONAL:
BROTHERHOOD OF TEAMSTERS; ABF           :
FREIGHT SYSTEM, INCORPORATED,            :
          **Defendants**        :

---

## AFFIDAVIT OF PLAINTIFF RICKEY A. BECHTEL
## COMMONWEALTH OF PENNSYLVANIA, DAUPHIN COUNTY
## MAY 24, 2002

---

I, Rickey A. Bechtel, am the Plaintiff in the above referenced matter and do hereby make the following statement as my affidavit in addition to my deposition previously given in this matter:

1.    At the time in 1995 when I was laid off from Carolina Freight and subsequently given letters from ABF Freight System, Incorporated in 1995 (herein referred to as "ABF") indicating that I was a laid off ABF employee; no one advised me that I had an obligation to continue to notify the employer of my interest.  I was grieving the fact that I was not given my five (5) year right of recall as a laid off ABF employee.

2.    I was never told why my grievance did not follow a normal, Article VIII, grievance pattern or why it was sent to the National Change of Operation Committee because, insofar as I understood, I had filed a timely grievance under the regular grievance

procedure in the National Master Freight Agreement and the matter should have been heard under the procedures in place under Article VIII of the National Master Freight Agreement at the time I filed the grievance.

3.    I am not aware and was never told the local had any "option" or discretion about whether to refer the matter to the Article VIII Grievance process or through the National Change of Operation Committee.  I also note that the current labor agreement, which runs from April 1, 1998 to March 31, 2003, was not in place when I was laid off in 1995 and no-one ever explained to me how the new National Change of Operations Committee had any authority over previously completed changes of operation or contractual recall-from-lay off grievances.  I was not involved in the decision to "decide" to refer my grievance to the Change of Operation Committee; although I believe decision this may have been to avoid my appeal rights under the grievance procedure.

4.    As a "platform jockey" for Carolina Freight and holder of a commercial driver's license (CDL), I did drive tractor-trailers, the same vehicle as are driven by over the road drivers.  As I understood it, we were all on one (1) master seniority list, and I could have bid during the annual bid process to and for an over the road position. ( Rail) .

5.    In 1995, I believe, because I have a CDL (commercial drivers license), that Carolina Freight did contact me about an over the road driving position.  Also, ABF did contact me about taking an over the road driving position.

6.    As a recalled employee, I believe that I would have been more expensive in terms in of hourly rate and benefits than a newly hired employee.

7.    So as far as I understand it, I had a right to process my grievance under the National Master Freight grievance provisions as set forth in Article VIII of the National Master Freight Agreement.

8.    I believe that the handling of my grievance by the Local Union, with the approval of the International Union, was based upon animosity that the Local had towards Carolina Freight employees, who were attempting to return from lay off, under the terms of their lay off rights as they were in effect at the time we were laid off in 1995.

9.    Insofar as the presentation of the "Union's brief", I was not the business agent nor did anyone, involved in presenting the grievance, explain the differences in the Change of Operations procedures from the National Master Freight Article VIII procedures.  I also thought I would have appeals beyond the National Change of Operations Committee, because I had understood that there were appeals as a result of the grievances filed by the Jeffrey D. Albright, Ray Snyder and others concerning their return to work. Also, I believe that the change of operation involving ABF and Carolina Freight occurred in 1995 was completed under the prior labor agreement.   Since our change of operation occurred during 1995, I believe that the new (1998-2003) National Change of Operation Committee was for changes under the current labor agreement and was the wrong route.  However, not being a lawyer or familiar with the process; I was unaware, at the time the grievance was presented, that the presentation to the National Multi Region Change of Operation Committee would affect my recall rights or appeal rights that had been given to me under a previous labor agreement - the agreement in force in 1995.

10.   So far as I could tell, the 1995 Change of Operations was completed in 1995 and was handled under the prior labor agreement in so far as I am aware; that agreement did not create a National Multi Region Change of Operations Committee.

11.   The basis upon which my grievance was handled and was decided was never explained to me.


I have read the above affidavit consisting of this and other pages and it is true and correct.


5-24-02
Date

Rickey A. Bechtel
Rickey A. Bechtel

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,              :
                                             :

          Plaintiff,        :  NO.  3:01-CV-789
                                             :      Judge Sylvia H. Rambo

          v.                    :
                                           :

DANIEL A. VIRTUE, Business Agent of the  :
International Brotherhood of Teamsters;    :
INTERNATIONAL BROTHERHOOD OF     :
TEAMSTERS; ABF FREIGHT SYSTEM,      :
INCORPORATED,                       :
                                           :

          Defendants.

## AFFIDAVIT OF DAUPHIN COUNTY,
## COMMONWEALTH OF PENNSYLVANIA, MAY 10, 2002

I, Jeffrey D. Albright, do hereby make the following statement my affidavit;

1.    I am one of the main Plaintiff's in <u>Albright, et. al. vs. ABF, et. at.</u>, No. 1:CV-00-0878. I hereby reaffirm the attached affidavit, which I previously made in that matter.  (See Exhibit A)

2.    At the time Carolina freight shut down the Carlisle terminal, I was advised, as well as others, that I had five (5) years of recall rights under the Collective Bargaining Agreement and that the recall rights would extend to any successor employer.

3.    However, at no time during the ensuing period of time up to the time I contacted ABF, nor was any effort made by the Union or the Company to implement those recall rights or nor were any steps taken to insure that they had the ability to implement those recall rights.  By that, I mean, that the no effort was made to keep track of my address; no contact was made through ABF or through the Union concerning recall.



4.    I obtained employment under my recall rights as a result of word of mouth contact from other employees and as a consequence I applied to ABF and was reinstated.

5.    It is my belief that the Company and the Union sought to avoid the provisions of the Collective Bargaining Agreement as they applied to recall, because by recalling me; I was more expensive on an hourly basis than a new employee and my fringe benefits, as a recalled employee, were far more than the fringe benefits that a new employee would have been entitled to.  Accordingly, I think that the Company and the Union got together not withstanding the labor agreement to try to avoid the recall provisions and their effect (Higher wage rate, more accrued benefits.)

6.    In so far as the structure of the Carlisle terminal, both before it was shut down and after it became an ABF terminal is concerned, there are two (2) seniority measures that are involved;

(a.)    Your company seniority; and

(b.)    Your time in category as a driver or as a dock/ local/ terminal employee.

However, you can transfer to the over-the-road driver board from the dock and I know that and/or from the over-the-road driver board to the dock based upon you company seniority.  Accordingly, someone like Rickey Bechtel, who drove, I believe, as a yard jockey and who did other driving activities, from time to time, would be entitled to apply, based upon his company seniority, for open over-the-road driver positions on the over-the-road board.

7.    It is my understanding that economic factors, such as increased pay and increased benefits would apply to someone, such as Rickey Bechtel, if he were reinstated over the hiring of

a new employee, which would involved a lower hourly rate and with fewer fringe benefits to start.

      8.      So far as I am aware, a dockman or terminal employee could apply for a position on the over the road board based upon their company (overall) seniority.

      I have read the above affidavit consisting of this and ~~blind cover~~ two (other) pages and it is true and correct.

_5-13-02_

Date

_Jeffrey D. Albright_

Jeffrey D. Albright

# AFFIDAVIT OF JEFFERY D. ALBRIGHT

I, Jeffery D. Albright, hereby make this following document my affidavit in connection with the above reference litigation and provide the following information which is correct and true to the best of my knowledge, information and belief:

1.    I have reviewed the Affidavit of Daniel A. Virtue, which has been made in support of the Motion to Dismiss in the above referenced case.

2.    Upon reviewing the segment of the Affidavit that applies to me, I have the following information.

3.    a.) I have been a member of Teamster Local Union 776 since April 9, 1988 and up until March of 1995 with that local union in connection with my employment at Carolina Freight at Carlisle.

b.) I worked at the Carlisle facility of Carolina Freight through out that period of time and took a layoff at the Carlisle facility.

5.    As I understand it, historically, under the Teamsters Collective Bargaining Agreement, drivers are able to follow their work, as one means of dealing with downsizing, mergers and other changes of operation, which at the same time allows them to keep seniority rights when in lay off status.  The Master Freight Agreement says:

Article 5.1 (b):
Seniority shall be broken only by discharge, voluntary quit, retirement, or more than a five (5) year layoff.

6.    The labor agreement, which called for the Company and the Union to have a system of recalling drivers by seniority date, was not implemented at Carlisle. Carolina Freight drivers, including myself, who have been reinstated since 1998 were never contacted by the Company or Union concerning employment vacancies on the



Board. We learned of the Board vacancies through word of mouth from other drivers and based upon our own efforts contacting the facility. Thus, in so far as I am aware, in terms of the labor agreement calling for a seniority based recall of laid off drivers based upon the availability of jobs at the Carlisle facility. This was not put in place by either ABF or the local Union. The labor agreement says:

> Article 5, Section 2 (c) (2)
> In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be similarly "dovetailed" by appropriate classification. If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes...

7.    When I returned, I was not given my seniority date that I was entitled to under the labor agreement, when I asked the dispatcher what number I stood on the board, he told me to just make an "X" in the space where the number is normally placed. (My name was not yet on a seniority list until later when one was posted with my name and seniority date and wrong number.)

8.    Ordinarily, calls and runs off of the board are governed by the overall seniority date.

9.    I was not contacted by either the Union or ABF concerning a recall of drivers on lay off status.

10.    I learned that ABF was "hiring" at Carlisle from Walter Minnick, who had been a co-worker at Carlisle, PA.

11.    The effect of the way we were brought back avoided giving us our proper seniority date. We were not assigned a seniority date at the time we returned. We were placed at the bottom of the Board, without a seniority date, based on the time when we

clocked in for the first time coming back from a lay off and referred out after ABF drivers at Carlisle. I tried to ascertain what my seniority date on the Board was going to be and could not obtain an answer or clarification from the dispatcher.

12.  I became aware that other ex-Carolina drivers had filed grievances upon recall and believed that these grievances would cover all returning drivers seniority dates.

13.  I did not know my seniority position when I returned to work.

14.  I was lead to believe that the seniority issue had not been resolved when I initially returned and that the issue would be resolved by the posting of the next seniority list or when my fellow ex-Carolina drivers grievances were addressed.

15.  The Union stewards and business agents are supposed give us some advice, guidance, and direction concerning the section of the contract that should be cited, but that has never been done in my case.

16.  Each of the averments contained in this Affidavit are based upon my direct personal knowledge of the events in question.

## VERIFICATION

I, Jeffrey D. Albright, have reviewed the foregoing document and do hereby confirm that the forgoing statements are true and correct to the best of my knowledge, information, and belief. I make this affirmation with the knowledge that I am subject to the provisions regarding false swearing of information to authorities.

Date: _10  7  00_

_____
Jeffrey D. Albright, Plaintiff

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,                          :
                                            :
       Plaintiff,              : NO.   3:01-CV-789
                                            :       Judge Sylvia H. Rambo
       v.                      :
                                            :
DANIEL A. VIRTUE, Business Agent of the     :
International Brotherhood of Teamsters;      :
INTERNATIONAL BROTHERHOOD OF                :
TEAMSTERS; ABF FREIGHT SYSTEM,              :
INCORPORATED,                               :
                                            :

       Defendants.

## AFFIDAVIT OF DAUPHIN COUNTY,
## COMMONWEALTH OF PENNSYLVANIA, MAY 10, 2002

I, Norman T. Boire, do hereby make the following statement my affidavit;

1.      I am one of the main Plaintiff's in <u>Albright, et. al. vs. ABF, et. at.</u>, No. 1:CV-00-0878. I hereby reaffirm the attached affidavit, which I previously made in that matter. (See Exhibit A)

2.      At the time Carolina freight shut down the Carlisle terminal, I was advised, as well as others, that I had five (5) years of recall rights under the Collective Bargaining Agreement and that the recall rights would extend to any successor employer.

3.      However, at no time during the ensuing period of time up to the time I contacted ABF, nor was any effort made by the Union or the Company to implement those recall rights or nor were any steps taken to insure that they had the ability to implement those recall rights. By that, I mean, that the no effort was made to keep track of my address; no contact was made through ABF or through the Union concerning recall.

4.      I obtained employment under my recall rights as a result of word of mouth contact from other employees and as a consequence I applied to ABF and was reinstated.

5.      It is my belief that the Company and the Union sought to avoid the provisions of the Collective Bargaining Agreement as they applied to recall, because by recalling me; I was more expensive on an hourly basis than a new employee and my fringe benefits, as a recalled employee, were far more than the fringe benefits that a new employee would have been entitled to.  Accordingly, I think that the Company and the Union got together not withstanding the labor agreement to try to avoid the recall provisions and their effect (Higher wage rate, more accrued benefits.)

6.      In so far as the structure of the Carlisle terminal, both before it was shut down and after it became an ABF terminal is concerned, there are two (2) seniority measures that are involved;

     (a.)      Your company seniority; and

     (b.)      Your time in category as a driver or as a dock/ local/ terminal employee.

However, you can transfer to the over-the-road driver board from the dock and I know that and/or from the over-the-road driver board to the dock based upon you company seniority.  Accordingly, someone like Rickey Bechtel, who drove, I believe, as a yard jockey and who did other driving activities, from time to time, would be entitled to apply, based upon his company seniority, for open over-the-road driver positions on the over-the-road board.

7.      It is my understanding that economic factors, such as increased pay and increased benefits would apply to someone, such as Rickey Bechtel, if he were reinstated over the hiring of

a new employee, which would involved a lower hourly rate and with fewer fringe benefits to start.

8.    So far as I am aware, a dockman or terminal employee could apply for a position on the over the road board based upon their company (overall) seniority.

I have read the above affidavit consisting of this and ~~blind cover~~ two (2) other pages and it ~~is~~ true and correct.

_5· 13· 02_
Date

Norman T. Boire

# AFFIDAVIT OF NORMAN T. BOIRE

I, Norman Boire, hereby make this following document my affidavit in connection with the above reference litigation and provide the following information which is correct and true to the best of my knowledge, information and belief:

1.    I have reviewed the Affidavit of Daniel A. Virtue, which has been lodged in support of the Motion to Dismiss in the above referenced case.

2.    Upon reviewing the segment of the Affidavit that applies to me, I have the following information.

3.    I have been a member of Teamster Local Union 776 since June 19, 1973 and up until March 19, 1995 with that local union in connection with my employment at Carolina Freight.

4.    In January 1995, Carolina went from being a "line-haul" carrier (national) to a regional carrier.

5.    Pursuant to the change of operations to a regional carrier, I was told that the Carlisle terminal would be reduced to 150 employees, total, and that therefore existing employees on the Board at the terminal could bid into other Carolina Freight locations or take a layoff (hold).

6.    I elected to hold, which was one of the options given. I believed that I had sufficient seniority to remain at Carlisle.

7.    In January of 1995, when all the bids were shaken out, I found that I was number 152 on the board. The Company kept a number of road drivers for the transition period and in March of 1995, myself being one of those drivers. In March of 1995, I



PLAINTIFF'S
EXHIBIT
A

elected to take a layoff pursuant to the terms of Master Freight Agreement with the understanding that I would have recall rights for five (5) years.

8.      Between the time I took the layoff and the time I returned to work, in so far as I can ascertain, both from my personal experience and from the status of the ABF terminal when I returned, neither ABF nor the Union took any steps to implement any possible recall of drivers in layoff status. I learned of the open status of the Carlisle Board by word-of-mouth from other Carolina employees.

9.      As I understand it, historically, under the Teamsters Collective Bargaining Agreement, drivers are able to follow their work, as one means of dealing with downsizing, mergers and other changes of operation, which at the same time allows them to keep seniority rights when in lay off status. The Master Freight Agreement says:

> Article 5.1 (b):
> Seniority shall be broken only by discharge, voluntary quit, retirement, or more than a five (5) year layoff.

10.      The labor agreement, which called for the Company and the Union to have a system of recalling drivers by seniority date, was not implemented at Carlisle. Carolina Freight drivers, including myself, who have been reinstated since 1998 were never contacted by the Company or Union concerning employment vacancies on the Board. We learned of the Board vacancies through word of mouth from other drivers and based upon our own efforts contacting the facility. Thus, in so far as I am aware, in terms of the labor agreement calling for a seniority based recall of laid off drivers based upon the availability of jobs at the Carlisle facility. This was not put in place by either ABF or the local Union. The labor agreement says:

Article 5, Section 2 (c) (2)
In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be similarly "dovetailed" by appropriate classification. If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes...

11.    a.) In December 1998, based upon a conversation I had in a local diner, I contacted Ray Snyder and he informed me that ABF was hiring road drivers and under the provisions of the Labor Agreement, I should have been contacted and should be eligable for recall at the Carlisle facility.

b.) In the same conversation with Ray Snyder, I learned that he had been working as of November 1998.

12.    In December 1998, I then contacted Lee Edenbo, who was my line supervisor at Carolina Freight but at the time of our conversation, had been taken into management at ABF.

13.    Pursuant to Lee Edenbo's instructions, I sent a fax and spoke directly to Fort Smith, AK.

14.    When I returned, on January 8, 1999, I was not given my seniority number that I was entitled to under the labor agreement, when I asked the dispatcher what my seniority number was, he told me to just make an "X" in the space where the number is normally placed on the clearance card.  (My name was not yet on a seniority list until later when one was posted with my name and seniority number)

15.    Ordinarily, calls and runs off of the board are governed by the company seniority date.

16.    I learned from other ex-Carolina drivers that they had filed grievances when they found they were not being given their proper seniority dates under 5.2 of the Labor Agreement.

17.    The first seniority list that was posted after my return was dated February 17, 1999, but was not posted until March 9, 1999, I filed my grievance on March 11, 1999. This was two workdays after the posting.

18.    Every time a seniority list was posted I have promptly and timely filed a grievance over the fact that I have not been assigned the correct seniority date and at no time have I ever received a decision from the local Union or ABF concerning that contention.

19.    Article 5 of the Master Freight Agreement, covering over the road drivers and local cartage in Central Pennsylvania covers the seniority rights. The provisions pertaining to seniority related grievances are governed by a procedure which provides that the seniority list be posted at least twice a year and that an employee has thirty days after the posting of the list to file a grievance.

Article 5.4 (d) Posting of Seniority List
The Employer shall give the Local Union a seniority list at least every six (6) months. The Employer shall also post a seniority list at least once every six (6) months and shall maintain a current seniority roster at the terminal. Protest of any employee's seniority date or position on such list must be made in writing to the Employer within thirty (30) days after such seniority date or position first appears, and if no protests are timely made the dates and positions are deemed correct. Any such protest which is timely made may be submitted to the grievance procedure. (Emphasis added.)

20.    The initial grievance which I have attached to my Affidavit was filed by me on March 11, 1999 as noted above, within the 7 day or 30 day time frame (two days within the posting of the list with my name on it).

