

# JUDGE'S COPY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

### No. 1:01-CV-789

---

### RICKEY BECHTEL
### Plaintiff

### v.

### DANIEL A. VIRTURE, Business Agent of the
### International Brotherhood of Teamsters;
### INTERNATIONAL BROTHERHOOD OF
### TEAMSTERS; LOCAL 776,
### INTERNATIONAL BROTHERHOOD OF
### TEAMSTERS; ABF FREIGHT SYSTEM,
### INCORPORATED
### Defendants

---

### PLAINTIFF'S EXHIBITS

---

### VOLUME II


Robert S. Mirin, Esquire
PA ID# 25305
8150 Derry Street
Harrisburg, PA 17111
(717) 909-4343
Attorney for Plaintiff

FILED
HARRISBURG, PA
MAY 24 2002
MARY E. D'ANDREA, CLERK
Per ___

# TABLE OF CONTENTS

**EXHIBIT**

Rickey A. Bechtel's Affidavit ........................................................................ A

Affidavit of Jeffery D. Albright and Attached Exhibits ................................. B

Affidavit of Norman T. Boire and Attached Exhibits .................................... C

Affidavit of Gary M. Dietz and Attached Exhibits ....................................... D

Affidavit of William H. Erdman and Attached Exhibits ................................. E

Affidavit of Michael Fritz and Attached Exhibits .......................................... F

Affidavit of A. Ronald Frombaugh and Attached Exhibits ............................. G

Affidavit of Allen W. Landis and Attached Exhibits ...................................... H

Affidavit of Lowell C. McGuire and Attached Exhibits .................................. I

Affidavit of Walter R. Minich and Attached Exhibits .................................... J

Affidavit of Raymond C. Nevins and Attached Exhibits ................................ K

Affidavit of Stanley L. Nye and Attached Exhibits ....................................... L

Affidavit of Keith E. Sgrignoli and Attached Exhibits .................................. M

Affidavit of Ray G. Synder, Jr. and Attached Exhibits ................................. N

Affidavit of Vincent Ramirez, Jr. and Attached Exhibits .............................. O

Affidavit of Lawrence D. Welker and Attached Exhibits ............................... P

Third Circuit Court's Decision in Albright ................................................... Q

Article 7 of the Collective Bargaining Agreement............................................R

Proposed Seniority Application......................................................................S

Carlisle Platform Seniority List of
March 10, 1995 ............................................................................................T

Chauffeurs, Teamsters and Helpers Local Union No. 776
Letter to Carolina Employees dated October 12, 1995
Re: ABF and Carolina Freight merger............................................................U

ABF letter to Rickey Bechtel dated November 9, 1995
Re:  Article 5, Section 5 Job Offer in Accordance with ABF
Multi-Region Change of Operations ...............................................................V

International Brotherhood of Teamsters letter to All Freight
Local Unions dated January 7, 1999
Re:  Fourth Circuit Decision in the ABF/Carolina Litigation........................ W

ABF letter to Charles Shughart with Attached Exhibits of
Seniority roster dated June 5, 2000 ...............................................................X

Eastern Region Joint Area Committee decision dated
July 25, 2000 ................................................................................................Y

ABF 1995 Change of Operations materials.....................................................Z

# EXHIBIT M

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,                 :
                                      :
           Plaintiff,           :    NO.   3:01-CV-789
                                        :        Judge Sylvia H. Rambo
           v.                      :
                                        :

DANIEL A. VIRTUE, Business Agent of the    :
International Brotherhood of Teamsters;      :
INTERNATIONAL BROTHERHOOD OF        :
TEAMSTERS; ABF FREIGHT SYSTEM,        :
INCORPORATED,                           :
                                        :
           Defendants.

### AFFIDAVIT OF DAUPHIN COUNTY,
### COMMONWEALTH OF PENNSYLVANIA, MAY 10, 2002

I, Keith E. Sgrignoli, do hereby make the following statement my affidavit;

1.       I am one of the main Plaintiff's in <u>Albright, et. al. vs. ABF, et. at.</u>, No. 1:CV-00-0878. I hereby reaffirm the attached affidavit, which I previously made in that matter. (See Exhibit A)

2.       At the time Carolina freight shut down the Kutztown, Pennsylvania terminal, I was advised, as well as others, that I had five (5) years of recall rights under the Collective Bargaining Agreement and that the recall rights would extend to any successor employer.

3.       However, at no time during the ensuing period of time up to the time I contacted ABF, nor was any effort made by the Union or the Company to implement those recall rights or nor were any steps taken to insure that they had the ability to implement those recall rights. By that, I mean, that the no effort was made to keep track of my address; no contact was made through ABF or through the Union concerning recall.

4.     I obtained employment under my recall rights as a result of word of mouth contact from other employees and as a consequence I applied to ABF and was reinstated.

5.     It is my belief that the Company and the Union sought to avoid the provisions of the Collective Bargaining Agreement as they applied to recall, because by recalling me; I was more expensive on an hourly basis than a new employee and my fringe benefits, as a recalled employee, were far more than the fringe benefits that a new employee would have been entitled to.  Accordingly, I think that the Company and the Union got together not withstanding the labor agreement to try to avoid the recall provisions and their effect (Higher wage rate, more accrued benefits.)

6.     In so far as the structure of the Carlisle terminal, both before it was shut down and after it became an ABF terminal is concerned, there are two (2) seniority measures that are involved;

        (a.)    Your company seniority; and

        (b.)    Your time in category as a driver or as a dock/ local/ terminal employee.

        However, you can transfer to the over-the-road driver board from the dock and I know that and/or from the over-the-road driver board to the dock based upon you company seniority.  Accordingly, someone like Rickey Bechtel, who drove, I believe, as a yard jockey and who did other driving activities, from time to time, would be entitled to apply, based upon his company seniority, for open over-the-road driver positions on the over-the-road board.

7.     It is my understanding that economic factors, such as increased pay and increased benefits would apply to someone, such as Rickey Bechtel, if he were reinstated over the hiring of

a new employee, which would involved a lower hourly rate and with fewer fringe benefits to start.

8.      So far as I am aware, a dockman or terminal employee could apply for a position on the over the road board based upon their company (overall) seniority.

I have read the above affidavit consisting of this and ~~blind cover~~ two (2) other pages and it is true and correct.


_573-02_
Date

_Keith E. Sgrignoli_
Keith E. Sgrignoli

# AFFIDAVIT OF KEITH E. SGRIGNOLI

I, Keith Sgrignoli, hereby make this following document my affidavit in connection with the above reference litigation and provide the following information which is correct and true to the best of my knowledge, information and belief:

1.      I have reviewed the Affidavit of Daniel A. Virtue, which has been made in support of the Motion to Dismiss in the above referenced case.

2.      Upon reviewing the part of the Affidavit, which applies to me, I have the following information.

3.      a.) I have been a member of Teamster Local Union 776 since April 3, 1978, and up until September 1995 with that local union in connection with my employment at Carolina Freight at the Carlisle facility.

        b.) I worked at the Carlisle facility of Carolina Freight throughout that period of time and took a layoff at the Carlisle facility on or about September 1995.

5.      As I understand it, historically, under the Teamsters Collective Bargaining Agreement, drivers are able to follow their work, as one means of dealing with downsizing, mergers and other changes of operation, which at the same time allows them to keep seniority rights when in lay off status.  The Master Freight Agreement says:

> Article 5.1 (b):
> Seniority shall be broken only by discharge, voluntary quit, retirement, or more than a five (5) year layoff.

6.      In 1995, I was aware of the fact that Carolina Freight and ABF were planning a change of operations.  As part of the change of operations, Carolina Freight



PLAINTIFF'S EXHIBIT

A

said they were going to reduce the workforce to approximately 150 drivers at the Carlisle facility.

7       Because of my seniority, I believed I would be one of the 150 drivers retained at Carlisle. I took the lay off with the understanding that I had five year recall rights as provided for under the Collective Bargaining Agreement. I thought I would return to Carlisle, quickly.

8.      However, as a temporary matter, and on a forced basis, I was required to elect between Kuntztown, PA, Baltimore, MD and Philadelphia, PA as temporary terminals.

9.      However, shortly thereafter in September 1995, my forced election, Kuntztown, PA terminal was shut down in connection with the merger and post merger.

10.     At that time I was given three options, two options were city locations, which is different than over the road work and is paid differently because of the length and nature of the runs and the third option was to "hold" for a Carlisle position.

11.     I elected to take a lay off and "hold" for Carlisle position.

12.     The labor agreement, which called for the Company and the Union to have a system of recalling drivers by seniority date, was not implemented at Carlisle. Carolina Freight drivers, including myself, who have been reinstated since 1998 were never contacted by the Company or Union concerning employment vacancies on the Board. We learned of the Board vacancies through word of mouth from other drivers and based upon our own efforts contacting the facility. Thus, in so far as I am aware, in terms of the labor agreement calling for a seniority based recall of laid off drivers based upon the

availability of jobs at the Carlisle facility.  This was not put in place by either ABF or the

local Union.  The labor agreement says:

> Article 5, Section 2 (c) (2)
> In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be similarly "dovetailed" by appropriate classification.  If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes...

13.    During the September 1995 change of operation, it was indicated that any

Carolina Freight employee who was laid off would be on a list which would be monitored

and maintained by the local Union and the Company for recall.

14.    No list was kept or maintained as required under either a change of

operations or by the Master Freight Agreement.

15.    It was my initial understanding that there would be an active as well as an

inactive list that those who had stayed and transferred after the May 23,1995 date would

have been considered active at the time of the change of operations and would be called

back before the those who were "inactive" or laid off.

16.    When I returned, I was not given my seniority date that I was entitled to

under the labor agreement, when I asked the dispatcher what number I stood on the board,

he told me to just make an "X" in the space where the number is normally placed.  (My

name was not yet on a seniority list until later when one was posted with my name and

seniority date and wrong number.)

17.    Ordinarily, calls and runs off of the board are governed by your seniority

date, which was wrong.

18.    The effect of the way we were brought back avoided giving us our proper seniority date.  We were not assigned a seniority date at the time we returned.  We were placed at the bottom of the Board, without a seniority date, based on the time when we clocked in for the first time coming back from a lay off and referred out after ABF drivers at Carlisle.  I tried to ascertain what my seniority date on the Board was going to be and could not obtain an answer or clarification from the dispatcher.

19.    When a new seniority list was posted, I immediately within the thirty-day period allowed for a seniority grievance, filed a grievance.

20.    Since then, every time a seniority list has been posted, I have filed, promptly and timely, a grievance over the fact that I have not been assigned the correct seniority date and at no time have I ever received a decision from the local Union or ABF concerning that contention.

21.    Article 5 of the Master Freight Agreement, covering over the road drivers and local cartage in Central Pennsylvania covers the seniority rights.  The provisions pertaining to seniority related grievances are governed by a procedure which provides that the seniority list be posted at least twice a year and that an employee has thirty days after the posting of the list to file a grievance.

> Article 5.4 (d) Posting of Seniority List
> The Employer shall give the Local Union a seniority list at least every six (6) months.  The Employer shall also post a seniority list at least once every six (6) months and shall maintain a current seniority roster at the terminal.  Protest of any employee's seniority date or position on such list must be made in writing to the Employer within thirty (30) days after such seniority date or position first appears, and if no protests are timely made the dates and positions are deemed correct. Any such protest which is timely made may be submitted to the grievance procedure. (Emphasis added.)

22.    I was lead to believe that the seniority issue had not been resolved when I initially returned and that the issue would be resolved by the posting of the next seniority list after I returned.

23.    When I returned, I inquired as to my placement on the board, I was told to put an "X" on the clearance card in the place that a seniority number normally goes. The clearance card is the document, which places you on the Board and governs your call out for runs, hours, and other conditions of employment.

24.    Each of the averments contained in this Affidavit are based upon my direct personal knowledge of the events in question.

# RT OF GRIEVANCE — Teamsters Local 776   № 57610

Keith E Scrignoli                Home Phone 432-8795    Date of Hire 4-3-78

ress 109 Saint George Dr    City Dillsburg        State Pa    Zip 17019

Employer     ABF

Employer's Address    Carlisle Pa

Road ☒    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic - Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _____ 5 17

**NATURE OF GRIEVANCE:** I Keith Scrignoli was Employer by Carolina Frt in Allentown Pa ABF took over Carolina And I was Put into A Multiple Pool for 5 years. The Company Abused The Multial Pool And Restricted My Seniority. I Am Filing for All Monitary Claims due me And my Seniority

**STEWARD'S COMMENTS:** _____

Keith E Scrignoli
Signature of Member Filing Grievance

_____          _____
                         Shop Steward        0 05

☐ **YOU** must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.

**ACTION TAKEN BY BUSINESS AGENT** _____

Date: _____

## **VERIFICATION**

I, Keith E. Sgrignoli, have reviewed the foregoing document and do hereby confirm that the forgoing statements are true and correct to the best of my knowledge, information, and belief. I make this affirmation with the knowledge that I am subject to the provisions regarding false swearing of information to authorities.

Date: _10-7-00_                            _Keith E. Sgrignoli_
                                           Keith E. Sgrignoli, Plaintiff

# EXHIBIT N

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,                          :
                                            :
            Plaintiff,                       :   NO.  3:01-CV-789
                                            :        Judge Sylvia H. Rambo
      v.                                     :
                                            :
DANIEL A. VIRTUE, Business Agent of the     :
International Brotherhood of Teamsters;      :
INTERNATIONAL BROTHERHOOD OF                :
TEAMSTERS; ABF FREIGHT SYSTEM,              :
INCORPORATED,                               :
                                            :
            Defendants.                      :

### AFFIDAVIT OF DAUPHIN COUNTY, COMMONWEALTH OF PENNSYLVANIA, MAY 10, 2002

I, Ray G. Snyder, Jr., do hereby make the following statement my affidavit;

1.      I am one of the main Plaintiff's in <u>Albright, et. al. vs. ABF, et. at.</u>, No. 1:CV-00-0878. I hereby reaffirm the attached affidavit, which I previously made in that matter. (See Exhibit A)

2.      At the time Carolina freight shut down the Carlisle terminal, I was advised, as well as others, that I had five (5) years of recall rights under the Collective Bargaining Agreement and that the recall rights would extend to any successor employer.

3.      However, at no time during the ensuing period of time up to the time I contacted ABF, nor was any effort made by the Union or the Company to implement those recall rights or nor were any steps taken to insure that they had the ability to implement those recall rights. By that, I mean, that the no effort was made to keep track of my address; no contact was made through ABF or through the Union concerning recall.

4.     I obtained employment under my recall rights as a result of word of mouth contact from other employees and as a consequence I applied to ABF and was reinstated.

5.     It is my belief that the Company and the Union sought to avoid the provisions of the Collective Bargaining Agreement as they applied to recall, because by recalling me; I was more expensive on an hourly basis than a new employee and my fringe benefits, as a recalled employee, were far more than the fringe benefits that a new employee would have been entitled to.  Accordingly, I think that the Company and the Union got together not withstanding the labor agreement to try to avoid the recall provisions and their effect (Higher wage rate, more accrued benefits.)

6.     In so far as the structure of the Carlisle terminal, both before it was shut down and after it became an ABF terminal is concerned, there are two (2) seniority measures that are involved;

       (a.)     Your company seniority; and

       (b.)     Your time in category as a driver or as a dock/ local/ terminal employee.

However, you can transfer to the over-the-road driver board from the dock and I know that and/or from the over-the-road driver board to the dock based upon you company seniority.  Accordingly, someone like Rickey Bechtel, who drove, I believe, as a yard jockey and who did other driving activities, from time to time, would be entitled to apply, based upon his company seniority, for open over-the-road driver positions on the over-the-road board.

7.     It is my understanding that economic factors, such as increased pay and increased benefits would apply to someone, such as Rickey Bechtel, if he were reinstated over the hiring of

a new employee, which would involved a lower hourly rate and with fewer fringe benefits to start.

8.      So far as I am aware, a dockman or terminal employee could apply for a position on the over the road board based upon their company (overall) seniority.

I have read the above affidavit consisting of this and ~~blind cover~~ two(2) other pages and it is true and correct.

5-13-02
Date

Ray G. Snyder, Jr.

## AFFIDAVIT OF RAY G. SYNDER, JR.

I, Ray G. Synder, Jr., hereby make this following document my Affidavit in connection with the above reference litigation and provide the following information which is correct and true to the best of my knowledge, information and belief:

1.    I have reviewed the Affidavit of Daniel A. Virtue which has been lodged in support of the Motion to Dismiss in the above referenced case.

2.    Upon reviewing the segment of the Affidavit which apply to me I have the following information.

3.    a.) I have been a member of Teamster Local Union 776 since January 22, 1979 , and up until the spring of 1995, with that local union in connection with my employment at Carolina Freight in Carlisle, PA.

b.) I worked at the Carlisle facility of Carolina Freight through out that period of time and took a layoff at the Carlisle facility on or about May 23, 1995.

4.    I was initially laid off in March of 1995.  Prior to that layoff there had been discussions that there would be a merger between ABF, Red Arrow and Carolina Freight.

5.    We were told that ABF was purchasing Red Arrow and Carolina Freight.

6.    As I understood it, Worldway Freight, Carolina Freight and  Red Arrow's parent company with ABF's being owned by ABC,  As I understand it, ABC purchased Worldway and merged ABF, Carolina Freight and Red Arrow operations.  This change of operations was in the works as early as 1994.

7.    There was a meeting in the later part of 1994 or early 1995, we were told by Carolina Freight managers/supervisors that the company (Carolina Freight) was working on a three phase change and that the Carlisle (Carolina Freight) Board was going to be reduced to 150



PLAINTIFF'S EXHIBIT

employees from the Board which consisted of local and over the road employees, amounting to 700-800 employees, including casuals.

8.     At that meeting, representatives from ABF were present and were offering to "hire" Carolina Freight drivers as "new hires" at the Carlisle facility.

9.     Many of the drivers, myself included, at the time that the meeting was held at the Union Hall, remained of the understanding that one of the options that was available to us: we could take a "layoff" and we would be recalled to the Carlisle operation based on our accrued seniority. I elected a layoff. Those drivers which followed Carlisle's work to other locations also had layoff rights when they were laid off a short time later..

10.     As I understand it, historically, under the Teamsters Collective Bargaining Agreement, drivers are able to follow their work, as one means of dealing with downsizing, mergers and other changes of operation, which at the same time allows them to keep seniority rights when in layoff status. The Master Freight Agreement says:

Article 5.1 (b)
Seniority shall be broken only by discharge, voluntary quit, retirement, or more than a five (5) year layoff.

11.     The labor agreement, which called for the Company and the Union to have a system of recalling drivers by seniority date, was not implemented at Carlisle. Carolina Freight drivers, including myself, who have been reinstated since 1998 were never contacted by the Company or Union concerning employment vacancies on the Board. We learned of the Board vacancies through word of mouth from other drivers and based upon our own efforts contacting the facility. Thus, in so far as I am aware, in terms of the labor agreement calling for a seniority based recall of laid off drivers based upon the availability of jobs at the Carlisle facility. This was not put in place by either ABF or the local Union. The labor agreement says:

Article 5, Section 2 (c) (2)
In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be similarly "dovetailed" by appropriate classification. If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes...

12.    When I was "laid off" from Carolina Freight, under the terms and provisions of the labor agreement, as I understand it, I retained recall rights for five years under the agreement.

13.    The Carlisle work, post-merger work, that had been handled by Carolina drivers, domiciled in Carlisle before the change of operations was, in fact, still handled out of the Carlisle facility. (Although it was shifted from the Carolina facility to the ABF facility.) I am aware of this because at the time I inquired and was recalled with ABF, and since that time, we run the same freight that we ran before the "layoff" and the "merger" of 1995.

14.    During the fall of 1998 (shortly before I returned to work at the Carlisle facility), I was contacted by Wade Reall, who had also been a Carolina Freight driver at the Carlisle facility. He, in turn, had been contacted by Don McDade, who was a Carlisle driver who had been domiciled in Philadelphia and had transferred back to the Carlisle ABF facility in 1996. Wade's contact with Don, resulted in Wade calling me and suggesting that there may be positions at the Carlisle facility. Neither the company nor the Union had a systematic way of implementing their obligation under the collective bargaining agreement to consider us first for any positions at ABF's Carlisle facility.

15.    As a consequence of the contact with Mr. Reall, I contacted several other drivers who in turn contact several other drivers and, as I understand it, based on the information from Wade Reall, we all applied to ABF for recall from layoff.

16.    When I contacted ABF, I had anticipated that I would return under § 5.2,

to return us under § 5.5 was a contractual violation, in my opinion.

17.     I was told to contact ABF's facility in Fort Smith, Arkansas, in order to indicate and interest in returning.

18.     When I returned, I was not given my seniority date that I was entitled to under the labor agreement, when I asked the dispatcher what number I stood on the board, he told me to just make an "X" in the space where the number is normally placed.  (My name was not yet on a seniority list until later when one was posted with my name and seniority date and wrong number.)

19.     Ordinarily, runs are assigned off of the Board and are governed by the overall seniority date/number.

20.     The effect of the way we were brought back avoided giving us our proper seniority date.  We were not assigned a seniority date at the time we returned.  We were placed at the bottom of the Board, without a seniority date, based on the time when we clocked in for the first time coming back from a layoff and referred out after ABF drivers at Carlisle.  I tried to ascertain what my seniority date on the Board was going to be and could not obtain an answer or clarification from the dispatcher.

21.     When a new seniority list was posted with my name on it, I immediately within the thirty day period allowed for a seniority grievance, filed my grievance under the collective bargaining agreement.  The labor agreement, which called for the Company and the Union to have a system of recalling drivers by seniority date, was not implemented at Carlisle. Carolina Freight drivers, including myself, who have been reinstated since 1998 were never contacted by the Company or Union concerning employment vacancies on the Board. We learned of the Board vacancies through word of mouth from other drivers and based upon our own efforts contacting

the facility. Thus, in so far as I am aware, in terms of the labor agreement calling for a seniority based recall of laid off drivers based upon the availability of jobs at the Carlisle facility. This was not put in place by either ABF or the local Union. The labor agreement says:

> Article 5, Section 2 (c) (2)
> In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be similarly "dovetailed" by appropriate classification. If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes...

22.    It was this initial grievance which lead to the Eastern Conference, with other grievances placed under it. However, it took them 81 days to decide that the grievances were untimely, after a determination by the company, the grievance was then sent to the Eastern Conference, which upheld the company determination of "untimeliness". It was then sent to the NGB (National Grievance Board) were it has sat until after now.

23.    Every time a seniority list is posted I have promptly and timely filed a grievance over the fact that I have not been assigned the correct seniority date and at no time have I ever received a decision from the local Union or ABF concerning that contention.

24.    Article 5 of the Master Freight Agreement, covering over the road drivers and local cartage in Central Pennsylvania, covers the seniority rights and while ordinary, day to day grievances concerning administration of the labor agreement, have seven days from the violation to file a grievance, the provisions pertaining to cutting the seniority board and seniority related grievances are governed by a procedure outlined in Article 5.4(d) which provides:

> The Employer shall give the Local Union a seniority list at least every six (6) months. The Employer shall also post a seniority list at least once every six (6) months and shall maintain a current seniority roster at the terminal. Protest of any employee's seniority date or position on such list must be made in writing to the Employer within thirty (30) days after such seniority date or position first appears, and if no protests are timely made

the dates and positions posted shall be deemed correct. Any such protest which is timely made may be submitted to the grievance procedure.

25.    I believed that the seniority issue had not been resolved at the time I initially returned and that the issue would be resolved by the posting of the next seniority list.

26.    As noted above, when the list was posted, I grieved promptly under the provisions governing seniority issues and seniority lists.

27.    The initial grievance which I have attached to my Affidavit was filed by me in December 1998.

28.    With regard to the December 1998 posting, I filed my grievance timely fashion under either standard (i.e. 7 day, 30 day) because I filled within two days of the posting of the December list.

29.    The stewards on the job would not sign the grievance at the time I presented it to them.

30.    There was a period of time when the stewards were not signing the grievances and all we have for records was the grievance as we submitted it.

31.    The grievance in question was presented to both the Company and Union following established procedure in presenting the grievance in question in 1998.

32.    My grievance was denied as being untimely by the company, then referred to the Eastern Conference.

33.    After the Eastern Conference determination, we then as a group, including my self, requested "any and all appeals".

34.    Accordingly, after the Eastern Conference determination which did not address the merits of the grievance, the matter was then sent to Phil Young, who is the National Freight director in Washington, D.C., and the matter was referred to the NGB.

35.    On May 20, 1999, Daniel Virtue replied to our request for any and all appeal sent. See attached.

36.    Shortly after we were advised of the referral to International Brotherhood Freight Director, we requested an opportunity to participate in any further processing of the argument on appeal.  This request was never responded to.

37.    There is one other employee, who is not a Plaintiff,  who filed his seniority grievance on the same grounds, on day he returned, and his grievance is being treated on the same grounds as ours, "untimeliness", this individuals name is Gary Kissinger.

38.    I am aware of this occurrence because I helped prepare the grievance for Mr. Kissinger, who returned after I did, and his grievance was filed when he came through the door.

39.    The reason his was punched in that time sequence is because we had grievances filed already on the issue and I was facilitating him to see that his was filed timely.

40.    Mr.Kissinger came back in September of 1999.

41.    Each of the averments contained in this Affidavit are based upon my direct personal knowledge of the events in question.

# NMFA GRIEVANCE — Teamsters Local 776    89095

Name _RAY G. SNYDER, JR_    Home Phone _717-697-2447_ Date of Hire _9-5-85_

Address _138 LINDA DRIVE_ _____ City _MECHANICSBURG_, State _PA_ Zip _17055_

Employer _A.B.F._

Employer's Address _CARLISLE PA 17013_

Road ☑    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _____ 19 44

NATURE OF GRIEVANCE: _I AM A ROAD DRIVER AT A.B.F. IN CARLISLE, PA. I WAS CALLED BACK TO WORK ON 11-27-98 FROM A LAYOFF STATUS FROM CAROLINA FREIGHT IN CARLISLE, PA IN 1995. I WAS PUT BACK TO WORK WITH ALL MY COMPANY SENIORITY BUT WITH NO TERMINAL SENIORITY. I FEEL THAT THIS BEING A RECALL FROM LAYOFF I SHOULD BE DOVETAILED INTO MY ORIGINAL SENIORITY SPOT. SO I AM FILING THIS GRIEVANCE TO REGAIN ALL MY SENIORITY AND ANY LOST WAGES DUE TO NOT HOLDING MY FULL SENIORITY SPOT._

STEWARD'S COMMENTS: _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Ray G. Snyder_
Signature of Member Filing Grievance                     Shop Steward

☑ **YOU** must check this box if you want to attend the grievance hearings. If you request to be in attendance, **YOU WILL NOT** be paid for this time.

ACTION TAKEN BY BUSINESS AGENT _____

Date: _____                     Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

INSTRUCTIONS ON BACK OF YELLOW SHEET

# NMFA GRIEVANCE — Teamsters Local 776          94572

**Name** _Ray Snyder_          Home Phone _697-2447_     Date of Hire _9-4-85_

**Address** _138 Linda Drive_          City _Mechanicsburg_ State _PA_ Zip _17055_

**Employer** _A.B.F._

**Employer's Address** _Carlisle, PA._

Road ☑    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to
issue the proper copies to all parties in a timely manner, as per your contract.

Date: _____

**NATURE OF GRIEVANCE:** _I am Filing Against The Seniority List_
_Dated March 02, 2000   Under Article #5 Section 4 D_
_Due to The Fact I am Not In my Current Seniority_
_Position I am claiming To Be Put In my Current_
_Seniority Position And All money due to me._

**STEWARD'S COMMENTS:** _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all dis-
ciplinary letters, photos and any other documentation pertaining to this grievance.

_Ray Snyder_                          _signature_
Signature of Member Filing Grievance            Shop Steward

☐ **YOU must check this box if you want to attend the grievance hearings. If you request to
be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

Date: _____          _____
                                Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**



# NMFA GRIEVANCE — Teamsters Local 776

906...

Name _Ray G Snyder_

Address _138 Linda Drive_          Home Phone _697-2447_      Date of Hire _9/2_

Employer _ABF_          City _Mechanicsburg_  State _PA_  Zip _17..._

Employer's Address _Carlisle PA._

Road ☑     Dock ☐     Jockey ☐     City ☐     Iron and Steel ☐      Mechanic-Office ☐      Miscellaneous

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.     Date: _____

**NATURE OF GRIEVANCE:** _I am filing this grievance on the companys position stating that my grievance on being placed back in my full seniority position was filed untimely which I received a letter on 4/14/99 stating their position. I am in disagreement with this position. Because the Master Freight Book states " A grievance on seniority shall be filed within 30 days of the posting of the notice of seniority. My grievance was filed in accordance with the Master Freight Agreement. I further believe that ABF is delaying a decision on my grievance, to allow the 5 year window period to expire, which with then deprive me of my rights. This is an unfair labor practice. Please be advised that it is my position that my rights are being violated, and that ABF is not abiding by the guidelines as the Master Freight Agreement._

**STEWARD'S COMMENTS:** _____

_____

**In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.**

_Ray G Snyder_
Signature of Member Filing Grievance                              _____
                                                                                                    Shop Steward

☑  **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

_____

_____

Date: _____                              _____
                                                                                            Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW**

# NMFA GRIEVANCE — Teamsters Local 776

93078

Name _ROY G. GARDNER_    Home Phone _717-697-3447_ Date of Hire _9-5-85_

Address _155 LAURA DR #_    City _MECHANICSBURG_ State _PA_ Zip _17055_

Employer _A B F_

Employer's Address _CARLISLE PA 17013_

Road ☑    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.    Date: _____

**NATURE OF GRIEVANCE:** _I FILED A GRIEVANCE AGAINST THE SENIORITY LIST WHICH WAS_
_POSTED AT ABF AT CARLISLE PA ON 9-28-99. I RECEIVED A LETTER ON 10th 30-99 STATING_
_THAT MY GRIEVANCE WAS DECIDED THAT THERE WAS NO CLAIM FOR THE INCLUSION OF R-_
_38-99 AT THE EASTERN CONFERENCE. I AM IN DISAGREEMENT WITH THIS LETTER_
_FOR THE FOLLOWING REASONS: #1. THE _____ CASE #R-38-99 THAT WAS HEARD AT_
_EASTERN CONFERENCE WAS NOT THE GRIEVANCE I FILED ON MY SENIORITY, HOWEVER IT_
_WAS AN UNTIMELY ISSUE THAT THE COMPANY HAD ATTACHED TO MY GRIEVANCE SEE HANDWRITTEN_
_PORTION OF PAPER ATTACHED LETTER MARKED EXHIBIT #1 IT CLEARLY STATES THE ONLY ISSUE_
_TO BE HEARD WAS THE UNTIMELY ISSUE. #2. THE PAPER MARKED EXHIBIT #2 IS A COPY_
_OF ARTICLE 5 SECTION 4a WHICH SAYS I HAVE THE RIGHT TO PROTEST ANY SENIORITY POSITION_
_AS LONG AS IT IS WITHIN 30 DAYS, WHICH IT WAS #3. THE LETTER MARKED EXHIBIT #3 WAS SENT TO_
_ME ALONG WITH THE DECISION ON GRIEVANCE #93819 THIS IS FAULTY INFORMATION IT SAYS THE_
_UNTIMELY ISSUE WAS _____ R-38-99_

**STEWARD'S COMMENTS:** _FILED UNDER SENIORITY. LOOK AT THE RIGHT OF EXHIBIT #2 MINE WAS WITHIN_
_THE WITHIN RANK. #4 THE FIRST GRIEVANCE HAS NOT YET BEEN SETTLED IT IS STILL IN THE NEGOTIATING_
_COMMITTEE UNDER APPEAL. I FEEL THAT MY GRIEVANCE #93819 WAS NOT PRESENT HEARD_

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Roy G. Gardner_
Signature of Member Filing Grievance                    Shop Steward

☒ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _FIND PROCESSED, MY RIGHTS ARE BEING VIOLATED BECAUSE THIS WAS A GRIEVANCE ON_
_SENIORITY AND NOT AN UNTIMELY ISSUE AND WAS FILED WELL WITHIN THAT GUIDE LINES_
_OF THE MASTER FREIGHT AGREEMENT AND SHOULD BE HEARD THROUGH THE WHOLE_
_PROCEDURES. 4 PAPERS ATTACHED TO THIS GRIEVANCE._

Date: _____    _____
                          Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776          89095

Name: RAY G. SNYDER, JR    Home Phone 717-697-2447    Date of Hire 9-5-85

Address 138 LINDA DRIVE    City MECHANICSBURG, State PA    Zip 17055

Employer A.B.F.

Employer's Address CARLISLE, PA 17013

Road ☑    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _____    19 44 5

NATURE OF GRIEVANCE: I AM A ROAD DRIVER AT A.B.F. IN CARLISLE, PA. I WAS CALLED BACK TO WORK ON 11-27-98 FROM A LAYOFF STATUS FROM CAROLINA FREIGHT IN CARLISLE, PA IN 1995, I WAS PUT BACK TO WORK WITH ALL MY COMPANY SENIORITY BUT WITH NO TERMINAL SENIORITY. I FEEL THAT THIS BEING A RECALL FROM LAYOFF I SHOULD BE DOVETAILED INTO MY ORIGINAL SENIORITY SPOT, SO I AM FILING THIS GRIEVANCE TO REGAIN ALL MY SENIORITY 'D ANY LOST WAGES DUE TO NOT HOLDING MY FULL SENIORITY SPOT.

STEWARD'S COMMENTS: _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_____    _____
Signature of Member Filing Grievance    Shop Steward

☑ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT _____

Date: _____    _____
                          Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776

92821

Name _RAY E TAYLOR_    Home Phone _697-3417_    Date of Hire _____

Address _138 LENKER DRIVE_    City _MECHANICSBURG_   State _PA_   Zip _17055_

Employer _ABF_

Employer's Address _CARLISLE PA_

Road ☑   Dock ☐   Jockey ☐   City ☐   Iron and Steel ☐   Mechanic-Office ☐   Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date:_____

**NATURE OF GRIEVANCE:** _ON OR ABOUT 12-17-98 I FILED A GRIEVANCE ON THE ISSUE OF MY SENIORITY ON OR ABOUT JANUARY, 1999 A LOCAL HEARING WAS CONDUCTED WHEREI IT WAS DECIDED TO DOCKET THIS GRIEVANCE FOR EASTERN CONFERENCE. ONCE ABOUT 21 DAYS LATER A HEARING WAS CONVENIED AND THE BUSINESS AGENT PRO VERBAL STATING THAT THE GRIEVANCE WAS UNTIMELY TABLED THE ISSUE OF UNTIMELINESS AND ADDITIONALLY FILED A SECOND GRIEVANCE SEE ATTACHED LETTER FROM PAT VERSHE DATED APRIL 13, 1999 WHEREIN HE STATES THAT THE ONLY ISSUE ON APPEAL IS UNTIMELINESS. AS A RESULT, I WENT TO THE APPEAL AT THE JOINT EASTERN CONFERENCE WHEREIN MY ENTIRE GRIEVANCE INVOLVING THE ISSUE OF SENIORITY WAS DISPOSED OF WITHOUT PRIOR NOTICE, WHEREIN, DUE PROCESS AND PREPERATION ON MY CITY ISSUE WAS NOT PROPERLY DISPOSED OF. MY SECOND GRIEVANCE WAS ALSO UNTIMELY DISPOSED AT THE JOINT EASTERN CONFERENCE BECAUSE IT WAS NOT AT THE APPEAL STAGE AT THAT TIME. THEREFORE THIS GRIEVANCE IS ON THE IRREGULARITY, EQUITY PRINCIPLE AND FAILURE_

**STEWARD'S COMMENTS:** _OF THE UNION AND COMPANY TO FOLLOW CONTRACT GRIEVANCE PROCEDURES TO CUSTOM FIT MY GRIEVANCES. I THEREFORE REQUEST MY SENIORITY ON SENIORITY BE REINSTATED AND PROPERLY PROCESSED. SEE ATTACHMENTS LETTERS DATED 4-13-99 5-11-99_
_LETTER FROM PAT VERSHE AND ATTACHMENT_

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Ray E Taylor_
/ Signature of Member Filing Grievance        Shop Steward

☑ **YOU must check this box if you want to attend the grievance hearing. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

_____

_____

_____

Date: _____          Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776

90620

Name **RAY G. SNYDER**   Home Phone **697-2447**   Date of Hire **9/5/85**

ess **138 LINDA DRIVE**   City **MECHANICSBURG** State **PA.** Zip **17055**

Employer **A.B.F.**

Employer's Address **CARLISLE, PA.**

Road ☑   Dock ☐   Jockey ☐   City ☐   Iron and Steel ☐      Mechanic-Office ☐      Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _____   23 45

NATURE OF GRIEVANCE: *I am Filing This Grievance on the Companies Position Stating that my Grievance on being placed back in my Full Seniority Position was filed untimely which I Received a letter on 4-14-99 Stating their Position. I am in disagreement with this position, because the master freight Book States " A Grievance on Seniority shall be filed within 30 days of the posting of the notice of seniority." My Grievance was filed in accordance with the master freight Agreement. I further believe that ABF is delaying a decision on my Grievance, to allow the 5 year window period to expire, which will then deprive me of my rights. This is an unfair or practice. Please be advised that it is my position that my rights are being violated, and that ABF is not deciding early within the guidelines of the master freight agreement.*

STEWARD'S COMMENTS: _____

_____

_____

_____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

*Ray G. Snyder*
Signature of Member Filing Grievance          Shop Steward

☑ **YOU** must check this box if you want to attend the grievance hearings. If you request to be in attendance, **YOU WILL NOT** be paid for this time.