21.    My grievance was presented to both the Company and Union following established procedure in presenting grievances.

22.    There was a period of time when the stewards were not signing the grievances and all I have is the grievance as I submitted it. (However, my first grievance was signed.)

23.    The Union stewards and business agents are supposed give us some advice, guidance, or direction concerning the section of the contract that should be cited, but that has never been done in my case.

24.    My grievance followed the same grievance history and treated the same as Mr. Snyder's. (i.e. , it was denied as untimely by the company, referred to the Eastern Conference, it was denied by the Conference and then referred to Phil Young, Freight Director, it's on appeal and then referred to the NGB where it is pending at this time.)

25.    With regard to the March 1999 posting, I filed my grievance in a timely fashion.

26.    During a conversation at the Union Hall, in Carlos Ramos office, with Dan Virtue and Mr. Ramos, business agent for Local 776, I raised the issue of filing a seniority-related grievance.  I referred Virtue to the contract provisions, which said that a teamster has thirty days from the posting of seniority list to file a grievance for improper date or number.  At that time Mr. Virtue agreed with me.

27.    During that same conversation, I asked why the Union and ABF had made no effort to contact laid off employees when they reopened the Board and was given an explanation by Mr. Ramos that made no sense.  He said that if they miss one person, they could be held liable.

28.    It occurred to me, later, that a certified letter sent to each laid off driver on the list would have avoided that whole issue.

29.    In a conversation I had in Carlstadt, NJ, I learned that the company implemented the list procedure by sending out certified letter to all employees on layoff status.

30.    We were not recalled in seniority order.

31.    Each of the averments contained in this Affidavit are based upon my direct personal knowledge of the events in question.

# NMFA GRIEVANCE — Teamsters Local 776                    90651

Name _Norman T. Boire_    Home Phone _717·901·8505_ Date of Hire _1·8·59_

dress _710 Charles Rd_    City _Dauphin_    State _Pa_    Zip _17018_

Employer _ABF Freight_

Employer's Address _New Kingston, Pa_

Road ■    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐        Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _11 Mar 99_    5 0

6 0

NATURE OF GRIEVANCE: _Reference Seniority Roster Dated 2·17·99 — (Posted Mar. 9th 99)    Article 5, Section 2 ¢ Section 4 Posting Seniority List_

_I request that my terminal seniority of 1·8·99 be amended to 25 Aug 85 under the provision of Article 5, Section 2 of the NMFA._

STEWARD'S COMMENTS: _____

**In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.**

_Norman T. Boire_                    _Robt T. Fodnik_
Signature of Member Filing Grievance                    Shop Steward

■ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT _____

Date: _____                    Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776

92867

Name _Adrian T. Boice_  Home Phone _717-901-8306_  Date of Hire _As 2-12 19_

ess _1720 Clarke Rd_  City _Dauphin_  State _PA_  Zip _1701_

Employer _ABF Freight System Inc._

Employer's Address _New Kingston, PA_

Road ☐  ✓ Dock ☐  Jockey ☐  City ☐  Iron and Steel ☐  Mechanic-Office ☐  Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date:_____

**NATURE OF GRIEVANCE:** On March 11th, 1999, I filed a grievance on the issue of my seniority.

On or about January, 1999 a local hearing was convened where it was decided that grievances pertaining to the issue of seniority which had been filed at an earlier date would be placed on the docket for Eastern Region Joint Area Committee, to be scheduled at a future date.

Approximately 81 days later on March 30th, 1999 a hearing was convened wherein by BA Daniel Virtue informed us that all grievances on the of seniority were declared by the company to be untimely.   Count no. #92869

**STEWARD'S COMMENTS:** _____

_____

_____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Adrian T. Boice_

Signature of Member Filing Grievance            Shop Steward

☒ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

_____

_____

Date: _____

Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

## INSTRUCTIONS ON BACK OF YELLOW SHEET



# NMFA GRIEVANCE — Teamsters Local 776

92868

Home Phone _____ Date of Hire _____

Address _____ City _____ State _____ Zip _____

Employer _____

Employer's Address _____

Filed □  ☑ Dock □  Jockey □  City □  Iron and Steel □  Mechanic-Office □  Miscellaneous □

**IMPORTANT:** It is the responsibility of the member filing this grievance to provide the proper copies to all parties in a timely manner, as per your contract.

Date: _____

**NATURE OF GRIEVANCE:** As a result the issue of untimeliness went to the ERTAC, where in my grievance, including the issue of seniority, was disposed of without proper notice, hearing, due process, and preparation. My seniority issue was not properly disposed of.

Therefore this grievance is on the irregular faulty procedure, and failure of the Union and Company follow contract grievance procedures to decision in my grievance. I therefore request my grievance on seniority be reinstated and properly processed.

**STEWARD'S COMMENTS:** _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_____ _____
Signature of Member Filing Grievance          Shop Steward

□ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

Date: _____          _____
                         Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776

92869

Name _Norman L. Boice_   Home Phone _921·8505_   Date of Hire _8·26·85_

ress _710 Charles Rd._   City _Dauphin_   State _PA_   Zip _17018_

Employer _ABF Freight System Inc._

Employer's Address _New Kingston, PA_

Road ☒    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date:_____

9 00

NATURE OF GRIEVANCE: _Preference Seniority Roster Posted September 28th, 99_
_# Art 5 Sec 2._

_Request that my term/in seniority of January 8th, 1999 be amended to August 26th, 1985 under the provisions of Art 5 Sec 2 of the NMFA._

_Because of the merger which took place on or about 4/15 September, 1995 between ABF Freight and Carolina Freight, my status as an employee on letter of layoff with Carolina Freight which had occurred in March, 1995 at Carlisle, Pa., changed to an employee on letter of layoff with ABF Freight Systems according to contractual language in Art 5, Sec_
_ABF utilized Art 5 Sec 5 to circumvent Art 5, Sec 2 thereby denying me my contractual rights._

STEWARD'S COMMENTS: _____

9 00

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_____    _____
Signature of Member Filing Grievance         Shop Steward

■ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT _No Claim Per Acc  9-28-9_

_____

Date: _____    _____
                                      Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**



## **VERIFICATION**

I, Norman T. Boire, have reviewed the foregoing document and do hereby confirm that the forgoing statements are true and correct to the best of my knowledge, information, and belief. I make this affirmation with the knowledge that I am subject to the provisions regarding false swearing of information to authorities.

Date: _10 · 9 · 00_

Norman T. Boire, Plaintiff

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,        :
                :
     **Plaintiff,**       : **NO.  3:01-CV-789**
                :    **Judge Sylvia H. Rambo**
      v.           :
                :
DANIEL A. VIRTUE, Business Agent of the  :
International Brotherhood of Teamsters;   :
INTERNATIONAL BROTHERHOOD OF   :
TEAMSTERS; ABF FREIGHT SYSTEM,   :
INCORPORATED,        :
                :
     **Defendants.**

## AFFIDAVIT OF DAUPHIN COUNTY, COMMONWEALTH OF PENNSYLVANIA, MAY 10, 2002

I, Gary M. Dietz, do hereby make the following statement my affidavit;

1.  I am one of the main Plaintiff's in <u>Albright, et. al. vs. ABF, et. at.</u>, No. 1:CV-00-0878.  I hereby reaffirm the attached affidavit, which I previously made in that matter.  (See Exhibit A)

2.  At the time Carolina freight shut down the Kutztown, Pennsylvania terminal, I was advised, as well as others, that I had five (5) years of recall rights under the Collective Bargaining Agreement and that the recall rights would extend to any successor employer.

3.  However, at no time during the ensuing period of time up to the time I contacted ABF, nor was any effort made by the Union or the Company to implement those recall rights or nor were any steps taken to insure that they had the ability to implement those recall rights.  By that, I mean, that the no effort was made to keep track of my address; no contact was made through ABF or through the Union concerning recall.

4.     I obtained employment under my recall rights as a result of word of mouth contact from other employees and as a consequence I applied to ABF and was reinstated.

5.     It is my belief that the Company and the Union sought to avoid the provisions of the Collective Bargaining Agreement as they applied to recall, because by recalling me; I was more expensive on an hourly basis than a new employee and my fringe benefits, as a recalled employee, were far more than the fringe benefits that a new employee would have been entitled to.  Accordingly, I think that the Company and the Union got together not withstanding the labor agreement to try to avoid the recall provisions and their effect (Higher wage rate, more accrued benefits.)

6.     In so far as the structure of the Carlisle terminal, both before it was shut down and after it became an ABF terminal is concerned, there are two (2) seniority measures that are involved;

   (a.)     Your company seniority; and

   (b.)     Your time in category as a driver or as a dock/ local/ terminal
            employee.

However, you can transfer to the over-the-road driver board from the dock and I know that and/or from the over-the-road driver board to the dock based upon you company seniority.  Accordingly, someone like Rickey Bechtel, who drove, I believe, as a yard jockey and who did other driving activities, from time to time, would be entitled to apply, based upon his company seniority, for open over-the-road driver positions on the over-the-road board.

7.     It is my understanding that economic factors, such as increased pay and increased benefits would apply to someone, such as Rickey Bechtel, if he were reinstated over the hiring of

a new employee, which would involved a lower hourly rate and with fewer fringe benefits to start.

     8.     So far as I am aware, a dockman or terminal employee could apply for a position on the over the road board based upon their company (overall) seniority.

     I have read the above affidavit consisting of this and ~~blind cover~~ two (2) other pages and it is true and correct.

May 13, 2002
Date

Gary M. Dietz

# AFFIDAVIT OF GARY M. DIETZ

I, Gary M. Dietz, hereby make this following document my affidavit in connection with the above reference litigation and provide the following information which is correct and true to the best of my knowledge, information and belief:

1.      I have reviewed the Affidavit of Daniel A. Virtue, which has been made in support of the Motion to Dismiss in the above referenced case.

2.      Upon reviewing the segment of the Affidavit, which applies to me, I have the following information.

3.      I have been a member of Teamster Local Union 776 since November 1, 1969, and up until May 23, 1995 with that local union in connection with my employment at Carolina Freight.

4.      I worked at the Carlisle facility of Carolina Freight through out that period of time and took a transfer to Kutztown on or about May 23, 1995.

5.      I took this transfer with the understanding that I could return to the Carlisle facility as soon as work became available.

6.      I worked in the Carlisle terminal from 1975 until the time I transferred in 1995.

7.      At the time of the lay off the Carolina Freight - Central Pennsylvania (the Carlisle) Board was moved to Kutztown, Philadelphia or Baltimore.

8.      Upon my return to the Carlisle facility in 1998, I could tell that the work that we were running out of the ABF terminal was the same as the work that we ran for Carolina Freight out of the Carlisle facility.



PLAINTIFF'S
EXHIBIT

A

9.      a.) I took the transfer in spring of 1995 and in the latter part of 1995. I was told by an ABF official from Fort Smith, AK, "all over the road work would be returned to the breakbulk facility in Carlisle." So, I understood that one of my options was that I could follow Carlisle work back to Carlisle when work became available.

b.) The terminal manager in Kutztown told me that I had to bid and the drivers had to pick which location, among other locations, Carlisle, Folglesville, and Reading for city work.

10.     I elected to take Carlisle and I was told at that time I would be called back to work in a few days.

11.     On the Saturday following my decision to bid Carlisle, I received a telephone call from Central Dispatch of Carolina Freight, out of Cherryville, NC, and was told that I was to run freight out of the Kutztown terminal which he had been advised had closed the prior day.

12.     I was forced to take that one run, which I did.

13.     During the discussion with the Carolina Freight dispatcher in Cherryville, NC, I was informed that the ABF terminal, in Carlisle, had told Cherryville to contact me because I had "bid" Carlisle in connection with the closing of the Kutztown terminal. I was informed by the dispatcher that "this is Carlisle work".

14.     During the time of my employment in the Kutztown terminal, I was running Carlisle freight out of Kutztown.

15.     In September 1995, when I ran the load out of Kutztown "after" the terminal was "closed" I arrived at the terminal to find ABF employees stripping the terminal down and loading in it trailers and hauling it away.

16.     After making that one run, I was told to go home and I would be contacted shortly by ABF, but I never was.

17.     In 1998, I received a telephone call from a friend, Dan Snyder, who was also an ex-Carolina driver, that it appeared that the Board had opened up Carlisle.

18.     After receiving this information, I called the Fort Smith, AK office.

19.     I returned to work at Carlisle on November 20, 1998.

20.     As I understand it, historically, under the Teamsters Collective Bargaining Agreement, drivers are able to follow their work, as one means of dealing with downsizing, mergers and other changes of operation, which at the same time allows them to keep seniority rights when in lay off status.  The Master Freight Agreement says:

> Article 5.1 (b):
> Seniority shall be broken only by discharge, voluntary quit, retirement, or more than a five (5) year layoff.

21.     The labor agreement, which called for the Company and the Union to have a system of recalling drivers by seniority date, was not implemented at Carlisle. Carolina Freight drivers, including myself, who have been reinstated since 1998 were never contacted by the Company or Union concerning employment vacancies on the Board. We learned of the Board vacancies through word of mouth from other drivers and based upon our own efforts contacting the facility. Thus, in so far as I am aware, in terms of the labor agreement calling for a seniority based recall of laid off drivers based upon the availability of jobs at the Carlisle facility.  This was not put in place by either ABF or the local Union.  The labor agreement says:

> Article 5, Section 2 (c) (2)
> In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be similarly "dovetailed" by appropriate classification.  If

additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes...

22.    The change of operations in September 1995 and the Master Labor Agreement provide that laid off employees in a merger situation continue to hold rights.

23.    When I returned, I was not given my seniority date that I was entitled to under the labor agreement, when I asked the dispatcher what number I stood on the board, he told me to just make an "X" in the space where the number is normally placed. (My name was not yet on a seniority list until later when one was posted with my name and seniority date and wrong number.)

24.    Calls and runs are governed by your seniority number on the Board. Using an "X" put me behind all the ABF drivers on the Board.

25.    When the seniority list was posted and I saw that I was assigned an incorrect seniority number, I filed a grievance within the thirty day period.

26.    Article 5 of the Master Freight Agreement, covering over the road drivers and local cartage in Central Pennsylvania covers the seniority rights. The provisions pertaining to seniority related grievances are governed by a procedure which provides that the seniority list be posted at least twice a year and that an employee has thirty days after the posting of the list to file a grievance.

Article 5.4 (d) Posting of Seniority List
The Employer shall give the Local Union a seniority list at least every six (6) months. The Employer shall also post a seniority list at least once every six (6) months and shall maintain a current seniority roster at the terminal. Protest of any employee's seniority date or position on such list must be made in writing to the Employer within thirty (30) days after such seniority date or position first appears, and if no protests are timely made the dates and positions are deemed correct.

Any such protest which is timely made may be submitted to the grievance procedure. (Emphasis added.)

27.    After returning, I filed my initial grievance on December 31, 1998.

28.    About a week before my last run in 1995, I had a conversation with Mr. Virtue, and he used rather vulgar language to tell me that there was no way that I would ever work at the Carlisle/ABF facility.

29.    As I understood the Collective Bargaining Agreement, and the direction the change of operations was proceeding and the fact that I had been told by the Kutztown terminal manager, that we would be running our freight out of Carlisle.

30.    The Union stewards and business agents are supposed give us some advice, guidance, or direction concerning the section of the contract that should be listed in a grievance, but that has never been done in my case.  Additionally, I called Carlos Ramos and ask him about the 5.5 issues.  Mr. Ramos told me to accept the work and fight for my rights *after* I returned.

31.    My grievance followed the same grievance history and was treated the same as Mr. Snyder's. (i.e. , it was denied as untimely by the company, referred to the Eastern Conference, it was denied by the Conference and then referred to Phil Young, Freight Director, under Section 8 of the Master Agreement, on appeal and then referred to the grievance appeal process where it is pending at this time.)

32.    Each of the averments contained in this Affidavit are based upon my direct personal knowledge of the events in question.

# NMFA GRIEVANCE — Teamsters Local 776

89076

Name _Gary M Dietz_   Home Phone _____ Date of Hire _11-20-78_

Address _Box 297 RD #2_   City _Landisburg_   State _PA_   Zip _17040_

Employer _ABF_

Employer's Address _Carlisle PA_

Road ☒   Dock ☐   Jockey ☐   City ☐   Iron and Steel ☐   Mechanic-Office ☐   Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.   Date: _12/23/98_

2 36 P

NATURE OF GRIEVANCE: _I was employed by Carolina Freight in Allentown, (Kutztown) PA, until the Carolina - ABF merger. I was put into a multiple lay off pool for 5 years. The company (ABF) abused the multiple pool & restricted my seniority._

_I am filing for my proper seniority position + all monetary claims due me_

STEWARD'S COMMENTS: _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Gary M Dietz_
Signature of Member Filing Grievance _____   Shop Steward _____

☒ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT _____

_____

_____

Date: _____   Signature of Business Agent _____

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**



## **VERIFICATION**

I, Gary M. Dietz, have reviewed the foregoing document and do hereby confirm that the forgoing statements are true and correct to the best of my knowledge, information, and belief. I make this affirmation with the knowledge that I am subject to the provisions regarding false swearing of information to authorities.

Date: _10-6-00_

_Gary M. Dietz_
Gary M. Dietz, Plaintiff

# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,                          :
                                            :
              Plaintiff,        :  NO.  3:01-CV-789
                                            :        Judge Sylvia H. Rambo
          v.                :
                                            :
DANIEL A. VIRTUE, Business Agent of the     :
International Brotherhood of Teamsters;      :
INTERNATIONAL BROTHERHOOD OF                 :
TEAMSTERS; ABF FREIGHT SYSTEM,              :
INCORPORATED,                               :
                                            :
            Defendants.

## AFFIDAVIT OF DAUPHIN COUNTY, COMMONWEALTH OF PENNSYLVANIA, MAY 10, 2002

I, William H. Erdman, do hereby make the following statement my affidavit;

1.     I am one of the main Plaintiff's in Albright, et. al. vs. ABF, et. at., No. 1:CV-00-0878. I hereby reaffirm the attached affidavit, which I previously made in that matter. (See Exhibit A)

2.     At the time Carolina freight shut down the Carlisle terminal, I was advised, as well as others, that I had five (5) years of recall rights under the Collective Bargaining Agreement and that the recall rights would extend to any successor.

3.     However, at no time during the ensuing period of time up to the time I contacted ABF, nor was any effort made by the Union or the Company to implement those recall rights or nor were any steps taken to insure that they had the ability to implement those recall rights. By that, I mean, that the no effort was made to keep track of my address; no contact was made through ABF or through the Union concerning recall.

4.    I obtained employment under my recall rights as a result of word of mouth contact from other employees and as a consequence I applied to ABF and was reinstated.