ACTION TAKEN BY BUSINESS AGENT

AP 22 20

_____ Date: _____          Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776

92801

Name **RAY G. SNYDER**  Home Phone **697-2447**  Date of Hire **09-05-85**

Address **138 LINDA DRIVE**  City **MECHANICSBURG**  State **PA**  Zip **17055**

Employer **A.B.F.**

Employer's Address **CARLISLE, PA**

Road ☒  Dock ☐  Jockey ☐  City ☐  Iron and Steel ☐  Mechanic-Office ☐  Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _____

**NATURE OF GRIEVANCE:** ON MAY 12, 1999 I WAS ON LAY-OVER AT THE DAYTON, OH TERMINAL. UPON ARIVING AT THE TERMINAL I NOTICED A NEW NOTICE ON THE DISPATCH WINDOW WARNING THE EMPLOYEES THAT THE TERMINAL IS A SMOKE-FREE FACILITY. THIS IS A DIRECT VIOLATION OF RIGHTS. ARTICLE #57 SECTION #1 OF THE PENNSYLVANIA SUPPLEMENTAL AGREEMENT SAYS ~~_____~~ "DRIVERS' WAITING ROOM AND SLEEPING QUARTERS WILL BE MAINTAINED AT PRESENT DAY STANDARDS." I AM CLAIMING THERE SHOULD BE A DESIGNATED SMOKING AREA WITH-IN THE BUILDING, OR DRIVERS WAITING ROOM OR LOUNGE. THE OTHER ALTERNATIVE WOULD BE SENDING DRIVERS ON LAY-OVER TO A MOTEL WHICH IS MAINTAINED AT TODAYS STANDARDS OFFERING SMOKING AND NON-SMOKING ROOMS.

**STEWARD'S COMMENTS:** _____

_____

_____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos, and any other documentation pertaining to this grievance.

_Ray G. Snyder_
Signature of Member Filing Grievance

_Ron Sichs_
Shop Steward

☐ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

_____

_____

Date: _____

Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

## INSTRUCTIONS ON BACK OF YELLOW SHEET

# NMFA GRIEVANCE — Teamsters Local 776    92819

Name Ray G Snyder    Home Phone 6972447    Date of Hire 04-05-81

Address 138 Linda Drive    City Mechanicsburg    State PA    Zip 17055

Employer A.B.F.

Employer's Address Carlisle PA.

Road ☑    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.    Date: _____ 7

NATURE OF GRIEVANCE: I Am Filing This Grievance Against The Seniority List Which Is Dated 9-27-99 And Was Posted On 9-27-99 At The A.B.F Terminal In Carlisle PA. I Am Filing Under Article 5 Section 4 (d) Protesting That I Am Not Shown On Such List In My Rightful Seniority Position. I Was A Laid Off Carolina Freight Employee And Was Called Back At A.B.F Under Article 5 Section 5 To Circumvent Calling Me Back Under Article 5 Section 2. I Am Requesting To Be Placed In My Correct Seniority Position And For Any Money Due Me.

STEWARD'S COMMENTS: _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Ray G Snyder_    _____
Signature of Member Filing Grievance    Shop Steward

☐ YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.

ACTION TAKEN BY BUSINESS AGENT _____

_____

Date: _____    _____
Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**



(14)

May 16, 1999

BA: D. Virtue
Teamsters Local # 776
2552 Jefferson Street
Harrisburg, Pa 17110

      I am writing this letter in conjunction with the untimely grievance of mine, which was heard at the Eastern Conference on, April 27,1999 in which the panel ruled against the union, and the point of order was upheld. I feel that my grievance contains different facts than the one it was placed and heard under, therefore I am requesting that you as my representative make any or all appeals that are offered to me as a union member under the contract of the International Brotherhood of Teamsters.

      Respectfully Yours,

*RAY G. SNYDER*

*Ray G Snyder*

GRIEVANCE #



Thomas Griffith, President
Teamster Local 776
2252 Jefferon Street
Harrisburg, Pa 17110

SUBJECT:  NMFA GRIEVANCE #89095, Ray G. Snyder/ABF Freight Systems

Dear Mr. Griffith:

On December 17, 1998, I filed factual grievance #89077 with
Teamsters Local 776, a copy of which I have enclosed.  On January
8th, 1999, a hearing was conducted at the terminal in Carlisle, PA.
The issue of my grievance relates to my Seniority, and as a result
of what I perceive to be a "Conflict Of Interest" in this issue is
with my Union Steward, I did not receive adequate or proper
representation.  As matter of fact, the Union Steward said nothing
helpful on my behalf, and made statements contrary to my best interest.
This Case is now deadlocked and being forwarded to the Employer and
the Union Secretaries of the National Grievance Committee.

Article 7, Section 2, Grievant's Bill of Rights, of the
National Master Freight Agreement of Central Pennsylvania entitles me
to have my case decided upon fairly and promptly.  I, therefore, am
requesting assurance that any Union Repesentative on my behalf meets
the requirements herein, and doesn't have any interest in the out
come of my case wherein that person or persons can be directly affected
by any decision made in/on my behalf.

Sincerely Yours,

Ray G. Snyder
Box 138, Linda Drive
RD #4
nicsburg, PA 17055

ENDER:
Complete items 1 and/or 2 for additional services.
Complete items 3, 4a, and 4b.
Print your name and address on the reverse of this form so that we can return this
card to you.
Attach this form to the front of the mailpiece, or on the back if space does not
permit.
Write "Return Receipt Requested" on the mailpiece below the article number.
The Return Receipt will show to whom the article was delivered and the date
delivered.

I also wish to receive the
following services (for an
extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery
Consult postmaster for fee.

i. Article Addressed to:

THOMAS GRIFFITH
TEAMSTERS LOCAL 776
2552 JEFFERSON ST.
BURG. PA 17116

4a. Article Number
Z 349470 453

4b. Service Type
☐ Registered          ☑ Certified
☐ Express Mail        ☐ Insured
☐ Return Receipt for Merchandise  ☐ COD

7. Date of Delivery  APR  2 1999

5. Received By: (Print Name)
HBG PA 170 20 42 1

6. Signature: (Addressee or Agent)
x K. A. Dietz

8. Addressee's Address (Only if requested
and fee is paid)

Thank you for using Return Receipt Service.

Teamsters Local #776          May 18, 1999
Attn: D. Virtue
2552 Jefferson Street
Harrisburg, Pa 17110

Dear D. Virtue,

 I am writing this to request a copy of the seniority list which was posted at A.B.F in December of 1998 at the Carlisle, Pa facility. The list I am speaking of is the list of employees who were over-the-road classification only. This list will also include my name.

 I am also requesting a copy of the current master list for the whole A.B.F. Carlisle, Pa terminal being current to today's date May 20, 1999.

Respectfully Yours,
Ray G. Snyder

## <u>VERIFICATION</u>

I, Ray G. Snyder, Jr., have reviewed the foregoing document and do hereby confirm that the forgoing statements are true and correct to the best of my knowledge, information, and belief. I make this affirmation with the knowledge that I am subject to the provisions regarding false swearing of information to authorities.

Date: _Oct 4, 2000_

Ray G. Snyder, Jr., Plaintiff

# EXHIBIT O

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,                          :
                                            :
        Plaintiff,                          :   NO.  3:01-CV-789
                                            :         Judge Sylvia H. Rambo
        v.                                  :
                                            :
DANIEL A. VIRTUE, Business Agent of the     :
International Brotherhood of Teamsters;      :
INTERNATIONAL BROTHERHOOD OF                 :
TEAMSTERS; ABF FREIGHT SYSTEM,              :
INCORPORATED,                               :
                                            :
        Defendants.                         :

### AFFIDAVIT OF DAUPHIN COUNTY, COMMONWEALTH OF PENNSYLVANIA, MAY 10, 2002

I, Vincent Ramirez, Jr., do hereby make the following statement my affidavit;

1.      I am one of the main Plaintiff's in <u>Albright, et. al. vs. ABF, et. at.</u>, No. 1:CV-00-0878.  I hereby reaffirm the attached affidavit, which I previously made in that matter.  (See Exhibit A)

2.      At the time Carolina freight shut down the Carlisle terminal, I was advised, as well as others, that I had five (5) years of recall rights under the Collective Bargaining Agreement and that the recall rights would extend to any successor employer.

3.      However, at no time during the ensuing period of period of time up to the time I contacted ABF, was any effort made by the Union or the Company to implement those recall rights or nor were any steps taken to insure that they would have the ability to implement those recall rights.  By that, I mean, that the no effort was made to keep track of my address, no contact was made through ABF or through the Union concerning recall.  I obtained employment under

4.      I obtained employment under my recall rights as a result of word of mouth contact from other employees and as a consequence I applied to ABF and was reinstated.

5.      It is my belief that the Company and the Union sought to avoid the provisions of the Collective Bargaining Agreement as they applied to recall, because by recalling me; I was more expensive on an hourly basis than a new employee and my fringe benefits, as a recalled employee, were far more than the fringe benefits that a new employee would have been entitled to.  Accordingly, I think that the Company and the Union got together not withstanding the labor agreement to try to avoid the recall provisions and their effect (Higher wage rate, more accrued benefits.)

6.      In so far as the structure of the Carlisle terminal, both before it was shut down and after it became an ABF terminal is concerned, there are two (2) seniority measures that are involved;

      (a.)      Your company seniority; and

      (b.)      Your time in category as a driver or as a dock/ local/ terminal employee.

However, you can transfer to the over-the-road driver board from the dock and I know that and/or from the over-the-road driver board to the dock based upon you company seniority.  Accordingly, someone like Rickey Bechtel, who drove, I believe, as a yard jockey and who did other driving activities, from time to time, would be entitled to apply, based upon his company seniority, for open over-the-road driver positions on the over-the-road board.

7.      It is my understanding that economic factors, such as increased pay and increased benefits would apply to someone, such as Rickey Bechtel, if he were reinstated over the hiring of

a new employee, which would involved a lower hourly rate and with fewer fringe benefits to start.

8.    So far as I am aware, a dockman or terminal employee could apply for a position on the over the road board based upon their company (overall) seniority.

I have read the above affidavit consisting of this and ~~blind cover~~ two (2) other pages and it is true and correct.

05-10-2002
Date

Vincent Ramirez, Jr.

# AFFIDAVIT OF VINCENT RAMIREZ, JR

I, Vincent Ramirez, Jr., hereby make this following document my affidavit in connection with the above reference litigation and provide the following information which is correct and true to the best of my knowledge, information and belief:

1.    I have reviewed the Affidavit of Daniel A. Virtue, which has been lodged in support of the Motion to Dismiss in the above referenced case.

2.    Upon reviewing the segment of the Affidavit that applies to me, I have the following information.

3.    I have been a member of Teamster Union since May 24, 1986 and with the Local 776 at Carolina Freight's Carlisle terminal since 1990 and up until March 19, 1995.

4.    Under Carolina Freight's change of operations to a regional carrier, I was told by managers that the Carlisle terminal would be reduced to 150 employees, total, and that therefore existing employees on the Board at the terminal could take a layoff or to into other Carolina Freight locations.

5.    I was told that whoever did not transfer out could take a layoff and stay on hold for Carlisle.

6.    During 1995, I attended two meetings concerning the change of operations of ABF and Carolina Freight.

7.    The first meeting was held at the Carolina Freight "barn", which was also attended by representatives of ABF. This meeting which was held before the change of operations and the ABF and Carolina Freight managers were handing out applications. During this meeting, the Union told us that if we were laid off, there was a five year window for us to be recalled without loss of seniority. We were told there was going to be a reduction in the number

PLAINTIFF'S
EXHIBIT
A

of employees at the Carlisle facility, but we would be eligible for recalled first before any "new hires".

8.    The second meeting was held at the Embers Restaurant in Carlisle, which was attended by Daniel Virtue, Carlos Ramos and other Teamster officials.  To the best of my knowledge, no representatives from ABF were present.

9.    I was laid off on May 23, 1995, at which time I worked at CF for seven months, but they were not working me, so I went to Roadway on a part time basis as a casual yard jockey for almost a year.  I then went to work for a mail carrier, while waiting for my recall.

10.    As I understand it, historically, under the Teamsters Collective Bargaining Agreement, drivers are able to follow their work, as one means of dealing with downsizing, mergers and other changes of operation, which at the same time allows them to keep seniority rights when in layoff status.  The Master Freight Agreement says:

> Article 5.1 (b):
> Seniority shall be broken only by discharge, voluntary quit, retirement, or more than a five (5) year layoff.

11.    The labor agreement, which called for the Company and the Union to have a system of recalling drivers by seniority date, was not implemented at Carlisle. Carolina Freight drivers, including myself, who have been reinstated since 1998 were never contacted by the Company or Union concerning employment vacancies on the Board. We learned of the Board vacancies through word of mouth from other drivers and based upon our own efforts contacting the facility. Thus, in so far as I am aware, in terms of the labor agreement calling for a seniority based recall of laid off drivers based upon the availability of jobs at the Carlisle facility.  This was not put in place by either ABF or the local Union.  The labor agreement says:

> Article 5, Section 2 (c) (2)
> In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be

similarly "dovetailed" by appropriate classification.  If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes...

12.    I learned during a conversation with Ray Snyder that ABF was accepting laid off Carolina Freight drivers.

13.    Ray Snyder told me to contact Fort Smith, AK, which I did.

14.    I was contacted and told that I was to report to work at the Carlisle facility on November 27, 1998.

15.    When I returned, I was not given my seniority date that I was entitled to under the labor agreement, when I asked the dispatcher what number I stood on the board, he told me to just make an "X" in the space where the number is normally placed.  (My name was not yet on a seniority list until later when one was posted with my name and seniority date and wrong number.)

16.    Ordinarily, runs off of the Board are governed by the seniority date/number.

17.    As soon as the seniority list was posted, after my return, I filed a grievance within two days of the posting showing my incorrect seniority date.

18.    Article 5 of the Master Freight Agreement, covering over the road drivers and local cartage in Central Pennsylvania, covers the seniority rights and the filing of grievances. The provisions pertaining to seniority related grievances are governed by language which provides that the seniority list be posted at least twice a year and that an employee has thirty days after the posting of the list to file a grievance.

Article 5.4 (d) Posting of Seniority List
The Employer shall give the Local Union a seniority list at least every six (6) months. The Employer shall also post a seniority list at least once every six (6) months and shall maintain a current seniority roster at the terminal.  Protest of any employee's seniority

date or position on such list must be made in writing to the Employer <u>within thirty (30) days after such seniority date or position first appears</u>, and if no protests are timely made the dates and positions are deemed correct. Any such protest which is timely made may be submitted to the grievance procedure. (Emphasis added.)

19.     My grievance was presented to both the Company and Union following established procedure in presenting grievances.

20.     There was a period of time when the stewards were not signing the grievances when received.

21.     The Union stewards and business agents are supposed give us some advice, guidance, or direction concerning the section of the contract that should be cited, but that has never been done in my case.

22.     In 1999, I attended a local grievance hearing at the ABF terminal, Daniel Virtue and other business agents were there. Mr. Virtue asked me what section I was grieving under and I informed him that I had recall and seniority rights under Article 5.2. At that time I was informed that Mr. Virtue was taking my grievance to Eastern Conference.

23.     I also attended the Eastern Conference grievance hearing in Myrtle Beach, NC. on April 27, 1999 I attended this hearing with Ray Snyder. We were made to wait until our grievance came up, at which time we were separated. Apparently, they were separating us into two groups, the ex-Carolina employees who were on layoff, and the ex-Carolina employees who accepted work at other locations. It is my understanding that they used Norman Runk's grievance as a master grievance for the laid off employees and Stanley Nye's grievance as a master grievance for the employees. We were told previously by the business agents that all our grievances, which presented the same seniority issues, were going to be heard together, but on the day of the hearing, they split the grievances into two categories.

24.     At the conclusion of that meeting, we were informed that we would have to wait

for our decisions.

25.    In the summer of 1999, we were informed that all the grievances filed were untimely. Immediately, we called and told them we wanted to appeal the decision.

26.    The grievances were transferred to D.C. on appeal to the NGB (National Grievance Board).

27.    In so far as I am aware, the appeal is still pending.

28.    Since returning from layoff in 1999, I am running the same freight, from and to the same terminals, using the same equipment as I did with Carolina Freight.

29.    Each of the averments contained in this Affidavit are based upon my direct personal knowledge of the events in question.

# NMFA GRIEVANCE — Teamsters Local 776          96316

Name _Vincent Ramirez Jr_     Home Phone _717-520-52_ Date of Hire _5-24-86_

Address _Birchwood Park_    City _Shippensburg_    State _PA_    Zip _17257_

Employer _APF_

Employer's Address _RT 11 Carlisle PA_

Road ☑    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _July 26 2000_

NATURE OF GRIEVANCE: _I am filing this grievance on the seniority list that was posted on 7-25-2000 my seniority date is still not right, my right seniority date is 5-24-86 and all money due me._

STEWARD'S COMMENTS: _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Vincent Ramirez_
Signature of Member Filing Grievance

_M.C. McDaniel_
Shop Steward

☑ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT _____

Date: _____

Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

# NMFA GRIEVANCE — Teamsters Local 776

94577

Vincent Ramirez JR      Home Phone 717-530-5329 Date of Hire 5-24-86

Address 81 Linwood Park      City Shippensburg      State PA      Zip 17257

Employer ABF

Employer's Address Carlisle PA

Road ☑      Dock ☐      Jockey ☐      City ☐      Iron and Steel ☐      Mechanic-Office ☐      Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.      Date: March 3 2000

**NATURE OF GRIEVANCE:** I AM Filling This Grievance about The seniority list which was posted March 3, 2000 AT The ABF Terminal in Carlisle PA I Am Filling under Article #5 section 4 - 2 Protesting That I AM NOT shown on such list in my rightful seniority position. And All money Do me.

**STEWARD'S COMMENTS:**

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_____      _____
Signature of Member Filing Grievance                    Shop Steward

☑ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

Date: _____

_____
Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# MFA GRIEVANCE — Teamsters Local 776        94900

Name _Grant Ramirez Jr_        Home Phone _717-530-5329_ Date of Hire _5-24-86_

Address _84 Fenwood Park_        City _Shippensburg_ State _PA_ Zip _17257_

Employer _A&F_

Employer's Address _RT 11 Carlisle PA_

Road ☐    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.        Date: _April 29, 2000_

NATURE OF GRIEVANCE: _I am Filing this grievance on the Revised Seniority_
_list that was posted 4-28-2000 my seniority date is still_
_not right my right seniority date 5-24-86. All money due me_

STEWARD'S COMMENTS: _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_____        _____
Signature of Member Filing Grievance                Shop Steward

☒ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT _____

Date: _____        _____
                                        Signature of Business Agent

# NMFA GRIEVANCE — Teamsters Local 776

93445

Name _Vincent Ramirez JR_ Home Phone _717 574 5328_ Date of Hire _5-26-96_

Address _86 Laurwood Park_ City _Shippensburg_ State _PA_ Zip _17257_

Employer _ABF_

Employer's Address _RT 11 Carlisle PA_

Road ☑    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _June 29-2000_

**NATURE OF GRIEVANCE:** _I am filing this Grievance on the seniority list that was posted on 6-29-2000 my seniority date is still not right. My seniority date is 5-24-96 and All money due Me._

**STEWARD'S COMMENTS:** _____

**In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.**

_Vincent Ramirez_                              _John Kelly_
Signature of Member Filing Grievance                     Shop Steward

☑ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

Date: _____              _____
                                   Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

INSTRUCTIONS ON BACK OF YELLOW SHEET

# NMFA GRIEVANCE — Teamsters Local 776          88962

Teamsters Local 776 on behalf of

**Name**      Vinnie Ramirez

**Address**   86 LENWOOD PARK   City Shippensburg   State ___ Zip 17257          Home Phone ___     Date of Hire ___

**Employer**  ABF Freight Systems

**Employer's Address**  P. O. Box 1925, New Kingstown, PA   17072

Road [ ]   Dock [ ]   Jockey [ ]   City [ ]   Iron and Steel [ ]   Mechanic-Office [ ]   Miscellaneous [ ]

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.          Date: 2/9/99

**NATURE OF GRIEVANCE:**  ABF is in violation of the Carolina Change of Operations dated September 1997 (EFF CO. 7/4-1/99).

The Company is making Health & Welfare and Pension contributions to Central PA on behalf of Vinnie Ramirez. These contributions should be made to Local 701 per the decision from the Change of Operations Committee c

**STEWARD'S COMMENTS:**

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_____          _John L Vogler_
Signature of Member Filing Grievance          Shop Steward

[ ] YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.

**ACTION TAKEN BY BUSINESS AGENT** _____

_____

_____

Date: _____          _____
                          Signature of Business Agent

1 - WHITE - UNION COPY
2 - PINK - EMPLOYER
3 - BLUE - EMPLOYEE REPORTING GRIEVANCE
4 - YELLOW - STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776.

90605

Name _VINCENT RAMIREZ JR_    Home Phone _717 530-5329_ Date of Hire _5-24-86_

Address _86 LANWOOD PARK_    City _Shippansburg_ State _PA_ Zip _17257_

Employer _ABF_

Employer's Address _Carlisle PA_

Road ☑    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.    Date: _____

NATURE OF GRIEVANCE: _I am filling this grievance on the companies position stating that my grievance on being placed back in my full seniority position was filed untimely which I received a letter on 4-13-99 stating their position I am in disagreement with this position because the master freight book states "A grievance on seniority shall be filed with in 30 days of the posting of the notice of seniority" My grievance was filed in accordance with the master freight agreement. I further believe that ABF is delaying a decision on my grievance to allow this 5 year window period expire which will then deprive my rights. This is an unfair labor practice. Please be advised that it is my position my rights are being violated and that ABF is not dealing fairly with in the guidlines of the master freight agreement._

STEWARD'S COMMENTS: _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Vincent T Ramirez Jr_    _____
Signature of Member Filing Grievance    Shop Steward

☑ **YOU** must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.

ACTION TAKEN BY BUSINESS AGENT _____

_____

_____

Date: _____    _____
Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776

**92817**

Name _Vincent Ramirez Jr_   Home Phone _717-530-5329_ Date of Hire _5-24-86_

Address _86 Linwood Drive_   City _Shippensburg_ State _PA_ Zip _17257_

Employer _ABF_

Employer's Address _Carlisle  PA_

Road ID ☑  Dock ☐  Jockey ☐  City ☐  Iron and Steel ☐   Mechanic-Office ☐  Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.   Date: _6-8-99_  10:33

**NATURE OF GRIEVANCE:** On, or about 12-98 I filed a grievance on the issue of my seniority. On or about January, 1999, a local hearing was convened where it was decided to docket this grievance for Eastern Conference. On or about 81 days later, a hearing was scheduled, and the business Agent, Mr. Virtue stated that the grievances were untimely & appeal the issue of untimeliness and additionally filed a second grievance; see attached letter from Mr. Virtue dated April 12, 1999, wherein he states that the only issue on appeal is untimeliness. As a result, I went to the appeal at the Joint Eastern Conference, wherein my entire grievance, including the issue of seniority, was disposed of without proper notice, hearing, due process, and preparations. My seniority issue was not properly disposed of. My second grievance was also unlawfully decided at the Joint Eastern Conference because it was not at the appeal stage at that time. Therefore, this grievance is on the irregularity, faulty procedure, and failure of Union and company to follow contract grievance procedure to decide

**STEWARD'S COMMENTS:** in my grievance & therefore, request my grievance on seniority be reinstated and properly processed. SEE ATTACHMENTS LETTERS DATED 4-13-99 From Mr. Virtue & LETTER DATED 5-11-99 ☐

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Vincent Ramirez Jr_   19 19
Signature of Member Filing Grievance                    Shop Steward

☑  **YOU** must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.

ACTION TAKEN BY BUSINESS AGENT _____

Date: _____            Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776

92864

Name _VINCANT RAMIRAZ JR_    Home Phone _717-530-5329_ Date of Hire _5-24-86_

Address _86 LANWOOD PARK_    City _Shippensburg_ State _PA_ Zip _17257_

Employer _ABF_

Employer's Address _CARLISLE PA_

Road ☑    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _JUNE 15, 1999_    9 42

NATURE OF GRIEVANCE: _On June 14, 1999 I went to bed in Rochester NY the Rugs in the sleeping area you can ~~if you~~ see grease all over them, in the drivers room there is a water leak from the roof it was raining that day and trash can was full up not empty in the bathroom the floor was very dirty soap scum on ~~one~~ the ~~stall~~ wall of the shower and old soap used lying around the sink. please do something to clean our living area up._

STEWARD'S COMMENTS: _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Vincent Ramirez Jr._
Signature of Member Filing Grievance

_W. H. Bruce_
Shop Steward

☑ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT _____

_____

_____

Date: _____

Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776

93077

Name _Vincent Ramirez Jr_    Home Phone _717-570-0___ Date of Hire _____

Address _____ City _____ State _PA_ Zip _____

Employer _____

Employer's Address _____

Road ☑    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐      Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.    Date:_____

NATURE OF GRIEVANCE: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____ #____

STEWARD'S COMMENTS: _____

_____

_____

**In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.**

_____        _____
Signature of Member Filing Grievance        Shop Steward

☐   **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT _____

_____

_____

_____

Date: _____        _____
Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776          92810

Name _VINCENT RAMIREZ JR_     Home Phone _717-530-5328_ Date of Hire _5-24-86_

Address _86 LANWOOD PARK_     City _Shippensburg_ State _PA_ Zip _17257_

Employer _ABF_

Employer's Address _CARLISLE PA_

Road ☑     Dock ☐     Jockey ☐     City ☐     Iron and Steel ☐     Mechanic-Office ☐     Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as, per your contract.

Date: _SEPT 29, 1999_

12 07 9

19 42 9

NATURE OF GRIEVANCE: _I am filing this Grievance against the BC seniority list which is dated sept 27 and posted sept 28, at the ABF terminal in Carlisle, PA. I am filing under Article #5 section 4-(d) protesting that I am not shown on such list in my rightful seniority position. I was a laid off carolina freight employee and was called back at ABF under Article #5 section 5 to circumvent calling me back under Article #5 section 2. I am requesting to be placed in my correct seniority position and for any money due me._

STEWARD'S COMMENTS: _____

_____

_____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Vincent Ramirez jr_

Signature of Member Filing Grievance          Shop Steward

☑ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT _N/C Per CLCC R-38-99_

_____

Date: _____          _____

Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

INSTRUCTIONS ON BACK OF YELLOW SHEET

# NMFA GRIEVANCE — Teamsters Local 776                88962

Teamsters Local 776 on behalf of

Name    Vinnie Ramirez ............................. Home Phone .................... Date of Hire .............

Address    86 LENWOOD PARK  City Shippensburg ....... State ........... Zip 17257

Employer    ABF Freight Systems

Employer's Address    P. O. Box 1925, New Kingstown, PA    17072

Road [ ]    Dock [ ]    Jockey [ ]    City [ ]    Iron and Steel [ ]    Mechanic-Office [ ]    Miscellaneous [ ]

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: 2/9/99

NATURE OF GRIEVANCE:    ABF is in violation of the Carolina Change of Operations dated September 1997. LCATCH NOT MCICO 12-9/99.

The Company is making Health & Welfare and Pension contributions to Central PA on behalf of Vinnie Ramirez. These contributions should be made to Local 701 per the decision from the Change of Operations Committee c

STEWARD'S COMMENTS:

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_____              _John L Eagler_
Signature of Member Filing Grievance              Shop Steward

[ ]  YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.

ACTION TAKEN BY BUSINESS AGENT

_____

_____

Date: _____              _____
                                                    Signature of Business Agent

1 - WHITE – UNION COPY
2 - PINK - EMPLOYER
3 - BLUE - EMPLOYEE REPORTING GRIEVANCE
4 - YELLOW - STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776    89077

Name _Vincent Ramirez Jr_ Home Phone _717-530-5729_ Date of Hire _5-24-84_

Address _86 Lenwood Park_ City _Shippensburg_ State _PA_ Zip _17257_

Employer _ABF Freight System Inc  Carlisle PA_

Employer's Address _Carlisle Pike Carlisle PA_

Road [ ]    Dock [ ]    Jockey [ ]    City [ ]    Iron and Steel [ ]    Mechanic-Office [ ]    Miscellaneous [ ]

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _____    10 57

NATURE OF GRIEVANCE: In 1995 I was placed on lay-off status by carolina freight carlisle PA. I was recalled from lay-off status ABF freight carlisle PA. In filing this grievance due to being placed on status I would with out original terminal seniority. I am asking to be reinstated with full seniority with all lost time benefits or money due me.

_____

_____

_____

_____

STEWARD'S COMMENTS: _____

_____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Vincent Ramirez Jr_
Signature of Member Filing Grievance                          Shop Steward

[✓] **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT _____

_____

_____

_____

Date: _____                          Signature of Business Agent

1 — WHITE—UNION COPY
2 — PINK—EMPLOYER
3 — BLUE—EMPLOYEE REPORTING GRIEVANCE
4 — YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

June 7, 1999

Daniel Virtue, Business Agent
Chauffeurs, Teamsters & Helpers Local 776
2552 Jefferson Street
Harrisburg, PA  17110

> RE:   Appeal of Eastern Region
>        Decision in Case No. Grievance 89077

Dear Mr. Virtue:

Pursuant to letter dated May 20, 1999, you forwarded my appeal to International.

Given the confusion and apparent corruption used by shop stewarts, the company, and the union in processing my grievance, my rights have been unrealistically circumvented, as the real issue on appeal was never decided.

Therefore, please advise me immediately of my rights to a statement, presentation of evidence, and/or participation in this appeal process that I may have of right, so as to enable to rectify the injustice imposed on me to date.

Very truly yours,

Vincent Ramirez

April 14, 1999

Thomas Griffith, President
Teamsters Local 776
2552 Jefferson Street
Harrisburg, PA 17110

FROM:   Vincent Ramirez Jr.
        86 Lenwood Park
        Shippensburg, PA 17257

RE:   Position of ABF that my grievance on the issue of my seniority is Untimely

---

On March 30, 1999, during a hearing with ABF, in Carlisle, PA, it was brought to my attention that no issues would be heard because my grievance was filed untimely. I am in disagreement with this position, because the Master Freight Book, states, "A grievance on seniority shall be filed within 30 days of the posting of the notice of seniority". My grievance was filed in accordance with the Master Freight Agreement; therefore, I request the following information:

1) A copy of any notice made prior to the seniority posting that is in issue, which shows that ABF made me aware of my seniority status
2) The method used by ABF to notify me.
3) Proof of Service of the notice.
4) The number of grievances related to seniority, that were filed after notice posting. For the past 10 years.
5) The name of employees, who filed grievance in No.4, above, past 10 years.
6) The position that ABF took with regards to the timeliness of the grievance in No.4, above. Past 10 years.
7) The outcome/decision of each grievant in No.4, above. Past 10 years.
8) What authority/regulation supports ABF's position of untimeliness.

I further believe that ABF is delaying a decision on my grievance, to allow the 5 year window to close, which will then deprive me of my rights. This is an unfair labor practice. Please be advised that it is my position that my rights are being violated, and that ABF is not dealing fairly nor dealing within the guidelines of the Master Freight Agreement. Futhermore, I feel ABF is untimely, this matter became deadlocked on Jan.8,1999, and a second hearing was held on March 30, 1999, 81 days later, when it was decided that my grievance was untimely. I feel that 81 days is untimely.

I reserve the right to make additional requests for information.

Sincerely,

Vincent Ramirez Jr.

PHIL FERRANTE
VICE PRESIDENT
BRAD LINDSAY
RECORDING SECRETARY
BILL DUNHAM
TRUSTEE
IKE HORD
TRUSTEE
THOMAS VINSON
TRUSTEE

# CHAUFFEURS, TEAMSTERS AND HELPERS
## LOCAL UNION NO. 776

"AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS"

2552 JEFFERSON STREET, HARRISBURG, PA 17110-2505

THOMAS B. GRIFFITH                    JOHN L. FOGLE, II
PRESIDENT AND BUSINESS AGENT          SECRETARY TREASURER AND BUSINESS AGENT

BUSINESS AGENTS

CARLOS N. RAMOS, II
CHARLES SHUGHART
ROBERT J. SNYDER, JR.
RUSSELL A. STEPP
DANIEL A. VIRTUE

April 23, 1999

CERTIFIED MAIL
NO. Z 569 115 471

Steve Frois
ABF Freight Systems
1165 NC Highway 66 South
Kernersville, NC  27284

Dear Steve:

Please find enclosed copies of letters from Michael Fritz and Vincent Ramirez, ABF employees, asking for specific information.

We are requesting that this information be forwarded to the Local Union as soon as possible so that we may respond to the members.

Sincerely,

*Thomas B. Griffith*

Thomas B. Griffith
President, Local 776

TBG/bs
cc:    Dan Virtue
       Michael Fritz, Certified Mail No. Z 569 115 472
       Vincent Ramirez, Certified Mail No. A 569 115 473

February 15, 1999

Thomas Griffith, President
Teamster Local 776
2552 Jefferson Street
Harrisburg, PA 17110

RE:  NMFA GRIEVANCE
Vinnie Ramirez/ABF Freight Systems

Dear Mr. Griffith:

On 12/20/90, I filed factual grievance No. 89077 with Teamsters Local 776, a copy of which is attached.   On January 8, 1999, a hearing was held at the terminal in Carlisle, Pennsylvania. The issue of my grievance relates to my seniority, and as a result of what I perceive to be a "conflict of interest" in this issue with my union steward, I did not receive adequate or proper representation.  In fact, the union steward said nothing helpful on my behalf, and did make statements contrary to my best interest.  The matter is deadlocked and now being forwarded to both the Employer and Union Secretaries of the National Grievance Committee therefore.