5.    It is my belief that the Company and the Union sought to avoid the provisions of the Collective Bargaining Agreement as they applied to recall, because by recalling me, I was more expensive on an hourly basis than a new employee and my fringe benefits, as a recalled employee, were far more than the fringe benefits that a new employee would have been entitled to.  Accordingly, I think that the Company and the Union got together not withstanding the labor agreement to try to avoid the recall provisions and their effect (Higher wage rate, more accrued benefits.)

6.    In so far as the structure of the Carlisle terminal, both before it was shut down and after it became an ABF terminal is concerned, there are two (2) seniority measures that are involved;

      (a.)    Your company seniority; and

      (b.)    Your time in category as a driver or as a dock/ local/ terminal employee.

However, you can transfer to the over-the-road driver board from the dock and I know that and/or from the over-the-road driver board to the dock based upon you company seniority.  Accordingly, someone like Rickey Bechtel, who drove, I believe, as a yard jockey and who did other driving activities, from time to time, would be entitled to apply, based upon his company seniority, for open over-the-road driver positions on the over-the-road board.

7.    It is my understanding that economic factors, such as increased pay and increased benefits would apply to someone, such as Rickey Bechtel, if he were reinstated over the hiring of

a new employee, which would involved a lower hourly rate and with fewer fringe benefits to start.

8.    So far as I am aware, a dockman or terminal employee could apply for a position on the over the road board based upon their company (overall) seniority.

I have read the above affidavit consisting of this and ~~blind cover~~ two (2) other pages and it is true and correct.

_5-13-02_
Date

_William H. Erdman_
William H. Erdman

# AFFIDAVIT OF WILLIAM H. ERDMAN

I, William H. Erdman, hereby make this following document my affidavit in connection with the above reference litigation and provide the following information which is correct and true to the best of my knowledge, information and belief:

1.      I have reviewed the Affidavit of Daniel A. Virtue, which has been lodged in support of the Motion to Dismiss in the above referenced case.

2.      Upon reviewing the segment of the Affidavit that applies to me, I have the following information.

3.      I have been a member of Teamster Local Union 776 since April 9, 1990, working under the labor agreement which advises and governs the Teamsters, including: Carolina Freight, and ABF employees and Local 776 and the International Teamsters Union.

4.      In November of 1994, I heard about an argument between two shop stewards concerning the status of the Carolina Freight's Carlisle facility. It is my understanding, after hearing the exchange between the two shop stewards, that they were aware of a pending change of operations at Carolina Freight's Carlisle facility. At that time, we were not provided any information.

5.      The rumor of the change of operations spread through out the terminal and we began asking questions. At that point, it was denied that any plans existed for a change of operations.

6.      In the same period, I attended a meeting at the Ember's Restaurant in Carlisle. Daniel Virtue was at that meeting and informed us of the reduction in the Board in Carlisle, PA. At that meeting we were informed that the number of employees at the Carlisle terminal was being reduced to 150 employees. The number of employees included both drivers and dock



PLAINTIFF'S EXHIBIT

A

workers.

7.      It was my understanding that they were downsizing the Carlisle terminal and allowing the employees to follow the work.  The Carlisle terminal was running a "hub and spoke" sort of operations, with Carlisle being the hub and the other Carolina terminals being the spokes.

8.      After the change of operations, a series of road operation systems was set up, which were all regional.  It was my understanding that the covered employees could follow their work to the regional terminals.

9.      December 27, 1994, we had to be in the Carlisle terminal to choose our bids which were posted.  I was told that if I chose to stay on layoff in Carlisle, I had a five year recall window.

10.      In May of 1995, I received a letter, on Carolina Fright letterhead, re: stating that I had the opportunity to bid for work again.   I again chose to hold for Carlisle.

11.      The labor agreement, which called for the Company and the Union to have a system of recalling drivers by seniority date, was not implemented at Carlisle. Carolina Freight drivers, including myself, who have been reinstated since 1998 were never contacted by the Company or Union concerning employment vacancies on the Board. We learned of the Board vacancies through word of mouth from other drivers and based upon our own efforts contacting the facility. Thus, in so far as I am aware, in terms of the labor agreement calling for a seniority based recall of laid off drivers based upon the availability of jobs at the Carlisle facility.  This was not put in place by either ABF or the local Union.  The labor agreement says:

> Article 5, Section 2 (c) (2)
> In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be similarly "dovetailed" by appropriate classification.  If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster

and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes...

12.     Under the contract, I should have been, I assumed, be called back according to my seniority number. To the best of my knowledge, the laid off employees at the Carlisle were not called back by seniority number in accordance with our labor contract.

13.     I learned in the later part of October 1998, that ABF was agreeing to recall of the laid off Carolina drivers. I spoke with Mr. Ray Snyder and he told me that he had heard of this by various telephone call that he had received, he suggested that I should try to go back if I was interested. He suggested I contact Don McDade, a senior Carlisle driver, to find more information.

14.     I also received a fax number from Ray Snyder, which was for Fort Smith, AK. I faxed a letter requesting that I be recalled.

15.     On December 15, 1998, I faxed my paperwork to Mr. Gordon Ringberg in Fort Smith, AK. I received a telephone call from Gordon Ringberg on or about February 3, 1999 with a job offer. At no time did Mr. Ringberg explain to me the terms of recall or where I would be on the Board, nor was Article 5.5 ever mentioned or explained.

16.     When I returned, I was not given my seniority date that I was entitled to under the labor agreement, when I asked the dispatcher what number I stood on the board, he told me to just make an "X" in the space where the number is normally placed. (My name was not yet on a seniority list until later when one was posted with my name and seniority date and wrong number.)

17.     Ordinarily, runs off of the Board are governed by the overall seniority date.

18.    When I returned to Carlisle, PA, on February 11, 1999, there was a posted seniority list, I was not on it.

19.    As soon as the Carolina Freight drivers, which had been recalled before me, began filing grievances because of their seniority dates, the posted list was removed from the Board.

20.    I waited until they posted a seniority list with my name on it and promptly filed my grievance; the same day my name first appeared on the list.

21.    Article 5 of the Master Freight Agreement, covering over the road drivers and local cartage in Central Pennsylvania, covers the seniority rights and the filing of grievances. The provisions pertaining to seniority related grievances are governed by a procedure which provides that the seniority list be posted at least twice a year and that an employee has thirty days after the posting of the list to file a grievance.

Article 5.4 (d) Posting of Seniority List
The Employer shall give the Local Union a seniority list at least every six (6) months. The Employer shall also post a seniority list at least once every six (6) months and shall maintain a current seniority roster at the terminal. Protest of any employee's seniority date or position on such list must be made in writing to the Employer within thirty (30) days after such seniority date or position first appears, and if no protests are timely made the dates and positions are deemed correct. Any such protest which is timely made may be submitted to the grievance procedure. (Emphasis added.)

22.    My grievance was presented to both the Company and Union following established procedure in presenting grievances.

23.    There was a period of time when the stewards were not signing the grievances and all we have for records was the grievance as we submitted it.

24.    The Union stewards and business agents are supposed give us some advice, guidance, or direction concerning the section of the contract that should be cited, but that has

never been done in my case.

25.    My grievance followed the same path as Ray Snyder's, and to the best of my knowledge, is still pending the appeal.

26.    On June 9, 1999, April 14, 1999, and August 10, 1999, I wrote to Mr. Griffith (Local President) concerning the problem with my grievance, which I have attached hereto, but I never received a response to this or any of my other correspondence.

27.    When I returned to work in February 1999, I could tell that a group of Carolina Freight drivers who had worked with me at the Carlisle facility up to the layoffs and the merger, had been returned to the Carlisle Board and "dovetailed", as required by the labor agreement. This occurred in 1996.  The men in question had started out, pre-merger/layoff, at Carolina Freight's breakbulk terminal in Carlisle and had gone to either Carolina Freights's facility in Philadelphia or ABF's facility in Philadelphia and had been "dovetailed" onto the Carlisle Board in 1996 based upon their Carlisle seniority dates.  This is what was not done for those of us who returned from layoff in 1998-99 and so we grieved when the seniority lists were posted without "dovetailing" us onto the list.

27.    When I returned to work in February 1999, I again did the same job that I had in 1994.  ABF was using the same tractors, the same trailer, and the same terminals that Carolina Freight has been using.  I actually returned to the same job that I was laid off from.

28.    The Carolina Freight and ABF terminals in Carlisle are within walking distance from each other, which means that per NFMA contract, we were in the same domicile location.

28.    Each of the averments contained in this Affidavit are based upon my direct personal knowledge of the events in question.

# NMFA GRIEVANCE — Teamsters Local 776          90652

Name: _William H. Erdman_

Address: _640 Miller Road_                Home Phone: _717-938-8560_    Date of Hire _04/04/9_

City _York Haven_    State _PA_    Zip _1737_

Employer: _ABF Freight System Inc.    Fort Smith, Ark._

Employer's Address: _Carlisle, Pa. (042)_

Road [X]    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.    Date: _March 11, 1999_

12

**NATURE OF GRIEVANCE:** _I William H. Erdman a Layed off Carolina Freight Carriers Road driver at the Carlisle, Pa. Facility, Now Employed By ABF Freight Systems at Carlisle Pa. Am Filing For my Terminal Seneinity and All Back Pay and Back Benifits due me since the Carolina Freight Carriers and ABF Freight System merger, of 1995._

**STEWARD'S COMMENTS:** _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_W.H.E._    _3-11-99_
Signature of Member Filing Grievance                    Shop Steward

12 3

[X]    **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

Date: _____    Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# IFA GRIEVANCE — Teamsters Local 776          92818

Name _William H Eckman_

Home Phone _717-938-8560_  Date of Hire _4-9-90_

Address _I-90 Mullin Road_  City _York Haven_  State _PA_  Zip _17370_

Employer _ABF Freight Systems_

Employer's Address _Carlisle PA. (642)_

Road ☒   Dock ☐   Jockey ☐   City ☐   Iron and Steel ☐   Mechanic-Office ☐   Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _____

NATURE OF GRIEVANCE: _(Pay Shortage) on 10-19-99 I William H Eckman ran_
_a trip that started at 642 to 648 then to 284 then to_
_446 then to 241 then back to 642, Pay miles was 412 miles,_
_I'm claiming for a pay shortage on miles between 284 to 446_
_and 446 to 241, Pay period for this trip was 10-23-99 (ending)_
_pay date of 11-4-99, (See Attached 5 Sheets) I William H Eckman_
_am claiming for all miles due me, 22 miles total,_
_Total miles for said trip should be 434 miles._
_(See Attached) 1-copy ABF_
_2-copies stewards_
_(6 Sheets In All)_

STEWARD'S COMMENTS: _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_William H E_ _____  _O.T. Jones_ _____
Signature of Member Filing Grievance                    Shop Steward

☐ **YOU** must check this box if you want to attend the grievance hearings. If you request to be in attendance, **YOU WILL NOT** be paid for this time.

ACTION TAKEN BY BUSINESS AGENT _Co To Pay 21 Mi 2-29-00_

```
                                    101
                                    71
                                    72
                                    117
                                    72
                                    433
```

_No Check in Box_

Date: _____          Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

## INSTRUCTIONS ON BACK OF YELLOW SHEET



(CERTIFIED 4/5/2000)

4/4/2000

TO: MR.DANIEL VIRTUE
    BUSINESS AGENT
    TEAMSTERS LOCAL #776
    2552 JEFFERSON STREET
    HARRISBURG,PA.17110


FROM: WILLIAM H.ERDMAN
      ABF ROAD
      690 MILLER ROAD
      YORK HAVEN,PA. 17370


MR.VIRTUE:  THIS LETTER IS TO MAKE YOU AWARE OF THE FACT THAT
WHEN GRIEVANCE # 94546 WAS SIGNED BY YOUR STEWARD MR.THOMPSON
HE ALSO INCLUDED A COPY OF GRIEVANCE #92818 WITH MY COPY OF
GRIEVANCE # 94546 WITH A NOTE THAT WAS CIRCLED (NO CHECK IN
BOX)...HOW LONG HAS THIS MAN BEEN A STEWARD??? THE GRIEVANCE
THAT IS IN QUESTION IS #94518...I CLEARLY MARKED THE BOX TO
APPEAR AT THE HEARING FOR THIS GRIEVANCE!!! YET I WAS NOT
NOTIFIED OF LOCAL HEARINGS...WHICH WERE HELD ON FEB 29,2000
AT ABF...THEREFORE I FILED GRIEVANCE # 94546...
        I FULLY EXPECT THIS GRIEVANCE# 94518 TO BE HEARD
AND TO BE RE-SCHEDULED AND FOR MYSELF TO BE NOTIFIED OF SAID
HEARING AND WITH PLENTY OF TIME TO SCHEDULE MYSELF TO BE THERE.
        I DON'T EXPECT LAST MINUTE NOTICES OR ANYTHING
OF THAT NATURE...
        I ALSO EXPECT GRIEVANCE # 94546 TO BE SCHEDULED
AND HEARD...AND I WILL BE NOTIFIED OF SAID HEARING DATE AND
TIME AND PLACE...
        ALSO ON ANOTHER NOTE...WHAT IS THE STATUS OF
GRIEVANCE # 94520 ??? THIS GRIEVANCE WAS NOT ON THE FEB 29,
2000 DOCKET,I EXPECT THIS GRIEVANCE # 94520 TO BE HEARD ALSO.
        YOU KNOW MR.VIRTUE IT'S PRETTY SAD WHEN YOU TRY
TO COMMUNICATE WITH YOUR BUSINESS AGENT BY PHONE AND YOU GET
NO ANSWER,AND WHEN YOU HAVE TO RESORT TO SENDING CERTIFIED
LETTERS TO YOUR BUSINESS AGENT TO TRY AND GET HIS ATTENTION.
        I'D HAVE TO SAY THAT'S A PRETTY GOOD EXAMPLE OR
DISCRIPTION OF NON-REPRESENTATION...IN THE PUREST FORM!!

                    RESPECTFULLY YOURS

                    WILLIAM H.ERDMAN


CC/FILE                           ATTACHED GRIEVANCES
    WHE/ABF FILE                      #94518   (COPY)
    MR.ROBERT S.MIRIN                 #92818   (COPY)
                                      #94546   (COPY)

JUNE 9th 1999


DANIEL VIRTUE,BUSINESS AGENT
CHAUFFEURS,TEAMSTERS & HELPERS LOCAL #776
2552 JEFFERSON STREET
HARRISBURG,PA. 17110

NMFA GRIEVANCE#:90652

DEAR MR. VIRTUE

PLEASE BE ADVISED THAT BY THIS LETTER I AM FORMALLY REQUESTING
AN OPPERTUNITY TO PARTICIPATE IN THE PROCESS OF FORMULATING
AN ARGUMENT IN SUPPORT OF MY APPEAL.FIRSTLY,THE DECISION IS
FAULTY AND THE ISSUE ON APPEAL WAS NEVER DECIDED.THE ACTUAL
ISSUE DECIDED WAS DECIDED WITHOUT MY BEING GIVEN AN OPPERTUNITY
TO ADDRESS IT.MY CONTRACT RIGHTS AND DUE PROCESS RIGHTS HAVE
BEEN VIOLATED AS A RESULT.
PLEASE INFORM ME RIGHTLY AS TO WHAT MY RIGHTS ARE TO PERSONALLY
DEFEND MYSELF IN THIS APPEAL PROCESS AS I HAVE HAD BIAS
REPRESENTATION TO DATE AND HAVE BEEN UNJUSTLY TREATED.


VERY TRULY YOURS

WILLIAM H. ERDMAN/ABF EMPLOYEE 042

WILLIAM H.ERDMAN
690 MILLER ROAD
YORK HAVEN,PA.17370
(717)-938-8560

April 14, 1999

TO:  Thomas Griffith, President
     Teamsters Local 776
     2552 Jefferson Street
     Harrisburg, PA 17110

FROM: William H.Erdman   .042
      690 Miller Road
      York Haven,PA. 17370

RE:  Position of ABF that my grievance on the issue of my seniority is Untimely.

_____

          On March 30, 1999, during a hearing with ABF, in Carlisle, PA, it was
brought to my attention that no issues would be heard because my grievance
was filed untimely.  I am in disagreement with this position, because the
Master Freight Book, states, "A grievance on seniority shall be filed within
30 days of the posting of the notice of seniority".  My grievance was filed
in accordance with the Master Freight Agreement; therefore, I request the
following information:

     1)  A copy of any notice made prior to the seniority posting that is
         in issue, which shows that ABF made me aware of my seniority status.
     2)  The method used by ABF to notify me.
     3)  Proof of Service of the notice.
     4)  The number of grievances related to seniority, that were filed after
         notice posting.  For the past 10 years.
     5)  The name of employees, who filed grievance in No.4, above, past
         10 years.
     6)  The position that ABF took with regards to the timeliness of the
         grievance in No.4, above.  Past 10 years.
     7)  The outcome/decision of each grievant in No.4, above.  Past 10 years.
     8)  What authority/regulation supports ABF's position of untimeliness.

          I further believe that ABF is delaying a decision on my grievance, to
allow the 5 year window to close, which will then deprive me of my rights.
This is an unfair labor practice.  Please be advised that it is my position
that my rights are being violated, and that ABF is not dealing fairly nor
dealing within the guidelines of the Master Freight Agreement.  Futhermore,
I feel ABF is untimely, this matter became deadlocked on Jan.8,1999, and
a second hearing was held on March 30, 1999, 81 days later, when it was
decided that my grievance was untimely.  I feel that 81 days is untimely.
          I reserve the right to make additional requests for information.


                         Sincerely,

## <u>VERIFICATION</u>

I, William H. Erdman, have reviewed the foregoing document and do hereby confirm that the forgoing statements are true and correct to the best of my knowledge, information, and belief. I make this affirmation with the knowledge that I am subject to the provisions regarding false swearing of information to authorities.

Date: 13/10/00

_____
William H. Erdman, Plaintiff

# EXHIBIT F

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,                          :
                                            :
        Plaintiff,                 : NO.  3:01-CV-789
                                            :        Judge Sylvia H. Rambo
       v.                          :
                                            :
DANIEL A. VIRTUE, Business Agent of the     :
International Brotherhood of Teamsters;      :
INTERNATIONAL BROTHERHOOD OF                :
TEAMSTERS; ABF FREIGHT SYSTEM,              :
INCORPORATED,                               :
                                            :
        Defendants.                :

## AFFIDAVIT OF DAUPHIN COUNTY,
## COMMONWEALTH OF PENNSYLVANIA, MAY 10, 2002

I, Michael W. Fritz, do hereby make the following statement my affidavit;

1.     I am one of the main Plaintiff's in <u>Albright, et. al. vs. ABF, et. at.</u>, No. 1:CV-00-0878.  I hereby reaffirm the attached affidavit, which I previously made in that matter.  (See Exhibit A)

2.     At the time Carolina freight shut down the Carlisle terminal, I was advised, as well as others, that I had five (5) years of recall rights under the Collective Bargaining Agreement and that the recall rights would extend to any successor employer.