Article 7, Section 2, Grievant's Bill of Rights, of the National Master Freight Agreement and Central Pennsylvania entitles me to have my case decided fairly and promptly.  I, therefore, request assurance that any union representative on my behalf meet the requirements herein, and not have any interest in the out come of my case wherein that person(s) can be directly affected by any decision in my behalf.

Sincerely yours,

Vinnie Ramirez
86 Lenwood Park
Shippensburg, PA   17257

## VERIFICATION

I, Vincent Ramirez, Jr., have reviewed the foregoing document and do hereby confirm

that the forgoing statements are true and correct to the best of my knowledge, information, and

belief. I make this affirmation with the knowledge that I am subject to the provisions regarding

false swearing of information to authorities.

Date: _Oct 12, 2000_                         _____

                                             Vincent Ramirez, Jr., Plainti

# EXHIBIT P

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKEY A. BECHTEL,                          :
                                            :
            Plaintiff,                       : NO.  3:01-CV-789
                                            :           Judge Sylvia H. Rambo
      v.                                     :
                                            :
DANIEL A. VIRTUE, Business Agent of the      :
International Brotherhood of Teamsters;       :
INTERNATIONAL BROTHERHOOD OF                  :
TEAMSTERS; ABF FREIGHT SYSTEM,               :
INCORPORATED,                                :
                                            :
            Defendants.                       :

### AFFIDAVIT OF DAUPHIN COUNTY,
### COMMONWEALTH OF PENNSYLVANIA, MAY 10, 2002

I, Lawrence D. Welker, do hereby make the following statement my affidavit;

1.      I am one of the main Plaintiff's in <u>Albright, et. al. vs. ABF, et. at.</u>, No. 1:CV-00-0878.  I hereby reaffirm the attached affidavit, which I previously made in that matter.  (See Exhibit A)

2.      At the time Carolina freight shut down the Carlisle terminal, I was advised, as well as others, that I had five (5) years of recall rights under the Collective Bargaining Agreement and that the recall rights would extend to any successor employer.

3.      However, at no time during the ensuing period of time up to the time I contacted ABF, nor was any effort made by the Union or the Company to implement those recall rights or nor were any steps taken to insure that they had the ability to implement those recall rights.  By that, I mean, that the no effort was made to keep track of my address; no contact was made through ABF or through the Union concerning recall.

4.      I obtained employment under my recall rights as a result of word of mouth contact from other employees and as a consequence I applied to ABF and was reinstated.

5.      It is my belief that the Company and the Union sought to avoid the provisions of the Collective Bargaining Agreement as they applied to recall, because by recalling me; I was more expensive on an hourly basis than a new employee and my fringe benefits, as a recalled employee, were far more than the fringe benefits that a new employee would have been entitled to.  Accordingly, I think that the Company and the Union got together not withstanding the labor agreement to try to avoid the recall provisions and their effect (Higher wage rate, more accrued benefits.)

6.      In so far as the structure of the Carlisle terminal, both before it was shut down and after it became an ABF terminal is concerned, there are two (2) seniority measures that are involved;

        (a.)    Your company seniority; and

        (b.)    Your time in category as a driver or as a dock/ local/ terminal employee.

However, you can transfer to the over-the-road driver board from the dock and I know that and/or from the over-the-road driver board to the dock based upon you company seniority.  Accordingly, someone like Rickey Bechtel, who drove, I believe, as a yard jockey and who did other driving activities, from time to time, would be entitled to apply, based upon his company seniority, for open over-the-road driver positions on the over-the-road board.

7.      It is my understanding that economic factors, such as increased pay and increased benefits would apply to someone, such as Rickey Bechtel, if he were reinstated over the hiring of

a new employee, which would involved a lower hourly rate and with fewer fringe benefits to start.

8.    So far as I am aware, a dockman or terminal employee could apply for a position on the over the road board based upon their company (overall) seniority.

I have read the above affidavit consisting of this and ~~blind cover~~ two (2) other pages and it is true and correct.

3-21-02
Date

Lawrence D. Welker
Lawrence D. Welker

## AFFIDAVIT OF LAWRENCE D. WELKER

I, Law, hereby make this following document my affidavit in connection with the above reference litigation and provide the following information which is correct and true to the best of my knowledge, information and belief:

1.    I have reviewed the Affidavit of Daniel A. Virtue, which has been made in support of the Motion to Dismiss in the above referenced case.

2.    Upon reviewing the segment of the Affidavit, which applies to me, I have the following information.

3.    I have been a member of Teamster Local Union 776 since September 23, 1973 with Carolina Freight, and since July 6, 1975 at the Carlisle facility.

4.    I worked at the Carlisle facility of Carolina Freight through out that period of time and took a layoff on September 25, 1995.

5.    As I understand it, historically, under the Teamsters Collective Bargaining Agreement, drivers are able to follow their work, as one means of dealing with downsizing, mergers and other changes of operation, which at the same time allows them to keep seniority rights when in lay off status.  The Master Freight Agreement says:

> Article 5.1 (b):
> Seniority shall be broken only by discharge, voluntary quit, retirement, or more than a five (5) year layoff.

6.    The labor agreement, which called for the Company and the Union to have a system of recalling drivers by seniority date, was not implemented at Carlisle. Carolina Freight drivers, including myself, who have been reinstated since 1998 were never contacted by the Company or Union concerning employment vacancies on the Board. We learned of the Board vacancies through word of mouth from other drivers and


PLAINTIFF'S EXHIBIT
A

based upon our own efforts contacting the facility. Thus, in so far as I am aware, in terms of the labor agreement calling for a seniority based recall of laid off drivers based upon the availability of jobs at the Carlisle facility. This was not put in place by either ABF or the local Union. The labor agreement says:

> Article 5, Section 2 (c) (2)
> In addition, the inactive seniority rosters (employees who are on letter of layoff) shall be similarly "dovetailed" by appropriate classification. If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after recall such employees shall be "dovetailed" into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes...

7.     The change of operations in September 1995 and the Master Labor Agreement provide that laid off employees in a merger situation continue to hold rights.

8.     I returned to work at Carlisle on November 1998.

9.     When I returned, I was not given my seniority date that I was entitled to under the labor agreement, when I asked the dispatcher what number I stood on the board, he told me to just make an "X" in the space where the number is normally placed. (My name was not yet on a seniority list until later when one was posted with my name and seniority date and wrong number.)

10.     Article 5 of the Master Freight Agreement, covering over the road drivers and local cartage in Central Pennsylvania covers the seniority rights. The provisions pertaining to seniority related grievances are governed by a procedure which provides that the seniority list be posted at least twice a year and that an employee has thirty days after the posting of the list to file a grievance.

Article 5.4 (d) Posting of Seniority List

The Employer shall give the Local Union a seniority list at least every six (6) months.  The Employer shall also post a seniority list at least once every six (6) months and shall maintain a current seniority roster at the terminal.  Protest of any employee's seniority date or position on such list must be made in writing to the Employer <u>within thirty (30) days after such seniority date or position first appears,</u> and if no protests are timely made the dates and positions are deemed correct.  Any such protest which is timely made may be submitted to the grievance procedure. (Emphasis added.)

11.    When I returned, I was not given my seniority date that I was entitled to under the labor agreement, when I asked the dispatcher was number I stood on the board, he told me to just make an "X" in the space where the number is normally placed.  (My name was not yet on a seniority list until later when one was posted with my name and seniority date and wrong number.)

12.    Upon my return to the Carlisle facility in 1998, I could tell that the work that we were running out of the ABF terminal was the same as the work that we ran for Carolina Freight out of the Carlisle facility.

13.    Each of the averments contained in this Affidavit are based upon my direct personal knowledge of the events in question.

# NMFA GRIEVANCE — Teamsters Local 776

92827

Name: Lawrence D. Walker  Home Phone (717) 243-8263  Date of Hire 9/26/73

Address: 46 W. Main Street  City Plainfield  State PA  Zip 17081

Employer: ABF Freight Systems

Employer's Address: Carlisle Pike, Carlisle, PA 17013

Road ☒  Dock ☐  Jockey ☐  City ☐  Iron and Steel ☐  Mechanic-Office ☐  Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.  Date: 6/25/99

**NATURE OF GRIEVANCE:** 1. On or about Dec. 13, 1998, I filed a greivance on the issue of my seniority.// 2. On or about January, 1999, a local hearing was convened where it was decided to docket this grievance for Eastern Conference.// 3. On or about 81 days later, a hearing was scheduled, and the business agent, Mr. Virtue, stated that the grievances were untimely. 4. I appealed the issue of untimeliness and additionally filed a second grievance, see attached letter from Mr. Virtue dated April 13, 1999, wherein he states that the only issue on appeal is untimeliness.// 5. As a result, I went to the appeal at the Joint Eastern Conference, wherein my entire grievance, including the issue of seniority, was disposed of without proper notice, hearing, due process, and preparation. My seniority issue was not properly disposed of. // 6. My second grievance was also unlawfully decided at the Joint Eastern Conference because it was not at the appeal stage at that time. // 7. Therefore, this grievance is on the irregularity, faulty procedure, and failure of the Union and company to follow contract grievance procedures to decision in my grievances. I therefore, request my grievance on seniority be reinstated and properly processed. Attachments — Letter Dated 4/13/99 from Mr. Virtue — Letter Dated 5/11/99 Disposition

**STEWARD'S COMMENTS:** _____

_____

_____

**In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.**

_____      _____
Signature of Member Filing Grievance           Shop Steward

☐ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

_____

_____

_____

Date: _____      _____
                                       Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

## INSTRUCTIONS ON BACK OF YELLOW SHEET

# NMFA GRIEVANCE — Teamsters Local 776

82836

Name _Lawrence Di Walker_     Home Phone _717-243-1400_ Date of Hire _8-30-73_
Address _48 J. Main St._     City _Plainfield_     State _Pa._ Zip _17081_
Employer _A.B.F._

Employer's Address _Carlisle Pa._

Road ☒     Dock ☐     Jockey ☐     City ☐     Iron and Steel ☐     Mechanic-Office ☐     Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.     Date:_____

NATURE OF GRIEVANCE: _I am filing this grievance against the seniority list which is dated and posted at the A.B.F. terminal in Carlisle Pa. I am filing under article #5 section 4, protesting that I am not showed on such list in my rightful seniority position. I was laid off from A.B.F. employment and was called back at A.B.F. under article #5 section 5 to circumvent calling me back under article #5 section 2. I am requesting to be placed in my correct seniority position and for any money due me._

STEWARD'S COMMENTS: _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Lawrence D. Walker_
Signature of Member Filing Grievance

_____
Shop Steward

☑ **YOU** must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.

ACTION TAKEN BY BUSINESS AGENT _____

Date: _____     _____
Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

## INSTRUCTIONS ON BACK OF YELLOW SHEET

# NMFA GRIEVANCE — Teamsters Local 776    94552

Name _Lawrence A. Walker_ Home Phone _717-243-7763_ Date of Hire _3-26-73_

Address _48-3 Main St_ City _Plainfield_ State _PA_ Zip _17081_

Employer _A.B.F._

Employer's Address _Carlisle Pa_

Road ☐    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.     Date:_____

NATURE OF GRIEVANCE: _I, Larry Walker, was laid off_
_during the merger between Carolina Frt_
_+ A.B.F._
_Now that I am back working for A.B.F,_
_I want my terminal seniority and back_
_wages and benefits do to me._

_P.S._

STEWARD'S COMMENTS: _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Lawrence Walker_                              _Tom Fox_
Signature of Member Filing Grievance                    Shop Steward

☐ **YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.**

ACTION TAKEN BY BUSINESS AGENT _____

Date: _____           _____
                                    Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

**INSTRUCTIONS ON BACK OF YELLOW SHEET**

# NMFA GRIEVANCE — Teamsters Local 776

93407

Name _Lawrence A. Walker_   Home Phone _717-243-8963_ Date of Hire _7-30-73_

Address _480 Main St._   City _Plainfield_   State _PA_   Zip _17081_

Employer _A.B.F. Carlisle Pa._

Employer's Address _____

Road ☑   Dock ☐   Jockey ☐   City ☐   Iron and Steel ☐   Mechanic-Office ☐   Miscellaneous ☐

**IMPORTANT:** It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.   Date: _____

**NATURE OF GRIEVANCE:** I am Filing This Grievance Against the Seniority List Post at ABF Carlisle Pa. Dated 04-13-00, Because I am Not In My Correct Seniority Position Which Should Be (9-30-73). My Claim is To Be Placed Into My Correct Seniority Position And For any Money Due Me.

**STEWARD'S COMMENTS:** _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_____ Signature of Member Filing Grievance   _____ Shop Steward

☑   **YOU** must check this box if you want to attend the grievance hearings. If you request to be in attendance, **YOU WILL NOT be paid for this time.**

**ACTION TAKEN BY BUSINESS AGENT** _____

Date: _____   _____ Signature of Business Agent

1— E—UNION COPY
2— —EMPLOYER
3— B— —EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

## INSTRUCTIONS ON BACK OF YELLOW SHEET

# NMFA GRIEVANCE — Teamsters Local 776     90618

Name _LAWRENCE D. WELKER_    Home Phone _717 243-9263_ Date of Hire _9-20-73_

Address _48 W MAIN ST_    City _Fairfield_   State _Pa_   Zip _17___

Employer _A.B.F. FREIGHT_

Employer's Address _CARLISLE PIKE, CARLISLE Pa_

Road ☐   Dock ☐   Jockey ☐   City ☐   Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

IMPORTANT: It is the responsibility of the member filing this grievance, to    Date: _APRIL 14, 99_
issue the proper copies to all parties in a timely manner, as per your contract.

NATURE OF GRIEVANCE: _I am Filing This Grievance on The Companies Position STATING THAT MY GRIEVANCE on Being Placed back in MY Full Seniority Position was Filed untimely which I Received a Letter on APRIL 14, 99, STATING THEIR Position. I am in Disagreement with This position, because, The Master Freight Book, State's, "A Grievance on Seniority SHALL BE Filed within (30) days of The Posting of The Notice of Seniority." MY Grievance was Filed in Accordance with TH "MASTER FREIGHT AGREEMENT". I Further Believe THAT ABF is acting A decision on My Grievance, to Allow The (7 year window Period) To expire, which will then deprive me of MY RIGHT. This is an Unfair Labor Practice. Please be advised that it is my position that my rights are being violated, and that ABF is not dealing fairly within the guidelines of the master Freight Agreement_

STEWARD'S COMMENTS: _____

_____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Lawrence D. Welker_                                            
Signature of Member Filing Grievance                  Shop Steward

☑ YOU must check this box if you want to attend the grievance hearings. If you request to
be in attendance, YOU WILL NOT be paid for this time.

ACTION TAKEN BY BUSINESS AGENT _____

_____

Date: _____                              
Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

## INSTRUCTIONS ON BACK OF YELLOW SHEET

# NMFA GRIEVANCE — Teamsters Local 776

89096

Name _LAWRENCE D. WELKER_ Home Phone _717-243-3763_ Date of Hire _9-30-73_

Address _48 W. MAIN ST_ City _Plainfield_ State _Pa._ Zip _17081_

Employer _A.B.F._

Employer's Address _CARLISLE Pa._

Road ☐    Dock ☐    Jockey ☐    City ☐    Iron and Steel ☐    Mechanic-Office ☐    Miscellaneous ☐

IMPORTANT: It is the responsibility of the member filing this grievance to issue the proper copies to all parties in a timely manner, as per your contract.

Date: _____

NATURE OF GRIEVANCE: _I WAS LAID OFF DURING THE MERGER BETWEEN Carolina FGT + A.B.F. NOW THAT I AM BACK WORKING FOR A.B.F. I WANT TERINAL SENIORTY AND BACK MONIES AND BENEFIT'S DO TO ME._

STEWARD'S COMMENTS: _____

In accordance with the Grievant's Bill of Rights, I am requesting, in writing, copies of all disciplinary letters, photos and any other documentation pertaining to this grievance.

_Lawrence D. Welker_
Signature of Member Filing Grievance

Shop Steward

YOU must check this box if you want to attend the grievance hearings. If you request to be in attendance, YOU WILL NOT be paid for this time.

ACTION TAKEN BY BUSINESS AGENT _____

Date: _____

Signature of Business Agent

1—WHITE—UNION COPY
2—PINK—EMPLOYER
3—BLUE—EMPLOYEE REPORTING GRIEVANCE
4—YELLOW—STEWARD

## INSTRUCTIONS ON BACK OF YELLOW SHEET

On or about ___DEC. 13, 1998___, I filed a grievance on the issue of my seniority.

On or about January, 1999, a local hearing was convened where it was decided to docket this grievance for Eastern Conference.

On or about 81 days later, a hearing was scheduled, and the business agent, Mr. Virtue, stated that the grievances were untimely.

I appeal the issue of untimeliness and additionally filed a second grievance, see attached letter from Mr. Virtue dated April 13, 1999, wherein he states that the only issue on appeal is untimeliness.

As a result, I went to the appeal at the Joint Eastern Conference, wherein my entire grievance, including the issue of seniority, was disposed of without proper notice, hearing, due process, and preparation. My seniority issue was not properly disposed of.

My second grievance was also unlawfully decided at the Joint Eastern Conference because it was not at the appeal stage at that time..

Therefore, this grievance is on the irregularity, faulty procedure, and failure of the Union and Company to follow contract grievance procedures to decision in my grievances. I therefore, request my grievance on seniority be reinstated and properly processed.

_Lawrence D. Wilkes_

ATTACHMENTS — LETTER DATED 4-13-99 FROM MR. VIRTUE

LETTER DATED 5-11-99 DISPOSITION

June 25 1999

Daniel Virtue, Business Agent
Chauffeurs, Teamsters & Helpers Local 776
2552 Jefferson Street
Harrisburg, PA  17110

Dear Mr. Virtue:

   Please be advised that by this letter I am formerly requesting an opportunity to participate in the process of formulating an argument in support of my appeal. Firstly, the decision is faulty and the issue on appeal was never decided. The actual issue decided was decided without my being given an opportunity to address it. My contract rights and due process rights have been violated as a result.

   Please inform me rightly as to what my rights are to personally defend myself in this appeal process as I have had bias representation to date and have been unjustly treated.

Very truly yours,

LAWRENCE D. WELKER

48 W. MAIN ST.
PLAINFIELD PA  17081

June 7, 1999

Daniel Virtue, Business Agent
Chauffeurs, Teamsters & Helpers Local 776
2552 Jefferson Street
Harrisburg, PA  17110

Dear Mr. Virtue:

Please be advised that by this letter I am formerly requesting an opportunity to participate in the process of formulating an argument in support of my appeal. Firstly, the decision is faulty and the issue on appeal was never decided. The actual issue decided was decided without my being given an opportunity to address it. My contract rights and due process rights have been violated as a result.

Please inform me rightly as to what my rights are to personally defend myself in this appeal process as I have had bias representation to date and have been unjustly treated.

Very truly yours,

LAWRENCE D. WELKER

Lawrence D. Welker

118 W. MAIN ST.
PLAINFIELD PA. 17081

## VERIFICATION

I, Lawrence D. Welker, have reviewed the foregoing document and do hereby confirm

that the forgoing statements are true and correct to the best of my knowledge, information, and

belief.  I make this affirmation with the knowledge that I am subject to the provisions regarding

false swearing of information to authorities.

Date: 10/10/2000

Lawrence D. Welker, Plaintiff

# EXHIBIT Q

Filed December 6, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-4279

JEFFREY D. ALBRIGHT; NORMAN T. BOIRE;
GARY M. DIETZ; WILLIAM H. ERDMAN; MICHAEL W.
FRITZ; A. RONALD FROMBAUGH; RALPH A. HARRIS;
ALLEN W. LANDIS; LOWELL McGUIRE; WALTER R.
MINICH; RAYMOND C. NEVINS; STANLEY L. NYE;
VINCENT RAMIREZ, JR.; KEITH E. SGRIGNOLI; RAY G.
SNYDER, JR.; LAWRENCE D. WELKER,
Appellants

v.

DANIEL A. VIRTUE, Business Agent of the International
Brotherhood of Teamsters; INTERNATIONAL
BROTHERHOOD OF TEAMSTERS; LOCAL 776,
INTERNATIONAL BROTHERHOOD OF TEAMSTERS; ABF
FREIGHT SYSTEM, INC.

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil Action No. 00-cv-00878
(Honorable Sylvia H. Rambo)

Argued July 30, 2001

Before: BECKER, *Chief Judge*, McKEE and WEIS,
*Circuit Judges*

(Filed: December 6, 2001)

2

ROBERT S. MIRIN, ESQUIRE
 (ARGUED)
Mirin & Jacobson
8150 Derry Street
Harrisburg, Pennsylvania
 17111-5260

  Attorney for Appellants

WENDY D. BOWIE, ESQUIRE
 (ARGUED)
IRA H. WEINSTOCK, ESQUIRE
Ira H. Weinstock, P.C.
800 North 2nd Street, Suite 100
Harrisburg, Pennsylvania 17102

JAMES A. McCALL, ESQUIRE
International Brotherhood
 of Teamsters
25 Louisiana Avenue, N.W.
Washington, DC 20001

  *Attorneys for Appellees,
  Daniel A. Virtue, Business Agent of
  the International Brotherhood of
  Teamsters; International
  Brotherhood of Teamsters; Local
  776, International Brotherhood of
  Teamsters*

JOSEPH E. SANTUCCI, JR.,
 ESQUIRE (ARGUED)
MARY D. WALSH, ESQUIRE
Morgan, Lewis & Bockius
1800 M Street, N.W.
Washington, D.C. 20036

VINCENT CANDIELLO, ESQUIRE
Morgan, Lewis & Bockius, LLP
One Commerce Square
417 Walnut Street
Harrisburg, PA 17101

  *Attorney for Appellee,
  ABF Freight System, Inc.*

3

---

## OPINION OF THE COURT

---

BECKER, *Chief Judge.*

The plaintiffs in this appeal are members of a Teamsters Local Union in Central Pennsylvania who objected to the manner in which seniority lists were merged following the consolidation of two trucking lines. When their internal union grievances were unsuccessful, they brought what is generally known as a hybrid duty of fair representation/ § 301[1] suit in the District Court for the Middle District of Pennsylvania against the local union, its international union parent, and its business agent, alleging breach of the duty of fair representation (DFR), and against their employer, alleging breach of the collective bargaining agreement. This appeal is from the order of the District Court granting summary judgment for all the defendants based on the statute of limitations, and also from the District Court's order denying the union members' motion for reconsideration.

The primary question on appeal is when the six-month statute of limitations began to run against the union members, an issue governed by *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151 (1983) and *Scott v. Local 863, International Brotherhood of Teamsters,* 725 F.2d 226 (3d Cir. 1984). We have not required that union members who wish to file suit against the union or their employers be given explicit notice that their grievances have been rejected; rather, we have held that the statute of limitations begins to run when "the futility of further union appeals became apparent or should have become apparent." *Scott,* 725 F.2d at 229. We are faced here with the task of determining when it became clear or should have become clear to the plaintiffs that any appeals through the union were futile.

We conclude that the boilerplate language contained in the decision of the grievance committee did not provide

---

1. § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185 (1947).

4

clear guidance that the union would no longer proceed with the plaintiffs' grievances, given the attendant circumstances. We refer to letters from several plaintiffs to the business manager of the local union requesting appeals on their grievances and the opportunity to participate in the appeals he undertook on their behalf, and the business manager's indication to them that their appeals were pending. We think that this evidence before the District Court on the motion for summary judgment raises a genuine question of the existence of a date certain on which it became clear or should have become clear to the plaintiffs that further appeals were futile, thereby triggering the statute of limitations. We will therefore set aside the summary judgment in favor of the union and remand for further proceedings.

We will also set aside the summary judgment for the employer. On this issue we are guided by our conclusion in *Vadino v. A. Valey Engineers,* 903 F.2d 253 (3d Cir. 1990) that the relevant statute of limitations inquiry in claims against an employer is two-fold: (1) when did it become clear to a plaintiff that the employer breached the collective bargaining agreement; and (2) when did it become clear that further union appeals were futile. This conclusion was based on the realization that in order to make out a claim against an employer for breach of the collective bargaining agreement, a plaintiff must also allege, as a necessary condition precedent, that the union would not process his grievance. Because there exist genuine issues of fact about when it became clear or should have become clear to plaintiffs that further union appeals were futile, we will also set aside the summary judgment against the employer.

The motion for reconsideration is important because its disposition determines the scope of the record that informs the statute of limitations decision. Plaintiffs attached a number of documents to the motion for reconsideration that were not before the District Court on the motion for summary judgment, and the parties dispute whether we may consider them. We will therefore take the motion for reconsideration up first in our discussion. The appeal of the order denying the motion for reconsideration is controlled by our decision in *Adams v. Trustee for the New Jersey*

5

*Brewery Employees' Pension Trust Fund*, 29 F.3d 863 (3d Cir. 1994), where we held that Federal Rule of Civil Procedure 59(e), which permits motions for reconsideration to be filed within ten days of the entry of judgment, cannot be enlarged by Rule 6(e), which permits a three-day extension to the time limit when such a limit begins to run from the date of service of notice. We reject plaintiffs' argument that our holding in *Adams* is undermined by *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). Being satisfied that, excluding weekends and holidays, the union members did not file their motion for reconsideration within ten days, we will affirm the order denying the motion for reconsideration. Accordingly we will not consider the additional documents (which favor the plaintiffs).

## I. Facts and Procedural History

Prior to 1995, each of the plaintiffs was an "over-the-road" truck driver for Carolina Freight Carriers Corporation ("Carolina Freight") at its Carlisle, Pennsylvania terminal, and a member of Local Union No. 776 ("Local #776"), an affiliate of the International Brotherhood of Teamsters ("International Union"). On May 23, 1995, Carolina Freight closed its Carlisle facility and laid off the plaintiffs. On September 25, 1995, Arkansas Best Corporation, the parent company of ABF Freight Systems ("ABF"), a defendant in this action, merged with Worldway Corporation, the parent company of Carolina Freight. ABF was the surviving corporation and the operations of ABF and Carolina Freight were combined.

Plaintiffs' employment at Carolina Freight, and subsequently at ABF, was governed by a collective bargaining agreement, the National Master Freight Agreement ("NMFA"), and the Central Pennsylvania Over-The-Road and Local Cartage Agreement (collectively, "CBA"). Plaintiffs' seniority was determined by reference to the CBA, and could be "broken only by discharge, voluntary quit, retirement, or more than five (5) year layoff." Plaintiffs had extensive "recall from layoff" rights for a period of five years from the date of layoff; the CBA laid out the determination of seniority in cases of recall, which we

6

identify in the margin.[2] Plaintiffs contend that ABF and the Teamsters failed to contact them to recall them to work in 1998, as required under the CBA, and that they heard only by "word of mouth" that there were open positions at ABF. Between late November 1998 and February 1999, based on the information they received about open positions at ABF, each of the plaintiffs individually exercised his contractual recall rights and was reinstated at the ABF Carlisle facility.

Once reinstated, the plaintiffs claimed that they were placed on the bottom of the roster without any seniority number, and that subsequent postings revising the seniority lists were improperly calculated, in violation of the CBA. *See supra* note 2. To pursue their claims, plaintiffs filed grievances with Local #776, seeking to have their seniority status recalculated. Following the grievance procedure set out in Article 8 of the NMFA, Local #776 processed the plaintiffs' claims by selecting two "pilot" grievances based on the March 1999 seniority posting to be reviewed by the Eastern Region Joint Area Committee ("ERJAC"). On April 27, 1999 the ERJAC concluded that the pilot grievances were untimely. Local #776 received the ERJAC decision on May 10, 1999 and sent a notice to the

---

2. There are two provisions that govern recall and seniority rights in the NMFA. The first, Article 5, Section 2(c)(2), governs recall from layoff in order of seniority and states that "inactive seniority rosters (employees who are on a letter of layoff) shall be similarly 'dovetailed' by appropriate classification. If additional employees are required after the active list is exhausted, they shall be recalled from such inactive seniority roster and after such recall such employees shall be 'dovetailed' into the active seniority roster with their continuous classification (road or city) seniority dates they are currently exercising which shall then be exercised for all purposes." The second provision, Article 5, Section 5, deals with employees who elected a transfer to a new terminal during layoff and states that "Over-the-road employees, who are on a letter of layoff, shall be given an opportunity to transfer to permanent over-the-road employment (prior to the employment of new hires) occurring at the over-the-road domiciles of the Employer located within the Regional area provided they notify the Employer in writing of their interest in a transfer opportunity. . . . Any employee accepting such offer shall be paid at the employee's applicable rate of pay and shall be placed at the bottom of the seniority board for bidding and layoff purposes, but shall retain company seniority for fringe benefits only."

7

plaintiffs on May 11, 1999, including a copy of the ERJAC decision.

The ERJAC decision, which was rendered on a preprinted form, stated that "a majority decision of the [ERJAC] in the . . . dispute will be final, conclusive and binding with no appeal, and further, that neither party will attempt through any overt acts, to void the decision rendered." Notwithstanding this language, some of the plaintiffs complained to Daniel Virtue ("Virtue"), the business manager for Local #776 and a defendant in this action. On May 16, 1999, plaintiff Ray Snyder wrote to Virtue stating, "I feel that my grievance contains different facts than the one it was placed and heard under, therefore I am requesting that you as my representative make any or all appeals that are offered me as a union member under the contract of the International Brotherhood of Teamsters." [A289]. This letter was followed by a similar letter requesting the right to participate in an appeal by plaintiff Walter Minich on May 16, 1999.

On May 20, 1999, Virtue responded to the plaintiffs' requests for an appeal and informed them that he had forwarded the appeal to the International.[3] [A279, A337]. Although Virtue's May 20, 1999 letter itself is not part of the record before us, for the reasons explained in the margin we may consider its contents.[4] Subsequently, letters

_____

3. Pursuant to Article 8, Section 2 of the CBA, the National Grievance Committee may review and set aside the interpretation of any area committee, such as the ERJAC. The relevant portion of the CBA reads:

> The National Grievance Committee by majority vote may consider and review all questions of interpretation which may arise under the provisions contained in the National Master Freight Agreement which are submitted by either the National Freight Director or the designated employer representative; and shall have the authority to reverse and set aside the majority interpretation of any area, regional, or local grievance committee or arbitration panel established within the Supplemental Agreements if, in its opinion, such interpretation is contrary to the provisions set forth in the National Master Freight Agreement, in which case the decision of the National Grievance Committee shall be final and binding.

4. While this letter was not part of the record before the District Court on the motion for summary judgment, there were extensive references to

8

were sent to Virtue by plaintiffs Vincent Ramirez on June 7, 1999 [A337], William Erdman on June 9, 1999 [A198], and Lawrence Welker on June 25, 1999 [A304] requesting an "opportunity to participate in the process of formulating an argument in support of my appeal." There is no indication in the record that Virtue ever informed the plaintiffs that the appeals were not progressing. Some of the plaintiffs continued to file grievances when each new seniority posting was issued, but the Union refused to process these grievances, citing the ERJAC decision.[5]

On May 16, 2000, more than twelve months after the ERJAC rendered its decision, the plaintiffs filed this action against Virtue, the International Union, and Local #776. The defendants moved to dismiss the complaint pursuant to Rule 12(b)(6), attaching affidavits and exhibits in support of their motion. The plaintiffs then filed a brief in opposition to the motion to dismiss, attaching affidavits and exhibits in support of their position as well. The District Court granted the defendants' motion styled under Rule 12(b)(6); however, because the District Court reviewed affidavits and

it. Most importantly, before the District Court on the motion for summary judgment was the affidavit of plaintiff Ramirez. Attached to this affidavit is the June 7, 1999 letter from Ramirez to Virtue, which references Virtue's May 20, 1999 letter by stating, "Pursuant to letter dated May 20, 1999, you forwarded my appeal to International." While a statement concerning what Virtue told the plaintiffs would normally be hearsay, in this context the statement, referenced in a sworn affidavit, is by a party-opponent offered against that party and therefore falls within the exception to the hearsay rule. _See_ Federal Rule of Evidence 801(d)(2)(D) ["A statement is not hearsay if . . . . The statement is offered against a party and is a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . ."]. Thus, although the actual May 20, 1999 letter does not appear in the record before the District Court on the motion for summary judgment and is therefore not part of the record on appeal, we will treat the statement in plaintiff Ramirez's letter as fairly representing what Virtue told the plaintiffs respecting an appeal of the ERJAC decision for purposes of our analysis of the statute of limitations, _infra_ Part IIIA.

5. These additional grievances are not directly at issue in this case, as the plaintiffs argument pertains specifically to the handling of the filed grievances from which the "pilot" grievances were selected.

9

other documents outside of the pleadings in evaluating defendants' motion to dismiss, we review the record pursuant to Rule 56. Pursuant to Rule 12(b)(6), if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."

The District Court held that the six-month statute of limitations for filing an action based on a breach of the duty of fair representation and for breach of the collective bargaining agreement began to run on May 10, 1999, the date on which the plaintiffs received notice of the ERJAC decision, which included the language that the decision was "final, conclusive and binding with no appeal." Since the present action was not filed until May 16, 2000, more than twelve months later, the District Court concluded that the plaintiffs' cause of action was time-barred. It filed its order dismissing the complaint on November 13, 2000. On November 30, 2000, seventeen days after the District Court's order dismissing the complaint, plaintiffs moved for reconsideration. This request was denied.

This timely appeal followed. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and the Labor Management Relations Act, § 301, 29 U.S.C.A. § 185 (1947). We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment. See *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh,* 229 F.3d 435, 441 n.3 (3d Cir. 2000). We set forth the familiar standards governing review of summary judgment motions in the margin.[6] We also exercise plenary review over a district court's denial of a motion for reconsideration as untimely. See *Adams v. Trustees of the New Jersey Brewery Employees' Pension Trust Fund,* 29 F.3d 863, 869-70 (3d Cir. 1994).

---

6. Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The judge's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

10

## II. The Motion For Reconsideration

Plaintiffs' submission that their motion for reconsideration was timely rests on Rule 6(e), which provides:

> Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period *after the service of a notice* or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period.

Fed R. Civ. P. 6(e) (Emphasis added). The District Court entered its summary judgment order on November 13, 2000. Pursuant to Rule 59(e), plaintiffs moved for reconsideration on November 30, 2000, seventeen days after the summary judgment order was entered.[7] As explained *supra* note 7, excluding holidays and weekends per Rule 6(a), the plaintiffs' motion for reconsideration was filed twelve days after the entry of judgment. Only if Rule 6(e) added three days to the ten-day limit would the motion would be timely.

We note at the outset that we have previously concluded that Rule 6(e) does not apply to Rule 59(e) motions for reconsideration. In *Adams v. Trustee for the New Jersey Brewery Employees' Pension Trust Fund*, 29 F.3d 863 (3d Cir. 1994), we wrote:

> The [plaintiffs] contend[ ] that since they were 'served' the judgment of the court by mail, the rule applies to extend the period. The Rule 6(e) extension is inapplicable here. Rule 59(e) gives the right to move for reconsideration 'not later than 10 days *after entry of judgment*.' (Emphasis added). Thus, the period for bringing the 59(e) motion begins with the 'entry of

_____

7. In calculating the Rule 59(e) ten-day period relative to the District Court's summary judgment order, the day the order was filed and intermediate Saturdays, Sundays, and legal holidays are not included in the computation. Fed. R. Civ. P. 6(a). Excluding the weekends and Thanksgiving holiday, the motion for reconsideration in this case was not filed until 12 days after the summary judgment order was entered.

11

judgment.' Rule 6(c) only extends time limits that begin with 'service of notice or other paper upon the party.'