3.     However, at no time during the ensuing period of time up to the time I contacted ABF, nor was any effort made by the Union or the Company to implement those recall rights or nor were any steps taken to insure that they had the ability to implement those recall rights.  By that, I mean, that the no effort was made to keep track of my address; no contact was made through ABF or through the Union concerning recall.

4.      I obtained employment under my recall rights as a result of word of mouth contact from other employees and as a consequence I applied to ABF and was reinstated.

5.      It is my belief that the Company and the Union sought to avoid the provisions of the Collective Bargaining Agreement as they applied to recall, because by recalling me; I was more expensive on an hourly basis than a new employee and my fringe benefits, as a recalled employee, were far more than the fringe benefits that a new employee would have been entitled to.  Accordingly, I think that the Company and the Union got together not withstanding the labor agreement to try to avoid the recall provisions and their effect (Higher wage rate, more accrued benefits.)

6.      In so far as the structure of the Carlisle terminal, both before it was shut down and after it became an ABF terminal is concerned, there are two (2) seniority measures that are involved;

        (a.)     Your company seniority; and

        (b.)     Your time in category as a driver or as a dock/ local/ terminal employee.

However, you can transfer to the over-the-road driver board from the dock and I know that and/or from the over-the-road driver board to the dock based upon you company seniority.  Accordingly, someone like Rickey Bechtel, who drove, I believe, as a yard jockey and who did other driving activities, from time to time, would be entitled to apply, based upon his company seniority, for open over-the-road driver positions on the over-the-road board.

7.      It is my understanding that economic factors, such as increased pay and increased benefits would apply to someone, such as Rickey Bechtel, if he were reinstated over the hiring of

a new employee, which would involved a lower hourly rate and with fewer fringe benefits to start.

8.    So far as I am aware, a dockman or terminal employee could apply for a position on the over the road board based upon their company (overall) seniority.

I have read the above affidavit consisting of this and ~~blind cover~~ two other pages and it is true and correct.

5-13-02
Date

_Michael W. Fritz_
Michael W. Fritz

# AFFIDAVIT OF MICHAEL FRITZ

I, Michael Fritz, hereby make this following document my affidavit in connection with the above reference litigation and provide the following information which is correct and true to the best of my knowledge, information and belief:

1.    I have reviewed the Affidavit of Daniel A. Virtue, which has been lodged in support of the Motion to Dismiss in the above referenced case.

2.    Upon reviewing the segment of the Affidavit that applies to me, I have the following information.

3.    I have been a member of Teamster Local Union 776 since May 21, 1984, with that local union in connection with my employment at Carolina Freight up until the May 21, 1995.

4.    I elected to take the lay off on May 21, 1995 based upon the representation that there was going to be continued employment in Carlisle and that there was going to be a "merger" between Carolina Freight and ABF which was in the wind.

5.    Because of my seniority, I believed I would be one of the 150 employees retained at Carlisle, but I took the lay off with the understanding that I had five year recall rights as provided for under the Collective Bargaining Agreement.

6.    I was contacted by Ray Snyder in the fall of 1998 and was told that ABF was interested in recalling some of the laid off Carlisle, PA, Carolina drivers.

7.    The labor agreement, which called for the Company and the Union to have a system of recalling drivers by seniority date, was not implemented at Carlisle. Carolina Freight drivers, including myself, who have been reinstated since 1998 were never contacted by the Company or Union concerning employment vacancies on the Board. We



PLAINTIFF'S
EXHIBIT
A

learned of the Board vacancies through word of mouth from other drivers and based upon our own efforts contacting the facility. Thus, in so far as I am aware, in terms of the labor agreement calling for a seniority based recall of laid off drivers based upon the availability of jobs at the Carlisle facility. This was not put in place by either ABF or the local Union. The labor agreement says:

> Article 5, Section 2 (c) (2)
> In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be similarly "dovetailed" by appropriate classification. If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes...

8.     I was contacted by Ray Snyder concerning possible vacant positions. Neither the Company nor the Union, had a systematic way of implementing their obligation under the Bargaining Agreement to consider laid off drivers first for vacant positions at Carlisle, PA.

9.     Based upon the information reflected by the status of the Board when I returned, it was obvious that ABF had hired no body before we inquired and brought back in the later part of 1998 on the roadside but they had, apparently, brought Carolina Freight drivers, from Philadelphia in 1996 and "dovetailed" them onto the Board with Carolina Freight seniority.

10.     When I returned, I was not given my seniority date that I was entitled to under the labor agreement, when I asked the dispatcher what number I stood on the board, he told me to just make an "X" in the space where the number is normally placed. (My name was not yet on a seniority list until later when one was posted with my name and seniority date and wrong number.)

11.     When the first seniority list was posted after my return with my name and number on it, I filed a grievance in December of 1998.

12.     My grievance followed the same grievance history and treated as Mr. Snyder's. (i.e. , it was denied as untimely by the company, referred to the Eastern Conference, it was denied by the Conference and then referred to Phil Young, Freight Director, on appeal and then referred to the NGB where it is pending at this time.)

13.     The Union Steward's and business agents are supposed to give us some advice, guidance, or direction concerning the section of the contract that should be cited, but that has never been done in my case.

14.     When I returned I was returned to the same tractors, the same trailers, and hauling the same Carolina freight.

15.     In 1995, ABF terminal and Carolina terminals in Carlisle are right next to each other after the change of operations Carolina Freight freight was run out of the ABF terminal which is located identically in Carlisle, PA, domicile.

16.     Article 5 of the Master Freight Agreement, covering over the road drivers and local cartage in Central Pennsylvania covers the seniority rights and while ordinary, for day to day grievances concerning administration of the labor agreement we have seven days from the violation to file a grievance.  However, the provisions pertaining to seniority related grievances are governed by a procedure which provides that the seniority list be posted at least twice a year and that an employee has thirty days after the posting of the list to file a grievance.

Article 5.4 (d) Posting of Seniority List
The Employer shall give the Local Union a seniority list at least every six (6) months.  The Employer shall also post a seniority list at least once every six (6) months and shall maintain a current seniority roster at the terminal.  Protest of any

employee's seniority date or position on such list must be made in writing to the Employer <u>within thirty (30) days after such seniority date or position first appears,</u> and if no protests are timely made the dates and positions are deemed correct. Any such protest which is timely made may be submitted to the grievance procedure. (Emphasis added.)

17.     I was lead to believe that the seniority issue had not been resolved at I initially returned and that the issue would be resolved by the posting of the next seniority list.

18.     As noted above, when the list was posted, I grieved promptly under the provisions governing seniority and seniority lists.

19.     The initial grievance which I have attached to my Affidavit was filed by me in December 1998 within, as noted above, within the 7 day or 30 day time frame.

20.     Each of the averments contained in this Affidavit are based upon my direct personal knowledge of the events in question.

# NMFA GRIEVANCE — Teamsters Local 776

89093

Name  MICHAEL W FRITZ          Home Phone 245-2721  Date of Hire 5/84
ress  99 BUCKTHORN DRIVE       City CARLISLE      State PA  Zip 17013
Employer  A B F

Employer's Address  CARLISLE , PA

Road ☒    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.    Date: _____

**NATURE OF GRIEVANCE:** I AM A ROAD DRIVER FOR ABF. I WAS EMPLOYED AT CFCC. ON 5/95 WAS LAYED OFF AT CARLISLE, PA TERMINAL. DIDNT RE-DOMICILE. I SHOULD HAVE FULL TERMINAL SENIORITY NOT BE PLACED AT BOTTOM OF EXTRA BOARD. I ALSO SHOULD BE GIVEN ALL MONEY OWED SINCE I HAVE BEEN REINSTATED AT ABF (DOVE TAILED INTO MY SENIORIETY SLOT)

**STEWARD'S COMMENTS:** _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Michael W Fritz_
Signature of Member Filing Grievance                    Shop Steward

☒  **YOU** must check this box if you want to attend the grievance hearings. If you request to be in attendance, **YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

Date: _____                    Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

APRIL 13, 1999

Thomas Griffith, President
Teamster Local 776
2552 Jefferson Street
Harrisburg, PA 17110


RE: National Master Freight Agreement Grievance #89093
     Michael W. Fritz/ABF Freight Systems


Dear Mr. Griffith:

     I filed factual grievance #89093 on 12/17/98 with Teamsters
Local 776.  On 01/08/99, I attended a hearing which was held at
the terminal in Carlisle, PA.  My Senoirity, was the issue of my
grievance, and as a result of what I perceive to be a "conflict of
interest" in this issue is with the representation of my Union
Steward, whom I didn't receive proper or adequate representation
from.  The Union Steward said nothing helpful on my behalf, and
furthermore, made statements contrary to my best intrest in this
case.  This case is now at a deadlock and being sent to the Employer,
and Union Secretaries of the National Grievance Committee.

     Article 7, Section 2, Grievant's Bill of Rights, in the
National Master Freight Agreement and Central Pennsylvania,  entitles
me to have my case dediced upon fairly and promptly.  I, therefore,
am requesting assurance that any Union Representative on my behalf
meets the requirements herein, and doesn't have any intrest in the
out come of my case wherein that person or persons can be directly
affected by any decision made in my behalf.

                              Sincerely Yours,

                              Michael W. Fritz
                              99 Buckthorn Drive
                              Carlisle, PA 17013


A copy of my grievance is enclosed.

## **VERIFICATION**

I, Michael W. Fritz, have reviewed the foregoing document and do hereby confirm that the forgoing statements are true and correct to the best of my knowledge, information, and belief. I make this affirmation with the knowledge that I am subject to the provisions regarding false swearing of information to authorities.

Date: 10/9/00

Michael W. Fritz, Plaintiff

# EXHIBIT G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,                          :
                                            :
            Plaintiff,                      : NO.  3:01-CV-789
                                            :      Judge Sylvia H. Rambo
      v.                                    :
                                            :
DANIEL A. VIRTUE, Business Agent of the     :
International Brotherhood of Teamsters;      :
INTERNATIONAL BROTHERHOOD OF                 :
TEAMSTERS; ABF FREIGHT SYSTEM,               :
INCORPORATED,                               :
                                            :
            Defendants.                     :

## AFFIDAVIT OF DAUPHIN COUNTY,
## COMMONWEALTH OF PENNSYLVANIA, MAY 10, 2002

I, A. Ronald Frombaugh, do hereby make the following statement my affidavit;

1.      I am one of the main Plaintiff's in <u>Albright, et. al. vs. ABF, et. at.</u>, No. 1:CV-00-0878.  I hereby reaffirm the attached affidavit, which I previously made in that matter.  (See Exhibit A)

2.      At the time Carolina freight shut down the Carlisle terminal, I was advised, as well as others, that I had five (5) years of recall rights under the Collective Bargaining Agreement and that the recall rights would extend to any successor employer.

3.      However, at no time during the ensuing period of time up to the time I contacted ABF, nor was any effort made by the Union or the Company to implement those recall rights or nor were any steps taken to insure that they had the ability to implement those recall rights.  By that, I mean, that the no effort was made to keep track of my address; no contact was made through ABF or through the Union concerning recall.

4.    I obtained employment under my recall rights as a result of word of mouth contact from other employees and as a consequence I applied to ABF and was reinstated.

5.    It is my belief that the Company and the Union sought to avoid the provisions of the Collective Bargaining Agreement as they applied to recall, because by recalling me; I was more expensive on an hourly basis than a new employee and my fringe benefits, as a recalled employee, were far more than the fringe benefits that a new employee would have been entitled to.  Accordingly, I think that the Company and the Union got together not withstanding the labor agreement to try to avoid the recall provisions and their effect (Higher wage rate, more accrued benefits.)

6.    In so far as the structure of the Carlisle terminal, both before it was shut down and after it became an ABF terminal is concerned, there are two (2) seniority measures that are involved;

　　　　(a.)    Your company seniority; and

　　　　(b.)    Your time in category as a driver or as a dock/ local/ terminal

　　　　　　　　employee.

However, you can transfer to the over-the-road driver board from the dock and I know that and/or from the over-the-road driver board to the dock based upon you company seniority.  Accordingly, someone like Rickey Bechtel, who drove, I believe, as a yard jockey and who did other driving activities, from time to time, would be entitled to apply, based upon his company seniority, for open over-the-road driver positions on the over-the-road board.

7.    It is my understanding that economic factors, such as increased pay and increased benefits would apply to someone, such as Rickey Bechtel, if he were reinstated over the hiring of

a new employee, which would involved a lower hourly rate and with fewer fringe benefits to start.

8.      So far as I am aware, a dockman or terminal employee could apply for a position on the over the road board based upon their company (overall) seniority.

I have read the above affidavit consisting of this and ~~blind cover~~ two other pages and it is true and correct.

May 17, 02
Date

A. Ronald Frombaugh
A. Ronald Frombaugh

RECEIVED MAY 2 0 2002

# AFFIDAVIT OF A. RONALD FROMBAUGH

I, A. Ronald Frombaugh, hereby make this following document my affidavit in connection with the above reference litigation and provide the following information which is correct and true to the best of my knowledge, information and belief:

1.    I have reviewed the Affidavit of Daniel A. Virtue, which has been filed in support of the Motion to Dismiss in the above referenced case.

2.    Upon reviewing the segment of the Affidavit that applies to me, I have the following information.

3.    I have been a member of Teamster's Union working in Carlisle, PA, since July 1975.

4.    Pursuant to the change of operations making Carolina Freight into a regional carrier, I was told by managers that the Carlisle terminal would be reduced to 150 employees, total, and that therefore existing employees on the board and otherwise, at the terminal, could go into other Carolina Freight locations.

5.    I elected to take a layoff and hold for Carlisle, which was one of the options given. I believed that I had sufficient seniority to remain at Carlisle.

6.    As I understand it, historically, under the Teamsters Collective Bargaining Agreement, drivers are able to follow their work, as one means of dealing with downsizing, mergers and other changes of operation, which at the same time allows them to keep seniority rights when in lay off status. The Master Freight Agreement says:

Article 5.1 (b):
Seniority shall be broken only by discharge, voluntary quit, retirement, or more than a five (5) year layoff.



7.      I took the lay off because I believed I had recall rights for the five (5) years as stated in the labor agreement.

8.      I was contacted by Wade Reall and told that he had gotten word that ABF at Carlisle, PA was accepting laid off personnel from Carolina Freight.

9.      The next day, I stopped by the Carlisle terminal and spoke with Lee Edenbough, also a former Carolina Freight employee.  He told me to contact Fort Smith, which I did.

10.     I was recalled to Carlisle, PA on November 12, 1998.

11.     The labor agreement, which called for the Company and the Union to have a system of recalling drivers by seniority date, was not implemented at Carlisle. Carolina Freight drivers, including myself, who have been reinstated since 1998 were never contacted by the Company or Union concerning employment vacancies on the Board. We learned of the Board vacancies through word of mouth from other drivers and based upon our own efforts contacting the facility. Thus, in so far as I am aware, in terms of the labor agreement calling for a seniority based recall of laid off drivers based upon the availability of jobs at the Carlisle facility.  This was not put in place by either ABF or the local Union.  The labor agreement says:

> Article 5, Section 2 (c) (2)
> In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be similarly "dovetailed" by appropriate classification.  If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes...

12.     When I returned, I was not given my seniority date that I was entitled to under the labor agreement, when I asked the dispatcher what number I stood on the board, he told me to just make an "X" in the space where the number is normally placed.  (My name was not yet on a seniority list until later when one was posted with my name and seniority date and

wrong number.)

13.     Ordinarily, calls and runs off of the board are governed by the overall seniority date.

14.     I did not file a grievance myself because I knew this grievance had been filed and I thought that once the seniority issues were addressed it would be resolved for me also.

15.     It was my belief that I would be covered under other grievances because it was the same seniority issues for all laid off Carolina employees. The grievances are under appeal, as I understand it.

16.     Each of the averments contained in this Affidavit are based upon my direct personal knowledge of the events in question.

## VERIFICATION

I, A. Ronald Frombaugh, have reviewed the foregoing document and do hereby confirm that the forgoing statements are true and correct to the best of my knowledge, information, and belief. I make this affirmation with the knowledge that I am subject to the provisions regarding false swearing of information to authorities.

Date: Oct. 07, 00

A. Ronald Frombaugh, Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,                          :
                                            :
               Plaintiff,           : NO.  3:01-CV-789
                                            :      Judge Sylvia H. Rambo
      v.                        :
                                            :
DANIEL A. VIRTUE, Business Agent of the     :
International Brotherhood of Teamsters;      :
INTERNATIONAL BROTHERHOOD OF                :
TEAMSTERS; ABF FREIGHT SYSTEM,             :
INCORPORATED,                               :
                                            :
             Defendants.              :

## AFFIDAVIT OF DAUPHIN COUNTY,
## COMMONWEALTH OF PENNSYLVANIA, MAY 10, 2002

I, Ralph A. Harris, do hereby make the following statement my affidavit;

1.     I am one of the main Plaintiff's in <u>Albright, et. al. vs. ABF, et. at.</u>, No. 1:CV-00-0878.  I hereby reaffirm the attached affidavit, which I previously made in that matter.  (See Exhibit A)

2.     At the time Carolina freight shut down the Carlisle terminal, I was advised, as well as others, that I had five (5) years of recall rights under the Collective Bargaining Agreement and that the recall rights would extend to any successor employer.

3.     However, at no time during the ensuing period of time up to the time I contacted ABF, nor was any effort made by the Union or the Company to implement those recall rights or nor were any steps taken to insure that they had the ability to implement those recall rights.  By that, I mean, that the no effort was made to keep track of my address; no contact was made through ABF or through the Union concerning recall.

4.      I obtained employment under my recall rights as a result of word of mouth contact from other employees and as a consequence I applied to ABF and was reinstated.

5.      It is my belief that the Company and the Union sought to avoid the provisions of the Collective Bargaining Agreement as they applied to recall, because by recalling me; I was more expensive on an hourly basis than a new employee and my fringe benefits, as a recalled employee, were far more than the fringe benefits that a new employee would have been entitled to.  Accordingly, I think that the Company and the Union got together not withstanding the labor agreement to try to avoid the recall provisions and their effect (Higher wage rate, more accrued benefits.)

6.      In so far as the structure of the Carlisle terminal, both before it was shut down and after it became an ABF terminal is concerned, there are two (2) seniority measures that are involved;

      (a.)    Your company seniority; and

      (b.)    Your time in category as a driver or as a dock/ local/ terminal employee.

However, you can transfer to the over-the-road driver board from the dock and I know that and/or from the over-the-road driver board to the dock based upon you company seniority.  Accordingly, someone like Rickey Bechtel, who drove, I believe, as a yard jockey and who did other driving activities, from time to time, would be entitled to apply, based upon his company seniority, for open over-the-road driver positions on the over-the-road board.