*Id.* at 870. It is thus clear that the critical point for measuring the timeliness of a 59(e) motion is *not* the date of service, but the date that the judgment is entered. Every court to consider the argument that Rule 6(e) extends the Rule 59(e) time limit by three days has rejected such an argument. *See, e.g. Halicki v. La. Casino Cruises, Inc.*, 151 F.3d 465, 467-68 (5th Cir. 1998); *Parker v. Bd. of Pub. Utils.*, 77 F.3d 1289, 1290-91 (10th Cir. 1996); *Derrington-Bey v. D.C. Dep't of Corr.*, 39 F.3d 1224, 1225-26 (D.C. Cir. 1994); *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1113-14 (11th Cir. 1993); *Flint v. Howard*, 464 F.2d 1084, 1087 (1st Cir. 1972); *see also* 1 James Moore et al., *Moore's Federal Practice* § 6.053[3]. at 6-35 (3d ed. 1998) ("Rule 6(e) does not apply to time periods that begin with the filing in court of a judgment or order. Thus, Rule 6(e) does not apply to the 10-day period that runs from entry of judgment for moving to alter or amend judgment pursuant to Rule 59(e).").

We have also previously concluded that "Rule 6(b) provides that the time limit of Rule 59(e) may not be judicially extended . . . . [T]he ten-day period 'is jurisdictional, and cannot be extended in the discretion of the district court.'" *Adams*, 29 F. 3d at 870 (citing *Welch v. Folsom*, 925 F.2d 666, 669 (3d Cir. 1991)). There thus appears to be no error in the District Court's conclusion that the motion was not timely filed in this case. Notwithstanding the foregoing, plaintiffs ask us to reevaluate our holding in *Adams* based on *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993).

In *Leatherman*, the Supreme Court struck down the heightened pleading standard in § 1983 cases required by the decisional law of the Fifth Circuit because the heightened standard was not required by the Federal Rules of Civil Procedure. Part of the rationale for the holding was that the Civil Rules must be read literally — Rule 9(b) specifically addressed the issue of more particular pleadings in certain actions, but did not include § 1983 complaints, so that a court could not require heightened

12

pleading in these cases. *Id.* at 168. Plaintiffs contend that, under the rationale that the Federal Rules of Civil Procedure should be given full effect as expressed in *Leatherman*, it is necessary to extend the Rule 59(e) time period by three days as required by Rule 6(e) in order to give effect to the rules as written. We disagree.

As we explained in *Adams*, the clear language of Rule 6(e) demonstrates that it is not applicable to Rule 59(e). Rule 6(e) applies to cases where the time limit is measured from the "date of service," whereas Rule 59(e)'s time limit is measured from the "entry of judgment." Thus, applying the rules as written, as plaintiffs argue we are constrained to do by *Leatherman*, we conclude that our holding in *Adams* is sound. The explicit language of the rules contradicts an interpretation that the three-day extension should be added to Rule 59(e). Moreover, the policy behind the short time period in Rule 59(e) is to promote finality of judgments. Rule 6(b), which explicitly denies a court the power to extend the time for taking action under certain rules, was amended in 1946 to include Rule 59(e) because "there should be a definite point where it can be said a judgment is final." Fed. R. Civ. P. 6(b) Advisory Committee Notes to 1946 Amendment. Thus, we disagree with plaintiffs' contention that the policy behind Rule 6(e), providing additional time to adequately prepare a response when the party is served by mail, applies to Rule 59(e) motions. We will therefore affirm the order denying the motion for reconsideration.

Having concluded that the motion for reconsideration was not timely, we must determine whether we can consider certain correspondence between Virtue and the plaintiffs that was attached to the request for reconsideration, but not to the affidavits with the motion to dismiss (which, as explained *supra*, we treat as a motion for summary judgment). Included among these documents that were part of the untimely motion is a May 20, 1999 letter from Virtue to Phil Young, Freight Director, which requests that the plaintiffs' grievances be reviewed per Article 8, Section 2 of the NMFA. *See supra* note 3. This letter was copied to some of the plaintiffs. Also among the documents accompanying the motion was an August 10, 1999 letter

13

from Virtue to plaintiff Snyder stating that a request for review with respect to his seniority grievance had been forwarded to the National Review Committee. Since we affirm the order of the District Court denying the motion for reconsideration as untimely, these documents were not properly before the District Court and are not part of the record on appeal. We thus adjudicate the appeal on the basis of the documents that were originally before the District Court.

## III.  Statute of Limitations

Plaintiffs submit that the District Court erred in concluding that their hybrid DFR/§ 301 suit was barred by the six-month statute of limitations established in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983). In cases such as this one, there are no clear guidelines as to when the statute of limitations begins to run, because the Supreme Court has not required plaintiffs to exhaust all internal union remedies before bringing a § 301 claim. *Clayton v. Auto. Workers*, 451 U.S. 679, 689-693 (1981) (refusing to require a universal exhaustion requirement). Rather, we have held that the limitations period begins to run when " 'the plaintiff receives notice that the union will proceed no further with the grievance.' " *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986) (quoting *Bruch v. United Steelworkers of America*, 583 F. Supp. 668, 670 (E.D. Pa. 1984). No explicit notice has been required by this court; the closest we have come is the statement that the period begins to run "when it becomes *clear* that further union appeals would be futile." *Vadino v. A. Valey Engineers*, 903 F.2d 253, 260 (3d Cir. 1990) (quoting *Scott v. Local 863, Int'l of Teamsters*, 725 F.2d 226, 229 (1984)) (Emphasis added).

This approach has been characterized as "court-inspired vagueness," and makes these cases difficult. *Scott*, 725 F.2d at 230. Most notably, courts are faced with the challenge of determining when the futility of appeals was or should have become "clear" to the plaintiffs, thereby triggering the statute of limitations. As noted in *Scott*, the futility of further union appeals may not be clear to employee plaintiffs because "union officials may well be

14

equivocal or contradictory in their communications to dissatisfied members and may send such communications through persons within the internal union hierarchy whose authority to bind the union is at best hazy." 725 F.2d at 230 (Becker, J. concurring).[8]

## A.  The Evidence Presented on the Motion for Summary Judgment

Defendants argue that the statute of limitations began to run when the plaintiffs received the ERJAC decision on May 10, 1999. In support of this position, they point to the language on the preprinted ERJAC form that was sent to the plaintiffs, which reads, in part, that a decision of the ERJAC "will be final, conclusive and binding with no appeal" and that "neither party [would] attempt through any overt acts, to void the decision rendered." Since plaintiffs filed their claim on May 16, 2000, defendants argue that the six-month statute of limitations period had already run and the suit was time-barred. The District Court agreed with this conclusion, reasoning that the language in the ERJAC decision provided the required notice that the union would no longer proceed with the grievance.

Were this the only communication between the plaintiffs and the union prior to filing the present lawsuit in May 2000, the outcome would be clear. However, we believe that additional correspondence that was presented to the District Court and is in the appellate record creates an issue of material fact as to the time at which it became clear or should have become clear to the plaintiffs that

---

8. In the view of the writer, this situation creates a guessing game for a plaintiff:

> [I]f, in reliance on what he thought were genuine internal remedies, he refrains from suing for as much as six months, and it is ultimately determined that these remedies were illusory, his suit will be forever barred. . . . [T]o avoid this trap, employee plaintiffs will have to file numerous precautionary lawsuits . . . in the hopes that perhaps one of the suits will have been timed correctly.

*Scott*, 725 F.2d at 231.

15

further union appeals would be futile, thus commencing the statute of limitations period. The parties came to an agreement on the documents that were before the District Court on the motion to dismiss. This agreement states, in part, that "[a]ll documents in or attached to Supporting Affidavits and Documents to Defendants' Motion to Dismiss" and "[a]ll documents contained in or attached to Conformed Brief in Opposition to Defendants' Motion to Dismiss and Signed Supporting Affidavit Verifications of Plaintiffs" were before the District Court. We find this satisfactory. Excluding the documents attached to the motion for reconsideration for the reasons discussed above, these documents comprise the record on appeal.

Among these documents are letters from some of the plaintiffs to Virtue. In particular, on May 16, 1999, plaintiff Snyder wrote to Virtue, stating in relevant part, "I feel that my grievance contains different facts than the one it was placed and heard under, therefore I am requesting that you as my representative make any or all appeals that are offered to me as a union member under the contract of the International Brotherhood of Teamsters." [A289]. On that same day, plaintiff Minich wrote a letter to Virtue with exactly the same request. [A252]. Most important in the record, on June 7, 1999, plaintiff Ramirez wrote to Virtue, stating "Pursuant to a letter dated May 20, 1999, you forwarded my appeal to International. . . . please advise me immediately of my rights to a statement, presentation of evidence, and/or participating in this appeal process that I may have of right so as to enable to [sic] rectify the injustice imposed on me to date." [A337]. This letter indicates that Virtue told plaintiff Ramirez that his appeal had been forwarded for review. *See supra note 4.*

This letter was followed by a letter on June 9, 1999 from plaintiff Erdman to Virtue, which stated, "Please be advised that by this letter I am formally requesting an opportunity to participate in the process of formulating an argument in support of my appeal. . . . Please inform me rightly as to what my rights are to personally defend myself in this appeal process as I have had bias [sic] representation to date and have been unjustly treated." [A198]. Plaintiff Welker sent two letters to Virtue on June 7 and June 25,

16

1999, which both stated that he was "requesting an opportunity to participate in the process of formulating an argument in support of my appeal." [A304].

From this correspondence, viewing the evidence in the light most favorable to the non-moving party, in this case the plaintiffs, it is apparent that the plaintiffs reasonably believed that Virtue was undertaking an appeal for some of them. Moreover, subsequent letters from five other plaintiffs indicate that their appeals had been forwarded as well, as they requested the right to participate in those appeals. At all events, under the summary judgment standard it cannot be said that it was clear (or clear to the plaintiffs) that further union appeals would be futile when Virtue gave these plaintiffs the impression that their grievances were on appeal. We cannot conclude, therefore, that the ERJAC decision, even with the boilerplate language, was the end of the grievance process for these plaintiffs and a date certain from which we can calculate the statute of limitations.[9]

In this regard, we also take note of the affidavits submitted to the District Court in opposition to the motion to dismiss. We are mindful that documents merely referred to in these affidavits, but which were not attached to such affidavits, cannot be considered either by the District Court or by this court. Pursuant to Rule 56(e), "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit *shall* be attached thereto or served therewith."

---

9. Although not argued by the plaintiffs, we note that there is arguably another ground for this conclusion. As referenced *supra* note 3, according to the CBA, the National Grievance Committee has the authority "to reverse and set aside the majority interpretation of any area, regional, or local grievance committee or arbitration panel . . . if, in its opinion, such interpretation is contrary to the provisions set forth in the National Master Freight Agreement, *in which case the decision of the National Grievance Committee shall be final and binding.*" [Emphasis added]. Thus, it appears that there is an inconsistency between the language on the preprinted ERJAC form and the CBA with respect to the finality of the ERJAC decisions. Pursuant to the CBA, ultimate authority rests with the National Grievance Committee. Under this reading, the ERJAC decision was not the time at which further union appeals would be futile, thereby triggering the statute of limitations. However, we need not rely on this argument.

17

(Emphasis added). However, we may consider the affidavits themselves, which do not entirely depend on the documents. In doing so, we note that the affidavits further elucidate what is suggested in the aforementioned correspondence. In plaintiff Snyder's affidavit, he states that, on May 20, 1999, Virtue "replied to our request for any and all appeals sent." [A279]. Furthermore, in almost every affidavit presented in opposition to the motion to dismiss, the affiant states, "My grievance followed the same grievance history and treated the same as Mr. Snyder's (i.e., it was denied as untimely by the company, referred to the Eastern Conference, it was denied by the Conference and then referred to Phil Young, Freight Director, it's on appeal and then referred to the NGB where it is *pending at this time*)." (Emphasis added). [A 174, 186, 194, 229, 240, 247, 259, 277].

Given this record, we cannot conclude that it was *clear* to the plaintiffs that further union appeals would be futile.[10] The requests made to Virtue evidence a sincere belief by the plaintiffs that appeals of their grievances were underway and, from the record, it appears that Virtue did undertake appeals on behalf of the plaintiffs (and that he had the authority to do so, notwithstanding the preprinted language on the ERJAC decision, *see supra* note 9). At the very least, he gave the impression that he did. Moreover, there is no evidence before us that suggests that these appeals have been resolved; the record does not indicate that he gave the plaintiffs any information on the progress of their appeals.

---

10. Situations like the one presented in this case could easily be avoided. As was observed in the *Scott* concurrence, the guesswork could be eliminated by allowing the statute of limitations to begin running "only from the time that the employee has received from [the union] a clear, written statement telling him that further internal appeals are futile, and the time for judicial action has begun." *Scott*, 725 F.2d at 231 (Becker, J. concurring). Alternatively, or in addition, a union could have the option of "waiving (in equally express terms) any reliance on its right under *Clayton* to bar suits for failure of the employee to exhaust internal union remedies." *Id.* If such a "right-to-sue" letter or waiver were required in cases like the one before us, plaintiffs and courts would no longer have to subject themselves to the guessing game of determining when it became clear or should have become clear that further appeals through the union were futile.

18

Thus, it does not appear from the record that there exists a date certain on which we can say the statute of limitations began to run; it is not *clear* that the plaintiffs had "notice that the union w[ould] proceed no further with the grievances." *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1985). Hence, we cannot conclude that the Union was entitled to summary judgment on statute of limitations grounds, and we will therefore vacate the summary judgment order of the District Court and remand for further proceedings.

### B.  Summary Judgment Against the Employer

The plaintiffs contend that ABF breached the CBA by failing to recall the plaintiffs from layoff according to seniority. In addition, plaintiffs argue that ABF artificially inflated its seniority roster by hiring new, less expensive drivers in order to avoid its obligation to employ or recall the plaintiffs. Finally, plaintiffs submit that ABF is in breach of the CBA by failing to dovetail the seniority of the recalled plaintiffs in the prescribed manner. ABF asserts that the order granting summary judgment for it is correct since it did not have any knowledge of ongoing negotiations between the plaintiffs and union representatives and, thus, the statute of limitations on the § 301 claim began to run on the date of the ERJAC decision — May 10, 1999.

The governing case is *Vadino v. A. Valey Engineers*, 903 F.2d 253 (3d Cir. 1990). *Vadino* involved a claim brought by an employee against his employer but not the union, alleging *both* breach of the collective bargaining agreement and breach of the duty of fair representation. In the typical hybrid DFR/§ 301 case where an employee sues the union for breach of the duty of fair representation and the employer under § 301 for breach of the collective bargaining agreement, the same statute of limitations applies to both defendants. As we noted in *Vadino*, the case was "atypical" because the plaintiff sued only his employer, but we observed that such suits are permissible under *DelCostello.* Thus, in *Vadino* we had to decide whether the statute of limitations could be tolled as to the employer based on the employer's own actions *as well as* any assurances given by

19

the union when the employee brings a hybrid DFR/§ 301
action only against his employer, and not the union as well.

We held in *Vadino* that the "relevant statute of limitations
question . . . is not only when Vadino knew, or should have
known, that the employer breached the contract but also
when he knew, or should have known, that further appeals
to the Union would be futile." *Id.* at 261. In reaching this
conclusion, we noted that to hold otherwise would "put the
plaintiff in an untenable position because of the
interconnection between the two claims." *Id.* at 261. More
precisely, if Vadino's cause of action against the employer
accrued as of the time of the breach of the collective
bargaining agreement, but before it was clear whether
further union appeals were futile, Vadino's "ability to file a
§ 301 suit against [his employer] would be ephemeral
because such a claim could not be maintained until he
could fairly allege that the Union refused to process his
grievance. *The unfair representation claim is the necessary
'condition precedent' to the employee's suit.*" *Id.* (emphasis
added). Moreover, we observed that tolling the § 301 claim
until the unfair representation claim accrued is "consistent
with the congressional goal of resolving labor disputes in
the first instance through the collectively bargained
grievance procedure." *Id.*

We are guided by our observation in *Vadino* that a
plaintiff's ability to file a § 301 suit against his employer
would be elusive if a plaintiff had to file the § 301 claim
prior to resolving grievances with the union. A breach of the
duty of fair representation claim is a "necessary condition
precedent" to the § 301 claim; in hybrid suits where the
employee sues both the employer and the union, an
employee must still allege that the union refused to process
his grievance as a condition precedent to the § 301 claim.
Thus, it would not make analytic sense to conclude that the
statute of limitations begins to run on the § 301 claim when
it has not begun to run on the duty of fair representation
claim.[11] We conclude that the statute of limitations may be

11. In addition, we observe that allowing the statute of limitations to run
against the employer while an employee is still pursuing a grievance with
the union might frustrate an employee's ability to seek redress for

20

tolled against the employer in a hybrid case when the employee sues *both* the employer and the union, even when the reason for tolling the statute of limitations is due to the action of the union alone.

Although we affirmed the grant of summary judgment for the employer in *Vadino*, we did so because we found that Vadino had not filed his lawsuit within the six-month period of time. We rejected Vadino's argument that a request for a grievance within six months of filing suit tolled the statute of limitations, noting that "repeated requests to a union to institute a grievance . . . [could not] perpetually toll the statute of limitations, *despite the employee's belief that such requests were futile.*" *Id.* at 262-263 (emphasis added). The facts of the case before us are different; here we conclude that there is a genuine issue of material fact as to whether or not the plaintiffs *did* know or should have known that further appeals were futile. Since that is, as of yet, unknown, we cannot conclude that summary judgment was appropriate for the employer and will therefore set aside the order of the District Court granting summary judgment for ABF.

We do not believe this result to be inconsistent with the federal labor policy of promoting a prompt resolution of disputes within the framework of the collective bargaining agreement. We have recognized speedy resolution as a policy of federal labor law, *see Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123, 132-133 (3d Cir. 1987), but we have also recognized the "congressional goal of resolving labor disputes in the first instance through the collectively bargained grievance procedures," *Vadino*, 903 F.2d at 262. Affirming summary judgment for ABF, while reversing summary judgment for the Union, would thwart this goal. As we noted in *Vadino*,

---

breach of contract against the employer since the employee needs to pursue the grievance with the union prior to suing the employer. Although we express no view on plaintiffs' allegations in this case that ABF artificially inflated its seniority board by hiring new driver's so as to avoid its obligation to employ or recall the plaintiffs in this case, this suggests the type of problem that might escape judicial review if we were to toll the limitations separately in hybrid DFR/§ 301 actions.

21

"to require a plaintiff to sue in court while the grievance procedure has not run its course would be both inefficient, as the grievance procedure may afford the plaintiff all the relief s/he seeks, and unfair, as the plaintiff will be put in the position of suing the union while it still represents him/her." *Id.* at 262 n.11.

## IV.  Conclusion

For the foregoing reasons, we will vacate the order granting summary judgment and remand for further proceedings, but will affirm the order denying the motion for reconsideration. Parties will bear their own costs.

A True Copy:
    Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*

# EXHIBIT R

### Article 6, Section 4

### Section 4. New Equipment

Where new types of equipment and/or operations for which rates of pay are not established by this Agreement are put into use after April 1, 1998, within operations covered by this Agreement, rates governing such operations shall be subject to negotiations between the parties.

In the event agreement cannot be reached within sixty (60) days after date such equipment is put into use, the matter may be submitted to the National Grievance Committee for final disposition. Rates agreed upon or awarded shall be effective as of the date equipment is put into use.

The above provisions shall also apply in the event the law (state or federal) is changed to permit longer combination vehicles or aggregate weight increases of 8,000 pounds or more in the weight limits that are currently provided in the Surface Transportation Assistance Act of 1982.

Employees expected to use computers will be trained to use them and will be paid for all training time. Employees expected to use computers will be given sufficient time to learn to use them.

## ARTICLE 7.
## LOCAL AND AREA GRIEVANCE MACHINERY

### Section 1.

(a) Provisions relating to local, state and area grievance machinery are set forth in the applicable Supplements to this Agreement.

Each Supplemental Agreement shall provide for a Regional Joint Area Review Committee. The Committee shall review and consider any case deadlocked by the Regional Joint Area Committee except suspension and discharge cases. The Regional Joint Area Review Committee shall consist of the Freight Coordinator from the applicable Region or a designee of the TNFINC Chairman and a designee of the Executive Director of TMI. The Committee shall have the authority to resolve any such deadlocked case either by review of the evidence presented to the Regional Joint Area Committee or by rehearing the case. The decisions of the Committee shall be final

30

### Article 7, Section 1

and binding. In the event the Committee is unable to resolve the deadlock, the case shall be referred to the National Grievance Committee.

Unless otherwise provided in a Supplemental Agreement, discharge and suspension cases deadlocked by a Regional Joint Area Committee shall be automatically referred to the applicable Regional Arbitration Panel, whose decision shall be final and binding. The Regional Arbitration Panel shall consist of a Union representative designated by the Chairman of TNFINC and the Employer Chairman of the Regional Joint Area Committee or his/her designee and an impartial arbitrator. The procedures for selection of the arbitrator for the Regional Arbitration Panel and the cost of arbitration shall be determined by the Rules of Procedure of the Regional Joint Area Committee. Arbitration of discharge and suspension deadlocks will take place during the Regional Joint Area Committee session at which the cases were deadlocked. At the arbitration hearing before the Regional Arbitration Panel, the Employer's case will be presented by a full-time employee of the Employer and the Union's case by a full-time employee of the Local Union, and the Rules of Procedure of the Regional Joint Area Committee shall apply. The Regional Arbitration Panel shall issue a "bench decision" at the conclusion of the grievance hearing. Either party, however, may request a clarification or further explanation of the previous decision rendered by the Regional Arbitration Panel. Where Supplements under the 1994-1998 NMFA provided for arbitration in discharge cases, the procedures for such arbitration shall be maintained under the 1998-2003 Agreement.

(b) All grievances arising under the provisions of the Master Agreement (Articles 1-39) shall be filed directly with the appropriate Regional Joint Area Committee. The Regional Joint Area Committee shall have the authority to render a final and binding decision or direct the grievance to the appropriate lower level committee for hearing if the grievance is not properly claimed under the provisions of the Master Agreement. The Regional Joint Area Committee must hear and decide such cases within ninety (90) days of the filing of the grievance. Grievances arising under Article 9 - Protection of Rights, Article 29, Sections 1 or 2(a) and (b) - Substitute Service and Article 32, Subcontracting shall be expeditiously processed and may be heard at either regularly scheduled or specially called hearings. A grievance may be filed by any Region

31

## Article 7, Section 1

whose members are adversely affected by an alleged violation of Article 32, Section 4(b) occurring within its jurisdiction.

(c) It is mutually agreed that the procedures for processing complaints concerning matters of highway and equipment safety shall be incorporated in the applicable Supplemental Agreement, in accordance with the guidelines established by the National Master Freight Safety and Health Committee provided for in Article 16.

Special Joint Area Committees shall also be created in compliance with the provisions of Article 35, Sections 3 and 4.

The procedure set forth in the local, state and area grievance machinery and in the national grievance procedure may be invoked only by the authorized Union representative or the Employer representative. Authorized representatives of the Union and/or Employer may file grievances alleging violation of this Agreement, under local grievance procedure, or as provided herein, unless provided to the contrary or otherwise mutually agreed in the Supplemental Agreement and/or respective committee rules of procedure. Time limitations regarding the filing of grievances, if not set forth in the respective Supplemental Agreements, must appear in the Rules of Procedure of the various grievance committees and shall apply equally to Employers and employees.

The Rules of Procedure of the various committees established under the Agreement shall be subject to the review and approval of the National Grievance Committee.

## Section 2. Grievant's Bill of Rights

All employees who file grievances under this Agreement and its Supplemental Agreements are entitled to have their cases decided fairly and promptly. In order to satisfy these objectives and promote confidence in the integrity of the grievance procedures, all employees who file grievances are entitled to the following Rights:

1. Grievants and stewards shall be informed by their Local Union of the time and place of the hearing.

2. Grievants and stewards are permitted to attend, at their own expense, the hearing in cases in which they are involved.

3. The Employer shall provide any information relevant to a grievance containing specific factual allegations within fifteen (15) days

**Article 7, Section 2**

of receipt of a written request by the Local Union, steward or grievant. The Local Union or grievant shall provide any information relevant to such a grievance within fifteen (15) days of receipt of a written request by the Employer.

4. All cases involving a discharge or suspension shall be recorded, except for executive sessions. Transcriptions of these proceedings shall be prepared in response to written requests by the Local Union at the reasonable cost of transcription. No recording devices shall be used in any grievance committee proceeding except as specifically authorized under the Rules of Procedure or by mutual consent of the co-chairpersons.

5. All Employer and Union panel members for each case shall be identified prior to the hearing. No Employer or Union representative who is directly involved in a case may serve as a panel member except at a local level committee where there is only one Local Union subject to the jurisdiction of the committee.

6. A grievant or steward may request permission to present evidence or argument in support of the case in addition to the evidence or argument presented by the Local Union.

7. All grievance committees shall, upon request, issue a copy of the grievance decision or transcript pages containing the hearing proceedings and the decision to the grievant and/or a Local Union.

8. The Local Union and the Employer may postpone a case once each, and any further postponements must be approved by the co-chairpersons of the grievance committee. In those areas where there are presently local grievance committees, each party shall be entitled to one additional postponement at the local grievance committee level only.

9. Unless mutually agreed by the Local Union and the Company, Local Unions shall file all approved grievances with the appropriate grievance committee or association for decision no later than thirty (30) days after the date the Local Union receives the grievance.

10. A copy of the grievance committee Rules of Procedure, including the Grievant's Bill of Rights, must be provided, upon request, to the grievant prior to the commencement of the grievance hearing.

33

## Article 7, Section 3

### Section 3.

All Local, State and Area Grievance Committees established under Supplemental Agreements shall revise their Rules of Procedure to include the "Grievant's Bill of Rights" set forth in Section 2 above and shall submit their revised Rules of Procedure to the National Grievance Committee for approval no more than ninety (90) days after the effective date of this Agreement. The National Grievance Committee may revise, delete or add to the Rules of Procedure for a Supplemental Grievance Committee in any manner necessary to ensure conformity with the purposes and objectives of the Grievant's Bill of Rights. The decisions of the National Grievance Committee in this regard shall be final and binding.

### Section 4.

Except in cases involving "cardinal" infractions under the applicable Supplemental Agreement, an employee to be discharged or suspended shall be allowed to remain on the job until the discharge or suspension is sustained under the grievance procedure.

Non-cardinal intent to discharge cases shall be docketed and scheduled to be heard at the next regularly scheduled Joint State/Supplemental Committee meeting.

### Section 5. Timely Payment of Grievances

All monetary grievances that have been resolved either by decision or through settlement shall be paid within twenty-one (21) calendar days of formal notification of the decision or date of settlement. If an Employer fails to pay a monetary grievance in accordance with this Section, the Employer shall pay as liquidated damages to each affected grievant eight (8) hours straight time pay for each day the Employer delays payment, commencing the date the grievant(s) notified the Employer of such non-payment.

# EXHIBIT S

## PROPOSED SENIORITY APPLICATION

The following proposal is based on the general principle that employees who are dovetailed on the date of implementation are those who are bringing work load to follow, so that the list into which they dovetail should not be adversely affected based on the current economic levels.

At common terminal points for local cartage operations, the company will ascertain the work load that ABF can reasonably expect to retain at the time of combining employees. ABF will prepare a Master Active List of its employees and will then prepare a Master Active List of the Carolina employees and the Red Arrow employees, and all three lists will be based on the date this change is implemented. The Company will then offer job opportunity at ABF in numbers equivalent to the work load coming to ABF, by seniority, to the applicable Carolina or Red Arrow Master Active List and they shall be dovetailed into the ABF Master Active List. Those employees on the Carolina or Red Arrow Master Active List who are not offered job opportunity due to insufficient work load to transfer shall remain on such Master Active Seniority List and shall be offered work opportunity as it arises and when permanent job opportunity arises they shall be recalled and dovetailed.

The Company will also establish a Master Inactive List comprised of all employees on lay-off at ABF and Carolina or ABF and Red Arrow on the date this change is implemented. After the Master Active List set forth above has been exhausted, all future job opportunities shall be offered, in line of seniority, to the employees on the Master Inactive List and, upon proper recall, they shall be dovetailed into the Master Active List.

At all other ABF locations which involve Carolina or Red Arrow employees, the same general principle shall apply, i.e., only the number of Carolina or Red Arrow employees equivalent to actual work load transferred will be offered to the Carolina or Red Arrow Master Active List on the first day of the combined operations.

The same principle as outlined above shall apply to combining over-the-road seniority lists, office and/or maintenance groups, where appropriate, as well as to transfer opportunity involving any of those respective classifications.

Therefore, as a general rule:

Where only one (1) of the three (3) companies has a terminal location, the employees at that location will remain as they are. (See Exhibit "A" in the section on local cartage operations.)

Where there are dual facilities in any one location or area, the aforementioned seniority application will prevail. (See Exhibit "B" in the section on local cartage operations.)

Where there are apparent exceptions to the general rule, these will be resolved in Exhibit "C" in the section on local cartage operations.

68

# EXHIBIT T

ATTACHMENT B

CARLISLE PLATFORM SENIORITY LIST

MARCH 10, 1995

| | | | |
|---|---|---|---|
| 1 | MALINISH, James | JD | 06/18/59 |
| 2 | WRIGHT, Norman | JD | 04/01/63 |
| 3 | ALVORD, Larry | J | 11/27/69 |
| 4 | MERRIMAN, Jim | JD | 03/16/71 |
| 5 | LANDER, Bert | JD | 10/10/73 |
| 6 | MINICH, Harry | JD | 07/07/75 |
| 7 | SHRIVER, Gary | JD | 07/08/75 |
| 8 | BENNETT, Robert | JD | 07/21/75 |
| 9 | HOOVER, Ronald | J | 08/18/75 |
| 10 | GARNER, David | JD | 08/23/75 |
| 10A | YOST, Charles | JPD | 10/06/75 |
| 11 | RETIRED | | |
| 12 | STOLLAR, Dennis | | 10/05/76 |
| 13 | RAMAGE, Earl | | 05/06/77 |
| 14 | CAMPBELL, Daryl | J | 05/20/77 |
| 15 | GILBERT, Ben | JD | 06/03/77 |
| 16 | LEWIS, Bruce | J | 08/06/77 |
| 17 | RILAND, Ronald | JD | 08/28/77 |
| 18 | RUTH, Charles | JD | 08/28/77 |
| 19 | BUFFINGTON, Ronald | JD | 08/28/77 |
| 20 | BATES Sr., Robert | J | 10/02/77 |
| 21 | STRAWSER, Gerald | JD | 02/04/78 |
| 22 | HOLLAND, David | | 02/23/78 |
| 23 | GOSHORN, Larry | | 03/01/78 |
| 24 | KERR, Ronald | | 03/14/78 |
| 25 | ATKINSON, Reginald | | 03/17/78 |
| 26 | PALMER, Brian | | 04/12/78 |
| 27 | DEITCH, Samuel | JD | 04/23/78 |
| 28 | RUSSELL, Robert L. | | 04/23/78 |
| 29 | GRAVES, Steven | | 07/16/78 |
| 30 | BEEGLE, James | J | 12/01/78 |
| 31 | TODD, John | | 04/25/79 |
| ~~32~~ | ~~STRAUB, William~~ | ~~JD~~ | ~~05/25/79~~ |
| 33 | BRETZ, R. Michael | JD | 05/27/79 |
| 34 | CAMPBELL, Richard | | 06/17/79 |
| 35 | LEHMAN, Ronald | J | 08/22/79 |
| 36 | SMITH, Thomas | | 12/11/79 |
| 37 | HOWER, James | JD | 09/28/80 |
| 38 | KIRBY, Henry | | 12/21/80 |
| 39 | HEINTZELMAN, Marlin | J | 01/18/81 |
| 40 | TURNS, Henry | J | 04/03/81 |
| 41 | WOODING, James | J | 10/13/81 |
| 42 | KERSTETTER, Doug | JD | 10/30/81 |
| 43 | KUNTZ, Steven | | 11/08/81 |
| 44 | ALLEN, Spencer | | 04/18/82 |
| 45 | BARTLES, Keith | | 04/25/82 |
| 46 | EGENREIDER, Stephen | JD | 10/31/82 |
| 47 | KELLEY, James | | 01/22/83 |
| 48 | HAIR, Kenneth | J | 01/22/83 |
| 49 | GINGRICH, David | | 04/08/83 |
| 50 | ORNER, James | J | 04/10/83 |

CARLISLE PLATFORM SENIORITY LIST

MARCH 10, 1995

| | | | |
|---|---|---|---|
| 51 | SHAFFER, Richard | | 06/14/83 |
| 52 | RESIGNED | | |
| 53 | DEITRICH, Marvin | | 02/24/84 |
| 54 | LINE, Arthur | JD | 04/02/84 |
| 55 | KEHLER, Darrell | | 04/08/84 |
| 56 | KINER, Alan | J | 04/15/84 |
| 57 | MARTIN, Fred | | 05/13/84 |
| 58 | ALBRIGHT, Charles | JD | 05/18/84 |
| 59 | FRITZ, Michael | JD | 05/22/84 |
| 60 | ZUCATTI, Joseph | | 05/27/84 |
| 61 | MALLIN, Mark | J | 06/17/84 |
| 62 | KARBOWSKI, Robert | J | 08/07/84 |
| 63 | PETERS, E. Donald | JD | 08/13/84 |
| 64 | FRY, George | | 08/14/84 |
| 65 | SMITH, Michael | J | 08/19/84 |
| 66 | CONFAIR, Richard | J | 08/28/84 |
| 67 | JEREMIAH, Brian | | 09/06/84 |
| 68 | HARRIS, Ralph | JD | 09/09/84 |
| 69 | ARCHIBALD, William | J | 09/23/84 |
| 70 | MCCANNA, John | JD | 10/21/84 |
| 71 | CORMAN, Michael | | 11/03/84 |
| 72 | BAILOR, Marvin | J | 02/24/85 |
| 73 | RHOADES, Scott | J | 03/24/85 |
| 74 | FISHER, Dallas | | 06/02/85 |
| 75 | DOMANSKI, Peter | J | 09/25/85 |
| 76 | ASKEWS, Richard | J | 11/17/85 |
| 77 | STOUT, Michael | JD | 01/09/86 |
| 78 | HELLER, David | J | 01/10/86 |
| 79 | VANFLEET, Glenn | | 01/11/86 |
| 80 | BECHTEL, Ricky | J | 02/01/86 |
| 81 | MACDUFF, Ken | | 04/14/86 |
| 82 | NODGE, James | J | 04/15/86 |
| 83 | BEAVER, Lynn | | 04/16/86 |
| 84 | STICHLER, Edward | | 04/17/86 |
| 85 | MORRIS, Malcolm | JD | 04/19/86 |
| 86 | BATES, Dale | | 11/18/86 |
| 87 | ALLWEIN, Robert | | 11/19/86 |
| 88 | HANSELL, Charles | JD | 11/21/86 |
| 89 | SHOOP, Robert | J | 08/04/87 |
| 90 | EDWARDS, Douglas | J | 09/19/87 |
| 91 | WALLS, William | | 09/22/87 |
| 92 | ERNEST, Kim | | 09/22/87 |
| 93 | FAGER, Samuel | | 09/25/87 |
| 94 | BLAINE, David | | 09/27/87 |
| 95 | DAWSON, Larry | | 10/05/87 |
| 96 | MORRISON, Steven | | 10/12/87 |
| 97 | ESTEP, Dale | | 10/16/87 |
| 98 | KOONS Sr., James | | 10/25/87 |
| 99 | WOODWARD, Kenneth | J | 11/01/87 |
| 100 | JACKSON, David | J | 12/13/87 |
| 101 | READ, Michael | JD | 12/21/87 |

CARLISLE PLATFORM SENIORITY LIST

MARCH 10, 1995

| 102 | SCHILDT, Thomas | J | 01/11/88 |
| 103 | WHITTAKER, Steve | JD | 01/16/88 |
| 104 | KLIMEK, Alan | | 01/29/88 |

# EXHIBIT U

2

### CHAUFFEURS, TEAMSTERS AND HELPERS
#### Local Union No. 776

THOMAS VINSON
VICE PRESIDENT

ANDREW C. REILEY
RECORDING SECRETARY

MELVIN HARRIS
TRUSTEE

TERRY L. KING
TRUSTEE

JEANETTE WATERS
TRUSTEE

AFFILIATED WITH THE

International Brotherhood of Teamsters
2552 JEFFERSON STREET
HARRISBURG, PA 17110-2505

THOMAS B. GRIFFITH
PRESIDENT AND BUSINESS AGENT

DALE H CRUM
SECRETARY TREASURER AND BUSINESS AGENT

BUSINESS AGENTS

JOHN L. FOGLE
CARLOS N. RAMOS, II
CHARLES SHUGHART
GEORGE F. SMART, SR.
RUSSELL A. STEPP
DANIEL A. VIRTUE

October 12, 1995

Dear Carolina Employee:

This letter is important. Please take the time to read it.