7.      It is my understanding that economic factors, such as increased pay and increased benefits would apply to someone, such as Rickey Bechtel, if he were reinstated over the hiring of

a new employee, which would involved a lower hourly rate and with fewer fringe benefits to start.

8.    So far as I am aware, a dockman or terminal employee could apply for a position on the over the road board based upon their company (overall) seniority.

I have read the above affidavit consisting of this and ~~blind cover~~ two other pages and it is true and correct.

_May 13 2002_
Date

_Ralph A. Harris_
Ralph A. Harris

# AFFIDAVIT OF RALPH A. HARRIS

I, Ralph A. Harris, hereby make this following document my affidavit in connection with the above reference litigation and provide the following information which is correct and true to the best of my knowledge, information and belief:

1.    I have reviewed the Affidavit of Daniel A. Virtue, which has been lodged in support of the Motion to Dismiss in the above referenced case.

2.    Upon reviewing the segment of the Affidavit that applies to me, I have the following information.

3.    I have been a member of Teamster Local Union 776 since September 9, 1984 and up until April 1995 with that local union in connection with my employment at Carolina Freight.

4.    In January 1995, Carolina Freight went from being a "line-haul" carrier (national) to a regional carrier.

5.    I was given two options in April 1995, one was to go to another terminal or take a layoff.

6.    I chose to take the layoff because it my understanding that I had five years recall rights at Carlisle.

7.    As I understand it, historically, under the Teamsters Collective Bargaining Agreement, drivers are able to follow their work, as one means of dealing with downsizing, mergers and other changes of operation, which at the same time allows them to keep seniority rights when in layoff status.  The Master Freight Agreement says:

Article 5.1 (b):
Seniority shall be broken only by discharge, voluntary quit, retirement, or more than a five (5) year layoff.

8.    In a conversation with William Milke, a friend of mine and an ex-Carolina



PLAINTIFF'S EXHIBIT
A

Freight employee, I learned that he was working for ABF in Carlisle. He informed me that if I contacted them, I could go back to work. He said ABF had opened the Board to its Carlisle facility.

9.     As a consequence of this conversation, I contacted the terminal at Carlisle and spoke with Lee Edenbo. I felt comfortable speaking with Mr. Edenbo because he was a Carolina employee at the same time I worked at Carolina Freight. Mr. Edenbo told me "yes, we need you, but you have to be put on a list".

10.     The labor agreement, which called for the Company and the Union to have a system of recalling drivers by seniority date, was not implemented at Carlisle. Carolina Freight drivers, including myself, who have been reinstated since 1998 were never contacted by the Company or Union concerning employment vacancies on the Board. We learned of the Board vacancies through word of mouth from other drivers and based upon our own efforts contacting the facility. Thus, in so far as I am aware, in terms of the labor agreement calling for a seniority based recall of laid off drivers based upon the availability of jobs at the Carlisle facility. This was not put in place by either ABF or the local Union. The labor agreement says:

> Article 5, Section 2 (c) (2)
> In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be similarly "dovetailed" by appropriate classification. If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes...

11.     It is my recollection that I was told that I would be put on a list and that I should wait for a telephone call.

12.     I received a telephone call within three days telling me to report on December 7, 1998.

13.    When I returned, I was not given my seniority date that I was entitled to under the labor agreement, when I asked the dispatcher what number I stood on the board, he told me to just make an "X" in the space where the number is normally placed. (My name was not yet on a seniority list until later when one was posted with my name and seniority date and wrong number.)

14.    Ordinarily, calls and runs off of the board are governed by the overall seniority date.

15.    Upon my return I filed a grievance on December 21, 1998, requesting my correct seniority date/number.

16.    Article 5 of the Master Freight Agreement, covering over the road drivers and local cartage in Central Pennsylvania, covers the seniority rights and the filing of grievances. Ordinary, for day to day grievances concerning administration of the labor agreement are to be filed within seven days from the violation. However, the provisions pertaining to seniority related grievances are governed by a procedure which provides that the seniority list be posted at least twice a year and that an employee has thirty days after the posting of the list to file a grievance.

Article 5.4 (d) Posting of Seniority List

The Employer shall give the Local Union a seniority list at least every six (6) months. The Employer shall also post a seniority list at least once every six (6) months and shall maintain a current seniority roster at the terminal. Protest of any employee's seniority date or position on such list must be made in writing to the Employer within thirty (30) days after such seniority date or position first appears, and if no protests are timely made the dates and positions are deemed correct. Any such protest which is timely made may be submitted to the grievance procedure. (Emphasis added.)

17.    I filed my grievance within the thirty day period as required by the Labor Agreement concerning grievances in a seniority matter.

18.    My grievance was presented to both the Company and Union following established procedure in presenting grievances.

19.    There was a period of time when the stewards were not signing the grievances.

20.    The Union stewards and business agents are supposed give us some advice, guidance, or direction concerning the section of the contract that should be cited, but that has never been done in my case.

21.    I have first hand knowledge that the freight that ABF was moving at the Carlisle terminal was the same freight that was moved by Carolina Freight-Carlisle, traveling to the same destinations.  Additionally, they were using the same tractors, trailers and other equipment.

22.    Each of the averments contained in this Affidavit are based upon my direct personal knowledge of the events in question.

# NMFA GRIEVANCE — Teamsters Local 776

89835

Name: Ralph A Harris          Home Phone: 717-692-4401    Date of Hire: 9-9-84

Address: 1185 Bridge Road     City: Millersburg    State: PA    Zip: 17061

Employer: ABF

Employer's Address: Carlisle PA

Road ☒    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: DEC 21 1998

**NATURE OF GRIEVANCE:** I Ralph A Harris was a road driver for CFCC in Carlisle PA. I did not redomicile to other terminal. I am reinstated at ABF Carlisle PA. I want my terminal seniority and all money owed.

**STEWARD'S COMMENTS:**

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

Signature of Member Filing Grievance: Ralph G. Harris

Shop Steward: _____

☐ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

Date: _____

Signature of Business Agent: _____

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776

90347

Name: Ralph A Harris    Home Phone 717-692-4401    Date of Hire 9-9-84

Address: 185 Bridge Road    City Millersburg    State PA    Zip 17061

Employer: ABF

Employer's Address: Carlisle PA

Road #

Dock ☑    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

Date: Oct 9 1999

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

**NATURE OF GRIEVANCE:** I am filing this grievance on the companies position stating that my grievance on being placed back in my full seniority position was filed untimely which I received a letter on 5-11-99 stating their position. I am in disagreement with this position, because the Master Freight Book states A grievance on seniority shall be filed within 30 days of the posting of the Notice of seniority. My grievance was filed in accordance with the Master Freight Agreement. I further believe that ABF is delaying a decision on my grievance, to allow the year window period to expire which will then deprive me of my rights, this is an unfair labor practice. Please be advised that it is my position that my rights are being violated, and that ABF is not dealing fairly within the guidelines of the Master Freight Agreement.

**STEWARD'S COMMENTS:** _____

---

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

Ralph A Harris
_____          _____
Signature of Member Filing Grievance                Shop Steward

☐ **YOU** must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.

**ACTION TAKEN BY BUSINESS AGENT** _____

_____

_____

Date: _____          _____
                                        Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

Name **Ralph A Harris**    Home Phone **717 642-4401**    Date of Hire **9-9-84**

Address **1851 Bridge Road**    City **Millersburg**    State **PA**    Zip **17061**

Employer **ABF**

Employer's Address _____

Road ☐    Dock ☑    Jockey ☐    City ☑    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.    Date: **9-22-00**

NATURE OF GRIEVANCE: **Wrong Terminal Seniority Placement**

**I'm filing this grievance because I am in disagreement with my terminal seniority placement 12-7-98, IT should be the same as my company seniority 9-9-84**

STEWARD'S COMMENTS: _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

**Ralph A. Harris**
Signature of Member Filing Grievance                    Shop Steward

☐    **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT _____

_____

Date: _____    _____
                                              Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET** 

## VERIFICATION

I, Ralph A. Harris, have reviewed the foregoing document and do hereby confirm that the forgoing statements are true and correct to the best of my knowledge, information, and belief. I make this affirmation with the knowledge that I am subject to the provisions regarding false swearing of information to authorities.

Date: 10-6-00

Ralph A. Harris, Plaintiff

# EXHIBIT H

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,                          :
                                            :
          Plaintiff,                   :   NO.  3:01-CV-789
                                            :        Judge Sylvia H. Rambo
     v.                               :
                                            :
DANIEL A. VIRTUE, Business Agent of the     :
International Brotherhood of Teamsters;      :
INTERNATIONAL BROTHERHOOD OF                :
TEAMSTERS; ABF FREIGHT SYSTEM,              :
INCORPORATED,                               :
                                            :
          Defendants.                  :

## AFFIDAVIT OF DAUPHIN COUNTY,
## COMMONWEALTH OF PENNSYLVANIA, MAY 10, 2002

I, Allen W. Landis, do hereby make the following statement my affidavit;

1.      I am one of the main Plaintiff's in Albright, et. al. vs. ABF, et. at., No. 1:CV-00-0878.  I hereby reaffirm the attached affidavit, which I previously made in that matter.  (See Exhibit A)

2.      At the time Carolina freight shut down the road board at Baltimore, Maryland terminal, I was advised, as well as others, that I had five (5) years of recall rights under the Collective Bargaining Agreement and that the recall rights would extend to any successor employer.

3.      However, at no time during the ensuing period of time up to the time I contacted ABF, nor was any effort made by the Union or the Company to implement those recall rights or nor were any steps taken to insure that they had the ability to implement those recall rights.  By that, I mean, that the no effort was made to keep track of my address; no contact was made through ABF or through the Union concerning recall.

4.     I obtained employment under my recall rights as a result of word of mouth contact from other employees and as a consequence I applied to ABF and was reinstated.

5.     It is my belief that the Company and the Union sought to avoid the provisions of the Collective Bargaining Agreement as they applied to recall, because by recalling me; I was more expensive on an hourly basis than a new employee and my fringe benefits, as a recalled employee, were far more than the fringe benefits that a new employee would have been entitled to. Accordingly, I think that the Company and the Union got together not withstanding the labor agreement to try to avoid the recall provisions and their effect (Higher wage rate, more accrued benefits.)

6.     In so far as the structure of the Carlisle terminal, both before it was shut down and after it became an ABF terminal is concerned, there are two (2) seniority measures that are involved;

     (a.)     Your company seniority; and

     (b.)     Your time in category as a driver or as a dock/ local/ terminal employee.

However, you can transfer to the over-the-road driver board from the dock and I know that and/or from the over-the-road driver board to the dock based upon you company seniority. Accordingly, someone like Rickey Bechtel, who drove, I believe, as a yard jockey and who did other driving activities, from time to time, would be entitled to apply, based upon his company seniority, for open over-the-road driver positions on the over-the-road board.

7.     It is my understanding that economic factors, such as increased pay and increased benefits would apply to someone, such as Rickey Bechtel, if he were reinstated over the hiring of

a new employee, which would involved a lower hourly rate and with fewer fringe benefits to start.

8.      So far as I am aware, a dockman or terminal employee could apply for a position on the over the road board based upon their company (overall) seniority.

I have read the above affidavit consisting of this and ~~blind cover~~ two (2) other pages and it is true and correct.

May 13-02
_____
Date

_Allen W. Landis_
Allen W. Landis

# AFFIDAVIT OF ALLEN W. LANDIS

I, Allen W. Landis, hereby make this following document my affidavit in connection with the above reference litigation and provide the following information which is correct and true to the best of my knowledge, information and belief:

1.    I have reviewed the Affidavit of Daniel A. Virtue that has been lodged in support of the Motion to Dismiss in the above referenced case.

2.    Upon reviewing the segment of the Affidavit which applies to me I have the following information.

3.    I have been a member of Teamster Local Union 776 since November 2, 1975, and up until September 1995 with that local union in connection with my employment at Carolina Freight.

4.    I worked at the Carlisle facility of Carolina Freight throughout that period of time and took a layoff at the Carlisle facility on or about September 1995, when the change of operations took place.

5.    At a meeting in the later part of 1994 or early 1995, we were told that the company (Carolina Freight) was working on a three phase change and that the Carlisle (Carolina Freight) Board was going to be reduced to 150 drivers from the Board which then consisted of dock and over the road drivers, amounted to 700-800 employees, including casuals.

6.    Based upon my seniority, I believed I would be one of the 150 drivers that would remain at Carlisle, PA.

7.    a.) However, during the September of 1995 Carolina Freight merged with ABF..



b.) At that time I was given the following options: layoff, transfer to Allentown, PA, transfer to Kutztown, PA, or transfer to Baltimore, MD. At that time, I elected to take the transfer to Baltimore, MD, I could not afford to take a layoff.

9. While at the Baltimore terminal, I was informed that there would be two seniority lists, one active and one inactive. It was my understanding that we would be recalled from these lists. To the best of my knowledge, this did not happen.

10. At the time of shut down of the Baltimore terminal in September 1995, I did indicate, among other things, my desire to return to the Carlisle facility.

11. As I understand it, historically, under the Teamsters Collective Bargaining Agreement, drivers are able to follow their work, as one means of dealing with downsizing, mergers and other changes of operation, which at the same time allows them to keep seniority rights when in layoff status. The Master Freight Agreement says:

Article 5.1 (b):
Seniority shall be broken only by discharge, voluntary quit, retirement, or more than a five (5) year layoff.

12. The labor agreement, which called for the Company and the Union to have a system of recalling drivers by seniority date, was not implemented at Carlisle. Carolina Freight drivers, including myself, who have been reinstated since 1998 were never contacted by the Company or Union concerning employment vacancies on the Board. We learned of the Board vacancies through word of mouth from other drivers and based upon our own efforts contacting the facility. Thus, in so far as I am aware, in terms of the labor agreement calling for a seniority based recall of laid off drivers based upon the availability of jobs at the Carlisle facility. This was not put in place by either ABF or the local Union. The labor agreement says:

Article 5, Section 2 (c) (2)
In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be similarly "dovetailed" by appropriate classification. If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes...

13.    In late 1998 or early 1999, I learned from another driver, Lawrence Welker, that drivers were being recalled at the Carlisle facility.

14.    I had contacted the Company concerning recall by ABF two weeks prior to my conversation with Mr. Welker, and was informed by ABF that they were not recalling drivers, nor did they have any plans to recall.

15.    Lawrence Welker gave me information concerning who to contact about recall. I contacted Fort Smith, AK, and they told be that the only way I could be recalled was to write a letter requesting recall. They told me exactly what to write in the letter. At the time, I did not have access to the Agreement, but they told me what section of the Agreement I had to put in the letter to be recalled. I was informed that the only way I could be recalled was to include the section number. I was given no choice.

16.    I was recalled on January 15, 1999.

17.    At no time did was I told, nor did I believe, I was giving up any of my rights as to my status in Carlisle.

18.    At the time of layoff, it was my belief that I had rights to recall for up to five (5) years.

19.    It was my belief that my contract also provided for me to follow my freight. In fact, since I have returned to the Carlisle facility; I am able to indicate that the freight we are running at Carlisle, ABF, is the same Carolina freight out of Carlisle.

20.    At the time of my layoff in 1995, the Carlisle work went to two different terminals, Baltimore and Philadelphia. Insofar as I am aware, the freight that was run out of Carlisle up to the spring of 1995, was split between Baltimore and Philadelphia. It is for these two reasons, I believed I should have been able to follow my work and had layoff recall rights at ABF Carlisle.

21.    When I returned, I was not given my seniority date that I was entitled to under the labor agreement, when I asked the dispatcher was number I stood on the board, he told me to just make an "X" in the space where the number is normally placed. (My name was not yet on a seniority list until later when one was posted with my name and seniority date and wrong number.)

22.    Ordinarily, calls and runs off of the board are governed by the overall seniority number.

23.    The effect of the way we were brought back avoided giving us our proper seniority date. We were not assigned a seniority date at the time we returned. We were placed at the bottom of the Board, without a seniority date, based on the time when we clocked in for the first time coming back from a layoff and referred out after ABF drivers at Carlisle. I tried to ascertain what my seniority date on the Board was going to be and could not obtain an answer or clarification from the dispatcher.

24.    When a new seniority list was posted, within the thirty day period allowed for a seniority grievance, I filed one.

25.    Every time a seniority list was posted I have promptly and timely filed a grievance over the fact that I have not been assigned the correct seniority date/number and at no time have I ever received a decision from the local Union or ABF concerning that.

26.    Initially when I returned to work, I filed a grievance, but I withdrew it because I did not know what my seniority date would be.

27.    I was lead to believe that the seniority number issue would be clarified by the posting of the next seniority list.

28.    When I tried to discuss the issue with David Virtue, I was told that "you will never get your seniority back". This was told to me at a grievance hearing with representatives of ABF present, as well as, what I believed to be attorneys for ABF.

29.    At this meeting, Daniel Virtue said that he would not sign, nor would he advocate for this issue on my behalf.

30.    After this meeting, I filed my second grievance.

31.    The second grievance, which I have attached to my Affidavit, was also filed, by me, within the 30-day time frame.

32.    The stewards on the job would not sign the grievance at the time I presented it to them.

33.    The grievances were presented to both the Company and Union following established procedure for presenting the grievance in question in 1998.

34.    There was a period of time when the stewards were not signing the grievances and all we have for records was the grievance as we submitted it.

35.    The Union stewards and business agents are supposed give us some advice, guidance, or direction concerning the section of the contract that should be cited, but that has never been done in my case.

36.    When I returned, I was not given my seniority date that I was entitled to under the labor agreement, when I asked the dispatcher was number I stood on the board, he told me to just make an "X" in the space where the number is normally placed.  (My name was not yet on a seniority list until later when one was posted with my name and seniority date and wrong number.)

37.    My grievance followed the same grievance history and treated as Mr. Snyder's. (i.e. , it was denied as untimely by the company, referred to the Eastern Conference, it was denied by the Conference and then referred to Phil Young, Freight Director, on appeal and then referred to the NGB where it is pending at this time.

39.    Each of the averments contained in this Affidavit are based upon my direct personal knowledge of the events in question.

# ★A GRIEVANCE — Teamsters Local 776

92842

ALLEN W. LANDIS    Home Phone 258-3886    Date of Hire 11-3-75

...ss 506 CRISWELL DR    City BOILING SPRINGS  State PA   Zip 1700

...ployer   A.B.F.

Employer's Address   CARLISLE, PA.

Road ☒    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date:_____

18 56

6 54

**NATURE OF GRIEVANCE:** I AM FILING THIS GRIEVANCE AGAINST THE SENIORITY LIST WHICH IS DATED 9-27-99 AND POSTED 9-28-99. AT THE A.B.F. TERMINAL IN CARLISLE, PA. I AM FILING UNDER ARTICAL #5 SECTION 4 (D) PROTESTING THAT I AM NOT SHOWN ON SUCH LIST IN MY RIGHTFUL SENIORITY POSITION. I WAS A LAID OFF CAROLINA FREIGHT (A.B.F.) EMPLOYEE AND WAS CALLED BACK AT A.B.F. UNDER ARTICLE #5 SECTION 5 TO CIRCUMVENT CALLING ME BACK UNDER ARTICLE #5 SECTION 2. I AM REQUESTING BE PLACED IN MY CORRECT SENIORITY POSITION AND FOR ANY MONEY DUE ME.