Surely you're aware that ABF and Carolina Freight recently merged their operations. Because of that merger, a change of operations was held on September 14/15, 1995.

As a result of the decision from the change of operations committee, the Carolina employees who are laid off at Carlisle, Pa will have certain rights to future work opportunities with ABF. Article 5, Section 5 of the NMFA addresses those rights. Those work opportunities will be offered to laid off Carolina employees in seniority order. However, it is necessary that you notify ABF in writing of your desire to be offered available work.

Enclosed is a form letter and an envelope. If you desire to be offered available work, you must complete the letter and mail it to ABF **as soon as possible.** If you desire, you may also draft your own letter instead of using the form letter. It is your choice to send the letter via regular mail or certified mail. In either case, I suggest that you keep a copy of the letter as your file copy.

You should mail the letter to ABF today. On October 16, 1995, the Company will begin compiling the list of employees who desire available work.

If you have any questions, please feel welcome to contact us.

Sincerely,

Charles Shughart
Business Agent

TELEPHONE (717) 233-8766
(800) 492-6280

# EXHIBIT V



**ABF FREIGHT SYSTEM, INC.**
P. O. Box 10048
Fort Smith, AR 72917-0048
(501) 785-8700

November 9, 1995

Certified Mail No. Z 093 690 533
Return Receipt Requested

Mr. Rickey Bechtel
2072 Locust Lane
Hummelstown, PA 17036

Re: Article 5, Section 5 Job Offer in Accordance with
    ABF Multi-Region Change of Operations MR-CO-38-9/95

Dear Mr. Bechtel:

In accordance with paragraph 7 of the decision in the above referenced
change of operations, on November 8, 1995, you were contacted and offered
an opportunity to transfer to permanent employment in your classification
at Waco, Omaha, Brattleboro, New Haven, Cedar Rapids, Waterbury, Fairfield,
Minneapolis or Newark.

This letter is to confirm that you elected to decline the job offer and to
remain in layoff status at Carlisle, PA.

Sincerely yours,

Gordon Ringberg

Gordon Ringberg, Director
Industrial Relations

cbf

cc: John Dale, Vice President-Transportation/Industrial Relations

    Teamsters Local Union No. 776
    Certified Mail No. Z 093 690 525
    Return Receipt Requested

# EXHIBIT W

#6 

# INTERNATIONAL
# BROTHERHOOD OF TEAMSTERS
### AFL-CIO



January 7, 1999

TO:     All Freight Local Unions

RE:     Fourth Circuit Decision in the ABF/Carolina Litigation

Dear Sisters and Brothers:

On December 29, 1998, the Fourth Circuit Court of Appeals issued its decision in the ABF/Carolina litigation, affirming the district court's dismissal of the Plaintiffs' claims that the Union and ABF wrongfully dovetailed, rather than entailed, the ABF, Carolina and Red Arrow seniority lists. A copy of the decision is enclosed.

The ABF litigation arose following the September 1995 decision of the Multi-Region Change of Operations Committee to dovetail the seniority of the ABF Freight System, Carolina Freight Carriers and Red Arrow employees after the companies were merged. Five separate lawsuits were filed by former ABF employees contending that the IBT breached its duty of fair representation and ABF violated the contract by agreeing to a dovetail and not an endtail. The five cases were consolidated in the U.S. District Court in Baltimore, Maryland under the name *Harry Gorge, et al. v. Ron Carey, Dennis Skelton, IBT and Local 557.*

In its decision, the Fourth Circuit noted that the NMFA endorses the dovetail of seniority lists when employers' operations are combined and further noted that the Change of Operations Committee has broad discretion to resolve the seniority application. The Court held that the language in the Master portion of the NMFA supercedes any conflicting language in Supplemental Agreements regarding the dovetail of seniority lists when employer operations are consolidated. The Fourth Circuit stated that the dovetailing of seniority is an equitable means of resolving the conflicting seniority interests of a group of employees in merger or absorption cases.

The Fourth Circuit's decision should finally bring an end to this seniority dispute.

Fraternally yours,

*Richard W. Nelson*

Richard W. Nelson
National Freight Director

RWN:jmr          **Teamsters Local 512**

Enclosure          JAN 1 2 1999

25 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001 • (202) 624-6800


*SHEPARD'S - 1 Citing Reference*
*Gorge v. Carey, 1998 U.S. App. LEXIS 32556 (4th Cir. Md. Dec. 29, 1998)*

**Restrictions:**    Unrestricted
**FOCUS™ Terms:**  No FOCUS terms

---

**PRIOR HISTORY ( 1 citing reference ) Hide Prior History**

Gorge v. Carey, 166 F.3d 1209, 1998 U.S. App. LEXIS 37632 (4th Cir. Md. 1998)

**Reported in full at (CITATION YOU ENTERED):**
Gorge v. Carey, 1998 U.S. App. LEXIS 32556 (4th Cir. Md. Dec. 29, 1998)

Citation: 1998 U.S. App. LEXIS 32556 (Get this Document)
View: Full
Date/Time: Tuesday, October 19, 1999  2:55 PM EDT

About LEXIS-NEXIS | Terms and Conditions

Copyright © 1999 LEXIS-NEXIS Group.  All rights reserved.

where a collective bargaining agreement "covers a group or several groups of employees, the sole inquiry should be whether, under all the circumstances, the union has considered the interests of all whom it represents." Ekas, 602 F.2d at 667. Faced with a conflict among its own members, Local 557's neutral position was a reasonable one.

III.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

Source: All Sources : States Legal - U.S. : Maryland : **MD Federal and State Cases**
Terms: **gorge, et al. v. ron carey**  (Edit Search)
View: **Full**
Date/Time: Tuesday, October 19, 1999 - 7:54 PM EDT

About LEXIS-NEXIS | Terms and Conditions

Copyright © 1999 LEXIS-NEXIS Group.  All rights reserved.

Operations Committee has final and binding authority to approve the consolidation plan, id. art. 5, § 2(b), art. 8, § 6(a), (d), and has the discretion to tailor the consolidation plan to the circumstances before it, id. art. 8, § 6(g).

Given this express endorsement of dovetailing and this broad grant of discretion to the Committee, nothing in the IBT's conduct was "arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 [*8] U.S. 171, 190, 17 L. Ed. 2d 842, 87 S. Ct. 903 (1967). Dovetailing "is a familiar and frequently equitable solution to the inevitably conflicting interests which arise in the wake of a merger or an absorption such as occurred here." Humphrey v. Moore, 375 U.S. 335, 347, 11 L. Ed. 2d 370, 84 S. Ct. 363 (1964); see also Ekas v. Carling Nat'l Breweries, Inc., 602 F.2d 664, 667-68 (4th Cir. 1979). The IBT was therefore not unreasonable in sanctioning a dovetail of the consolidated workforce. Moreover, even assuming that they are subject to the same duties as the IBT, the Committee and its union members likewise acted reasonably. n2

- - - - - - - - - - - - - - - - - - Footnotes- - - - - - - - - - - - - - - - -

n2 Although plaintiffs contend that the IBT violated its own constitution by allegedly ignoring the area supplements, the district court correctly dismissed this argument as without merit. First, the union's constitution does not affect the terms of this collective bargaining agreement. Second, as the district court found, the specific provision cited by the plaintiffs does not even apply to the seniority questions at issue in this case.



Plaintiffs additionally argue that the Change of Operations Committee's grievance procedure violated the union's duty of fair representation. Again assuming arguendo that the Committee is subject to this duty, its actions were reasonable. The Committee met, considered one grievance fully, and denied it and all similar grievances. As the district court found, this procedure was simply not "so far outside a wide range of reasonableness as to be irrational." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67, 113 L. Ed. 2d 51, 111 S. Ct. 1127 (1991) (internal quotation marks omitted); see also Marquez v. Screen Actors Guild, Inc., 142 L. Ed. 2d 242, 119 S. Ct. 292, 300 (1998).

- - - - - - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - - -  [*9]

Furthermore, as the district court found, the consolidation of the trucking companies was the result of the merger of ABF, Carolina Freight, and Red Arrow, not the result of an acquisition. The dovetail was therefore consistent even with the area supplements as interpreted by the plaintiffs and was not arbitrary.

B.

The resolution of plaintiffs' other claims flows directly from this discussion of their claims against the IBT. As to ABF, there was no breach of the collective bargaining agreement. As the district court noted, the company's adherence to the final decision of the Committee was not itself a breach. Moreover, ABF had no independent duty to deadlock the Change of Operations Committee to achieve a particular outcome.

As to the IBT officers, the district court appropriately found first, that they are not liable under the LMRA for money damages, see 29 U.S.C. § 185(b); Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 415-17, 68 L. Ed. 2d 248, 101 S. Ct. 1836 (1981), and second, that no equitable relief would be effective or appropriate in these circumstances.

Finally, it was not arbitrary for Local 557 to decline to insist on an endtail. Not only does the contract [*10] expressly authorize a dovetail, there is also no evidence that a different approach on the part of Local 557 would have changed the decision of the Committee.

Local 557 represented employees of both ABF and Carolina Freight, and thus had members who favored each plan. Local 557 handled this dilemma by declining to take a position, stating instead that "the issue of the endtail or the dovetail remains within the confines of the committee and we know your decision will be a fair one." Local 557's president also quoted language from his region's area supplement suggesting that [*5] a dovetail should apply in the case of a merger and an endtail should apply in the case of an acquisition.

After the hearings and several days of negotiations, on September 19, 1995, the Committee approved a uniform dovetail of all employees. The companies approved articles of merger, and ABF began operating using the dovetailed seniority lists. The consolidated company closed several terminals and laid off a number of employees.

After the merger several individuals, including Harry **Gorge**, a member of Local 557 and an ABF employee, filed unfair labor practice charges against ABF and IBT with the National Labor Relations Board (NLRB). The NLRB dismissed these claims.

The ABF employees also challenged the dovetail in grievances with the Committee. Upon consideration of one of the grievances the Committee declared that the September 19 decision was final and binding. The Committee denied that grievance and those of all similarly situated union members.

In February 1996 **Gorge** presented a grievance to a union-management committee for the Maryland/D.C. region. This committee determined that it lacked jurisdiction to review decisions of the Change of Operations Committee and dismissed [*6] the grievance.

**Gorge** and other members of Local 557 then filed suit against IBT, Local 557, ABF, and two IBT officers -- its president and vice-president, Ronald **Carey** and Dennis Skelton -- in the United States District Court for the District of Maryland. **Gorge** charged that ABF broke its collective bargaining agreement and that the IBT, its officers, and Local 557 violated their duty of fair representation under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (LMRA). **Gorge** sought back pay, money damages, and the imposition of an endtail. The Judicial Panel on Multi-district Litigation transferred four similar suits to the District of Maryland, and the cases were consolidated. After discovery the district court found for all defendants on cross-motions for summary judgment.

II.

Our review of the briefs and our consideration of the arguments of the parties have revealed that this appeal is without merit. Accordingly, we affirm the judgment of the district court for the reasons stated in that court's thorough opinion.

A.

With regard to the claims against the IBT, plaintiffs' principal argument is that the ABF consolidation was an acquisition, and that the area [*7] supplements therefore required an endtail of the seniority lists of the combining companies. In light of the language of the NMFA and its area supplements, however, the IBT's actions were reasonable.

The "Supplemental Agreements are subject to and controlled by the terms of this Master Agreement." NMFA art. 2, § 2(a); see also, e.g., Md.-D.C. Supp. Agreement, preamble ("[The] Master Agreement shall prevail over the provisions of this Supplement in any case of conflict between the two . . . ."). The master agreement expressly authorizes a dovetail regardless of "whether the transaction is called a merger, purchase, acquisition, sale, etc." NMFA art. 5, § 2(a), (c). Moreover, when freight terminals are combined the Change of

PER CURIAM:

Trucking company employees, laid off or reduced in seniority as a result of a merger, sued their employer, their local union, and the International Brotherhood of Teamsters (IBT) and its officers. The employees charged that the method for calculating seniority in the merged corporation violated [*2] their collective bargaining agreement, and that the IBT, its officers, and its locals breached their duty of fair representation. The district court held that the seniority calculation was not inconsistent with the collective bargaining agreement and that the union's actions were not arbitrary. The court therefore granted summary judgment to all defendants on all of the employees' claims. We affirm.

I.

In the summer of 1995 Arkansas Best Corporation (ABC), corporate parent of Arkansas Best Freight System, Inc. (ABF), purchased the stock of Worldway Corporation, the parent of Carolina Freight Carriers Corporation and Red Arrow Freight Lines. ABC acquired Worldway's stock through a subsidiary and then merged Carolina Freight and Red Arrow into ABF. ABF, Carolina Freight, and Red Arrow were unionized trucking companies with a total of over 16,000 employees and 500 freight terminals in overlapping regions throughout the United States. With the merger, ABF intended to close several terminals and to lay off a number of workers.

The employees of the three companies were members of local unions affiliated with the IBT. The IBT local unions and ABF, Red Arrow, and Carolina Freight were each [*3] signatories to the National Master Freight Agreement (NMFA), a collective bargaining agreement covering over 100,000 Teamsters in the trucking industry. The NMFA consists of thirty-nine master articles and a number of area supplemental agreements covering particular geographic regions.

The NMFA requires employers who combine their operations to obtain the approval of a Change of Operations Committee (the Committee) made up of an equal number of union and employer representatives. Consistent with this requirement, on September 14 and 15, 1995, ABF and the union convened a Committee and held hearings to consider the consolidation plan for the proposed merger. Approximately 160 local unions participated in the hearings.

Among the issues the Committee considered, and the primary issue in this case, was the seniority treatment of the consolidated workforce. n1 ABF and the union supported different plans. ABF suggested a hybrid plan designed to protect the jobs of current ABF employees. The plan proposed to dovetail only those Carolina Freight and Red Arrow employees into the ABF seniority list that were needed to do the additional work of the combined entity, while the remaining Carolina [*4] Freight and Red Arrow employees would be endtailed. The IBT, on the other hand, claimed that a straight dovetail would be fairest to all of its members. The local unions were split -- some supported a dovetail and some supported an endtail.

- - - - - - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - - -

n1 Two general methods are used for calculating employee seniority after a consolidation: a "dovetail," in which the seniority lists of the combining companies are merged and each employee's seniority is determined by his actual date of hire; and an "endtail," in which the seniority list of one company is tacked onto the end of the seniority list of the other.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

DOUGHERTY; DANIEL E. ZIOLKOWSKI; DAVID J. LEINBACK; THOMAS G. ROSKO; WILLIAM F. GATLING; PETER L. DONOVAN; PAUL A. DOUGLAS; EARL SHOOP; MARYTE WYE; ROBERT HELTEBRIDLE; KENNETH SMITH; WILLIAM TORELLA; CHARLES HERSH; RAY SPAGUE; DAVID HERBER; KENNETH SHUE; HAROLD KOCH; GORDON L. WAGNER; WILLIAM WHITE; HAROLD LYNN; LESTER MILLER; DALE FLOYD; STEPHEN HOBDAY; DAVE LAUDENSLAGER; ROBERT AUKAMP; LYNN KIMBLE; ROBERT SHERICK; DONALD NEIDERMYER; KENNETH SCHELLHAMER; PAUL AMBROSE, JR.; JESSE E. DIXON; RICHARD J. BACHMAN; WILLIAM KELLY; RICHARD LICHTENWALNER; SIDNEY M. GERMAN; RICHARD MOSER; LARRY HALLMAN; DENNIS WANAMAKER; TERRY SILFIES; JOE MUDLOCK; BOB MAKARAVAGI, Plaintiffs-Appellants, v. RONALD **CAREY**, General President of the International Brotherhood of Teamsters; DENNIS SKELTON, Vice-President of the International Brotherhood of Teamsters; INTERNATIONAL BROTHERHOOD OF TEAMSTERS; LOCAL 557, INTERNATIONAL BROTHERHOOD OF TEAMSTERS; ABF FREIGHT SYSTEM, INCORPORATED, Defendants-Appellees.

No. 98-1022

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

1998 U.S. App. LEXIS 32556

October 28, 1998, Argued
December 29, 1998, Decided

**NOTICE:** [*1] RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: 1998 U.S. App. LEXIS 37632.

**PRIOR HISTORY:** Appeal from the United States District Court for the District of Maryland, at Baltimore. Alexander Harvey II, Senior District Judge. (CA-96-813-H, CA-96-1120).

**DISPOSITION:** AFFIRMED.

**CORE TERMS:** seniority, freight, dovetail, merger, grievance, collective bargaining agreement, endtail, consolidation, consolidated, acquisition, trucking, terminals, duty of fair representation, duty, region, merged, summary judgment, dovetailing, workforce, calculating, combining, covering, combined, stock

**COUNSEL:** ARGUED: Joseph Schiffer Kaufman, SCHULMAN & KAUFMAN, L.L.C., Baltimore, Maryland, for Appellants.

James Arthur McCall, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Washington, D.C.; Joseph Edward Santucci, Jr., MORGAN, LEWIS & BOCKIUS, L.L.P., Washington, D.C., for Appellees.

ON BRIEF: Steven K. Hoffman, JAMES & HOFFMAN, P.C., Washington, D.C.; Alissa A. Horvitz, Lisa J. Gitnik, MORGAN, LEWIS & BOCKIUS, L.L.P., Washington, D.C., for Appellees.

**JUDGES:** Before WILKINSON, Chief Judge, and LUTTIG and MOTZ, Circuit Judges.

**OPINION: OPINION**

Local Union 375; WAYNE MILLER, Local Union 375; MAURICE DONINI; MIKE MOGAVERO, Local Union 375; EDWARD ALEXANDROVICH; JOSEPH JOHNSON; ROLAND DUQUETTE; LARRY NOONAN, Local Union 375; LEE PELCZNSKI, Local Union 375; RICHARD KUPSELATIS; DARYL LEJEUNE; TOM PHILLIPS, Local Union 375; ROCCO NOTARANGELO; DON PIATEK, Local Union 375; PAUL STARON; PETER STARON; SAM PINTO, Local Union 375; WILLIAM RITCHIE; PETE SCHREIBER, Local Union 375; ROBERT MCLEOD; ROBERT SMITH; SAM SCIUMECA, Local Union 375; BOB SLIWANSKI, Local Union 375; AL CLARKSON; TOM TEREBEEL; GEORGE URBINO, Local Union 375; RAY YAW, Local Union 375; TERRY MCALLISTER; BILL SEIFER; ARNOLD BUTTON, Local Union 649; FRANCIS MULCAHEY; JIM HUNTER, Local Union 649; MARK MULCAHEY; EUGENE LAWRENCE, Local Union 649; TOM FORDHAM; DOUG LENT, Local Union 649; JEFF PIERCE, Local Union 649; HOBAN SANFORD; **CAREY;** DAVE RACKETT, Local Union 649; JOHN HOPKINS; JOHN B. HART; BOB WAKEMAN, Local Union 649; MIKE HINES; JACK ALVERSON, Local Union 317; WALTER C. ALGER, JR., Local Union 317; STEVE KINDLE; JOSEPH FERENZI; RONALD J. BARNES, Local Union 317; RAY DEMARTNO; ALBERT D. BUSH, Local Union 317; JOHN DEPOTO; ANDREW MONTGOMERY; ROGER W. COSTANZO, Local Union 317; RAY W. COLE, Local Union 317; JOSEPH M. HART; JAMES OBEREMBT; DAVID R. FARRANCE, SR., Local Union 317; LEO FULLER, Local Union 317; TERRY D. GEBMAN, Local Union 317; TED LAND; JAMES GEORGES, Local Union 317; EDWARD M. HENRY, Local Union 317; CHARLES B. HLADUN, Local Union 317; JOSEPH M. LAGUZZA, Local Union 317; THOMAS G. LARMON, JR., Local Union 317; DONALD G. PALMER, Local Union 317; CARLOS J. VENTURA; TIMOTHY H. REED, Local Union 317; WILLIAM ARIAS; TOMASZ BOCHENSKI; GREGORZ BOCHENSKI; DARIUSZ DUDKIEWICZ; KEN EGAN; JOSEPH A. CAPUTO, JR.; THOMAS P. CIAPPIO; TONY KULISH; JIM LEDWITH; THOMAS MCGINLEY; MAUREEN MCLELLAN; ANGELA MELIBRUDA; LEE R. NUTT; JOE PENA; LAWRENCE RYAN; CHARLES A. SOJKA; JAME TRACEY; LORRAINE VENDOLA; WAYNE WEBB; GEORGE A. WOODS; GEORGE BRODBECK; DAVID FABIAN; BLACEY FARINA; GEORGE FIELD; HAROLD SAYNE; ROBERT VOLMAR; ROBERT BLANCHARD; WILLIAM DASKING; THOMAS DONOHUE; DONALD FALCO; CHARLES GRANT; GEORGE KNEER; ALFRED LAURIE; GERRY LEMORE; FRANK PACE; MICHAEL PAWLUKOWICZ; STANLEY ULIKOWSKI; MARTIN WALTERS; FRANK YAGER; JOHN YAPREM; ROBERTA BLOZEN; DANIEL BOYLE; MIKE BYRNES; CHRIS CALABRESE; FRANK DELUCA; WILLIAM EPPS; GREG GIROUX; FRANK GROELING; HAROLD HANSON; ALLAN B. JACOBSON; AUGUST KLEIN; JOHN E. LEWIS; PAUL MISERENDINO; MARTY O'NEILL; HENRY A. PELUSO; JOHN TOLERICO; HERBERT VROEGINDAY; ALLARD ATTMAN; RICHARD COLACICCO; RUDOLPH A. ELMQUIST; MICHAEL FARRELLY; JAMES B. FINAN; GLENN A. GERBOUNKIA; GLENN GRAHAM; RICHARD HINTERSTEIN; EVAN HUGHES; JOHN KOCIBAN; MIKE LEWIS; JOHN S. MANDELA; PETER J. MORRISON; WILLIAM MURPHY; FRANK G. PAHEGHI; WILLIAM K. PARKER; WALTER S. PRZYBYLSKI; FRED QUARTUCCIO; MARK REED; JOSEPH G. STABILE; ANDREW E. STOLTZ; JOHN F. TIEDMANN; WILLIAM VOLK; GORDON WRIGHT; MIKE YAWKOWSKI; CATHY ESSIG; JAMES J. FLESCH; DAVID FRYER; ROBERT D. GROSINSKI; RONALD A. KRYSTOFLAK; PETER MICELI; JOSEPH MOTA; RICHARD MURRAY; ROSE ANN MUSTACHIO; PHILIP V. PECORA; TONY PERROLLI; THOMAS ROY; JAMES SINATRA; DONNA ZURITA; CHARLES D'ANGELO; DANIEL A. DELISA; STEPHEN GIBKI; ANTHONY J. GIGLIO; GEORGE HYDE; LINDA KELLY; JOHN A. KOCH; JAMES T. MCDYER; JAMES P. MEDLEY; PETER M. OZELAS, JR.; PERCY PETERMAN; ROBERT PHILLIPS; KEVIN PISCAL; EDWIN L. TERON; LUDWIG THEN; THOMAS P. BORCHERT; KENNETH EGAN; STEPHEN JOHN FINAN; JAMES KUHL; ANTHONY F. KURC; JOHN MARIANI; ROBERT W. SOEHL; GEORGE M. TERNINKO; KENNETH ZASTOCKI; FRANCIS FARRELL; WILLIAM REILLY; KEVIN RYDER; STUART NEEDLEMAN; DANIEL FEENEY; PAUL BENOIT; HERBERT MCALLISTER; MICHAEL ALLEN; RAYMOND MAKSUT; GARY CORMIER; CARL DOUGHERTY; BILL MOORE; TOM BERNIER; TIMOTHY NILE; ART VEZINA; HARRY CLARK; ALEX F. KLEINER; JAMES J. LINDNER; WILLIAM H. COBB; MICHAEL BERNARD; WILLIAM F. MYCHAYLEW; CLYDE P. BEST; JOHN DOWSE; CHARLES J. HUNTER; JOSEPH W. VELEHOSKI; WILLARD T. MURRAY; THOMAS PRENDERGAST; DENNIS B. ZURAWSKI; WALTER SHEDLOCK; MICHAEL F. MURNIN; ROY L. FOLLWEILER; WALLACE D. WETHERHOLD; LEE A. MENGEL; LEE H. SCHAPPEL; DENNIS A.



*1998 U.S. App. LEXIS 32556, \**

HARRY **GORGE**; DANIEL WILLIAMS; THOMAS JONES; BILLY KNEE; GEORGE MINOR; KENNETH MOORE; GEORGE BLOOM; RONALD WOMICK; EMANUEL ZIEGLER; JAMES CHANEY; STANLEY JOHNSON; THOMAS WINGROVE; WILEY SMITH; JEROME BRACEY; FRANK MILESKY; DAVID PEARSON; HAVON BIRCHEN; FRED DAHLKE; GEORGE ERHARDT; RANDY GROVES; CHARLEY PARKER; JOE COED; TIM CADY, Local Union 182; WAYNE MITTELSTADT; DOUG DAILY, Local Union 182; LOUIS ALAVA; MOHAMMAD STIF; BARRY HIEN, Local Union 182; TONY PETRELLI, Local Union 182; NELSON CORTOS; MICHAEL DOLAN; ROBERT ROSS, Local Union 182; ERIC GOMEZ; BRUCE SCHILLING, Local Union 182; PATRICK HOLOHAN; ROGER VANSLYKE, Local Union 182; ANTHONY KANCELER; CALVIN BECKER, Local Union 687; THOMAS J. KERSTEN; DAVE BURDICK, Local Union 687; DALE MOSER, Local Union 687; BRUCE KRAMER; WILLIAM MCMANUS; VERNAL PARKS, Local Union 687; RICHARD VERITY; DALE REMINGTON, Local Union 687; PHIL SMITH, Local Union 687; MICHAEL J. CIRINCIONE; BILL KAUFMAN; STEVE BALDES, Local Union 294; AL BISHOP, Local Union 294; ROBERT LAXER; BOS RABIDOUX; RICH KERR; JIM COOPER, Local Union 294; PAT MUSTERIA; JAMES FUDALA; DICK CORMIER, Local Union 294; GARY J. RIEHL; JOE RUSSO; JIM DE RUSSO, Local Union 294; RAYMOND L'HEUREUX; WILLIAM TERRIL; MICHAEL SANABRIA; DAN EAMES, Local Union 294; KEVIN SCOTT HARIS, Local Union 294; STEVEN HUBBARD; LES SELF; JOHN STEVENSON; DONALD TENNEY; FRANK KEARNEY, Local Union 294; ARTHUR HEBERT; MIKE LEMIEUX, Local Union 294; THOMAS BERGER; GEORGE MCGARRY, Local Union 294; ROBERT BOUWICH; ROMEO LEVESQUE; BOB HYDE; HANK MEAD, Local Union 294; DONALD GOSSELIN; GRAHAM JENKINS; DAVE CLAY; JAMES MILNE, Local Union 294; KEITH KONZEN; MARK IANUZZI; BILL MONTAGUE, Local Union 294; DENNIS MELLO; NORM MORRISSETTE, Local Union 294; WILLIAM LANDY; ROBERT REISER; JOHN NILES, Local Union 294; WILLIAM LEEK; WAYNE PECK, Local Union 294; EDWARD GILLIS; JOHN MONACO; GERRY NAPPI; MIKE SADDLER, Local Union 294; THOMAS FERRARO; RICHARD LENNERTON; JOHN D. OGRASS; LEN TAYLOR, Local Union 294; JOHN PATTON; DAMMON AMESBURY, Local Union 118; WILLIAM CUNHA; DAVID DEMONICO; JOHN SAMUALSEN; FRANK CUTAIAR, Local Union 118; ALBERTO SANTOS; ROBERT ENSMAN, Local Union 118; WILLIAM ALEY; BRUCE REID; EVERETT SCHUMANN; ROBERT FLECK, Local Union 118; JOE VIRUCT; KENNETH GOUGH; PAUL FRITSCH, Local Union 118; WILLIAM WHITMAN; ROBERT LUONGO; JOE GALANTE, Local Union 118; WILLIAM BROCK; LINDA S. ARIAS; RUSSELL GOODENOUGH, Local Union 118; CLARK GRICIOUS, Local Union 118; JOHN R. BECK; JACK IVESTER; EDWARD NEWSOME; RAYMOND J. BITTMAN; JOHN KILEY, Local Union 118; JIM LING, Local Union 118; GLADSTONE BROWN; DAVE SAHRELE, Local Union 118; CHRIS FOWLER; ALEX RANKIN; TERRY SCHEINER, Local Union 118; GEORGE DAVIS; STUART F. ENDRESS; ROB CUNNINGHAM; JULIS SUMIZE, Local Union 118; GERALD JACOVELLI; JOHN AYLWARD; STEVE THAYER, Local Union 118; RONALD WHEELER; BOB TOURVILLE, Local Union 118; MIKE ERELLI; SAM AMICO, Local Union 375; RICK FRANSON; DON BARTON, Local Union 375; TOM GIORDANO; JIM BELL, Local Union 375; PAUL LEAVITT; CHRIS BENNETT, Local Union 375; THEODORE CARR; TONY BETTI, Local Union 375; RICHARD MARTIN; KEITH BLOUNT, Local Union 375; JOHN WASHWELL; TOM BOBAK, Local Union 375; HERMAN SCHARK; CHARLES DAVIS, Local Union 375; PAUL BOYLE; JOHN GREENWOOD; RICH DEPCZYNSKI, Local Union 375; SAM CHIASSON; RICHARD DUBICK, Local Union 375; JAMES ERNEWEIN, Local Union 375; DAVE HOWLAND; CHARLES BATES; RAY GERWITZ, Local Union 375; PAUL BELAIR; PAUL GOLAB, Local Union 375; PAUL VALOIS; DAVID GOOD, Local Union 375; MIKE GRAZER, Local Union 375; HAL TYREE; BOB HARRINGTON, Local Union 375; DON HERZOG; JOHN HASLAM, Local Union 375; FRED CRABBE; PRENTICE HINTON, Local Union 375; EDDIE CASSADY; ROBERT TRAVERS; LARRY HYMAN, Local Union 375; ROBERT VOLLMAR; JAMES BEHAN; THOMAS AULENBACH; BOB JUREK, Local Union 375; KEARNEY, Local Union 375; PHIL MALOUIN; BOB KOCH, Local Union 375; THOMAS FORDHAM; HOBAN SANDFORD JR.; JOSEPH DEFALCO; SAM LEONE, Local Union 375; PETE LOSTRACCO, Local Union 375; FRANCIS J. MULCAHEY; NICK SINOTTE; FRED MCCUBBIN,

# EXHIBIT X



 **ABF FREIGHT SYSTEM, INC.**
P. O. BOX 1925

NEW KINGSTOWN, PA. 17072-1925

June 5, 2000

Charles Shughart
TEAMSTERS LOCAL 776
2552 JEFFERSON ST.
HARRISBURG, PA. 17110

Dear Chuck:

Attached is our most current seniority roster you requested in your letter
dated May 24, 2000.  As you are aware, there  is no lay-off list.