**STEWARD'S COMMENTS:** _____

_____

_____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Allen W. Landis_    _Ron Aiche_
Signature of Member Filing Grievance        Shop Steward

☒ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _N/C Per Case R-38-99_

_____

_____

Date: _____        _____
                                              Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

## INSTRUCTIONS ON BACK OF YELLOW SHEET

# NMFA GRIEVANCE — Teamsters Local 776

92832

Name: ALLEN W LANDIS    Home Phone: 258-3886    Date of Hire: 11-3-75

Address: 506 CRISWELL DR.    City: BOILING SPRINGS    State: PA.    Zip: 17007

Employer: ABF FREIGHT

Employer's Address: CARLISLE, PA.

Road [X]    Dock [ ]    Jockey [ ]    City [ ]    Iron and Steel [ ]    Mechanic-Office [ ]    Miscellaneous [ ]

Date: _____

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

NATURE OF GRIEVANCE: ON OR ABOUT 3-4-99 I FILED A GREVANCE ON THE ISSUE OF MY SENIORITY. ON OR ABOUT JANUARY, 1999, A LOCAL HEARING WAS CONVENED WHERE IT WAS DECIDED TO DOCKET THIS GREVANCE FOR EASTERN CONFERENCE. ON OR ABOUT 81 DAYS LATER, A HEARING WAS SCHEDULED, AND THE BUSINESS AGENT, MR. VIRTUE. STATED THAT THE GRIEVANCE WERE UNTIMELY. I APPEALED THIS ISSUE OF UNTIMELINESS AND ADDITIONALLY FILED A SECOND GRIEVANCE, SEE ATTACHED LETTER FROM MR. VIRTUE DATED APRIL 13, WHEREIN HE STATES THAT THE ONLY ISSUE ON APPEAL IS UNTIMELINESS. AS A RESULT, I WENT TO THE APPEAL AT THE JOINT EASTERN CONFERENCE, WHERE MY ENTIRE GRIEVANCE, INCLUDING THE ISSUE OF SENIORI WAS DISPOSED OF WITHOUT PROPER NOTICE, HEARING, DUE PROCESS, AND PREPARATION. MY SENIOR ISSUE WAS NOT PROPERLY DISPOSED OF. MY SECOND GRIEVANCE WAS ALSO UNLAWFULLY DECIDED AT JOINT EASTERN CONFERENCE BECAUSE IT WAS NOT AT THE APPEAL STAGE AT THAT TIME. THERE THIS GRIEVANCE IS ON THE IRREGULARITY, FAULTY PROCEDUR, AND FAILURE OF THE UNION AND COMPANY TO FOLLOW CONTRACT GRIEVANCE PROCEDURES TO DECISION IN MY GRIEVFUCE, I THEREFORE, REQUEST MY GRIEVANCE ON SENIORITY BE REINSTATED AND PROPERLY PROCESSED. ATTACHMENTS — LETTER DATED 4-13-99 FROM MR. VIRTUE. LETTER DATED 5-11-99 DISPOSITION — STEWART COMMENTS:

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Allen W Landis_    _G Tom_
Signature of Member Filing Grievance    Shop Steward

[ ] **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT _____

_____

_____

Date: _____    _____
    Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776

90621

Name __ALLEN W. LANDIS__   Home Phone __717-258-3886__ Date of Hire __11-3-75__

Address __506 CRISWELL DR.__   City __BOILING SPRINGS__ State __PA.__ Zip __17007__

Employer __~~ABF~~ ABF FREIGHT__

Employer's Address __CARLISLE, PA.__

Road ☒   Dock ☐   Jockey ☐   City ☐   Iron and Steel ☐   Mechanic-Office ☐   Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _____  73 46

**NATURE OF GRIEVANCE:** I AM FILING THIS GRIVENCE ON THE COMPANIES POSITION STATING THAT MY GREIVENCE ON BEING PLACED BACK IN MY FULL SEN IORITY POSITION WAS FILED ON TIMELY WHICH I RECEIVED A LETTER ON 4-13-STATING THERE POSITION. I AM IN DISAGREEMENT WITH THIS POSITION BECA THE MASTER FREIGHT BOOK, STATES, "A GREVANCE ON SENIORITY SHAL BE FILED WHITHIN 30 DAYS OF THE POSTING OF THE NOTICE OF SENIORI MY GRIVENCE WAS FILED IN ACCORDANCE WITH THE MASTER FREIGHT AGREEMEN I FOTHER BELIEVE THAT ABF IS DELAYING A DECISION ON MY GREVANCE, TO ALLOW THE 5 YEAR WINDOW PERIOD TO EXPIRE, WHICH WILL THEN DEPRIVE ME OF MY RIGHTS. THIS IS AN UNFAIR LABOR PRACTICE. PLEASE BE ADVISE THAT IT IS MY POSITION THAT MY RIGHTS ARE BEING VILATED, AND THAT ABF IS NOT DEALING FAIRLY WITHIN THE GUIDELINES OF THE MASTER FREIGHT AGREEME

**STEWARD'S COMMENTS:** _____

_____

_____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_____   _____
Signature of Member Filing Grievance         Shop Steward

☒ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

_____

_____

Date: _____        _____
                                              Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776

93402

Name *ALLEN W LANDIS*

Home Phone *717-258-3886* Date of Hire *11-2-75*

ess *506 CRISWELL DR.* City *BOILING SPRINGS* State *PA-* Zip *1700?*

Employer *A.B.F. FREIGHT.*

Employer's Address *CARLISLE, PA-*

Road ☒    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _____

**NATURE OF GRIEVANCE:** *I AM FILING THIS GRIEVANCE AGAINST THE SENIORITY LIST THAT IS POSTED AT A.B.F. CARLISLE, PA. TERMINAL DATED 6-13-00. I AM NOT IN MY CORRECT SENIORITY POSITION ON THIS LIST. MY CLAIM IS TO BE PLACED IN MY CORRECT SENIORITY POSITION AND FOR ANY MONEY DUE ME. (MY CORRECT POSTION BEING 2-75.)*

**STEWARD'S COMMENTS:** _____

_____

_____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_____
Signature of Member Filing Grievance

_____
Shop Steward

☒ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

_____

_____

Date: _____

_____
Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

## INSTRUCTIONS ON BACK OF YELLOW SHEET

# NMFA GRIEVANCE — Teamsters Local 776

85060

Name ALLEN W LANDIS    Home Phone 258-3886 Date of Hire 11-3-75

Address 506 CRISWELL DR.    City BOILING SPRINGS State PA. Zip 17007

Employer ABF FREIGHT

Employer's Address CARLISLE, PA.

Road ☒    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _____ 19 04

NATURE OF GRIEVANCE: I WAS LAYED OFF AT BALTIMORE, MD. BY ABF. DUE TO THE CAROLINA — ABF MERGER. NOW I AM BACK TO WORK FOR ABF AT CARLISLE, PA.. I WAS GIVEN ALL MY COMPANTY SENIORITY, BUT NOT MY TERMINAL SENIORITY. I WANT ALL MY SENIOR

STEWARD'S COMMENTS: _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Allen W Landis_
Signature of Member Filing Grievance

_____
Shop Steward

☒ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT _____

Date: _____    _____
Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776

94584

Name ALLEN W LANDIS   Home Phone 717-258-7886   Date of Hire 11-3-75

Address 506 CRISWELL DR   City BOILING SPRINGS   State PA   Zip 17007

Employer ABF

Employer's Address CARLISLE, PA.

Road ☒   Dock ☐   Jockey ☐   City ☐   Iron and Steel ☐   Mechanic-Office ☐   Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _____

NATURE OF GRIEVANCE: I AM GRIEVING POSTED SENIOURTY LIST : I WAS PUT IN POSITION 631 WHIT A START TIME OF JAN-15-99. WHEN I SHOULD BE PUT IN MY POSITION THAT NOV-3-75 SHOULD PUT ME.

STEWARD'S COMMENTS: MY CLAME IS TO BE PUT IN MY CORRCT POSITION AND ANY MONEY DUE ME.

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Allen W Landis_
Signature of Member Filing Grievance

_____
Shop Steward

☒ YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.

ACTION TAKEN BY BUSINESS AGENT _____

_____

_____

Date: _____

_____
Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776

93402

**Name** ALLEN W LANDIS

Home Phone 717-258-3886  Date of Hire 11-2-75

s 506 CRISWELL DR.  City BOILING SPRINGS  State PA-  Zip 17007

**Employer** A.B.F. FREIGHT

**Employer's Address** CARLISLE, PA-

Road ☒    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _____

**NATURE OF GRIEVANCE:** I AM FILING THIS GRIEVANCE AGAINST THE SENIORITY LIST THAT IS POSTED AT A.B.F. CARLISLE, PA. TERMINAL DATED 6-13-00. I AM NOT IN MY CORRECT SENIORITY POSITION ON THIS LIST. MY CLAIM IS TO BE PLACED IN MY CORRECT SENIORITY POSITION AND FOR ANY MONEY DUE ME. (MY CORRECT POSITION BEING 2-75.)

**STEWARD'S COMMENTS:** _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Allen W Landis_
Signature of Member Filing Grievance

_T Thompson_
Shop Steward

☒ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

_____

_____

Date: _____

_____
Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

## INSTRUCTIONS ON BACK OF YELLOW SHEET

## **VERIFICATION**

I, Allen W. Landis, have reviewed the foregoing document and do hereby confirm that the forgoing statements are true and correct to the best of my knowledge, information, and belief. I make this affirmation with the knowledge that I am subject to the provisions regarding false swearing of information to authorities.

Date: 10-8-00

_____
Allen W. Landis, Plaintiff

# EXHIBIT I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,                              :
                                                :
            Plaintiff,                          : NO.  3:01-CV-789
                                                :        Judge Sylvia H. Rambo
      v.                                        :
                                                :
DANIEL A. VIRTUE, Business Agent of the         :
International Brotherhood of Teamsters;          :
INTERNATIONAL BROTHERHOOD OF                    :
TEAMSTERS; ABF FREIGHT SYSTEM,                  :
INCORPORATED,                                   :
                                                :
            Defendants.                         :

## AFFIDAVIT OF DAUPHIN COUNTY,
## COMMONWEALTH OF PENNSYLVANIA, MAY 10, 2002

I, Lowell McGuire, do hereby make the following statement my affidavit;

1.      I am one of the main Plaintiff's in <u>Albright, et. al. vs. ABF, et. at.</u>, No. 1:CV-00-0878.  I hereby reaffirm the attached affidavit, which I previously made in that matter.  (See Exhibit A)

2.      At the time Carolina freight shut down the Carlisle terminal, I was advised, as well as others, that I had five (5) years of recall rights under the Collective Bargaining Agreement and that the recall rights would extend to any successor employer.

3.      However, at no time during the ensuing period of time up to the time I contacted ABF, nor was any effort made by the Union or the Company to implement those recall rights or nor were any steps taken to insure that they had the ability to implement those recall rights.  By that, I mean, that the no effort was made to keep track of my address; no contact was made through ABF or through the Union concerning recall.

4.    I obtained employment under my recall rights as a result of word of mouth contact from other employees and as a consequence I applied to ABF and was reinstated.

5.    It is my belief that the Company and the Union sought to avoid the provisions of the Collective Bargaining Agreement as they applied to recall, because by recalling me; I was more expensive on an hourly basis than a new employee and my fringe benefits, as a recalled employee, were far more than the fringe benefits that a new employee would have been entitled to.  Accordingly, I think that the Company and the Union got together not withstanding the labor agreement to try to avoid the recall provisions and their effect (Higher wage rate, more accrued benefits.)

6.    In so far as the structure of the Carlisle terminal, both before it was shut down and after it became an ABF terminal is concerned, there are two (2) seniority measures that are involved;

    (a.)    Your company seniority; and

    (b.)    Your time in category as a driver or as a dock/ local/ terminal employee.

However, you can transfer to the over-the-road driver board from the dock and I know that and/or from the over-the-road driver board to the dock based upon you company seniority.  Accordingly, someone like Rickey Bechtel, who drove, I believe, as a yard jockey and who did other driving activities, from time to time, would be entitled to apply, based upon his company seniority, for open over-the-road driver positions on the over-the-road board.

7.    It is my understanding that economic factors, such as increased pay and increased benefits would apply to someone, such as Rickey Bechtel, if he were reinstated over the hiring of

a new employee, which would involved a lower hourly rate and with fewer fringe benefits to start.

      8.     So far as I am aware, a dockman or terminal employee could apply for a position on the over the road board based upon their company (overall) seniority.

      I have read the above affidavit consisting of this and ~~blind cover~~ two (2) other pages and it is ^true and correct.

_5-13-2002_
Date

_Lowell C McGuire_
Lowell McGuire

# AFFIDAVIT OF LOWELL C. MCGUIRE

I, Lowell C. McGuire, hereby make this following document my affidavit in connection with the above reference litigation and provide the following information which is correct and true to the best of my knowledge, information and belief:

1.      I have reviewed the Affidavit of Daniel A. Virtue, which has been lodged in support of the Motion to Dismiss in the above referenced case.

2.      Upon reviewing the segment of the Affidavit that applies to me, I have the following information.

3.      I have been a member of Teamster Local Union 776 since March 19, 1973 and since February 12, 1984 at Carlisle with that local union in connection with my employment at Carolina Freight.

4.      On May 23, 1995, I was offered the option of leaving Carlisle to go to other Carolina facilities who were running the Carolina freight or a layoff.  I took the layoff because it was my understanding that I had five (5) years of recall rights to Carlisle, PA.

5.      As I understand it, historically, under the Teamsters Collective Bargaining Agreement, drivers are able to follow their work, as one means of dealing with downsizing, mergers and other changes of operation, which at the same time allows them to keep seniority rights when in layoff status.  The Master Freight Agreement says:

> Article 5.1 (b):
> Seniority shall be broken only by discharge, voluntary quit, retirement, or more than a five (5) year layoff.

6.      In 1998, I heard it through the grapevine that ABF was accepting laid off drivers for the Carlisle terminal.  At that time, I contacted Lee Edenbo at the Carlisle terminal concerning a recall.

PLAINTIFF'S EXHIBIT

A

7.      Mr. Edenbo told me to contact Fort Smith, AK, which I did. They in turn sent me paperwork concerning my recall to work.

8.      I received paperwork recalling me on February 11, 1999.

9.      The labor agreement, which called for the Company and the Union to have a system of recalling drivers by seniority date, was not implemented at Carlisle. Carolina Freight drivers, including myself, who have been reinstated since 1998 were never contacted by the Company or Union concerning employment vacancies on the Board. We learned of the Board vacancies through word of mouth from other drivers and based upon our own efforts contacting the facility. Thus, in so far as I am aware, in terms of the labor agreement calling for a seniority based recall of laid off drivers based upon the availability of jobs at the Carlisle facility. This was not put in place by either ABF or the local Union. The labor agreement says:

Article 5, Section 2 (c) (2)
In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be similarly "dovetailed" by appropriate classification. If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes...

10.     When I returned, I was not given my seniority date that I was entitled to under the labor agreement, when I asked the dispatcher what number I stood on the board, he told me to just make an "X" in the space where the number is normally placed. (My name was not yet on a seniority list until later when one was posted with my name and seniority date and wrong number.)

11.     Ordinarily, calls and runs off of the Board are governed by seniority date.

12.     When the seniority list was posted, that included my name, I filed a grievance, and in so far as I was aware, I filed it within the thirty (30) day period.

13.    Article 5 of the Master Freight Agreement, covering over the road drivers and local cartage in Central Pennsylvania, covers the seniority rights and the filing of grievances. Ordinary, for day to day grievances concerning administration of the labor agreement are to be filed within seven days from the violation.  However, the provisions pertaining to seniority related grievances are governed by a procedure which provides that the seniority list be posted at least twice a year and that an employee has thirty days after the posting of the list to file a grievance.

Article 5.4 (d) Posting of Seniority List
The Employer shall give the Local Union a seniority list at least every six (6) months. The Employer shall also post a seniority list at least once every six (6) months and shall maintain a current seniority roster at the terminal.  Protest of any employee's seniority date or position on such list must be made in writing to the Employer within thirty (30) days after such seniority date or position first appears, and if no protests are timely made the dates and positions are deemed correct.  Any such protest which is timely made may be submitted to the grievance procedure. (Emphasis added.)

14.    My grievance followed the same grievance history and treated as Mr. Snyder's. (i.e. , it was denied as untimely by the company, referred to the Eastern Conference, it was denied by the Conference and then referred to Phil Young, Freight Director, on appeal and then referred to the NGB where it is pending at this time.)

15.    Each of the averments contained in this Affidavit are based upon my direct personal knowledge of the events in question.

# NMFA GRIEVANCE — Teamsters Local 776

90657

Name _Lowell C McGuire_    Home Phone _(717) 957-3653_ Date of Hire _Feb-11-99_

Address _13 Dieter Dr_    City _Marysville_    State _PA_    Zip _17053_

Employer _ABF_

Employer's Address _Carlisle, Pennsylvania_

Road ☒    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.    Date: _____    13 1

20 0

**NATURE OF GRIEVANCE:** _I was on The Lay OFF list, For Terminal Closing in Carlisle, Pennsylvania_

CE

_On February 11, 1999 I was Called back to Work And NOT put in my proper Seniority Slot on The board._

_I request That I be done Tailed Into my Correct spot, And be paid All money due me._

**STEWARD'S COMMENTS:** _____

**In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.**

_Lowell C McGuire_
Signature of Member Filing Grievance    _____
Shop Steward

☐ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

_Ar-5_

Date: _____    _____
Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

## **VERIFICATION**

I, Lowell C. McGuire, have reviewed the foregoing document and do hereby confirm that the forgoing statements are true and correct to the best of my knowledge, information, and belief. I make this affirmation with the knowledge that I am subject to the provisions regarding false swearing of information to authorities.

Date: 10-6-2000

Lowell C. McGuire, Plaintiff

# EXHIBIT J

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,                              :
                                                :
            Plaintiff,                          : NO.  3:01-CV-789
                                                :      Judge Sylvia H. Rambo
      v.                                        :
                                                :
DANIEL A. VIRTUE, Business Agent of the         :
International Brotherhood of Teamsters;          :
INTERNATIONAL BROTHERHOOD OF                     :
TEAMSTERS; ABF FREIGHT SYSTEM,                   :
INCORPORATED,                                    :
                                                :
            Defendants.                          :

## AFFIDAVIT OF DAUPHIN COUNTY,
## COMMONWEALTH OF PENNSYLVANIA, MAY 10, 2002

I, Walter R. Minich, do hereby make the following statement my affidavit;

1.      I am one of the main Plaintiff's in <u>Albright, et. al. vs. ABF, et. at.</u>, No. 1:CV-00-0878.  I hereby reaffirm the attached affidavit, which I previously made in that matter.  (See Exhibit A)

2.      At the time Carolina freight shut down the Carlisle terminal, I was advised, as well as others, that I had five (5) years of recall rights under the Collective Bargaining Agreement and that the recall rights would extend to any successor employer.