Sincerely,

Andy Upchurch
Branch Manager

AU/cf

Exhibit (8)

**ABF**   **CAR-042**
**Seniority List**  **Road & Local**   Date Rev:  **4/30/2000**

| S/N | First Name | Last Name | Class | Ter Sen Date | Co Sen Date |
|-----|-----------|-----------|-------|--------------|-------------|
| 1 | Charles | Weddington | R | 16-Jul-68 | 16-Jul-68 |
| 2 | Kenneth | House | R | 03-Jul-69 | 13-Jul-69 |
| 3 | Norman | Sipek | R | 08-Aug-72 | 08-Aug-72 |
| 4 | Roger | Pederson | L | 06-Jan-73 | 06-Jan-73 |
| 5 | Ronald | Langley | R | 15-May-73 | 15-May-73 |
| 6 | Roy | Frazel | L | 17-Aug-73 | 17-Aug-73 |
| 7 | William | Hahn | R | 13-Oct-73 | 13-Oct-73 |
| 8 | Larry | Smith | L | 20-Jun-74 | 20-Jun-74 |
| 9 | Harvey | Carter | R | 05-Jun-77 | 05-Jun-77 |
| 10 | Thomas | Beck | L | 08-Jan-78 | 08-Jan-78 |
| 11 | Horace | Crum | L | 12-Jan-78 | 12-Jan-78 |
| 12 | John | Zerance | L | 15-Jan-78 | 15-Jan-78 |
| 13 | Rich | Webber | R | 15-Jan-78 | 15-Jan-78 |
| 14 | Vincent | Bennett | R | 19-Jan-78 | 19-Jan-78 |
| 15 | Robert | Sanderson | L | 19-Jan-78 | 19-Jan-78 |
| 16 | Willie | Hendrickes | R | 28-Mar-78 | 28-Mar-78 |
| 17 | Patrick | Dinunzio | R | 01-Apr-78 | 01-Apr-78 |
| 18 | Robert | Carolina | R | 09-Apr-78 | 09-Apr-78 |
| 19 | Leonard | Radle | R | 24-Apr-78 | 24-Apr-78 |
| 20 | Robert | Graham | R | 29-Apr-78 | 29-Apr-78 |
| 21 | Roscoe | Lesh | R | 30-Apr-78 | 30-Apr-78 |
| 22 | Glenn | Gauker | R | 03-May-78 | 03-May-78 |
| 23 | Kenneth | Wheeler | R | 04-May-78 | 04-May-78 |
| 24 | Keith | Richard | L | 27-May-78 | 27-May-78 |
| 25 | Harold | Radle | L | 19-Jun-78 | 19-Jun-78 |
| 26 | Donald | Wilt | R | 24-Jun-78 | 24-Jun-78 |
| 27 | John | Roth | R | 08-Jul-78 | 08-Jul-78 |
| 28 | John | Metzger | L | 19-Jul-78 | 19-Jul-78 |
| 29 | Vance | Goodall | R | 09-Oct-78 | 09-Oct-78 |
| 30 | Randy | Fields | L | 09-Dec-78 | 09-Dec-78 |
| 31 | Frank | Reasner | L | 21-Feb-79 | 21-Feb-79 |
| 32 | John | Hoke | L | 21-Feb-79 | 21-Feb-79 |
| 33 | Bradley | Lindsay | L | 10-Mar-79 | 10-Mar-79 |
| 34 | Bruce | Raker | R | 10-Mar-79 | 10-Mar-79 |
| 35 | William | Conklin | R | 11-Mar-79 | 11-Mar-79 |
| 36 | Dwight | Shaver | L | 13-Mar-79 | 13-Mar-79 |
| 37 | Ronald | Cigic | L | 18-Mar-79 | 18-Mar-79 |
| 38 | T. Lee | Boyer | R | 18-Mar-79 | 18-Mar-79 |
| 39 | Dale | Searer | R | 17-Apr-79 | 17-Apr-79 |
| 40 | Ronald | Peffer | R | 03-May-79 | 03-May-79 |
| 41 | Joseph | Hawkins | R | 14-Jun-79 | 14-Jun-79 |
| 42 | Bernard | Nail | L | 23-Jul-79 | 23-Jul-79 |
| 43 | William | Daum | L | 28-Jul-79 | 28-Jul-79 |

| S/N | First Name | Last Name | Class | Ter Sen Date | Co Sen Date |
|---|---|---|---|---|---|
| 44 | Myles | Meredith | R | 11-Aug-79 | 11-Aug-79 |
| 45 | Eugene | Keith | L | 11-Aug-79 | 11-Aug-79 |
| 46 | Russell | Keys | R | 18-Aug-79 | 18-Aug-79 |
| 47 | Robert | Bender | R | 25-Sep-79 | 25-Sep-79 |
| 48 | Harold | Carey | R | 06-Oct-79 | 06-Oct-79 |
| 49 | Clifford | Montgomery | R | 11-Oct-79 | 11-Oct-79 |
| 50 | Curt | Sheffield | L | 18-Oct-79 | 18-Oct-79 |
| 51 | Gerald | Marshall | L | 19-Oct-79 | 19-Oct-79 |
| 52 | Kenneth | Mallette | L | 09-Feb-80 | 09-Feb-80 |
| 53 | Robert | Adams | L | 10-Feb-80 | 10-Feb-80 |
| 54 | Barry | Grumbine | L | 10-Feb-80 | 10-Feb-80 |
| 55 | Robert | Flick | R | 22-Feb-80 | 22-Feb-80 |
| 56 | Andrew | Koppenhaver | L | 25-Sep-80 | 25-Sep-80 |
| 57 | Terry | Stiely | L | 25-Oct-80 | 25-Oct-80 |
| 58 | Marlin | Heim | L | 08-Nov-80 | 08-Nov-80 |
| 59 | Dale | Lucas | L | 01-Aug-81 | 01-Aug-81 |
| 60 | Harold | Anderson | R | 16-Aug-81 | 16-Aug-81 |
| 61 | Thomas | Alderson | R | 27-Aug-81 | 27-Aug-81 |
| 62 | Michael | Carey | R | 09-Sep-81 | 09-Sep-81 |
| 63 | Michael | Rusnak | L | 09-Sep-81 | 09-Sep-81 |
| 64 | Darwin | Lahr | L | 09-Sep-81 | 09-Sep-81 |
| 65 | Andrew | Ney | L | 05-Apr-82 | 05-Apr-82 |
| 66 | Steven | Klouser | L | 05-Apr-82 | 05-Apr-82 |
| 67 | Jacob | Richcreek | L | 08-Apr-82 | 08-Apr-82 |
| 68 | Jesse | Farling | L | 08-Apr-82 | 08-Apr-82 |
| 69 | Gary | Wise | R | 06-May-82 | 06-May-82 |
| 70 | Thomas | Fernbaugh | R | 19-Jun-82 | 19-Jun-82 |
| 71 | Robert | Krout | L | 01-Jul-82 | 01-Jul-82 |
| 72 | Jerry | Zimmerman | L | 25-Aug-82 | 25-Aug-82 |
| 73 | Robert | Buffington | L | 01-Sep-82 | 01-Sep-82 |
| 74 | Ronald | Johnson | R | 02-Sep-82 | 02-Sep-82 |
| 75 | Fred | Porr | R | 02-Oct-82 | 02-Oct-82 |
| 76 | Patrick | Kelley | L | 06-Oct-82 | 06-Oct-82 |
| 77 | Ralph | Wolfe | L | 07-Oct-82 | 07-Oct-82 |
| 78 | Joseph | Riley | R | 27-Nov-82 | 27-Nov-82 |
| 79 | Kenneth | Smeltz | L | 03-Dec-82 | 03-Dec-82 |
| 80 | John | Straub | L | 18-Dec-82 | 18-Dec-82 |
| 81 | Conrad | Ocker | L | 18-Dec-82 | 18-Dec-82 |
| 82 | Jay | Miller | L | 10-Sep-83 | 10-Sep-83 |
| 83 | Steve | Scott | L | 26-Sep-83 | 26-Sep-83 |
| 84 | Joseph | Erbel | L | 08-Oct-83 | 08-Oct-83 |
| 85 | George | Weigle | L | 08-Oct-83 | 08-Oct-83 |
| 86 | Marlin | Duncan | R | 26-Jan-84 | 26-Jan-84 |
| 87 | Rusty | Campbell | R | 02-Apr-84 | 02-Apr-84 |
| 88 | Robert | Ritter | L | 02-Apr-84 | 02-Apr-84 |
| 89 | Charles | Erdman | R | 02-Apr-84 | 02-Apr-84 |

| S/N | First Name | Last Name | Class | Ter Sen Date | Co Sen Date |
|-----|-----------|-----------|-------|--------------|-------------|
| 90 | Kevin | Baumert | R | 02-Apr-84 | 02-Apr-84 |
| 91 | Jerry | Ash | L | 02-Apr-84 | 02-Apr-84 |
| 92 | Keith | Zimmerman | L | 02-Apr-84 | 02-Apr-84 |
| 93 | Lester | Renard | L | 02-Apr-84 | 02-Apr-84 |
| 94 | Dwight | Snyder | R | 02-Apr-84 | 02-Apr-84 |
| 95 | Ronald | Poff | L | 04-Apr-84 | 04-Apr-84 |
| 96 | Gerald | Stemple | R | 06-Apr-84 | 06-Apr-84 |
| 97 | John | Rishel | R | 06-Apr-84 | 06-Apr-84 |
| 98 | Jeffrey | Coble | R | 06-Apr-84 | 06-Apr-84 |
| 99 | Joseph | Orlando | R | 09-Apr-84 | 09-Apr-84 |
| 100 | Barry | Fetter | R | 11-Apr-84 | 11-Apr-84 |
| 101 | Robert | Husler | L | 12-Apr-84 | 12-Apr-84 |
| 102 | Roger | Rowe | R | 13-Apr-84 | 13-Apr-84 |
| 103 | Eugene | Mummert | R | 16-Apr-84 | 16-Apr-84 |
| 104 | Lyle | Bowen | R | 16-Apr-84 | 16-Apr-84 |
| 105 | William | Bernheisel | R | 28-Apr-84 | 28-Apr-84 |
| 106 | Lee | Beard | R | 04-May-84 | 04-May-84 |
| 107 | David | Nelson | L | 18-May-84 | 18-May-84 |
| 108 | Laverne | Musser | L | 23-May-84 | 23-May-84 |
| 109 | Robert | Hickman | R | 05-Jun-84 | 05-Jun-84 |
| 110 | Gale | Hess | R | 05-Jun-84 | 05-Jun-84 |
| 111 | Jack | Forry | R | 15-Jun-84 | 15-Jun-84 |
| 112 | Lawrence | Price | R | 01-Jul-84 | 01-Jul-84 |
| 113 | Ronald | Kemberling | R | 02-Jul-84 | 02-Jul-84 |
| 114 | Harold | Kauffman | R | 02-Jul-84 | 02-Jul-84 |
| 115 | Dennis | Mika | R | 14-Jul-84 | 14-Jul-84 |
| 116 | Richard | Ney | L | 18-Jul-84 | 18-Jul-84 |
| 117 | Lloyd | Morgan | L | 18-Jul-84 | 18-Jul-84 |
| 118 | Jeffrey | Straub | L | 19-Jul-84 | 18-Jul-84 |
| 119 | James | Stoltzfus | R | 21-Jul-84 | 21-Jul-84 |
| 120 | James | Colna | R | 22-Jul-84 | 22-Jul-84 |
| 121 | Harold | Snyder | R | 28-Jul-84 | 28-Jul-84 |
| 122 | Vincent | Warford | R | 28-Jul-84 | 28-Jul-84 |
| 123 | Gary | Smith | R | 30-Jul-84 | 30-Jul-84 |
| 124 | Danny | Jernigan | R | 07-Aug-84 | 07-Aug-84 |
| 125 | Robert | Reynolds | L | 08-Aug-84 | 08-Aug-84 |
| 126 | Randy | Dyarman | L | 09-Aug-84 | 09-Aug-84 |
| 127 | Robert | Yantz | R | 11-Aug-84 | 11-Aug-84 |
| 128 | Mark | Turns | R | 15-Aug-84 | 15-Aug-84 |
| 129 | Thomas | Lomison | L | 17-Aug-84 | 17-Aug-84 |
| 130 | James | Oxenrider | L | 18-Aug-84 | 18-Aug-84 |
| 131 | Lynn | Bream | L | 08-Sep-84 | 08-Sep-84 |
| 132 | J. Thomas | Sewalk Jr | R | 18-Sep-84 | 18-Sep-84 |
| 133 | Gregory | Weber | L | 20-Sep-84 | 20-Sep-84 |
| 134 | Rodney | Kreider | L | 21-Sep-84 | 21-Sep-84 |
| 135 | Carl | Edmiston | L | 03-Oct-84 | 03-Oct-84 |

| S/N | First Name | Last Name | Class | Ter Sen Date | Co Sen Date |
|-----|-----------|-----------|-------|-------------|-------------|
| 136 | Gerald | Held | L | 31-Oct-84 | 31-Oct-84 |
| 137 | Earl | Gates | L | 07-Nov-84 | 07-Nov-84 |
| 138 | Thomas | Reeder | L | 13-Nov-84 | 13-Nov-84 |
| 139 | Edwin | Barsis Jr | R | 25-Jan-85 | 25-Jan-85 |
| 140 | Donald | Sommer | R | 12-Feb-85 | 12-Feb-85 |
| 141 | Steve | Powell | L | 12-Feb-85 | 12-Feb-85 |
| 142 | John | Nelson | L | 16-Feb-85 | 16-Feb-85 |
| 143 | Charles | Forbes | R | 23-Feb-85 | 23-Feb-85 |
| 144 | Carmen | Smith | R | 01-Apr-85 | 01-Apr-85 |
| 145 | Kenneth | Snyder | R | 01-Apr-85 | 01-Apr-85 |
| 146 | Edward | Wertz | R | 01-Apr-85 | 01-Apr-85 |
| 147 | Donald | Hivner | L | 07-May-85 | 07-May-85 |
| 148 | Steven | Ney | R | 07-May-85 | 07-May-85 |
| 149 | Cleon | Detweiler | L | 14-May-85 | 14-May-85 |
| 150 | Burton | Rudy | L | 28-May-85 | 28-May-85 |
| 151 | Edwin | Roberts | R | 20-Jul-85 | 20-Jul-85 |
| 152 | Vernon | Osgood | R | 26-Jul-85 | 26-Jul-85 |
| 153 | John | Scheaffer | R | 05-Aug-85 | 05-Aug-85 |
| 154 | Mahlon | Warfel | R | 08-Aug-85 | 08-Aug-85 |
| 155 | Richard | Dechert | R | 24-Aug-85 | 24-Aug-85 |
| 156 | Darrell | Zerbe | L | 04-Sep-85 | 04-Sep-85 |
| 157 | Donald | Blumenschein | L | 08-Sep-85 | 08-Sep-85 |
| 158 | George | Stokes | R | 11-Sep-85 | 11-Sep-85 |
| 159 | Norman | Munson | L | 19-Sep-85 | 19-Sep-85 |
| 160 | Dale | Lander | L | 06-Oct-85 | 06-Oct-85 |
| 161 | David | Parthemore | R | 25-Oct-85 | 25-Oct-85 |
| 162 | Michael | Hempt | L | 18-Nov-85 | 18-Nov-85 |
| 163 | Dennis | Wilson | L | 15-Dec-85 | 15-Dec-85 |
| 164 | Bernard | Ranker | R | 17-Jan-86 | 17-Jan-86 |
| 165 | Robert F. | Miller | R | 21-Jan-86 | 21-Jan-86 |
| 166 | Paul | New-Day | R | 24-Jan-86 | 24-Jan-86 |
| 167 | Joseph | Cerisano | R | 25-Jan-86 | 25-Jan-86 |
| 168 | Carl | Clark | R | 25-Jan-86 | 25-Jan-86 |
| 169 | David | Burton | L | 25-Jan-86 | 25-Jan-86 |
| 170 | Richard | Hitzler | R | 25-Jan-86 | 25-Jan-86 |
| 171 | David | Giltz | R | 27-Jan-86 | 27-Jan-86 |
| 172 | William | Smith | L | 29-Jan-86 | 29-Jan-86 |
| 173 | Terry | Drawbaugh | L | 30-Jan-86 | 30-Jan-86 |
| 174 | Michael | Bender | L | 02-Feb-86 | 02-Feb-86 |
| 175 | William | Thompson | R | 03-Feb-86 | 03-Feb-86 |
| 176 | Mark | Parquette | L | 04-Feb-86 | 04-Feb-86 |
| 177 | William | Seckman | R | 06-Feb-86 | 06-Feb-86 |
| 178 | Larry | Johnson | R | 08-Feb-86 | 08-Feb-86 |
| 179 | Glen | Pogue | L | 28-Feb-86 | 28-Feb-86 |
| 180 | John | Deslaurier | L | 10-Mar-86 | 10-Mar-86 |
| 181 | Harry | Lockley | R | 10-Mar-86 | 10-Mar-86 |

| S/N | First Name | Last Name | Class | Ter Sen Date | Co Sen Date |
|---|---|---|---|---|---|
| 182 | Michael | Hoffman | L | 11-Mar-86 | 11-Mar-86 |
| 183 | Harry | McGuire | L | 11-Mar-86 | 11-Mar-86 |
| 184 | Robert | Schrum | L | 12-Mar-86 | 12-Mar-86 |
| 185 | Ken | Mullen | L | 13-Mar-86 | 13-Mar-86 |
| 186 | Jeffrey | Schaeffer | R | 14-Mar-86 | 14-Mar-86 |
| 187 | Thomas | Blatt | R | 14-Mar-86 | 14-Mar-86 |
| 188 | Flint | Mahanes | R | 14-Mar-86 | 14-Mar-86 |
| 189 | Nelson | Alleman | R | 14-Mar-86 | 14-Mar-86 |
| 190 | Jack | Matthews | R | 14-Mar-86 | 14-Mar-86 |
| 191 | Norman | Anderson | L | 14-Mar-86 | 14-Mar-86 |
| 192 | Mark | Hassinger | L | 19-Mar-86 | 19-Mar-86 |
| 193 | Steve | Heckman | L | 19-Mar-86 | 19-Mar-86 |
| 194 | Steve | Silcox | L | 19-Mar-86 | 19-Mar-86 |
| 195 | Merle | Wert | R | 20-Mar-86 | 20-Mar-86 |
| 196 | Robert | Shaffer | R | 23-Mar-86 | 22-Mar-86 |
| 197 | Harry | Baker | L | 02-Apr-86 | 02-Apr-86 |
| 198 | Harold | Raley | R | 05-Apr-86 | 05-Apr-86 |
| 199 | David | Motter | L | 05-Apr-86 | 05-Apr-86 |
| 200 | John | Miller | L | 08-Apr-86 | 08-Apr-86 |
| 201 | Dennis | Meyers | L | 08-Apr-86 | 08-Apr-86 |
| 202 | Charles | Fye | L | 26-Apr-86 | 26-Apr-86 |
| 203 | James | Stafford | R | 04-Jul-86 | 04-Jul-86 |
| 204 | Paxton | Clark | R | 14-Jul-86 | 14-Jul-86 |
| 205 | James | Testerman | R | 26-Jul-86 | 26-Jul-86 |
| 206 | James | Keatts | R | 26-Jul-86 | 26-Jul-86 |
| 207 | Alden | Sours | R | 16-Aug-86 | 16-Aug-86 |
| 208 | Edward | Lawrence | R | 23-Aug-86 | 23-Aug-86 |
| 209 | Jim | Cox | R | 06-Sep-86 | 06-Sep-86 |
| 210 | Dale | McCormick | L | 16-Sep-86 | 16-Sep-86 |
| 211 | Angelo | Mraz | L | 23-Sep-86 | 23-Sep-86 |
| 212 | Charles | Bowers | L | 30-Sep-86 | 30-Sep-86 |
| 213 | Clint | Troutman | L | 20-Oct-86 | 20-Oct-86 |
| 214 | Robert | Huff | L | 20-Oct-86 | 20-Oct-86 |
| 215 | Richard | Uhrin | L | 20-Oct-86 | 20-Oct-86 |
| 216 | Robert | Martin | L | 27-Oct-86 | 27-Oct-86 |
| 217 | Tom | Kough | L | 18-Nov-86 | 18-Nov-86 |
| 218 | Glen | Hershey | R | 25-Nov-86 | 25-Nov-86 |
| 219 | Michael | Osborne | R | 02-Apr-87 | 02-Apr-87 |
| 220 | Ivan Max | Helman | R | 02-Apr-87 | 02-Apr-87 |
| 221 | John | Knadig | R | 02-Apr-87 | 02-Apr-87 |
| 222 | Ronald | Bingaman | R | 02-Apr-87 | 02-Apr-87 |
| 223 | Warren | Batdorf | R | 02-Apr-87 | 02-Apr-87 |
| 224 | Ronald | Morgan | R | 02-Apr-87 | 02-Apr-87 |
| 225 | Paul | Sprankle | R | 21-Apr-87 | 21-Apr-87 |
| 226 | Ron | Hicks | R | 25-Apr-87 | 25-Apr-87 |
| 227 | John | Dobies | R | 01-May-87 | 01-May-87 |

| S/N | First Name | Last Name | Class | Ter Sen Date | Co Sen Date |
|-----|-----------|-----------|-------|--------------|-------------|
| 228 | Harold | Hamilton | L | 04-May-87 | 04-May-87 |
| 229 | Scott | Griffith | R | 29-May-87 | 29-May-87 |
| 230 | Albert | Minnich | R | 05-Jun-87 | 05-Jun-87 |
| 231 | James | Salisbury | R | 20-Jul-87 | 20-Jul-87 |
| 232 | Earl | Deshong | R | 21-Jul-87 | 21-Jul-87 |
| 233 | David | Davis | R | 21-Jul-87 | 21-Jul-87 |
| 234 | Erwin | Demko | R | 21-Jul-87 | 21-Jul-87 |
| 235 | Charles | Moser | R | 10-Aug-87 | 10-Aug-87 |
| 236 | Michael | Davis | R | 15-Aug-87 | 15-Aug-87 |
| 237 | Duane | Stahl | L | 09-Sep-87 | 09-Sep-87 |
| 238 | Amos | Stoneberger | R | 09-Sep-87 | 09-Sep-87 |
| 239 | Eugene | Carnes | R | 06-Oct-87 | 06-Oct-87 |
| 240 | Robert | Knott | L | 09-Oct-87 | 09-Oct-87 |
| 241 | Robert | Baetz | R | 30-Oct-87 | 30-Oct-87 |
| 242 | Daniel | Crusey | L | 02-Nov-87 | 02-Nov-87 |
| 243 | Buddy | Redden | L | 02-Nov-87 | 02-Nov-87 |
| 244 | Blaine | Grove | R | 05-Nov-87 | 05-Nov-87 |
| 245 | Charles | Vaughn | L | 16-Nov-87 | 16-Nov-87 |
| 246 | Walter | Dennis | L | 16-Nov-87 | 16-Nov-87 |
| 247 | Linus | Swegar | R | 29-Nov-87 | 29-Nov-87 |
| 248 | Daniel | Hurrell | R | 05-Jan-88 | 05-Jan-88 |
| 249 | Mark | Stevens | L | 07-Feb-88 | 07-Feb-88 |
| 250 | Earl L. Jr. | Bigler | L | 09-Feb-88 | 09-Feb-88 |
| 251 | Brian | Swope | L | 09-Feb-88 | 09-Feb-88 |
| 252 | William | Leopold | R | 09-Mar-88 | 09-Mar-88 |
| 253 | Richard | Albertini | R | 11-Mar-88 | 11-Mar-88 |
| 254 | Amos | Seiders | L | 11-Mar-88 | 11-Mar-88 |
| 255 | Ronald | Knaub | R | 23-Mar-88 | 23-Mar-88 |
| 256 | Ronney | Conrad | R | 26-Mar-88 | 26-Mar-88 |
| 257 | John | Paduhovich | L | 26-Mar-88 | 26-Mar-88 |
| 258 | David | Reinard | R | 26-Mar-88 | 26-Mar-88 |
| 259 | Gregory | Miracle | R | 03-Apr-88 | 03-Apr-88 |
| 260 | Robert D. | Miller | L | 05-Apr-88 | 05-Apr-88 |
| 261 | Bernard | Beese | L | 07-Apr-88 | 07-Apr-88 |
| 262 | Tom | West | L | 11-Apr-88 | 11-Apr-88 |
| 263 | Timothy H. | Strupp | R | 12-Apr-88 | 12-Apr-88 |
| 264 | David | Newell | L | 16-Apr-88 | 16-Apr-88 |
| 265 | John A. | Winner | R | 16-Apr-88 | 16-Apr-88 |
| 266 | Douglas A. | Goodine | R | 16-Apr-88 | 16-Apr-88 |
| 267 | Michael | Startzman | R | 16-Apr-88 | 16-Apr-88 |
| 268 | Wayne | Burkett | R | 16-Apr-88 | 16-Apr-88 |
| 269 | Charles | Peterman | L | 30-Apr-88 | 30-Apr-88 |
| 270 | James | High | R | 30-Apr-88 | 30-Apr-88 |
| 271 | Jay | Dyarman | L | 30-Apr-88 | 30-Apr-88 |
| 272 | Edward | Spears | R | 06-May-88 | 06-May-88 |
| 273 | Brett | Rininger | L | 07-May-88 | 07-May-88 |

| S/N | First Name | Last Name | Class | Ter Sen Date | Co Sen Date |
|-----|-----------|-----------|-------|--------------|-------------|
| 274 | Roderick | Percival | R | 21-May-88 | 21-May-88 |
| 275 | Michael | Lentvorsky | L | 21-May-88 | 21-May-88 |
| 276 | Terry J. | Robinson | R | 18-Jun-88 | 18-Jun-88 |
| 277 | David | Crum | R | 18-Jun-88 | 18-Jun-88 |
| 278 | Robbie C. | Parker | L | 18-Jun-88 | 18-Jun-88 |
| 279 | Randy | Geistwite | L | 21-Jun-88 | 21-Jun-88 |
| 280 | John | Beaston | R | 21-Jun-88 | 21-Jun-88 |
| 281 | Craig | Vogelsong | L | 21-Jun-88 | 21-Jun-88 |
| 282 | Jonas | Smith | L | 21-Jun-88 | 21-Jun-88 |
| 283 | David | Swoyer | L | 21-Jun-88 | 21-Jun-88 |
| 284 | Rod S. | Garman | R | 21-Jun-88 | 21-Jun-88 |
| 285 | Dale | Cruz | L | 21-Jun-88 | 21-Jun-88 |
| 286 | Jeffrey | Funck | L | 23-Jun-88 | 23-Jun-88 |
| 287 | John | Stager | L | 23-Jun-88 | 23-Jun-88 |
| 288 | David S. | Bond | L | 23-Jun-88 | 23-Jun-88 |
| 289 | Harold | Hostetter | R | 23-Jun-88 | 23-Jun-88 |
| 290 | Richard | Paxson | L | 28-Jun-88 | 28-Jun-88 |
| 291 | Donald J. | Ponatoski | R | 28-Jun-88 | 28-Jun-88 |
| 292 | Michael | Sullivan | L | 19-Jul-88 | 19-Jul-88 |
| 293 | Robert | McGugin | L | 03-Aug-88 | 03-Aug-88 |
| 294 | Thomas R. | Grundon | R | 04-Aug-88 | 04-Aug-88 |
| 295 | Larry | McLaughlin | R | 05-Aug-88 | 05-Aug-88 |
| 296 | Scott E. | Bowman | L | 08-Aug-88 | 08-Aug-88 |
| 297 | Christopher J. | Wilkerson | L | 09-Aug-88 | 09-Aug-88 |
| 298 | John M. | Ivanoff | L | 09-Aug-88 | 09-Aug-88 |
| 299 | Gary W. | Martin | R | 09-Aug-88 | 10-Aug-88 |
| 300 | Leroy | Charles | R | 12-Aug-88 | 12-Aug-88 |
| 301 | Terry L. | Heckman | L | 14-Aug-88 | 14-Aug-88 |
| 302 | Don F. | Walker | R | 18-Aug-88 | 18-Aug-88 |
| 303 | James V. | Miller | R | 18-Aug-88 | 18-Aug-88 |
| 304 | Delmas R. | Covert | L | 22-Aug-88 | 22-Aug-88 |
| 305 | James | Kneasel | R | 29-Aug-88 | 29-Aug-88 |
| 306 | Roger | Bouder | L | 02-Sep-88 | 02-Sep-88 |
| 307 | Barry L. | Bupp | L | 12-Sep-88 | 12-Sep-88 |
| 308 | Morris | Brooks | L | 13-Sep-88 | 13-Sep-88 |
| 309 | Jeffrey A. | McCauslin | L | 19-Sep-88 | 19-Sep-88 |
| 310 | Dave | Snyder | L | 21-Sep-88 | 21-Sep-88 |
| 311 | Girard | Deibler | L | 21-Sep-88 | 21-Sep-88 |
| 312 | Dorman L. | Godlove | R | 23-Sep-88 | 23-Sep-88 |
| 313 | James | Robinson | L | 24-Sep-88 | 24-Sep-88 |
| 314 | Frank | Nissel | L | 02-Oct-88 | 02-Oct-88 |
| 315 | Emerson | Morrison | L | 04-Oct-88 | 04-Oct-88 |
| 316 | Roy D. | Hicks | R | 16-Oct-88 | 19-Feb-78 |
| 317 | Jeffrey A. | Nickle | R | 23-Oct-88 | 12-Jun-87 |
| 318 | James B. | Choffel | L | 25-Oct-88 | 25-Oct-88 |
| 319 | Kent | Williard | L | 25-Oct-88 | 25-Oct-88 |

| S/N | First Name | Last Name | Class | Ter Sen Date | Co Sen Date |
|-----|-----------|-----------|-------|--------------|-------------|
| 320 | Daniel J. | Maurer | L | 08-Nov-88 | 08-Nov-88 |
| 321 | Charles M. | Edmiston | R | 29-Nov-88 | 29-Nov-88 |
| 322 | Steven | Koncar | L | 13-Dec-88 | 13-Dec-88 |
| 323 | Robert L. Jr. | Browell | L | 26-Dec-88 | 26-Dec-88 |
| 324 | Ross E. | Schell | L | 26-Dec-88 | 26-Dec-88 |
| 325 | Gary L. | Myers | R | 03-Jan-89 | 03-Jan-89 |
| 326 | Edward R. Jr. | Glosek | L | 10-Jan-89 | 10-Jan-89 |
| 327 | Walter | Brooks | R | 16-Jan-89 | 16-Jan-89 |
| 328 | John | Fortna | L | 03-Feb-89 | 03-Feb-89 |
| 329 | James | Baker | R | 19-Feb-89 | 19-Feb-89 |
| 330 | Kendall | Pierson | R | 19-Feb-89 | 19-Feb-89 |
| 331 | James | Moody | R | 19-Feb-89 | 19-Feb-89 |
| 332 | James | Thornton | R | 19-Feb-89 | 19-Feb-89 |
| 333 | Warren | Cyrus | R | 19-Feb-89 | 19-Feb-89 |
| 334 | Harold | Cole | R | 19-Feb-89 | 19-Feb-89 |
| 335 | Nathaniel | Herbert | R | 19-Feb-89 | 19-Feb-89 |
| 336 | Frederick | Sipe | R | 19-Feb-89 | 19-Feb-89 |
| 337 | Todd | Stiely | L | 24-Feb-89 | 24-Feb-89 |
| 338 | Mike | Hahn | L | 24-Feb-89 | 24-Feb-89 |
| 339 | Richard | Miller | R | 25-Feb-89 | 25-Feb-89 |
| 340 | Raymond | Aleman | L | 05-Mar-89 | 05-Mar-89 |
| 341 | Allen | Lucas | L | 02-Apr-89 | 02-Apr-89 |
| 342 | Roy | Camasta | L | 02-Apr-89 | 02-Apr-89 |
| 343 | Dave | Kissinger | L | 02-Apr-89 | 02-Apr-89 |
| 344 | Dave | Reckner | L | 02-Apr-89 | 02-Apr-89 |
| 345 | Chester | Lerch | L | 02-Apr-89 | 02-Apr-89 |
| 346 | John | Barbee | R | 03-Apr-89 | 03-Apr-89 |
| 347 | Paul | Lamantia | R | 03-Apr-89 | 03-Apr-89 |
| 348 | Grady | Patterson | R | 03-Apr-89 | 03-Apr-89 |
| 349 | Robert | Mallon | R | 03-Apr-89 | 03-Apr-89 |
| 350 | William | Hyland | R | 04-Apr-89 | 04-Apr-89 |
| 351 | Richard | Bibb | R | 05-Apr-89 | 05-Apr-89 |
| 352 | Peter | Boele | R | 31-Jul-89 | 31-Jul-89 |
| 353 | Jack C. | Leach | L | 03-Dec-89 | 03-Dec-89 |
| 354 | Mike | Miller | L | 03-Dec-89 | 03-Dec-89 |
| 355 | Ray | Hammaker | L | 03-Dec-89 | 03-Dec-89 |
| 356 | Mark | Wilt | L | 05-Dec-89 | 05-Dec-89 |
| 357 | Chris | Fortenbaugh | L | 11-Dec-89 | 11-Dec-89 |
| 358 | Jeffrey K. | Pechart | L | 13-Dec-89 | 13-Dec-89 |
| 359 | Robert A. | Johnson | L | 17-Dec-89 | 17-Dec-89 |
| 360 | Thomas P. | Warcholak | L | 17-Dec-89 | 17-Dec-89 |
| 361 | James G. | Matolyak | L | 07-Jan-90 | 07-Jan-90 |
| 362 | Charles R. | McDermott | L | 07-Jan-90 | 07-Jan-90 |
| 363 | Ronald D. | Wilde | L | 21-Jan-90 | 21-Jan-90 |
| 364 | James | Hunter | R | 03-Feb-90 | 03-Feb-90 |
| 365 | Frank | Weiser | L | 03-Feb-90 | 03-Feb-90 |

| S/N | First Name | Last Name | Class | Ter Sen Date | Co Sen Date |
|-----|-----------|-----------|-------|--------------|-------------|
| 366 | Ronald | Fitch | R | 04-Feb-90 | 04-Feb-90 |
| 367 | Ralph A. | Lovern | R | 09-Feb-90 | 09-Feb-90 |
| 368 | Eric C. | Simmons | L | 18-Feb-90 | 18-Feb-90 |
| 369 | John | Roney | R | 20-Feb-90 | 20-Feb-90 |
| 370 | Samuel S. | Reider | R | 24-Feb-90 | 24-Feb-90 |
| 371 | Michael T. | Rosini | L | 24-Feb-90 | 24-Feb-90 |
| 372 | Richard | Quigley | L | 25-Feb-90 | 25-Feb-90 |
| 373 | James | Fanning | R | 03-Mar-90 | 03-Mar-90 |
| 374 | Philip | Bollman | R | 17-Mar-90 | 17-Mar-90 |
| 375 | Charles | Copeland | R | 18-Mar-90 | 18-Mar-90 |
| 376 | Bob | Haller | L | 01-Apr-90 | 01-Apr-90 |
| 377 | Robert | Laubenstein | L | 01-Apr-90 | 01-Apr-90 |
| 378 | Marc | Abrahams | L | 02-Apr-90 | 02-Apr-90 |
| 379 | Vincent | Johnson | L | 03-Apr-90 | 03-Apr-90 |
| 380 | Carl | Ford | R | 04-Apr-90 | 04-Apr-90 |
| 381 | Carl | Boltz | R | 13-Apr-90 | 13-Apr-90 |
| 382 | Mark | Keiter | L | 24-Apr-90 | 24-Apr-90 |
| 383 | Barry | Murphy | L | 29-Apr-90 | 29-Apr-90 |
| 384 | Eugene | Kennedy | L | 29-Apr-90 | 29-Apr-90 |
| 385 | Larry | Snyder | L | 01-May-90 | 01-May-90 |
| 386 | Terry | Gramm | L | 01-May-90 | 01-May-90 |
| 387 | Joseph | Yontz | R | 01-May-90 | 01-May-90 |
| 388 | Vern | Vandevender | L | 01-May-90 | 01-May-90 |
| 389 | John | Purdue | R | 01-May-90 | 01-May-90 |
| 390 | Donald | Markle | L | 01-May-90 | 01-May-90 |
| 391 | William | Savage | L | 01-May-90 | 01-May-90 |
| 392 | George | Poleshock | L | 01-May-90 | 01-May-90 |
| 393 | James | Carpenter | L | 08-May-90 | 08-May-90 |
| 394 | Darryl | Tait | L | 08-May-90 | 08-May-90 |
| 395 | Ray | Diehl | R | 08-May-90 | 08-May-90 |
| 396 | Nick | Chennault | R | 12-May-90 | 12-May-90 |
| 397 | Roy | Hess | L | 12-May-90 | 12-May-90 |
| 398 | Peter | Kovaschetz | R | 17-May-90 | 17-May-90 |
| 399 | Berlin | Hutson | R | 22-May-90 | 22-May-90 |
| 400 | Al | Rhodes | R | 02-Jun-90 | 02-Jun-90 |
| 401 | Robert | Harbaugh | R | 04-Jun-90 | 04-Jun-90 |
| 402 | Dan | Jones | R | 22-Jun-90 | 22-Jun-90 |
| 403 | Gerald | Fogelsanger | R | 26-Jun-90 | 26-Jun-90 |
| 404 | Kenneth | Springfield | L | 26-Jun-90 | 26-Jun-90 |
| 405 | Blaine | Morrison | L | 26-Jun-90 | 26-Jun-90 |
| 406 | Frank | Dozier | L | 04-Jul-90 | 04-Jul-90 |
| 407 | Charles | Goers | R | 11-Jul-90 | 11-Jul-90 |
| 408 | Harry | Hoover | R | 06-Aug-90 | 06-Aug-90 |
| 409 | Donald | Huss | L | 14-Aug-90 | 14-Aug-90 |
| 410 | Randy | May | L | 14-Aug-90 | 14-Aug-90 |
| 411 | Donald | Wert | R | 20-Aug-90 | 20-Aug-90 |