3.      However, at no time during the ensuing period of time up to the time I contacted ABF, nor was any effort made by the Union or the Company to implement those recall rights or nor were any steps taken to insure that they had the ability to implement those recall rights.  By that, I mean, that the no effort was made to keep track of my address; no contact was made through ABF or through the Union concerning recall.

4.      I obtained employment under my recall rights as a result of word of mouth contact from other employees and as a consequence I applied to ABF and was reinstated.

5.      It is my belief that the Company and the Union sought to avoid the provisions of the Collective Bargaining Agreement as they applied to recall, because by recalling me; I was more expensive on an hourly basis than a new employee and my fringe benefits, as a recalled employee, were far more than the fringe benefits that a new employee would have been entitled to.  Accordingly, I think that the Company and the Union got together not withstanding the labor agreement to try to avoid the recall provisions and their effect (Higher wage rate, more accrued benefits.)

6.      In so far as the structure of the Carlisle terminal, both before it was shut down and after it became an ABF terminal is concerned, there are two (2) seniority measures that are involved;

(a.)    Your company seniority; and

(b.)    Your time in category as a driver or as a dock/ local/ terminal employee.

However, you can transfer to the over-the-road driver board from the dock and I know that and/or from the over-the-road driver board to the dock based upon you company seniority.  Accordingly, someone like Rickey Bechtel, who drove, I believe, as a yard jockey and who did other driving activities, from time to time, would be entitled to apply, based upon his company seniority, for open over-the-road driver positions on the over-the-road board.

7.      It is my understanding that economic factors, such as increased pay and increased benefits would apply to someone, such as Rickey Bechtel, if he were reinstated over the hiring of

a new employee, which would involved a lower hourly rate and with fewer fringe benefits to start.

     8.     So far as I am aware, a dockman or terminal employee could apply for a position on the over the road board based upon their company (overall) seniority.

     I have read the above affidavit consisting of this and ~~blind cover~~ two (2) other pages and it is true and correct.

May 17, 2002
_____
Date

Walter R. Minich
_____
Walter R. Minich

# AFFIDAVIT OF WALTER R. MINICH

I, Walter R. Minich, hereby make this following document my affidavit in connection with the above reference litigation and provide the following information which is correct and true to the best of my knowledge, information and belief:

1.  I have reviewed the Affidavit of Daniel A. Virtue, which has been lodged in support of the Motion to Dismiss in the above referenced case.

2.  Upon reviewing the segment of the Affidavit that applies to me, I have the following information.

3.  I have been a member of Teamster Local Union 776 since 1975 and up until September 22, 1995 in that local union in connection with my employment at Carolina Freight in Carlisle.

4.  In January 1995, Carolina went from being a "line-haul" carrier (national) to a regional carrier.

5.  As a result of the change of operations to a regional carrier in the spring of 1995, I was told by managers that the Carlisle terminal would be reduced to 150 employees, total, and that therefore existing employees on the board and otherwise, at the terminal, could bid into other Carolina Freight locations.  ABF managers were present at this meeting and passed out applications.

6.  When I learned that the Board in Carlisle was going to be reduced in size, in May of 1995, I followed my Carolina work to Baltimore, where I worked until September 22, 1995, when I was laid off pursuant to the September 25, 1995, change of operations involving Carolina Freight and ABF.

7.  I worked at the Baltimore, MD, Carolina Freight terminal from May 1995 and



PLAINTIFF'S EXHIBIT

A

September 1995.

8.       After I was laid off in September 1995, in 1998-1999 I recall speaking with Donald McDade concerning information in the "grapevine". I had heard that ABF opened up the Carlisle board.

9.       I was told to contact Fort Smith, AK, to be given recall.

10.      As I understand it, historically, under the Teamsters Collective Bargaining Agreement, drivers are able to follow their work, as one means of dealing with downsizing, mergers and other changes of operation, which at the same time allows them to keep seniority rights when in layoff status. The Master Freight Agreement says:

> Article 5.1 (b):
> Seniority shall be broken only by discharge, voluntary quit, retirement, or more than a five (5) year layoff.

11.      The labor agreement, which called for the Company and the Union to have a system of recalling drivers by seniority date, was not implemented at Carlisle. Carolina Freight drivers, including myself, who have been reinstated since 1998 were never contacted by the Company or Union concerning employment vacancies on the Board. We learned of the Board vacancies through word of mouth from other drivers and based upon our own efforts contacting the facility. Thus, in so far as I am aware, in terms of the labor agreement calling for a seniority based recall of laid off drivers based upon the availability of jobs at the Carlisle facility. This was not put in place by either ABF or the local Union. The labor agreement says:

> Article 5, Section 2 (c) (2)
> In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be similarly "dovetailed" by appropriate classification. If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes...

12.      This was not done in my case. All the information I received, I found through my

own telephone calls and conversations.

13.    I returned to work on December 13, 1998.

14.    When I returned, I was not given my seniority date that I was entitled to under the labor agreement, when I asked the dispatcher what number I stood on the board, he told me to just make an "X" in the space where the number is normally placed.  (My name was not yet on a seniority list until later when one was posted with my name and seniority date and wrong number.)

15.    Ordinarily, calls and runs off of the board are governed by the overall seniority number.

16.    I filed my grievance on December 30, 1998, within seven (7) days of the posting of the first seniority list which had a seniority date assigned to me.

17.    Article 5 of the Master Freight Agreement, covering over the road drivers and local cartage in Central Pennsylvania, covers the seniority rights and the filing of grievances. The provisions pertaining to seniority related grievances are governed by a procedure which provides that the seniority list be posted at least twice a year and that an employee has thirty days after the posting of the list to file a grievance.

> Article 5.4 (d) Posting of Seniority List
> The Employer shall give the Local Union a seniority list at least every six (6) months. The Employer shall also post a seniority list at least once every six (6) months and shall maintain a current seniority roster at the terminal.  Protest of any employee's seniority date or position on such list must be made in writing to the Employer within thirty (30) days after such seniority date or position first appears, and if no protests are timely made the dates and positions are deemed correct.  Any such protest which is timely made may be submitted to the grievance procedure. (Emphasis added.)

18.    My grievance was presented to both the Company and Union following established procedure in presenting grievances.

19.    There was a period of time when the stewards were not signing the grievances

and all we have for records was the grievance as we submitted it.

20.    The Union stewards and business agents are supposed give us some advice, guidance, or direction concerning the section of the contract that should be cited, but that has never been done in my case.

21.    My grievance followed the same grievance history and treated as Mr. Snyder's. (i.e. , it was denied as untimely by the company, referred to the Eastern Conference, it was denied by the Conference and then referred to Phil Young, Freight Director, on appeal and then referred to the IRB where it is pending at this time.)

22.    Each of the averments contained in this Affidavit are based upon my direct personal knowledge of the events in question.

# NMFA GRIEVANCE — Teamsters Local 776

93425

Name WALTER R MENICH    Home Phone 717-582-4080    Date of Hire 7/7/75

Address 23 PERRAH ST RD P.O. Box 303    City SHERMANS DALE    State PA    Zip 17094

Employer    ABF

Employer's Address    CARLISLE PA

Road ☑    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: JUNE 16, 2000

3 ☒

NATURE OF GRIEVANCE: I AM PROTESTING THE SENIORITY LIST DATED JUNE 13, 2000 POSTED AT THE CARLISLE PA TERMINAL. UNDER ARTICLE 5, SECTION 4B I AM REQUESTING TO BE PUT IN MY PROPER SENIORITY POSITION AND ANY BENEFITS DUE TO ME BE RESTORED OR PAID

4 31 ☒

STEWARD'S COMMENTS: _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_____    _____
Signature of Member Filing Grievance    Shop Steward

☐    YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.

ACTION TAKEN BY BUSINESS AGENT _____

Date: _____    _____
Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776          89100

Walter R Minich     Home Phone 717-582-4090  Date of Hire 7/7/75
Address 23 Pesepay St Rd P.O. Box 303  City Shermans Dale State PA  Zip 17090
Employer ABF

Employer's Address Carlisle, PA

Road ☒     Dock ☐     Jockey ☐     City ☐     Iron and Steel ☐     Mechanic-Office ☐     Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.          Date: March 6, 2000

NATURE OF GRIEVANCE: I am Protesting The Seniority List Dated March 2, 2000 Posted At The Carlisle Pa Terminal. Under Article 5, Section 4.D. I am Requesting Be Pun In my Proper Company Seniority Position And Any Benefits Due To Me Be Restored Or Paid

STEWARD'S COMMENTS:

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_____
Signature of Member Filing Grievance

_____
Shop Steward

☐  **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT _____

_____

_____          Date: _____

_____
Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

INSTRUCTIONS ON BACK OF YELLOW SHEET

# NMFA GRIEVANCE — Teamsters Local 776          93424

Walter R. Mensch          Home Phone 717-583-4084   Date of Hire 7/7/75

Address 93 Pisgah St Rd P.O. Box 303          City Shermans Dale   State Pa   Zip 17056

Employer ABF

Employer's Address Carlisle, Pa

Road ☑   Dock ☐   Jockey ☐   City ☐   Iron and Steel ☐   Mechanic-Office ☐   Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.          Date: July 4, 2000

NATURE OF GRIEVANCE: I am protesting the Seniority List Dated June 29, 2000 Posted at the Carlisle, Pa Terminal Under Article 5, Section 4B I am requesting to Be Put in my proper Seniority Position and any Benefits Due to me Be Restored or Paid.

STEWARD'S COMMENTS:

**In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.**

Signature of Member Filing Grievance                    Shop Steward

☐   **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT _____

Date: _____          Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776          89098

Name _Walter R Minich_          Home Phone _717-582-4080_ Date of Hire _7/7/75_

ess _23 Pheasant Rd RD, Box 303_          City _Shermans Dale_ State _Pa_     Zip _17090_

Employer _ABF_

Employer's Address _Carlisle, Pa_

Road ☒          Dock ☐          Jockey ☐          City ☐          Iron and Steel ☐          Mechanic-Office ☐          Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to
issue the proper copies to all parties in a timely manner, as per your contract.          Date: _____          7 46

**NATURE OF GRIEVANCE:** I Walter R. Minich am filing this grievance
to have my Company Seniority Reinstated at the Terminal
level and any Monetary claims that May be Due to Me
I was layed off in September 1995 when the
merger between Carolina Freight and ABF was implemented.
During this Time Till I was Reinstated from layoff I
was Never offered any Type Employment in the ABF System
I was placed in a Company Pool and Now that
I am Back to work I have No Terminal Seniority, I feel
my Rights for Terminal Seniority Have Been Descriminated
against

**STEWARD'S COMMENTS:** _____          _iO 08_

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Walter R Minich_
Signature of Member Filing Grievance          Shop Steward

☐   **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

Date: _____          Signature of Business Agent

1— WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

## INSTRUCTIONS ON BACK OF YELLOW SHEET

Walter R Minich
03 Pessah Strt
P.O. Box 305
Shicamais Daily, Pa 17098

May 16, 1999

BA: D. Virtue
Teamsters Local # 776
2552 Jefferson Street
Harrisburg, Pa 17110

      I am writing this letter in conjunction with the untimely grievance of mine, which was heard at the Eastern Conference on, April 27,1999 in which the panel ruled against the union, and the point of order was upheld. I feel that my grievance contains different facts than the one it was placed and heard under, therefore I am requesting that you as my representative make any or all appeals that are offered to me as a union member under the contract of the International Brotherhood of Teamsters.

      Respectfully Yours,
      Walter R Minich

Grievance
# 89098

## **VERIFICATION**

I, Walter R. Minich, have reviewed the foregoing document and do hereby confirm that the forgoing statements are true and correct to the best of my knowledge, information, and belief. I make this affirmation with the knowledge that I am subject to the provisions regarding false swearing of information to authorities.

Date: _October 6, 2000_

_____
Walter R. Minich, Plaintiff

# EXHIBIT K

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,                              :
                                                :
               Plaintiff,          : NO.  3:01-CV-789
                                                :          Judge Sylvia H. Rambo
      v.                               :
                                                :
DANIEL A. VIRTUE, Business Agent of the         :
International Brotherhood of Teamsters;          :
INTERNATIONAL BROTHERHOOD OF                     :
TEAMSTERS; ABF FREIGHT SYSTEM,                   :
INCORPORATED,                                    :
                                                :
               Defendants.

### AFFIDAVIT OF DAUPHIN COUNTY,
### COMMONWEALTH OF PENNSYLVANIA, MAY 10, 2002

I, Raymond C. Nevins, do hereby make the following statement my affidavit;

1.     I am one of the main Plaintiff's in <u>Albright, et. al. vs. ABF, et. at.</u>, No. 1:CV-00-0878.  I hereby reaffirm the attached affidavit, which I previously made in that matter.  (See Exhibit A)

2.     At the time Carolina freight shut down the road board at Baltimore, Maryland terminal, I was advised, as well as others, that I had five (5) years of recall rights under the Collective Bargaining Agreement and that the recall rights would extend to any successor employer.

3.     However, at no time during the ensuing period of time up to the time I contacted ABF, nor was any effort made by the Union or the Company to implement those recall rights or nor were any steps taken to insure that they had the ability to implement those recall rights.  By that, I mean, that the no effort was made to keep track of my address; no contact was made through ABF or through the Union concerning recall.

4.      I obtained employment under my recall rights as a result of word of mouth contact from other employees and as a consequence I applied to ABF and was reinstated.

5.      It is my belief that the Company and the Union sought to avoid the provisions of the Collective Bargaining Agreement as they applied to recall, because by recalling me; I was more expensive on an hourly basis than a new employee and my fringe benefits, as a recalled employee, were far more than the fringe benefits that a new employee would have been entitled to.  Accordingly, I think that the Company and the Union got together not withstanding the labor agreement to try to avoid the recall provisions and their effect (Higher wage rate, more accrued benefits.)

6.      In so far as the structure of the Carlisle terminal, both before it was shut down and after it became an ABF terminal is concerned, there are two (2) seniority measures that are involved;

      (a.)    Your company seniority; and

      (b.)    Your time in category as a driver or as a dock/ local/ terminal employee.

However, you can transfer to the over-the-road driver board from the dock and I know that and/or from the over-the-road driver board to the dock based upon you company seniority.  Accordingly, someone like Rickey Bechtel, who drove, I believe, as a yard jockey and who did other driving activities, from time to time, would be entitled to apply, based upon his company seniority, for open over-the-road driver positions on the over-the-road board.

7.      It is my understanding that economic factors, such as increased pay and increased benefits would apply to someone, such as Rickey Bechtel, if he were reinstated over the hiring of

a new employee, which would involved a lower hourly rate and with fewer fringe benefits to start.

8.    So far as I am aware, a dockman or terminal employee could apply for a position on the over the road board based upon their company (overall) seniority.

I have read the above affidavit consisting of this and ~~blind cover~~ two other pages and it is true and correct.

5-13-02
Date

Raymond C. Nevins

# AFFIDAVIT OF RAYMOND C. NEVINS

I, Raymond C. Nevins, hereby make this following document my affidavit in connection with the above reference litigation and provide the following information which is correct and true to the best of my knowledge, information and belief:

1.     I have reviewed the Affidavit of Daniel A. Virtue, which has been lodged in support of the Motion to Dismiss in the above referenced case.

2.     Upon reviewing the segment of the Affidavit that applies to me, I have the following information.

3.     I have been a member of Teamster Local 557, since November 2, 1987, when I transferred to Teamster Local Union 776 in 1991.  During 1990-1991 I worked out of the Local 776.  In 1991, per a grievance filed in Toledo, Ohio, we were allowed to transfer out.

4.     On November 25, 1995, I received a letter from ABF stating that I would be recalled by seniority.

5.     The last day I worked at the Carolina Freight Carlisle terminal was March 1995.

6.     In March of 1995, I was told I would be placed on layoff subject to recall. I was advised of this fact by Carolina Freight management.

7.     Approximately six (6) weeks later, I was contacted by letter and given an opportunity to go to Baltimore where I worked out of a Carolina Freight facility.

8.     At no time did was I told, nor did I believe, I was giving up any of my rights or my status in Carlisle.



PLAINTIFF'S
EXHIBIT
A

9.     As noted above, at the time of layoff I was subject to recall for up to five (5) years.

10.     Also, it was my belief that my contract provided for me to follow my freight. In fact, since I have returned to the Carlisle facility I am able to follow the freight we are running is the same freight out of Carlisle.

11.     At the time of my transfer in 1995, the Carlisle work went to two different terminals, Baltimore and Philadelphia. The freight that was run out of Carlisle up to the spring of 1995 was split between Baltimore and Philadelphia. It is for these reasons, I believed I was able to follow my work and had layoff recall rights at Carlisle. In 1996, the Philadelphia Carolina Freight drivers were allowed to return to Carlisle, PA (ABF) and dovetailed onto the Board.

12.     As I understand it, historically, under the Teamsters Collective Bargaining Agreement, drivers are able to follow their work, as one means of dealing with downsizing, mergers and other changes of operation, which at the same time allows them to keep seniority rights when in layoff status. The Master Freight Agreement says:

Article 5.1 (b):
Seniority shall be broken only by discharge, voluntary quit, retirement, or more than a five (5) year layoff.

13.     The labor agreement, which called for the Company and the Union to have a system of recalling drivers by seniority date, was not implemented at Carlisle. Carolina Freight drivers, including myself, who have been reinstated since 1998 were never contacted by the Company or Union concerning employment vacancies on the Board. We learned of the Board vacancies through word of mouth from other drivers and based upon our own efforts contacting the facility. Thus, in so far as I am aware, in terms

of the labor agreement calling for a seniority based recall of laid off drivers based upon

the availability of jobs at the Carlisle facility.  This was not put in place by either ABF or

the local Union.  The labor agreement says:

> Article 5, Section 2 (c) (2)
> In addition, the inactive seniority rosters (employees who are on letter of layoff)
> shall be similarly "dovetailed" by appropriate classification.  If additional
> employees are required after the active list is exhausted, they shall be recalled
> from such inactive seniority roster and after recall such employees shall be
> "dovetailed" into the active seniority roster with their continuous classification
> (road or city) seniority dates they are currently exercising which shall then be
> exercised for all purposes...

14.    I learned from a co-worker, Gary Deitz that it appeared that the Carlisle

Board was open at ABF's to the Carlisle faculty.