| S/N | First Name | Last Name | Class | Ter Sen Date | Co Sen Date |
|-----|-----------|-----------|-------|--------------|-------------|
| 412 | John | McKeehan | R | 20-Aug-90 | 20-Aug-90 |
| 413 | Larry | Greenawalt | R | 20-Aug-90 | 20-Aug-90 |
| 414 | Cecil | Tolley | R | 20-Aug-90 | 20-Aug-90 |
| 415 | Danny | Edwards | R | 20-Aug-90 | 20-Aug-90 |
| 416 | Roland | Williams | L | 21-Aug-90 | 21-Aug-90 |
| 417 | Stephen | Michael | L | 21-Aug-90 | 21-Aug-90 |
| 418 | Carl | Shippey | L | 21-Aug-90 | 21-Aug-90 |
| 419 | Bryan | Jarrett | L | 21-Aug-90 | 21-Aug-90 |
| 420 | Clinton | Bishop | L | 21-Aug-90 | 21-Aug-90 |
| 421 | James | Wagner | L | 27-Aug-90 | 27-Aug-90 |
| 422 | Boyd | Welker | L | 28-Aug-90 | 28-Aug-90 |
| 423 | Maynard | Bertolet II | L | 28-Aug-90 | 28-Aug-90 |
| 424 | Garland | Mauck | R | 29-Aug-90 | 29-Aug-90 |
| 425 | Richard | Nagle | R | 07-Sep-90 | 07-Sep-90 |
| 426 | Michael | Bircher | L | 07-Sep-90 | 07-Sep-90 |
| 427 | Scott | Hahn | L | 07-Sep-90 | 07-Sep-90 |
| 428 | Gregory | Harris | L | 18-Sep-90 | 18-Sep-90 |
| 429 | Daniel | Straub | R | 23-Sep-90 | 23-Sep-90 |
| 430 | Paul | Force | L | 23-Sep-90 | 23-Sep-90 |
| 431 | Herman | Kinter | R | 23-Sep-90 | 23-Sep-90 |
| 432 | Garrett | Rager | R | 29-Sep-90 | 29-Sep-90 |
| 433 | Roy | Hicks Jr. | R | 02-Oct-90 | 02-Oct-90 |
| 434 | Ronald | Romanoski | L | 07-Oct-90 | 07-Oct-90 |
| 435 | Brian | Deibler | L | 19-Oct-90 | 19-Oct-90 |
| 436 | Steven | Sanders | L | 19-Oct-90 | 19-Oct-90 |
| 437 | Edward | Fekette | L | 28-Oct-90 | 28-Oct-90 |
| 438 | Dave | Fox | L | 28-Oct-90 | 28-Oct-90 |
| 439 | Doug | Kohr | L | 28-Oct-90 | 28-Oct-90 |
| 440 | Edward | Beard | L | 02-Apr-91 | 02-Apr-91 |
| 441 | Larry | Yohn | L | 02-Apr-91 | 02-Apr-91 |
| 442 | Richard | Hoffman | L | 02-Apr-91 | 02-Apr-91 |
| 443 | Walter T. | Lynch | L | 02-Apr-91 | 02-Apr-91 |
| 444 | Daniel | Linn | R | 02-Apr-91 | 02-Apr-91 |
| 445 | Robert | Burton | L | 02-Apr-91 | 02-Apr-91 |
| 446 | Roland | Ricker | L | 02-Apr-91 | 02-Apr-91 |
| 447 | James | Tracey | L | 02-Apr-91 | 02-Apr-91 |
| 448 | Ronald | Weaver | L | 02-Apr-91 | 02-Apr-91 |
| 449 | Charles | Burk | L | 02-Apr-91 | 02-Apr-91 |
| 450 | Gary | Wagaman | R | 02-Apr-91 | 02-Apr-91 |
| 451 | Gene | Creager | L | 02-Apr-91 | 02-Apr-91 |
| 452 | Michael | Burleson | L | 02-Apr-91 | 02-Apr-91 |
| 453 | Vito | Renno | L | 07-Apr-91 | 07-Apr-91 |
| 454 | Ted | Sechler | R | 26-Jun-91 | 26-Jun-91 |
| 455 | Jack | Worley | R | 26-Jun-91 | 26-Jun-91 |
| 456 | Paul | Whitfield | R | 27-Jun-91 | 27-Jun-91 |
| 457 | Harold | James | R | 28-Jun-91 | 28-Jun-91 |

| S/N | First Name | Last Name | Class | Ter Sen Date | Co Sen Date |
|-----|-----------|-----------|-------|--------------|-------------|
| 458 | Wayne | Gray | R | 28-Jun-91 | 28-Jun-91 |
| 459 | James | Stutzman | R | 02-Jul-91 | 02-Jul-91 |
| 460 | Orville | See, Jr | R | 16-Aug-91 | 16-Aug-91 |
| 461 | Jerell | Crowder | R | 16-Aug-91 | 16-Aug-91 |
| 462 | Richard | Lipps | R | 16-Aug-91 | 16-Aug-91 |
| 463 | John | Heitsenrether | R | 16-Aug-91 | 16-Aug-91 |
| 464 | Cloyd | Myers | R | 30-Aug-91 | 30-Aug-91 |
| 465 | Chester | Grove | R | 30-Aug-91 | 30-Aug-91 |
| 466 | A. G. | Rollman | R | 30-Aug-91 | 30-Aug-91 |
| 467 | Rickey | Baumert | L | 08-Sep-91 | 08-Sep-91 |
| 468 | Dave | Pogue | L | 08-Sep-91 | 08-Sep-91 |
| 469 | Jeff | Kost | L | 08-Sep-91 | 09-Aug-91 |
| 470 | Terry | Starner Sr | R | 21-Sep-91 | 21-Sep-91 |
| 471 | Donald | Yost | R | 21-Sep-91 | 21-Sep-91 |
| 472 | Ronald | Patrick | L | 27-Sep-91 | 27-Sep-91 |
| 473 | Anthony | King | L | 27-Sep-91 | 27-Sep-91 |
| 474 | John | Pellman | L | 27-Sep-91 | 27-Sep-91 |
| 475 | Jari | Whitesel | L | 27-Sep-91 | 27-Sep-91 |
| 476 | John | Hafner | L | 27-Sep-91 | 27-Sep-91 |
| 477 | Brady | Carbaugh | L | 27-Sep-91 | 27-Sep-91 |
| 478 | Charles | Heimbaugh | L | 27-Sep-91 | 27-Sep-91 |
| 479 | David | Bowser | L | 27-Sep-91 | 27-Sep-91 |
| 480 | Michael | Ferry | R | 03-Oct-91 | 03-Oct-91 |
| 481 | Allen | Dixon | R | 03-Oct-91 | 03-Oct-91 |
| 482 | Glenn | Laverty | R | 06-Oct-91 | 06-Oct-91 |
| 483 | Chris | Martin | L | 19-Apr-92 | 19-Apr-92 |
| 484 | Robert | Clouser | L | 24-Apr-92 | 24-Apr-92 |
| 485 | Gerald | Wagaman | L | 24-Apr-92 | 24-Apr-92 |
| 486 | James | Clymer | L | 24-Apr-92 | 24-Apr-92 |
| 487 | Richard | Yost | R | 24-Apr-92 | 24-Apr-92 |
| 488 | Ronald | Fisher | L | 24-Apr-92 | 24-Apr-92 |
| 489 | Paul | Sharp | L | 24-Apr-92 | 24-Apr-92 |
| 490 | Bryan | Copenhaver | L | 16-Jun-92 | 16-Jun-92 |
| 491 | Daniel | Hammaker | R | 28-Jul-92 | 28-Jul-92 |
| 492 | Barry | Theurer | L | 28-Jul-92 | 28-Jul-92 |
| 493 | Donald | Izer | R | 28-Jul-92 | 28-Jul-92 |
| 494 | Jeffrey | Baker | L | 28-Jul-92 | 28-Jul-92 |
| 495 | Dennis | Darr | L | 28-Jul-92 | 28-Jul-92 |
| 496 | William | Cook | L | 04-Aug-92 | 04-Aug-92 |
| 497 | Roger | Mooney | L | 11-Aug-92 | 11-Aug-92 |
| 498 | James | Metzker | R | 15-Aug-92 | 15-Aug-92 |
| 499 | Edwin | Hoch | R | 15-Aug-92 | 15-Aug-92 |
| 500 | Edward | Jones | R | 15-Aug-92 | 15-Aug-92 |
| 501 | Douglas | Harshman | R | 15-Aug-92 | 15-Aug-92 |
| 502 | James | Goodyear | R | 15-Aug-92 | 15-Aug-92 |
| 503 | Jackie | Shanahan | R | 16-Aug-92 | 16-Aug-92 |

| S/N | First Name | Last Name | Class | Ter Sen Date | Co Sen Date |
|---|---|---|---|---|---|
| 504 | William | Gross | L | 18-Aug-92 | 18-Aug-92 |
| 505 | Robert | Kessler | L | 28-Aug-92 | 28-Aug-92 |
| 506 | Bryan | Miracle | L | 01-Sep-92 | 01-Sep-92 |
| 507 | Lee | Burgett | L | 01-Sep-92 | 01-Sep-92 |
| 508 | Larry | Smith | L | 01-Sep-92 | 01-Sep-92 |
| 509 | Charles | Tranum | R | 11-Sep-92 | 12-Sep-92 |
| 510 | Keith | Miller | L | 13-Oct-92 | 13-Oct-92 |
| 511 | Tom | Priar | L | 13-Oct-92 | 13-Oct-92 |
| 512 | Thomas | Apple | L | 20-Oct-92 | 20-Oct-92 |
| 513 | Brian | Stellar | R | 20-Oct-92 | 20-Oct-92 |
| 514 | Carl | Johnston | L | 27-Oct-92 | 27-Oct-92 |
| 515 | Daniel | Kilheffer | L | 03-Nov-92 | 03-Nov-92 |
| 516 | Kenley | House | L | 26-Apr-93 | 26-Apr-93 |
| 517 | Taft | Hoffman | L | 18-Jun-93 | 18-Jun-93 |
| 518 | Samuel | Reed | R | 16-Jul-93 | 16-Jul-93 |
| 519 | Blain | David | L | 18-Jul-93 | 18-Jul-93 |
| 520 | Quinn | McLaughlin | L | 18-Jul-93 | 18-Jul-93 |
| 521 | Jennifer | Squire | L | 29-Jul-93 | 29-Jul-93 |
| 522 | Wayne | Kline | L | 14-Sep-93 | 14-Sep-93 |
| 523 | Andrew | Kepner | L | 19-Oct-93 | 19-Oct-93 |
| 524 | Jamie | Martin | L | 19-Oct-93 | 19-Oct-93 |
| 525 | Jeff | Keller | R | 20-Oct-93 | 20-Oct-93 |
| 526 | Michael | Sewalk | L | 20-Oct-93 | 20-Oct-93 |
| 527 | Eric | Wise | L | 02-Nov-93 | 02-Nov-93 |
| 528 | Harry | Lingenfelter | L | 02-Nov-93 | 02-Nov-93 |
| 529 | Ronald | Klacik | L | 02-Nov-93 | 02-Nov-93 |
| 530 | Mark | Sayres | R | 02-Nov-93 | 02-Nov-93 |
| 531 | Eugene | Snyder | L | 02-Nov-93 | 02-Nov-93 |
| 532 | Daniel | Daisley | L | 16-Nov-93 | 16-Nov-93 |
| 533 | Robert | Allen | R | 16-Nov-93 | 16-Nov-93 |
| 534 | Joseph | Kenepp | L | 16-Nov-93 | 16-Nov-93 |
| 535 | Douglas | Hechler | L | 16-Nov-93 | 16-Nov-93 |
| 536 | Keith | Johnston | L | 16-Nov-93 | 16-Nov-93 |
| 537 | John | Garland | L | 17-Dec-93 | 17-Dec-93 |
| 538 | Sid | Secrist | L | 19-Dec-93 | 19-Dec-93 |
| 539 | Marlin | Ritter | L | 20-Dec-93 | 20-Dec-93 |
| 540 | Robert | Curran | R | 06-Jan-94 | 23-Aug-93 |
| 541 | Joseph | Gaiski | L | 25-Jan-94 | 25-Jan-94 |
| 542 | Robert | Bansemer | R | 01-Mar-94 | 01-Mar-94 |
| 543 | Donald | Failor | R | 01-Mar-94 | 01-Mar-94 |
| 544 | Henry | Tomkosky | R | 01-Mar-94 | 01-Mar-94 |
| 545 | Donald | Wivell | R | 01-Mar-94 | 01-Mar-94 |
| 546 | George | Prates | L | 22-Mar-94 | 22-Mar-94 |
| 547 | Edward | Margraff | R | 07-May-94 | 07-May-94 |
| 548 | Thomas | Wright | R | 07-May-94 | 07-May-94 |
| 549 | Charles | Craig | R | 07-May-94 | 07-May-94 |

| S/N | First Name | Last Name | Class | Ter Sen Date | Co Sen Date |
|-----|-----------|-----------|-------|--------------|-------------|
| 550 | John | Lauver | R | 07-May-94 | 07-May-94 |
| 551 | Howlen | Pottorff, Sr. | R | 07-May-94 | 07-May-94 |
| 552 | Harvey | Hissner | R | 10-May-94 | 10-May-94 |
| 553 | Chester | Taylor | R | 13-May-94 | 13-May-94 |
| 554 | John | Eisley | L | 20-May-94 | 20-May-94 |
| 555 | John | Alleman III | R | 26-May-94 | 26-May-94 |
| 556 | Frederick | Payne | R | 26-May-94 | 26-May-94 |
| 557 | Edward | Waidley | R | 26-May-94 | 26-May-94 |
| 558 | Gerald | Jones | R | 26-May-94 | 26-May-94 |
| 559 | Jay | Crane | L | 09-Jun-94 | 09-Jun-94 |
| 560 | Paula | Klinger | R | 22-Jun-94 | 22-Jun-94 |
| 561 | Peter | Supsic | R | 09-Jul-94 | 09-Jul-94 |
| 562 | John | Drey | L | 24-Jul-94 | 24-Jul-94 |
| 563 | Westley | Lippy | L | 24-Jul-94 | 24-Jul-94 |
| 564 | Howard | Bullock | L | 24-Jul-94 | 24-Jul-94 |
| 565 | John | Estes | L | 26-Jul-94 | 26-Jul-94 |
| 566 | Cindy | Horvath | L | 26-Jul-94 | 26-Jul-94 |
| 567 | Thomas | Daugherty | R | 30-Jul-94 | 30-Jul-94 |
| 568 | Michelle | Neumeister | L | 31-Jul-94 | 31-Jul-94 |
| 569 | Gary | Whitfield | R | 03-Aug-94 | 03-Aug-94 |
| 570 | Sheldon | Pennington | R | 14-Aug-94 | 14-Aug-94 |
| 571 | Charles | Alleman | L | 14-Aug-94 | 14-Aug-94 |
| 572 | Gregory | Hartman | R | 18-Aug-94 | 18-Aug-94 |
| 573 | Dean | Shuman | L | 23-Aug-94 | 23-Aug-94 |
| 574 | Timothy | Wert | R | 26-Aug-94 | 26-Aug-94 |
| 575 | William | Blair | R | 26-Aug-94 | 26-Aug-94 |
| 576 | Robert | Reichert | R | 02-Sep-94 | 02-Sep-94 |
| 577 | Leroy | Negley | R | 02-Sep-94 | 02-Sep-94 |
| 578 | Daniel | Ocker | R | 02-Sep-94 | 02-Sep-94 |
| 579 | Al | Kruger | R | 16-Sep-94 | 16-Sep-94 |
| 580 | Robert | Conroy | R | 16-Sep-94 | 16-Sep-94 |
| 581 | Michael | Seabrooks | R | 19-Sep-94 | 19-Sep-94 |
| 582 | James | Ford | R | 30-Sep-94 | 30-Sep-94 |
| 583 | Daniel | Bowers | R | 30-Sep-94 | 30-Sep-94 |
| 584 | Richard | Stine | L | 05-Oct-94 | 05-Oct-94 |
| 585 | Douglas | Mengle | L | 13-Oct-94 | 13-Oct-94 |
| 586 | Travis | McCulloch | L | 13-Oct-94 | 13-Oct-94 |
| 587 | Michael | Hickey | L | 14-Oct-94 | 14-Oct-94 |
| 588 | John | Yarina | L | 14-Oct-94 | 14-Oct-94 |
| 589 | Ruben | Russell Jr | L | 14-Oct-94 | 14-Oct-94 |
| 590 | Colleen | Finn | L | 14-Oct-94 | 14-Oct-94 |
| 591 | Donald | Long | L | 27-Oct-94 | 27-Oct-94 |
| 592 | Brian | Gerber | L | 27-Oct-94 | 27-Oct-94 |
| 593 | Kenneth | Wynn | L | 27-Oct-94 | 27-Oct-94 |
| 594 | Stephen | Lucas | L | 27-Oct-94 | 27-Oct-94 |
| 595 | Ralph | Rehm | R | 12-Nov-94 | 12-Nov-94 |

| S/N | First Name | Last Name | Class | Ter Sen Date | Co Sen Date |
|-----|-----------|-----------|-------|--------------|-------------|
| 596 | Mark | Vallie | R | 12-Nov-94 | 12-Nov-94 |
| 597 | David | Magaro | R | 18-Nov-94 | 18-Nov-94 |
| 598 | Howard | Gouse | L | 22-Nov-94 | 22-Nov-94 |
| 599 | Dorman | Godlove, Jr. | R | 27-Nov-94 | 27-Nov-94 |
| 600 | Larry | Bechtel | L | 20-Jan-95 | 20-Jan-95 |
| 601 | Jo-Ann | Lauffer | L | 21-Jan-95 | 21-Jan-95 |
| 602 | George | Amsbaugh | L | 09-Apr-95 | 09-Apr-95 |
| 603 | Paul | Vandergrift | L | 09-Apr-95 | 09-Apr-95 |
| 604 | Ronald | Snowberger | L | 09-Apr-95 | 09-Apr-95 |
| 605 | Rex | Bragg | L | 09-Apr-95 | 09-Apr-95 |
| 606 | Robert | Yost Jr | L | 09-Apr-95 | 09-Apr-95 |
| 607 | Stephen | Gaiski Jr | L | 09-Apr-95 | 09-Apr-95 |
| 608 | William | Mielke | L | 09-Apr-95 | 09-Apr-95 |
| 609 | Paul | Hall | L | 09-Apr-95 | 09-Apr-95 |
| 610 | Irv | Nelson | L | 09-Apr-95 | 09-Apr-95 |
| 611 | Ronald | Frombaugh | R | 12-Nov-98 | 27-Feb-72 |
| 612 | Gary | Dietz | R | 20-Nov-98 | 25-Aug-79 |
| 613 | Larry | Trollinger | R | 20-Nov-98 | 28-Jul-83 |
| 614 | Michael | Fritz | R | 21-Nov-98 | 22-May-84 |
| 615 | Lawrence | Welker | R | 27-Nov-98 | 20-Sep-73 |
| 616 | Ray | Snyder | R | 27-Nov-98 | 04-Sep-85 |
| 617 | Vincent | Ramirez | R | 27-Nov-98 | 24-May-86 |
| 618 | Carl | Murphy | R | 30-Nov-98 | 20-Apr-83 |
| 619 | Keith | Sgrignoli | R | 05-Dec-98 | 03-Apr-78 |
| 620 | Douglas | Kerstetter | R | 06-Dec-98 | 30-Oct-81 |
| 621 | Ralph | Harris | L | 07-Dec-98 | 09-Sep-84 |
| 622 | Norman | Runk | R | 11-Dec-98 | 24-Apr-84 |
| 623 | Walter | Minich | R | 13-Dec-98 | 07-Jul-75 |
| 624 | Jeffrey | Albright | R | 14-Dec-98 | 09-Apr-88 |
| 625 | Roy | Keck | R | 20-Dec-98 | 02-Mar-88 |
| 626 | Norman | Boire | R | 08-Jan-99 | 26-Aug-85 |
| 627 | Allen | Landis | R | 15-Jan-99 | 03-Nov-75 |
| 628 | Charles | Albright | R | 10-Feb-99 | 18-May-84 |
| 629 | Raymond | Nevins | R | 10-Feb-99 | 02-Nov-87 |
| 630 | Lowell | McGuire | R | 11-Feb-99 | 12-Feb-84 |
| 631 | William | Erdman | R | 11-Feb-99 | 09-Apr-90 |
| 632 | Stanley | Nye | R | 27-Feb-99 | 30-Oct-83 |
| 633 | Roger | Wiles | R | 27-Apr-99 | 27-Apr-99 |
| 634 | Donald | Bixler | R | 27-Apr-99 | 27-Apr-99 |
| 635 | Phillip | Frazer | R | 27-Apr-99 | 27-Apr-99 |
| 636 | Ronald | Mangus | R | 27-Apr-99 | 27-Apr-99 |
| 637 | John | Bosley | R | 27-Apr-99 | 27-Apr-99 |
| 638 | Randall | Hartz | R | 27-Apr-99 | 04-Mar-83 |
| 639 | Roger | Hockensmith | L | 21-May-99 | 21-May-99 |
| 640 | James | Rutter | R | 22-Jun-99 | 22-Jun-99 |
| 641 | David | Albertson | R | 22-Jun-99 | 22-Jun-99 |

| S/N | First Name | Last Name | Class | Ter Sen Date | Co Sen Date |
|-----|-----------|-----------|-------|--------------|-------------|
| 642 | David | Jackson | R | 23-Jun-99 | 23-Jun-99 |
| 643 | Floyd C. | Smith | R | 23-Jun-99 | 23-Jun-99 |
| 644 | Carl | Shoup | R | 23-Jun-99 | 23-Jun-99 |
| 645 | George | Grubbs | R | 23-Jun-99 | 23-Jun-99 |
| 646 | Thomas | Myers | R | 23-Jun-99 | 23-Jun-99 |
| 647 | Terry | Irvin | R | 29-Jul-99 | 29-Jul-99 |
| 648 | Raymond | Hoover | R | 29-Jul-99 | 29-Jul-99 |
| 649 | Ronald | Conrad | R | 29-Jul-99 | 29-Jul-99 |
| 650 | Russell | Reinoehl | R | 05-Aug-99 | 16-Nov-87 |
| 651 | James | Downs | R | 06-Aug-99 | 06-Aug-99 |
| 652 | Stephen | McGinnis | R | 06-Aug-99 | 06-Aug-99 |
| 653 | Dennis | Robinson | R | 06-Aug-99 | 06-Aug-99 |
| 654 | Thurman | Lewis | R | 06-Aug-99 | 06-Aug-99 |
| 655 | William | Noel | R | 06-Aug-99 | 06-Aug-99 |
| 656 | Gordon | Kline | L | 10-Aug-99 | 10-Aug-99 |
| 657 | Nathan | Dravk | L | 17-Aug-99 | 17-Aug-99 |
| 658 | Scott | Fekette | L | 17-Aug-99 | 17-Aug-99 |
| 659 | Irvin | Snyder | R | 18-Aug-99 | 18-Aug-99 |
| 660 | Leo | Weller | R | 18-Aug-99 | 18-Aug-99 |
| 661 | Charles | Zufall | R | 18-Aug-99 | 18-Aug-99 |
| 662 | Duane | Grove | R | 25-Aug-99 | 25-Aug-99 |
| 663 | Keith | McKeever | R | 31-Aug-99 | 31-Aug-99 |
| 664 | Mikel | Sherbo | L | 31-Aug-99 | 31-Aug-99 |
| 665 | Spencer | Lomison | L | 31-Aug-99 | 31-Aug-99 |
| 666 | Howard | Leonti | L | 31-Aug-99 | 31-Aug-99 |
| 667 | Terry | Runshaw | L | 31-Aug-99 | 31-Aug-99 |
| 668 | Chalmer | Edgin | L | 31-Aug-99 | 31-Aug-99 |
| 669 | William | Bowen | L | 31-Aug-99 | 31-Aug-99 |
| 670 | Ronald | Decker | L | 31-Aug-99 | 31-Aug-99 |
| 671 | Curt | Mills | L | 01-Sep-99 | 01-Sep-99 |
| 672 | Douglas | Ebur | R | 08-Sep-99 | 08-Sep-99 |
| 673 | Roderick | Campbell | L | 08-Sep-99 | 08-Sep-99 |
| 674 | Mark J. | Anderson | L | 14-Sep-99 | 14-Sep-99 |
| 675 | Terry | Beaver | R | 26-Sep-99 | 26-Sep-99 |
| 676 | Troy E. | Snyder | L | 28-Sep-99 | 28-Sep-99 |
| 677 | Leon W. | Deihl | L | 28-Sep-99 | 28-Sep-99 |
| 678 | Gary | Kissinger | R | 29-Sep-99 | 09-Aug-87 |
| 679 | Richard | Vrabel | R | 29-Sep-99 | 29-Sep-99 |
| 680 | Michael G. | Hamman | L | 05-Oct-99 | 05-Oct-99 |
| 681 | Clifford | Jones | L | 05-Oct-99 | 05-Oct-99 |
| 682 | Timothy | Miess | R | 07-Oct-99 | 07-Oct-99 |
| 683 | Robert | Reichert, Jr. | R | 27-Oct-99 | 27-Oct-99 |
| 684 | Joel | Sharp | L | 09-Nov-99 | 09-Nov-99 |
| 685 | James | Crone | L | 09-Nov-99 | 09-Nov-99 |
| 686 | Robert | Mallette | R | 16-Nov-99 | 16-Nov-99 |
| 687 | Benjamin | Witmer | R | 17-Nov-99 | 17-Nov-99 |

| S/N | First Name | Last Name | Class | Ter Sen Date | Co Sen Date |
|---|---|---|---|---|---|
| 688 | Laramie | Cahoj | L | 23-Nov-99 | 23-Nov-99 |
| 689 | Rodney D. | Maus | L | 23-Nov-99 | 23-Nov-99 |
| 690 | Steven | Najdek | L | 14-Dec-99 | 14-Dec-99 |
| 691 | Keith | McPherson | L | 14-Dec-99 | 14-Dec-99 |
| 692 | Bradley | Miller | L | 14-Dec-99 | 14-Dec-99 |
| 693 | Eric | Costella | L | 14-Dec-99 | 14-Dec-99 |
| 694 | Larry | Shultz | R | 29-Dec-99 | 29-Dec-99 |
| 695 | Dallis | Laudenslager | R | 14-Jan-00 | 14-Jan-00 |
| 696 | Mark | Notbohm | R | 14-Jan-00 | 14-Jan-00 |
| 697 | Michael | Irvin | R | 08-Feb-00 | 08-Feb-00 |
| 698 | Charles | Lindeman | R | 01-Mar-00 | 01-Mar-00 |
| 699 | Bruce | Wiker | R | 01-Mar-00 | 01-Mar-00 |
| 700 | John | Moore | R | 01-Mar-00 | 01-Mar-00 |
| 701 | Cecil | Davis | R | 03-Mar-00 | 03-Mar-00 |
| 702 | Larry | Palmer | R | 03-Mar-00 | 03-Mar-00 |
| 703 | Bruce | Groff | R | 07-Mar-00 | 07-Mar-00 |
| 704 | Ronald | Reber | R | 07-Mar-00 | 07-Mar-00 |
| 705 | Robert | Chappel | R | 07-Mar-00 | 07-Mar-00 |
| 706 | Wayne | Tamkin | R | 17-Mar-00 | 15-Mar-00 |
| 707 | Randall | Whitehouse | R | 25-Mar-00 | 25-Mar-00 |
| 708 | Lonnie | Holtzapple | R | 25-Mar-00 | 25-Mar-00 |
| 709 | Duane | Taylor | R | 28-Mar-00 | 28-Mar-00 |
| 710 | Jack | Henry | R | 28-Mar-00 | 28-Mar-00 |
| 711 | Nathan | Kuhns | R | 29-Mar-00 | 29-Mar-00 |
| 712 | Michael | Pitzi | R | 29-Mar-00 | 29-Mar-00 |
| 713 | Glen | Roush | R | 08-Apr-00 | 08-Apr-00 |
| 714 | Dean | Sarver | L | 14-Apr-00 | 14-Apr-00 |
| 715 | Michael | Malosky | L | 14-Apr-00 | 14-Apr-00 |
| 716 | Stuart | Stough | R | 21-Apr-00 | 21-Apr-00 |
| 717 | Kenneth | Davenport | R | 21-Apr-00 | 21-Apr-00 |
| 718 | Edward | Kauffman | L | 01-Jun-00 | 01-Jun-00 |
| 719 | David | Varner | L | 01-Jun-00 | 01-Jun-00 |
| 720 | | | | | |
| 721 | | | | | |
| 722 | | | | | |
| 723 | | | | | |
| 724 | | | | | |
| 725 | | | | | |
| 726 | | | | | |
| 727 | | | | | |
| 728 | | | | | |
| 729 | | | | | |
| 730 | | | | | |
| 731 | | | | | |
| 732 | | | | | |
| 733 | | | | | |

# EXHIBIT Y

L776

EASTERN REGION JOINT AREA COMMITTEE

Established in accordance with the terms and conditions of the National Master Freight Agreement and the CENT. PA Supplemental Agreement, entered into by and between the Local Union and carriers engaged in City Pickup and Delivery and/or Over-the-Road Freight Operations.

DOCKET NO. C-149-00

IN THE MATTER OF THE DISPUTE BETWEEN

TEAMSTERS LOCAL NO. 776
HARRISBURG, PA

and

ABF FREIGHT SYSTEM, INC.

SUBMISSION FORM

We, the undersigned, parties to the National Master Freight Agreement and the CENT. PA Supplemental Agreement, hereby agree to submit the dispute to arbitration under the Rules of Procedure prescribed by the Eastern Region Joint Area Committee, by virtue of its authority, as set forth in Article 43 and of the CENT. PA Supplemental Agreement, the following:

On behalf of Rickey Bechtel, Union alleges violation of Article 5; requesting grievant be returned to proper seniority with all lost wages, benefits.

The undersigned further agree that a majority decision of the Eastern Region Joint Area Committee in the above dispute will be final, conclusive and binding with no appeal and, further, that neither party will attempt through any overt acts, to void the decision rendered.

The undersigned also agree that failure to comply with the decision of a majority of the Committee within ten (10) days of the date of the decision will result in the loss of all contract rights, privileges and benefits due them under Article 43 of the CENT. PA Supplemental Agreement.

Date July 25, 2000

Employer ABF FREIGHT SYSTEM, INC. Local Union 776

Signed by Steven J. Froias, Labor Rels. Signed by Charles Shughart, B. A.

DECISION

The Panel, in executive session, motion made, seconded and carried that this case is referred to the National Multi-Region Change of Operations Violations Committee. Cost split.

R. L. SCHAEFFER
Employer Co-Secretary

JULY 25, 2000
Date

NICHOLAS PICARELLO
Union Co-Secretary

JULY 25, 2000
Date

# EXHIBIT Z

ABF
EMPLOYER BRIEF

MRC COMMITTEE
CASE NO. ERJAC C-149-00
ABF CASE NO. 042-040-MR-00
LOCAL UNION 776 VS ABF  (RICKEY BETCHEL)

The Union is claiming a violation of Article 5, Section 2 of the NMFA.
They have not provided the Company with a date for this alleged violation.

I have attached a copy of the article in question. This article deals with
"MERGERS OF COMPANIES-GENERAL". Specifically Section 2 ©
reads in part "IN THE APPLICATION OF THIS SECTION, WHEN
TERMINALS OR OPERATIONS OF TWO OR MORE COMPANIES
ARE COMBINED. AS REFERRED TO ABOVE. THE FOLLOWING
GENERAL RULES SHALL BE APPLIED BY THE EMPLOYER AND
LOCAL UNIONS".

In this case there was no merger of terminals in the Carlisle, PA area.
Carolina had closed their terminal 5 months before the ABF, Carolina, Red
Arrow, Change of Operations.  This fact is not in dispute.

Attached is a copy of that Change decision (MR-CO-38-9/95).  I would like
to review Item #1A with the Committee.  As you can see it is very specific
about combining terminals and seniority lists affected by the Change.  It
further reads "EVERY FACILITY WHOSE WORK HAS BEEN MERGED
WITH THE WORK OF ANOTHER FACILITY".

Also attached are copies of pages V and -2- of that Change.  There is no
reference to any Carolina facility in Carlisle, PA because none existed at the
time of the Change.

On October 12, 1995 the Union sent the attached letter to all Carolina
employees layed off when Carolina closed the Carlisle, PA terminal.  This
letter reviews the rights of these employees concerning the ABF, Carolina,
Red Arrow Change decision.  In the Change decision all employees from all
three Companies were afforded Article5, Section 5 rights, this included road,

city. mechanics and clerical employees.  The former Carolina employees were not afforded Article5, Section 2 rights.

There was no merger of terminals in Carlisle, PA, and Article 5, Section 2 has no application.  We respectfully request the claim of the Union be denied.

# ARTICLE 5.

## Section 1. Seniority Rights

(a) The application of seniority which has been accrued herein shall be established in the Supplemental Agreements.

(b) Seniority shall be broken only by discharge, voluntary quit, retirement, or more than a five (5) - year layoff.

(c) This Section shall apply to all Supplemental Agreements.

## Section 2. Mergers of Companies-General

(a) In the event the Employer is a party to a merger of lines, seniority of the employees who are affected thereby shall be determined by mutual agreement between the Employer and the Local Unions involved.

In the application of this Section, it is immaterial whether the transaction is called a merger, purchase, acquisition, sale, etc. Further, it is also immaterial whether the transaction involves merely the purchase of stock of one (1) corporation by another, with two (2) separate corporations continuing in existence.

(b) If such merger of companies results in the combination of terminals or over-the-road operations, a change of operations shall be submitted to the Co-Chairmen of the National Grievance Committee for assignment to an appropriate Change of Operations Committee established pursuant to Article 8, Section 6. The Change of Operations Committee shall retain jurisdiction for one (1) year after the effective date of the Committee decision and shall have the authority to amend its decision in the event of a substantial change in the amount of work to be performed at the terminals or over-the-road operations which were combined.