15.    Mr. Deitz, having already been recalled, and told me that I needed to

contact Fort Smith, AK.

16.    I called the Fort Smith location.  I was then contacted by telephone and

told that I could be recalled, but my start date would not be for almost a month later.

17.    My first day back at the Carlisle facility was February 10, 1999.

18.    The effect of the way we were brought back avoided giving us our proper

seniority date.  We were not assigned a seniority date at the time we returned.  We were

placed at the bottom of the Board, without a seniority date, based on the time when we

clocked in for the first time coming back from a layoff and referred out after ABF drivers

at Carlisle.  I tried to ascertain what my seniority date on the Board was going to be and

could not obtain an answer or clarification from the dispatcher.

19.    When I returned, I was not given my seniority date that I was entitled to

under the labor agreement, when I asked the dispatcher what number I stood on the board,

he told me to just make an "X" in the space where the number is normally placed.  (My

name was not yet on a seniority list until later when one was posted with my name and seniority date and wrong number.)

20.     Ordinarily, calls and runs off of the board are governed by the company seniority date.

21.     When a new seniority list was posted, within the thirty-day period allowed for a seniority grievance, I filed one.

22.     Every time a seniority list is posted I have promptly and timely filed a grievance over the fact that I have not been assigned the correct seniority date and at no time have I ever received a decision from the local Union or ABF concerning that contention.

23.     I was lead to believe that the seniority issue had not been resolved at I initially returned and that the issue would be resolved by the posting of the next seniority list.

24.     The initial grievance which I have attached to my Affidavit was filed by me in March 2, 2000 within, as noted above, was timely.

25.     My initial grievance was turned over to Ron Hicks, which he did sign.

26.     The stewards on the job did not always sign the grievance at the time I presented it to them.

27.     The grievance in question was presented to both the company and Union following established procedure in presenting grievances at the local level.

28.     There was a period of time when the stewards were not signing the grievances and all we have for records was the grievance as we submitted it.

29.     The Union stewards and business agents are supposed give us some advice, guidance, or direction concerning the section of the contract that should be cited, but that has never been done in my case.

30.     My grievance followed the same grievance history and treated as Mr. Snyder's. (i.e. , it was denied as untimely by the company, referred to the Eastern Conference, it was denied by the Conference and then referred to Phil Young, Freight Director, on appeal and then referred to the NGB where it is pending at this time.)

31.     With regard to the March 2, 2000 posting, I filed my grievance timely fashion under either standard (i.e. 7 day, 30 day).

32.     Each of the averments contained in this Affidavit are based upon my direct personal knowledge of the events in question.

# NMFA GRIEVANCE — Teamsters Local 776          94535

Raymond C Nevins    Home Phone 717-355-8143 Date of Hire Nov-2-1987
Address 94 Study Rd.    City Littlestown    State PA    Zip 17349
Employer A.B.F

Employer's Address Carlisle Pa

Road ☒    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: March 6 00

**NATURE OF GRIEVANCE:** I disagree with the seniority list as posted on March 9-00. I was hired at Carolina Freight Inc. at Baltimore, Md. on November 2-1987. Due to a change of operations I was transfered in May of 1991 to Carlisle, PA. And Due to a second change of operations in May of 1995 I was transfered back to Baltimore, Md. In September of 1995, ABF bought Carolina Freight & merged the two together. At that time I recieved notice that I was layed off, from ABF. On February 10, 1999 I came back to work for ABF at Carlisle, pa.

I would like my full seniority & all money's Do___

**STEWARD'S COMMENTS:** _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

Raymond C Nevins
Signature of Member Filing Grievance

_____
Shop Steward

☐ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

Date: _____    _____
                                    Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776          94654

Raymond C. Nevins          Home Phone 359-8143   Date of Hire Nov 2, 1987

Address 94 Study Road          City Littlestown   State PA.   Zip 17340

Employer ABF

Employer's Address Carlisle, PA

Road ☐          Dock ☐          Jockey ☐          City ☐          Iron and Steel ☐          Mechanic-Office ☐          Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.          Date: _____          12 43 ?

NATURE OF GRIEVANCE: I Disagree with the revised EXTRA Board seniority list as posted on April 28, 2000. It does not reflect my seniority date of November 2, 1987.

STEWARD'S COMMENTS: _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_____          _____
Signature of Member Filing Grievance          Shop Steward

☐   **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT _____

_____          Date: _____          _____
                                        Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

INSTRUCTIONS ON BACK OF YELLOW SHEET

# NMFA GRIEVANCE — Teamsters Local 776

93038

Name _Raymond C Nevins_    Home Phone _359-5143_    Date of Hire _~~~~~_
Nov. 2, 1987

Address _94 Study Rd_    City _Littlestown_ State _PA_ Zip _17340_

Employer _A.B.F_

Employer's Address _Carlisle Pa_

Road ☒    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _Sept 29, 1999_

10 57
10 44

**NATURE OF GRIEVANCE:** _I disagree with seniority list as posted on September 29, 1999. Dated Sept. 27, 99_
_I was hired at Carolina Freight Inc. at Baltimore, Md. on November 2, 1987. Due to change of operations, I was transfered in May of 1991 to Carlisle, PA. And Due to second change of operations in May of 1995, I was transfered back to Baltimore, Md. In September of 1995 ABF bought Carolina Freight and merged the two together. At that time I recieved notice that I was Laid off from ABF. February 10, 1999 I came back to work for ABF at Carlisle, PA._
_All money Due me._

**STEWARD'S COMMENTS:** _____

**In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.**

_Raymond C Nevins_
Signature of Member Filing Grievance                Shop Steward

☒ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _N/C Per Case R-38-99_

Date: _____                _____
                                   Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776          90680

⬤ Raymond c Nevins

Address    94 Study Rd.

Employer   A.B.F.

Home Phone _355 8143_    Date of Hire _Nov 2, 87_

City _Littlestown_    State _Pa_    Zip _17340_

Employer's Address   Carlisle Pa

Road ☒    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _March 27 - 99_

18 04

**NATURE OF GRIEVANCE:** I was Laid off Do to the Merger Between Caroline Fret. & ABF

Now I am back working for ABF IN Carlisle Pa. I would Like full seniorty and back monies And Benefits Do to Me.

14 14

**STEWARD'S COMMENTS:** _____

**In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.**

Raymond c Nevins

Signature of Member Filing Grievance          Shop Steward

☑ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

Date: _____          Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

## **VERIFICATION**

I, Raymond C. Nevins, have reviewed the foregoing document and do hereby confirm that the forgoing statements are true and correct to the best of my knowledge, information, and belief. I make this affirmation with the knowledge that I am subject to the provisions regarding false swearing of information to authorities.

Date: _10/07/00_

_____
Raymond C. Nevins, Plaintiff

# EXHIBIT L

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,                          :
                                            :
        Plaintiff,                        : NO.  3:01-CV-789
                                            :       Judge Sylvia H. Rambo
      v.                                    :
                                            :
DANIEL A. VIRTUE, Business Agent of the     :
International Brotherhood of Teamsters;      :
INTERNATIONAL BROTHERHOOD OF                :
TEAMSTERS; ABF FREIGHT SYSTEM,             :
INCORPORATED,                               :
                                            :
        Defendants.                       :

## AFFIDAVIT OF DAUPHIN COUNTY,
## COMMONWEALTH OF PENNSYLVANIA, MAY 10, 2002

I, Stanley L. Nye, do hereby make the following statement my affidavit;

1.      I am one of the main Plaintiff's in <u>Albright, et. al. vs. ABF, et. at.</u>, No. 1:CV-00-0878.  I hereby reaffirm the attached affidavit, which I previously made in that matter.  (See Exhibit A)

2.      At the time Carolina freight shut down the Carlisle terminal, I was advised, as well as others, that I had five (5) years of recall rights under the Collective Bargaining Agreement and that the recall rights would extend to any successor employer.

3.      However, at no time during the ensuing period of time up to the time I contacted ABF, nor was any effort made by the Union or the Company to implement those recall rights or nor were any steps taken to insure that they had the ability to implement those recall rights.  By that, I mean, that the no effort was made to keep track of my address; no contact was made through ABF or through the Union concerning recall.

4.      I obtained employment under my recall rights as a result of word of mouth contact from other employees and as a consequence I applied to ABF and was reinstated.

5.      It is my belief that the Company and the Union sought to avoid the provisions of the Collective Bargaining Agreement as they applied to recall, because by recalling me; I was more expensive on an hourly basis than a new employee and my fringe benefits, as a recalled employee, were far more than the fringe benefits that a new employee would have been entitled to. Accordingly, I think that the Company and the Union got together not withstanding the labor agreement to try to avoid the recall provisions and their effect (Higher wage rate, more accrued benefits.)

6.      In so far as the structure of the Carlisle terminal, both before it was shut down and after it became an ABF terminal is concerned, there are two (2) seniority measures that are involved;

      (a.)    Your company seniority; and

      (b.)    Your time in category as a driver or as a dock/ local/ terminal employee.

However, you can transfer to the over-the-road driver board from the dock and I know that and/or from the over-the-road driver board to the dock based upon you company seniority. Accordingly, someone like Rickey Bechtel, who drove, I believe, as a yard jockey and who did other driving activities, from time to time, would be entitled to apply, based upon his company seniority, for open over-the-road driver positions on the over-the-road board.

7.      It is my understanding that economic factors, such as increased pay and increased benefits would apply to someone, such as Rickey Bechtel, if he were reinstated over the hiring of

a new employee, which would involved a lower hourly rate and with fewer fringe benefits to start.

8.    So far as I am aware, a dockman or terminal employee could apply for a position on the over the road board based upon their company (overall) seniority.

I have read the above affidavit consisting of this and ~~blank cover~~ two (2) other pages and it is true and correct.

_____                    _____
Date                                         Stanley L. Nye

### AFFIDAVIT OF STANLEY L. NYE

I, Stanley L. Nye, hereby make this following document my Affidavit in connection with the above reference litigation and provide the following information which is correct and true to the best of my knowledge, information and belief:

1.    I have reviewed the Affidavit of Daniel A. Virtue which has been filed in support of the Motion to Dismiss in the above referenced case.

2.    Upon reviewing the segment of the Affidavit which apply to me I have the following information.

3.    I have been a member of Teamster Local Union 776 since January 1983, as a casual dock worker, in October 1983, I went on full-time as a yard jockey and dock worker, in the Carolina Freight Carlisle terminal, and since April 1988 as a over-the-road driver.

4.    There was a meeting in the later part of 1994 or early 1995, we were told that the company (Carolina Freight) was working on a three phase change and that the Carlisle (Carolina Freight) Board was going to be reduced to 150 employees from the Board which consisted of local and over the road drivers, amounted to 700-800 employees, including casuals.

5.    At that meeting, representatives from ABF were present and were offering to "hire" Carolina Freight drivers that had taken a layoff. Present at the meeting was an agent for ABF named Gary Drake. I actually went to a job interview with ABF, as did many other Carolina drivers, in April of 1995, but none of the Carolina drivers were hired or recalled from layoff at that time. I had called Gary Drake several times inquiring about another job, for which he had interviewed me prior to leaving Carlisle. He told me that he was instructed by his superiors not to hire until further notice.

6.    Many of the drivers, myself included, at the time that the meeting was held at the "barn", remained of the understanding that one of the options that was available to us: we could

PLAINTIFF'S
EXHIBIT

go to another facility or take a layoff and we would be recalled to the Carlisle operation based on our accrued seniority. That was the option that I elected.

7.    From May 1995 through September 1995, I ran Carlisle freight out of the Carolina Freight's Baltimore terminal. I believe the freight I ran from Baltimore was the same freight I ran from Carlisle.

8.    In September 1995, after the change of operations, the Baltimore terminal was closed. At time the Baltimore terminal closed, we were told by business agents that it was closing due to the merger.

9.    As I understand it, historically, under the Teamsters Collective Bargaining Agreement, drivers are able to follow their work, as one means of dealing with downsizing, mergers and other changes of operation, which at the same time allows them to keep seniority rights when in lay off status. The Master Freight Agreement says:

> Article 5.1 (b):
> Seniority shall be broken only by discharge, voluntary quit, retirement, or more than a five (5) year layoff.

10.    The labor agreement, which called for the Company and the Union to have a system of recalling drivers by seniority date, was not implemented at Carlisle. Carolina Freight drivers, including myself, who have been reinstated since 1998 were never contacted by the Company or Union concerning employment vacancies on the Board. We learned of the Board vacancies through word of mouth from other drivers and based upon our own efforts contacting the facility. Thus, in so far as I am aware, in terms of the labor agreement calling for a seniority based recall of laid off drivers based upon the availability of jobs at the Carlisle facility. This was not put in place by either ABF or the local Union. The labor agreement says:

Article 5, Section 2 (c) (2)
In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be

similarly "dovetailed" by appropriate classification.  If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes...

11.     Approximately a week before the lay off in Baltimore, I contacted Roadway, Carlisle, (which is in the same Union, with Daniel Virtue being the business agent) and they offered me a position as a yard jockey.

12.     I was contacted by ABF the first week I was working for Roadway, September 22, 1995, to the best of my knowledge, I was sent a certified letter saying all road drivers were laid off in Baltimore.

13.     In late 1998 or early 1999, I heard that the Carlisle Board had opened up from another driver, Norman Boire (who also working at Roadway), who told me to contact Fort Smith, AK. which I did.  Additionally, I was told to talk to Lee Edenbo.  I contacted Lee Edenbo at the Carlisle terminal.

14.     I was recalled in February 28, 1999 to the Carlisle ABF terminal.

15.     I was not contacted by either the company or the union concerning recall.

16.     When I returned, I was not given my seniority date that I was entitled to under the labor agreement, when I asked the dispatcher what number I stood on the board, he told me to just make an "X" in the space where the number is normally placed.  (My name was not yet on a seniority list until later when one was posted with my name and seniority date and wrong number.)

17.     Ordinarily, calls and runs off of the board are governed by the overall seniority date.

18.     The effect of the way we were brought back avoided giving us our proper

seniority date.  We were not assigned a seniority date at the time we returned.  We were placed at

the bottom of the Board, without a seniority date, based on the time when we clocked in for the

first time coming back from a lay·off and referred out after ABF drivers at Carlisle.  I tried to

ascertain what my seniority date on the Board was going to be and could not obtain an answer or

clarification from the dispatcher.

19.    Upon my return to Carlisle, I immediately filed a seniority grievance.

20.    I knew there was a problem with seniority, because other ex-Carolina employees

had told me of the seniority problem.

21.    Every time a seniority list is posted I have promptly and timely filed a grievance

over the fact that I have not been assigned the correct seniority date and at no time have I ever

received a decision from the local Union or ABF concerning that contention.

23.    Article 5 of the Master Freight Agreement, covering over the road drivers and

local cartage in Central Pennsylvania covers the seniority rights.   The provisions pertaining to

seniority related grievances are governed by a procedure which provides that the seniority list be

posted at least twice a year and that an employee has thirty days after the posting of the list to file

a grievance.

Article 5.4 (d) Posting of Seniority List
The Employer shall give the Local Union a seniority list at least every six (6) months.
The Employer shall also post a seniority list at least once every six (6) months and shall
maintain a current seniority roster at the terminal.  Protest of any employee's seniority
date or position on such list must be made in writing to the Employer within thirty (30)
days after such seniority date or position first appears, and if no protests are timely made
the dates and positions are deemed correct.  Any such protest which is timely made may
be submitted to the grievance procedure. (Emphasis added.)

24.    Every time a seniority list is posted I have promptly and timely filed a grievance

over the fact that I have not been assigned the correct seniority date and at no time have I ever

received a decision from the local Union or ABF concerning that contention.

24.     I filed a grievance when my name first appeared on the seniority list.

25.     My grievance was presented to both the Company and Union following established procedure in presenting grievances.

26.     There was a period of time when the stewards were not signing the grievances and all we have for records was the grievance as we submitted it.

27.     The Union stewards and business agents are supposed give us some advice, guidance, or direction concerning the section of the contract that should be cited, but that has never been done in my case.

28.     I have personal knowledge that the freight I ran for Carolina, both in Carlisle and in Baltimore, was the same freight, going to the same destinations with the same equipment, as was since the change of operations.

29.     Each of the averments contained in this Affidavit are based upon my direct personal knowledge of the events in question.

# NMFA GRIEVANCE — Teamsters Local 776                89012

Name _Stanley L. Nye_      Home Phone _(717) 486-0223_ Date of Hire _02/27/99_

Address _740 Torway Road_       City _Gardners_       State _Pa_   Zip _17324_

Employer _ABF_

Employer's Address _Carlisle, PA_

Road ☒   Dock ☐   Jockey ☐   City ☐   Iron and Steel ☐   Mechanic-Office ☐   Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.      Date: _March 5, 1999_

**NATURE OF GRIEVANCE:** _Because of the decision in the ABF/Carolina/Red Arrow change of operations Case Number MR-CO-38 9/95 on 09/22/95, I was laid off and had no offer to follow work that left the Baltimore Maryland Road Operation._

_On 02/27/99 I was called back to work and placed on the bottom of the Carlisle, PA road board not in my proper seniority spot._

_I request that I be dovetailed into my correct spot on this board and be paid all money due to me._

**STEWARD'S COMMENTS:** _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Stanley L. Nye_          _3/8/99_
Signature of Member Filing Grievance                          Shop Steward

☐   **YOU** must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.

**ACTION TAKEN BY BUSINESS AGENT** _____

Date: _____        Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD



**ABF FREIGHT SYSTEM, INC.**
3510 Washington Boulevard
Batlimore, MD  21227-1638

*(handwritten: YOTE, 34 CARLISLE  32 CAMPHILL)*

September 22, 1995

Certified Mail No. __P 487 862 7__52

Nye, Stanley
50 Bonny Brook Rd Lot 46
Carlisle, PA 17013

Dear Mr. Nye:

Pursuant to the decision in the ABF-Carolina/Red Arrow Change
of Operations (Case No. MR-CO-38-9/95), this will confirm that
you will be considered in the layoff status as a result of the
implementation of the change of operations and the implementation
date is September 25, 1995.

You are requested to keep us advised of your current address
and phone number in order that we may contact you for any work
offer to which you are entitled per the terms of the Change
of Operations Decision and applicable labor agreement.

Yours truly,

*(signature: Louis Guido)*

Louis Guido
Branch Manager

cc:  Local Union No. 557, Certified Mail No. __P 487 862 727__
     Herman Dooley, Regional Vice President, Operations
     Personnel Department
     Industrial Relations Department

## VERIFICATION

I, Stanley L. Nye, have reviewed the foregoing document and do hereby confirm that the forgoing statements are true and correct to the best of my knowledge, information, and belief. I make this affirmation with the knowledge that I am subject to the provisions regarding false swearing of information to authorities.

Date: 10/9/00

Stanley L. Nye, Plaintiff