## Combining of Terminals or Operations as a Result of Merger of Companies

(c) In the application of this Section, when terminals or operations of two (2) or more companies are combined, as referred to above, the following general rules shall be applied by the Employer and the Local Unions, which general rules are subject to modification pursuant to the provisions of Section 4 of this Article:

TITAN ELECTRONIC MAIL

ATE.  09/19/95
IME.  15.37 EST
O.    LCL/TERM-ID 373
ROM.  LCL/TERM-ID TPI                    TPI1
OR.   PRINCIPAL OFFICER
A     001      MSG NMBR 431


O:   THE PRINCIPAL OFFICERS OF THE FOLLOWING LOCAL UNIONS:

     7, 20, 24, 26, 40, 41, 43, 50, 75, 89, 92, 100, 116, 120, 135,
     147, 160, 164, 200, 215, 236  238, 245, 279, 299, 301, 325, 332,
     339, 346, 364, 371, 377, 406, 407, 413, 414, 460, 534, 544, 554, 563,
     574, 580, 600, 614, 627, 637, 651, 662, 673, 688, 695, 696, 697, 705,
     710, 722, 749, 795, 823, 833, 908, 916, & 957 OF THE CENTRAL REGION

     22, 25, 28, 29, 30, 42, 59, 61, 71, 107, 110, 118, 170, 171,
     175, 182, 191, 229, 249, 251, 294, 312, 317, 340, 355, 375,
     384, 391, 397, 401, 404, 429, 430, 437, 443, 445, 449, 470,
     493, 500, 509, 529, 538, 557, 560, 592, 597, 633, 639, 649,
     653, 671, 676, 677, 687, 693, 701, 707, 764, 771, 773, 776,
     789, 822, & 992 OF THE EASTERN REGION

     5, 79, 217, 270, 373, 385, 390, 402, 480, 512, 515, 519, 523,
     528, 549, 568, 577, 612, 657, 667, 728, 745, 878, 886, 891,
     920, 968, 988, & 991 OF THE SOUTHERN REGION

     961 OF THE WESTERN REGION

:   ABF FREIGHT SYSTEM, INC. - MULTI-REGION CHANGE OF OPERATIONS
    DECISION IN CASE NO. MR-CO-38-9/95

AR SISTERS AND BROTHERS:

    FOLLOWING IS THE DECISION RENDERED BY THE MULTI-REGION CHANGE OF
 ERATIONS COMMITTEE IN THE ABOVE REFERENCED CASE.  UPON RECEIPT OF THIS
 CISION PLEASE COPY AND DISTRIBUTE TO ALL ABF AND CAROLINA FREIGHT
 RK SITES FOR IMMEDIATE POSTING:

 E MULTI-REGION CHANGE OF OPERATIONS COMMITTEE ADOPTED A MOTION THAT
 E COMPANY'S PROPOSED CHANGE OF OPERATIONS BE APPROVED AS MODIFIED
 D CLARIFIED BY THE COMPANY ON THE RECORD WITH THE FOLLOWING PROVISOS:

    THIS CHANGE OF OPERATIONS INVOLVES A TRANSACTION WITHIN THE
    MEANING OF ARTICLE 5, SECTION 2(A)-(C) OF THE NMFA:

    A.   THE COMMITTEE DIRECTS THAT, IN ACCORDANCE WITH THE PROVISIONS
         OF ARTICLE 5, SECTION 2(A)-(C), ARTICLE 5, SECTION 3, AND
         ARTICLE 8, SECTION 6(G) OF THE NMFA, THE SENIORITY LISTS AT
         DOMICILES AND TERMINALS AFFECTED BY THIS CHANGE OF OPERATIONS
         SHALL BE GROUPED FOR DOVETAILING AS REFLECTED ON THE EXHIBITS
         CONTAINED IN THE PROPOSED CHANGE OF OPERATIONS, (AS CLARIFIED
         OR CORRECTED ON THE RECORD), AND AS PROVIDED IN ARTICLE 5,
         SECTION 2(C) OF THE NMFA.  DOVETAILING APPLIES TO ALL
         BARGAINING UNIT EMPLOYEES AFFECTED BY COMBINING OR ELIMINATING

TITAN ELECTRONIC MAIL

DATE. 09/19/95
TIME. 15.37 EST
TO.   LCL/TERM-ID 373
FROM. LCL/TERM-ID TPI                    TPI1
FOR.  PRINCIPAL OFFICER
      002     MSG NMBR 431

ABF AND CAROLINA FREIGHT CARRIERS/RED ARROW FACILITIES AND INCLUDES ALL MAINTENANCE AND OFFICE EMPLOYEES. EVERY FACILITY WHOSE WORK HAS BEEN MERGED WITH THE WORK OF ANOTHER FACILITY MUST BE GROUPED WITH THAT FACILITY. THIS PARAGRAPH DOES NOT APPLY TO LOCAL UNIONS 673, 705 AND 710 (DOCK AND OFFICE), WHICH ARE NOT SIGNATORY TO THE NMFA.

B.   DOVETAILING SHALL BE ACTIVE TO ACTIVE, INACTIVE TO INACTIVE, BY CLASSIFICATION. THOSE EMPLOYEES WHO WERE ON LETTER OF LAYOFF (OR THE EQUIVALENT THEREOF UNDER THOSE SUPPLEMENTS WHERE LETTERS OF LAYOFF ARE NOT UTILIZED) ON AUGUST 11, 1995, SHALL BE CONSIDERED AS INACTIVE FOR THE PURPOSES OF THIS DECISION, EVEN IF THEY HAVE BEEN USED FOR TEMPORARY WORK OR RECALLED PRIOR TO THE EFFECTIVE DATE OF THE CHANGE OF OPERATIONS. ANY EMPLOYEES LAID OFF AFTER AUGUST 11, 1995, BUT BEFORE THE EFFECTIVE DATE OF THE CHANGE OF OPERATIONS SHALL BE CONSIDERED TO BE ACTIVE AND SHALL RETAIN THEIR RESPECTIVE POSITIONS ON THE DOVETAILED ACTIVE LISTS. ANY EMPLOYEE ON LONG TERM DISABILITY SHALL BE CONSIDERED AS ACTIVE IF HIS SENIORITY DATE WOULD HAVE PUT HIM/HER ON THE ACTIVE LIST.

C.   A MASTER ACTIVE/LAID OFF POOL SHALL BE CREATED AND SHALL CONSIST OF THOSE OVER-THE-ROAD DRIVERS WHO WERE ACTIVE ON AUGUST 11, 1995, AT EITHER ABF, CAROLINA OR RED ARROW AND WHO WERE LAID OFF AS A DIRECT RESULT OF IMPLEMENTATION OF THIS CHANGE OF OPERATIONS.

A MASTER INACTIVE/LAID OFF POOL SHALL BE CREATED AND SHALL CONSIST OF THOSE OVER-THE-ROAD DRIVERS WHO WERE IN LAYOFF STATUS ON AUGUST 11, 1995, AT EITHER ABF, CAROLINA OR RED ARROW, REGARDLESS OF WHY THEY WERE LAID OFF.

AFTER IMPLEMENTATION, ANY ADDITIONAL JOB OPENINGS AT A ROAD DOMICILE WHERE EMPLOYEES IN EITHER POOL ARE ON LAYOFF SHALL BE OFFERED IN LINE OF SENIORITY TO SUCH EMPLOYEES FROM THAT DOMICILE, FIRST TO EMPLOYEES ON THE MASTER ACTIVE/LAID OFF POOL AND THEM TO EMPLOYEES ON THE MASTER INACTIVE/LAID OFF POOL.

JOB OPENINGS AT ANY DOMICILE OTHER THAN WHERE EMPLOYEES ARE PRESENTLY LAID OFF SHALL BE OFFERED FIRST, DURING THE WINDOW PERIOD, IN LINE OF SENIORITY TO THOSE EMPLOYEES ON THE MASTER ACTIVE/LAID OFF POOL AND THEN, IF NOT FILLED, IN LINE OF SENIORITY TO THOSE EMPLOYEES ON THE MASTER INACTIVE/LAID OFF POOL.

SUCCESSFUL BIDDERS SHALL RELINQUISH THEIR SENIORITY AT THEIR PRESENT ROAD DOMICILE UNDER THIS PROVISION AND SHALL BE DOVETAILED WITH THEIR CURRENT BIDDING SENIORITY DATE AT THE ROAD DOMICILE THEY BID. ALL OF THE PROVISIONS OF ARTICLE 8,

TITAN ELECTRONIC MAIL

DATE. | 09/19/95
TIME. | 15.37 EST
TO.   | LCL/TERM-ID 373
FROM. | LCL/TERM-ID TPI                    TPI1
FOR.  | PRINCIPAL OFFICER
      | 003      MSG NMBR 431

SECTION 6 SHALL APPLY TO SUCH TRANSFER.

ANY EMPLOYEE IN EITHER POOL WHO REFUSES THE OFFER OF A WORK OPPORTUNITY UNDER THIS PROVISION SHALL NOT BE OFFERED A SECOND OPPORTUNITY TO TRANSFER BUT SHALL REMAIN ON THE LIST ONLY FOR RECALL TO HIS PRESENT ROAD DOMICILE.

2. THE WINDOW PERIOD SHALL BE FOR ONE (1) YEAR.  THE COMMITTEE SHALL RETAIN JURISDICTION TO EXTEND THE WINDOW PERIOD IF CIRCUMSTANCES WARRANT.  AS STATED BY ABF ON THE RECORD, THE WINDOW PERIOD SHALL ALSO APPLY TO FULL LOCAL CARTAGE POSITIONS THAT BECOME AVAILABLE AT LOCATIONS WHERE INSUFFICIENT WORK FOR A FULL POSITION WAS ORIGINALLY TRANSFERRED AT THE TIME OF IMPLEMENTATION OF THIS DECISION.  ONLY LOCAL CARTAGE EMPLOYEES FROM THE LOCATION FROM WHICH THE WORK WAS ORIGINALLY TRANSFERRED SHALL BE ELIGIBLE TO FILL SUCH POSITIONS.  THE PROVISIONS OF ARTICLE 8, SECTION 6 SHALL APPLY.

3. PENSION AND HEALTH & WELFARE CONTRIBUTIONS PAID ON BEHALF OF AN EMPLOYEE TRANSFERRING UNDER THIS DECISION SHALL BE PAID TO THE FUNDS TO WHICH THE CONTRIBUTIONS WERE MADE PRIOR TO THE EMPLOYEE'S CHANGE OF DOMICILE.

ANY REBIDDING SHALL BE HANDLED BY THE LOCAL UNION AND ABF.

SOUTHERN MODIFIED SENIORITY SHALL BE EXCERCISED UPON IMPLEMENTATION OF THE CHANGE OF OPERATIONS.

AN EMPLOYEE REDOMICILING TO AN EASTERN REGION AREA DOMICILE POINT THAT MAINTAINS A SINGLE SENIORITY BOARD (I.E. COMBINATION ROAD AND LOCAL) SHALL REMAIN IN THAT JOB CLASSIFICATION WITH WHICH HE REDOMICILED FOR A PERIOD OF (1) ONE YEAR, UNLESS THE ANNUAL JOB BID AT THAT DOMICILE TAKES PLACE AT LEAST NINE (9) MONTHS AFTER REDOMICILE.

THE FOLLOWING PROVISIONS WILL APPLY TO ANY EMPLOYEE LAID-OFF AS A RESULT OF THIS CHANGE OF OPERATIONS AND TO ANY OTHER EMPLOYEE CURRENTLY LAID-OFF, AND TO ANY EMPLOYEE LAID OFF AFTER THIS CHANGE OF OPERATIONS, FOR THE LIFE OF THE 1994-1998 NMFA:

A. ABF AGREES TO EXTEND THE PROVISIONS OF ARTICLE 5, SECTION 5 OF THE NMFA TO ANY BARGAINING UNIT EMPLOYEE.  ABF ALSO AGREES TO EXTEND THE RIGHT TO TRANSFER UNDER ARTICLE 5, SECTION 5 OF THE NMFA TO ANY ABF LOCATION IN THE CENTRAL, EASTERN AND SOUTHERN REGIONS, AS OPPOSED TO WITHIN THE REGIONAL AREA. TRANSFERS SHALL BE OFFERED ON THE BASIS OF BIDDING SENIORITY, BY CLASSIFICATION.  THE COMMITTEE APPROVES THESE EXTENSIONS OF THE PROVISIONS OF ARTICLE 5, SECTION 5, AND AGREES THAT SUCH EXTENSIONS ARE LIMITED SOLELY TO THIS CHANGE OF OPERATIONS AND HAVE NO PRECEDENTIAL EFFECT.

TITAN ELECTRONIC MAIL

DATE. 09/19/95
TIME. 15.37 EST
TO.   LCL/TERM-ID 373
FROM. LCL/TERM-ID TPI                    TPI1
FOR.  PRINCIPAL OFFICER
PAGE  004     MSG NMBR 431

B.  PENSION AND HEALTH & WELFARE CONTRIBUTIONS PAID ON BEHALF
    OF AN EMPLOYEE TRANSFERRING UNDER THIS PARAGRAPH SHALL BE
    PAID TO THE FUNDS TO WHICH THE CONTRIBUTIONS WERE MADE PRIOR
    TO THE EMPLOYEE'S CHANGE OF DOMICILE.

8.  QUALIFIED BIDDERS ON LONG TERM DISABILITY (LTD) AT THE TIME OF ANY
    BID SHALL BE ALLOWED TO BID.  IF SUCCESSFUL LTD BIDDERS ARE UNABLE
    TO CLAIM THEIR BID ON THE DATE OF IMPLEMENTATION, A HOLD-DOWN BID
    WILL BE ALLOWED.  THIS HOLD-DOWN BID WILL BE OFFERED TO THE
    REMAINING ACTIVE EMPLOYEES AT THE LTD'S CURRENT LOCATION AND
    CLASSIFICATION.  THE SUCCESSFUL HOLD-DOWN BIDDER SHALL BE
    DOVETAILED.  WHEN THE LTD RETURNS TO WORK AND CLAIMS HIS BID,
    THE "HOLD-DOWN" EMPLOYEE MAY EITHER REMAIN AT THE HOLD-DOWN
    LOCATION UNDER PROVISIONS OF ARTICLE 5, SECTION 5 WITH A BIDDING
    SENIORITY DATE CONSISTENT WITH THE DATE OF IMPLEMENTATION OF THIS
    CHANGE OF OPERATIONS OR RETURN TO HIS ORIGINAL LOCATION WITH HIS
    ORIGINAL BIDDING SENIORITY DATE.  THE "HOLD-DOWN" EMPLOYEE MAY
    NOT RETURN TO A LOCATION WHERE THE CLASSIFICATION FROM WHICH HE
    BID HAS BEEN ELIMINATED.

    ABF SHALL NOT BE RESPONSIBLE FOR THE MOVING EXPENSES OF THE
    EMPLOYEE FILLING THE HOLD DOWN BID UNLESS AND UNTIL SUCH TIME
    AS IT IS DETERMINED THAT THE EMPLOYEE ON LTD WILL NEVER BE ABLE
    TO CLAIM HIS BID AND THE HOLD-DOWN BIDDER BECOMES A REGULAR
    PERMANENT EMPLOYEE AT THE HOLD-DOWN LOCATION.

9.  IN RESPONSE TO THE QUESTION RAISED BY LOCAL UNION 41 ON THE
    RECORD, THE COMMITTEE SPECIFICALLY FINDS THAT ARTICLE 43, SECTION 1
    OF THE CENTRAL STATES OVER-THE-ROAD AND LOCAL CARTAGE SUPPLEMENTS
    SHALL APPLY IN DETERMINING THE RECALL RIGHTS OF LAID-OFF EMPLOYEES.
10. INTERLINING SHALL BE HANDLED AS FOLLOWS:

    A.  WHERE BOTH ABF AND CAROLINA FREIGHT CARRIERS/RED ARROW ARE
        INTERLINING TO SERVICE AN AREA, ABF MAY CONTINUE TO INTERLINE.

    B.  WHERE ABF IS PRESENTLY SERVICING AN AREA WITH ITS OWN
        EMPLOYEES AND CAROLINA FREIGHT CARRIERS/RED ARROW ARE
        INTERLINING INTO THAT AREA, ABF SHALL CONTINUE TO SERVICE
        THE AREA WITH ITS OWN EMPLOYEES.

    C.  WHERE ABF IS PRESENTLY INTERLINING TO SERVICE AN AREA, AND
        CAROLINA FREIGHT CARRIERS/RED ARROW ARE SERVICING THAT AREA
        WITH THEIR OWN EMPLOYEES, ABF SHALL SERVICE THE AREA WITH
        ITS OWN EMPLOYEES.

    D.  ABF AND THE LOCAL UNIONS SHALL MEET TO RESOLVE ANY DISPUTES
        ABOUT WHETHER INTERLINING IS JUSTIFIED IN THE SITUATIONS
        OUTLINED ABOVE.  IF THE PARTIES FAIL TO RESOLVE THEIR
        DIFFERENCES, THE DISPUTE WILL BE RESOLVED THROUGH THE
        GRIEVANCE PROCEDURE.  UNTIL THERE IS A FINAL DISPOSITION OF

TITAN ELECTRONIC MAIL

DATE. 09/19/95
TIME. 15.37 EST
TO.    LCL/TERM-ID 373
FROM. LCL/TERM-ID TPI                    TPI1
FOR.   PRINCIPAL OFFICER
PAGE   005      MSG NMBR 431

THE GRIEVANCE, INTERLINING SHALL CONTINUE IN SITUATIONS
OUTLINED IN SUB-PARAGRAPH A, ABOVE, AND SHALL BE PROHIBITED
IN SITUATIONS OUTLINED IN SUBPARAGRAPHS B AND C, ABOVE.

E.   WHERE ABF PROVIDED LOCAL CARTAGE SERVICE WITHIN A CITY WITH
LOCAL CARTAGE/DRAYAGE SUBCONTRACTORS, AND CAROLINA FREIGHT
CARRIERS/RED ARROW SERVICED THAT CITY WITH THEIR OWN
EMPLOYEES, ABF SHALL SERVICE THE AREA SOLELY WITH ITS OWN
EMPLOYEES, INCLUDING BUT NOT LIMITED TO THE AREA CURRENTLY
SERVICED BY LOCAL UNION 707.

11.   THE COMMITTEE FINDS WITH REGARD TO THE CINCINNATI, FLORENCE,
AND DAYTON TERMINALS, THE FOLLOWING SHALL APPLY:

THE CAROLINA, FLORENCE, AND CINCINNATI TERMINAL SENIORITY LISTS
SHALL BE DOVETAILED IN ACCORDANCE WITH CURRENT BIDDING SENIORITY.

DURING THE WINDOW PERIOD, THE FIRST THIRTEEN (13) POSITIONS
ADDED TO THE DAYTON SENIORITY LIST SHALL BE OFFERED IN LINE OF
SENIORITY TO THE CINCINNATI TERMINAL SENIORITY LIST AND THE
SUCCESSFUL BIDDERS SHALL BE DOVETAILED.

12.   THE COMMITTEE FINDS THAT THE ABF INTERMODAL DECISION IN CASE
NO. MR-ICO-1-6/75 WAS BASED ON ABF'S PRESENT AND PROPOSED
INTERMODAL OPERATIONS AT THE TIME OF THE INTERMODAL HEARING,
WHICH OCCURRED BEFORE THE MERGER INVOLVED IN THIS CHANGE OF
OPERATIONS.   THEREFORE, THE COMMITTEE REFERS TO THE NATIONAL
INTERMODAL COMMITTEE THE QUESTION OF WHETHER THE CHANGE OF
OPERATIONS APPROVED BY THE COMMITTEE IN THIS DECISION AFFECTS
THE TERMS OF THE INTERMODAL DECISION IN CASE NO. MR-ICO-1-6/95,
AND IF SO, WHAT MODIFICATIONS SHOULD BE MADE.

AS LONG AS ANY DISPLACED ROAD DRIVER IS ON INVOLUNTARY LAYOFF
STATUS AT DALLAS, TX, THE RESTRICTIONS OF ARTICLE 29, SECTION 1
OF THE NMFA (CLEAN AND DIRTY RULE) SHALL REPLACE THE RAILING
AUTHORITY OF ARTICLE 29, SECTION 3 OF THE NMFA.

THE PROVISIONS OF ARTICLE 29, SECTION 1 SHALL APPLY TO ABF'S NEW
CHICAGO ROAD DOMICILE.

13.   THE COMMITTEE EXPRESSLY DISAPPROVES ABF'S PROPOSAL TO USE VENDORS
TO PERFORM MAINTENANCE WORK WITH MAINTENANCE BARGAINING UNIT
EMPLOYEES ON INVOLUNTARY LAYOFF STATUS.   THE APPLICABLE
COLLECTIVE BARGAINING AGREEMENT OPERATIVE AT THE TIME OF THE
CHANGE OF OPERATIONS SHALL CONTINUE IN EFFECT, INCLUDING THE
CONTRACT'S SUBCONTRACTING PROVISIONS.

14.   ABF SHALL PROTECT THE CAROTRANS WORK OPPORTUNITY PRESENTLY
PERFORMED BY CAROLINA AT JACKSONVILLE, MIAMI, AND HOUSTON WITH
ABF BARGAINING UNIT EMPLOYEES.

15.   AS LONG AS ANY DISPLACED OVER-THE-ROAD DRIVER IS ON INVOLUNTARY

TITAN ELECTRONIC MAIL

DATE. 09/19/95
TIME. 15.37 EST
TO.   LCL/TERM-ID 373
FROM. LCL/TERM-ID TPI                    TPI1
FOR.  PRINCIPAL OFFICER
PAGE  006     MSG NMBR 431

LAYOFF STATUS AS A RESULT OF THIS CHANGE OF OPERATIONS, THE
COMPANY, ONLY TO THE EXTENT ALLOWED BY AN APPLICABLE SUPPLEMENTAL
AGREEMENT, MAY USE CITY DRIVERS TO RUN THE ROAD, BUT ONLY AT
ESTABLISHED ROAD DOMICILES.  THIS PRACTICE SHALL NOT VIOLATE THE
ESTABLISHED ORDER OF CALL AT THE APPLICABLE ROAD DOMICILE.

16.  EMPLOYEES WHO HAVE BEEN DISCHARGED, AND WHOSE DISCHARGE IS PENDING
     ADJUDICATION UNDER THE GRIEVANCE PROCEDURE, SHALL BE OFFERED
     THE OPPORTUNITY TO BID.

17.  UNION AND NON-UNION OFFICE EMPLOYEES SHALL BE DOVETAILED AS SET
     OUT IN PARAGRAPH 1 OF THIS DECISION.  THE UNION EMPLOYEES SHALL
     CONTINUE TO BE COVERED BY ALL PROVISIONS OF THEIR RESPECTIVE
     COLLECTIVE BARGAINING AGREEMENTS, INCLUDING BUT NOT LIMITED TO,
     WAGES AND BENEFITS.  IN ANY CASE WHERE A FUND WILL NOT ACCEPT
     CONTRIBUTIONS FROM ABF FOR UNION EMPLOYEES, THE COMMITTEE WILL
     DETERMINE THE STEPS NECESSARY TO ASSURE THAT ABF PROVIDES BENEFITS
     EQUIVALENT TO THOSE PROVIDED TO SUCH EMPLOYEES BEFORE TRANSFER.

18.  DOCK EMPLOYEES WHO ARE ADVERSELY AFFECTED BY THIS CHANGE OF
     OPERATIONS AND MUST BE CDL QUALIFIED IN ORDER TO TRANSFER AND
     ELECT TO BID, SHALL BE PROVIDED A 60-DAY PERIOD, COMMENCING
     SEPTEMBER 19, 1995, DURING WHICH PERIOD SUCH EMPLOYEES WILL
     EITHER BECOME CDL QUALIFIED OR FORFEIT ANY RIGHTS TO FILL THE BID
     UNDER THIS DECISION.  DURING THIS PERIOD, ABF IS INSTRUCTED TO
     PROVIDE ADEQUATE EQUIPMENT AND TRAINING PERSONNEL TO COMPLY WITH
     THIS PARAGRAPH.

19.  AS A RESULT OF LOCAL 25'S HAVING ATTAINED BARGAINING UNIT
     JURISDICTION AT THE BURLINGTON, MASSACHUSETTS FACILITY, WHICH
     RESULTS IN TWO FACILITIES BEING UNDER LOCAL UNION 25'S
     JURISDICTION, THE PROVISIONS OF ARTICLE 43, SECTION 1(A) OF THE
     CURRENT NEW ENGLAND SUPPLEMENTAL FREIGHT AGREEMENT SHALL APPLY.

20.  THE COMMITTEE DIRECTS ABF TO GIVE THE LOCAL UNIONS FULL DETAILS
     CONCERNING ANY 401(K) PLAN COVERING CAROLINA FREIGHT CARRIERS OR
     RED ARROW EMPLOYEES AND TO KEEP IN EFFECT ANY SUCH PLAN, UNTIL
     ABF ESTABLISHES AN EQUIVALENT PLAN.  THE COMMITTEE ALSO DIRECTS
     ABF TO PROVIDE THE LOCAL UNIONS FULL DETAILS REGARDING THE
     PRIOR PENSION PLAN FOR RED ARROW EMPLOYEES.

21.  THE REQUEST OF LOCAL UNION 200 TO ALLOW A MEMBER TO EXERCISE
     COMPANY SENIORITY IS DENIED.

22.  THE ISSUED RAISED BY LOCAL UNION 61 REGARDING THE APPLICABLE
     PEDDLE RADIUS FOR CITY DRIVERS (50 OR 75 MILES) IS REFERRED TO
     THE PARTIES FOR RESOLUTION.  ANY DIFFERENCES WILL BE RESOLVED
     THROUGH THE GRIEVANCE PROCEDURE.

23.  ABF'S REQUEST FOR A TRIAL PERIOD TO DETERMINE FREIGHT FLOW FOR
     BIDDING PURPOSES IS REFERRED BACK TO THE LOCAL UNIONS AND ABF

TITAN ELECTRONIC MAIL

DATE. 09/19/95
TIME. 15.37 EST
TO.   LCL/TERM-ID 373
FROM. LCL/TERM-ID TPI                    TPI1
FOR.  PRINCIPAL OFFICER
GE    007    MSG NMBR 431

FOR RESOLUTION, WITH BIDS TO BE POSTED WITHIN 60 DAYS OF
IMPLEMENTATION, OR SOONER WHEREVER POSSIBLE.

24.   THE COMMITTEE FINDS THAT THERE ARE NO CIRCUMSTANCES THAT WOULD
      ALLOW ANY EMPLOYEE WHO HAD RELOCATED UNDER A PREVIOUS CHANGE OF
      OPERATIONS DECISION OR UNDER THE PROVISIONS OF ARTICLE 5,
      SECTION 5 OF THE NMFA TO RETREAT TO THE EMPLOYEE'S FORMER
      TERMINAL/DOMICILE.  ACCORDINGLY, THE REQUESTS BY THE VARIOUS
      LOCAL UNIONS TO ALLOW EMPLOYEES TO RETREAT ARE SPECIFICALLY
      DENIED.

25.   THIS CHANGE OF OPERATIONS MAY BE IMPLEMENTED NO SOONER THAN
      SEPTEMBER 25, 1995.

26.   THIS MULTI-REGION CHANGE OF OPERATIONS COMMITTEE SHALL RETAIN
      JURISDICTION ON ALL ISSUES THAT MAY ARISE UNDER THIS DECISION
      DURING THE TERM OF THE CONTRACT.  ALL GRIEVANCES SHALL BE FILED
      WITH THE APPROPRIATE REGIONAL JOINT AREA COMMITTEE, TO BE HEARD
      BY THE MULTI-REGION CHANGE OF OPERATIONS COMMITTEE.


PLEASE SEND ACKNOWLEDGMENT OF THIS MESSAGE BY TITAN (TITAN TERMINAL
ADDRESS:  IUF:)  EE  ::::::::  ::::  EEE/EE4-E/EE).


FRATERNALLY,


DENNIS C. SKELTON, DIRECTOR
NATIONAL FREIGHT DIVISION
CC: - RON CAREY, CHAIRMAN, TNFINC
    - CHUCK PISCITELLO, ASSISTANT DIRECTOR, NATIONAL FREIGHT DIVISION
    - FRANK BUSALACCHI, ACTING REGIONAL FREIGHT COORDINATOR
      CENTRAL REGION OF TEAMSTERS, C/O TEAMSTERS LOCAL UNION NO. 200
    - DANIEL W. SCHMIDT, REPRESENTATIVE, EASTERN REGION OF TEAMSTERS
    - FRANK HOPKINS, REGIONAL FREIGHT DIVISION COORDINATOR,
      SOUTHERN REGION OF TEAMSTERS, C/O ANNIE HOPKINS, SECRETARY, LOCAL
      UNION NO. 519
    - JIM ROBERTS, REGIONAL FREIGHT DIVISION COORDINATOR
      WESTERN REGION OF TEAMSTERS
    - BOB KNOX, THE GENERAL PRESIDENT'S PERSONAL REPRESENTATIVE
      CENTRAL REGION OF TEAMSTERS
    - JAMES A. MCCALL, IBT LEGAL DEPT.
    - RICK BANK, SPECIAL COUNSEL TO THE GENERAL PRESIDENT

## PROPOSED SENIORITY APPLICATION

The following proposal is based on the general principle that employees who are dovetailed on the date of implementation are those who are bringing work load to follow, so that the list into which they dovetail should not be adversely affected based on the current economic levels.

At common terminal points for local cartage operations, the company will ascertain the work load that ABF can reasonably expect to retain at the time of combining employees. ABF will prepare a Master Active List of its employees and will then prepare a Master Active List of the Carolina employees and the Red Arrow employees, and all three lists will be based on the date this change is implemented. The Company will then offer job opportunity at ABF in numbers equivalent to the work load coming to ABF, by seniority, to the applicable Carolina or Red Arrow Master Active List and they shall be dovetailed into the ABF Master Active List. Those employees on the Carolina or Red Arrow Master Active List who are not offered job opportunity due to insufficient work load to transfer shall remain on such Master Active Seniority List and shall be offered work opportunity as it arises and when permanent job opportunity arises they shall be recalled and dovetailed.

The Company will also establish a Master Inactive List comprised of all employees on lay-off at ABF and Carolina or ABF and Red Arrow on the date this change is implemented. After the Master Active List set forth above has been exhausted, all future job opportunities shall be offered, in line of seniority, to the employees on the Master Inactive List and, upon proper recall, they shall be dovetailed into the Master Active List.

At all other ABF locations which involve Carolina or Red Arrow employees, the same general principle shall apply, i.e., only the number of Carolina or Red Arrow employees equivalent to actual work load transferred will be offered to the Carolina or Red Arrow Master Active List on the first day of the combined operations.

The same principle as outlined above shall apply to combining over-the-road seniority lists, office and/or maintenance groups, where appropriate, as well as to transfer opportunity involving any of those respective classifications.

Therefore, as a general rule:

> Where only one (1) of the three (3) companies has a terminal location, the employees at that location will remain as they are. (See Exhibit "A" in the section on local cartage operations.)

> Where there are dual facilities in any one location or area, the aforementioned seniority application will prevail. (See Exhibit "B" in the section on local cartage operations.)

> Where there are apparent exceptions to the general rule, these will be resolved in Exhibit "C" in the section on local cartage operations.

8/24/95

Exhibit "A"
Employee Analysis (Single)
Local Cartage

| Terminal | | ABF Freight Active | L/O | Total | Carolina/Red Arrow Active | L/O | Total | Empl. Rqmts. |
|---|---|---|---|---|---|---|---|---|
| ABILENE | TX | 2 | 0 | 2 | | | | 2 |
| AKRON | OH | 19\8 | 0 | 19\8 | | | | 19\8 |
| ALEXANDRIA | LA | 3 | 0 | 3 | | | | 3 |
| AMARILLO | TX | 5 | 0 | 5 | | | | 5 |
| ASHTABULA | OH | 3 | 1 | 4 | | | | 4 |
| BEAUMONT | TX | 5 | 0 | 5 | | | | 5 |
| BENTON HARBOR | MI | 3 | 0 | 3 | | | | 3 |
| BILOXI | MS | 4 | 0 | 4 | | | | 4 |
| BINGHAMPTON | NY | 7 | 0 | 7 | | | | 7 |
| BOWLING GREEN | KY | 3 | 0 | 3 | | | | 3 |
| BROOKLYN PARK | MN | 13 | 0 | 13 | | | | 13 |
| BROWNSVILLE | TX | 4 | 0 | 4 | | | | 4 |
| BRYAN | OH | 3 | 0 | 3 | | | | 3 |
| BUTLER | PA | 4 | 0 | 4 | | | | 4 |
| CADILLAC | MT | 3 | 0 | 3 | | | | 3 |
| CAMP HILL | PA | 96 | ~ | 96 | | | | 62 |
| CANTON | OH | 11 | 2 | 13 | 4 | 0 | 4 | 12 |
| CAPE GIRARDEAU | MO | .85 | 9-3 | 8 | | | | 8 5 |
| CARLISLE | PA | 328 | 0 | 328 | | | | 296 |
| CARLLS CORNER | NJ | 1 | 0 | 1 | | | | 1 |
| CEDAR RAPIDS | IA | 8 | 0 | 8 | | | | 8 |
| CHAMPAIGN | IL | 4 | 0 | 4 | | | | 4 |
| CHARLESTON | SC | 5 | 0 | 5 | | | | 5 |
| CHESTER | PA | 21 | 0 | 21 | | | | 21 |
| COLUMBUS | NE | 2 | 0 | 2 | | | | 2 |
| CORPUS CHRISTI | TX | 2 | 0 | 2 | | | | 2 |
| DAYTON | OH | 227 | 0 | 227 | | | | 227 |
| DECATUR | IL | | | | 4 | 2 | 6 | 0 |
| DUBOIS | PA | 4 | 0 | 4 | | | | 4 |
| DULUTH | MN | 2 | 0 | 2 | | | | 2 |
| EAGAN | MN | 20 | 0 | 20 | | | | 20 |
| EAU CLAIRE | WI | 3 | 0 | 3 | | | | 3 |
| EFFINGHAM | IL | 2 | 0 | 2 | | | | 2 |
| EL DORADO | AR | 3 | 0 | 3 | | | | 3 |
| EL PASO | TX | 15 | 0 | 15 | | | | 15 |
| ELGIN | IL | 11 | 0 | 11 | | | | 10 11 |
| ELMIRA | NY | 5 | 0 | 5 | | | | 5 |
| FAIRFIELD | IA | 3 | 1 | 4 | | | | 3 |
| FAIRMONT | WV | 4 | 0 | 4 | | | | 4 |
| FARGO | ND | 3 | 0 | 3 | | | | 3 |
| FAYETTEVILLE | AR | 8 | 0 | 8 | | | | 8 |
| FEDERALSBURG | MD | 5 | 0 | 5 | 5 | 0 | 5 | 5 |
| FLORENCE | KY | | | | 5 | 0 | 5 | 0 |
| FT. SMITH | AR | 11 | 0 | 11 | | | | 11 |
| GRAND ISLAND | NE | 4 | 0 | 4 | | | | 4 |

THOMAS VINSON
VICE PRESIDENT

ANDREW C. REILEY
RECORDING SECRETARY

MELVIN HARRIS
TRUSTEE

TERRY L. KING
TRUSTEE

JEANETTE WATERS
TRUSTEE

AFFILIATED WITH THE

International Brotherhood of Teamsters
2552 JEFFERSON STREET
HARRISBURG, PA 17110-2505

THOMAS B. GRIFFITH
PRESIDENT AND BUSINESS AGENT

DALE H. CRUM
SECRETARY TREASURER AND BUSINESS AGENT

BUSINESS AGENT

JOHN L. FOGLE
CARLOS N. RAMO
CHARLES SHUGH
GEORGE F. SMAR
RUSSELL A. STEPP
DANIEL A. VIRTU

October 12, 1995

Dear Carolina Employee:

This letter is important.  Please take the time to read it.

Surely you're aware that ABF and Carolina Freight recently merged their operations. Because of that merger, a change of operations was held on September 14/15, 1995.

As a result of the decision from the change of operations committee, the Carolina employees who are laid off at Carlisle, Pa will have certain rights to future work opportunities with ABF.  Article 5, Section 5 of the NMFA addresses those rights.  Those work opportunities will be offered to laid off Carolina employees in seniority order.  However, it is necessary that you notify ABF in writing of your desire to be offered available work.

Enclosed is a form letter and an envelope.  If you desire to be offered available work, you must complete the letter and mail it to ABF **as soon as possible.**  If you desire, you may also draft your own letter instead of using the form letter.  It is your choice to send the letter via regular mail or certified mail.  In either case, I suggest that you keep a copy of the letter as your file copy.

You should mail the letter to ABF today.  On October 16, 1995, the Company will begin compiling the list of employees who desire available work.

If you have any questions, please feel welcome to contact us.

Sincerely,

Charles Shughart
Business Agent

TELEPHONE (717) 233-8766
(800) 692-6280

*BOIRE* *NORMAN* *T*
(last)        (first)        (m.i.)

*710 CHARLES RD*
street /P.O. Box

*DAUPHIN*    *PA*    *17018*
(city)        (state)        (zip)

*717·921·8605*    *106·32·7194*
(home phone)        (social security #)

*10/19/95*
(date)

Steve Walters, Terminal Manager
ABF Freight Systems
P.O. Box 1925
New Kingstown, Pa 17072

Ref:   Employment opportunities under Article 5, Section 5 of the NMFA

Dear Mr. Walters:

............... .. ...k opportunities that become available at ABF

I am interested in available work at the below areas:  (Mark only one block).

     [X]   Carlisle/Camp Hill, Pa only
     [ ]   All terminals in ABF's system

I am a qualified:   [X]   Road Driver
                [ ]   Jockey
                [ ]   Dockworker

Sincerely,

(Signature)

(Mail to ABF at above address.)