

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICKEY A. BECHTEL,** | CIVIL NO. 1:CV-01-0789 |
| **Plaintiff** | |
| v. | |
| **DANIEL A. VIRTUE, et al.,** | |
| **Defendants** | |



## MEMORANDUM

Before the court are two motions for summary judgment in the captioned action. One was filed by Defendant ABF Freight System, Inc. ("ABF") while the other was filed by Defendants International Brotherhood of Teamsters ("IBT"); Local 776 of the International Brotherhood of Teamsters ("Local 776"); and Daniel Virtue (collectively, the "Union Defendants"). The parties have briefed the issues, and the motions are ripe for disposition.

### I.   Background

The following facts are undisputed, except where noted. ABF is a national freight common carrier. ABF's drivers and dock employees are represented by local unions affiliated with IBT, including Local 776 in central Pennsylvania. ABF and Local 776 are parties to the National Master Freight Agreement ("NMFA"), a national collective bargaining agreement. The NMFA governs the terms and conditions of employment for all employees in the trucking industry who work for NMFA carriers.

Carolina Freight Carriers Corporation ("Carolina") hired Plaintiff as a casual dockworker in the Fall of 1985. In February 1986, Plaintiff moved to

permanent employment as a dockworker. Plaintiff never worked as a driver at Carolina. Plaintiff is a member of Local 776 which he had joined in 1979 while working for another freight company.

Carolina closed its Carlisle, Pennsylvania terminal in May 1995. At that time, Plaintiff was a platform/jockey employee at the Carlisle facility. Prior to the closure, employees were given the opportunity to transfer to other Carolina facilities or accept a layoff at Carlisle. Plaintiff did not want to move out of the area, and he was laid off from Carolina.

On September 25, 1995, ABF's parent company purchased Carolina and merged its operations with other companies owned by ABF's parent company. Plaintiff asserts that as of October 25, 1995, Local 776 indicated to Plaintiff that he would be treated as a laid off ABF employee for all intents and purposes, including the accrual of recall rights. (Pl. Resp. to ABF's Stat. Mat. Facts. at ¶ 6.)

Both ABF and Carolina were parties to the NMFA, which contains provisions regarding changes in operations resulting from a combination of terminals or over-the-road operations. Article 8, Section 6 of the NMFA requires that the change of operations must be approved by a Change of Operations Committee ("COC") comprised of Union and Employer representatives. The COC must determine the application of seniority for affected employees, and the COC's decisions are final and binding. The COC also has authority to hear and decide grievances arising from its decisions.

In August 1995, a COC was appointed to consider the change of operations plan that ABF submitted following the merger (the "Committee"). On September 14-15, 1995, the Committee held hearings where Local 776, among other

2

affected local unions, had the opportunity to comment on the proposed plan. Local 776 addressed ABF's position that laid off Carolina employees did not have recall rights with ABF, and Local 776 argued that they should have such rights under the NMFA.

On September 19, 1995, the Committee issued a decision in which it determined that "the seniority lists at domiciles and terminals affected by this change of operations shall be grouped by dovetailing . . ." and "every facility whose work has been merged with the work of another facility must be grouped with that facility." (Def. ABF Stat. Mat. Facts at ¶ 10.) Defendant ABF asserts that "[b]ecause Carolina's terminal was closed [five months] prior to the Carolina/ABF merger, and there were no Carolina employees at Carlisle at the time of the merger, Carolina's Carlisle terminal was not merged with any ABF terminal." (*Id.* at ¶ 11.) Plaintiff disputes this conclusion.

The Committee decided to extend transfer rights under Article 5, Section 5 of the NMFA to all laid off bargaining unit employees for the life of the 1994-1998 NMFA. While Article 5, Section 5 usually applies only to over-the-road drivers, the Committee allowed all laid off bargaining unit employees to be eligible for work opportunities at ABF terminals throughout the system. Specifically, Paragraph 7 of the Committee's decision provided:

> The following provisions will apply to any employee laid-off as a result of this change of operations and to any other employee currently laid-off, and to any employee laid-off after this change of operations for the life of the 1994-1998 NMFA:
>
> A. ABF agrees to extend the provisions of Article 5, Section 5 of the NMFA to any bargaining unit employee. ABF also agrees to extend the right to transfer under Article 5,

3

> Section 5 of the NMFA to any ABF location
> in the Central, Eastern, and Southern Regions.

(Union Def. Stat. Mat. Facts at ¶ 12, n.1, citing Pl. Ex. 14.)

On September 25, 1995, the merger was completed. In October 1995, Local 776 sent a letter to all former Carolina employees, including Plaintiff, informing them of transfer rights under Article 5, Section 5 of the NMFA. Plaintiff filled out a form to request work opportunities. In November 1995, ABF offered Plaintiff work opportunities in nine locations other than Carlisle, Pennsylvania. Plaintiff declined those opportunities and did not submit any other request for work opportunities.

In February 2000, Plaintiff learned that ABF was hiring for its Carlisle terminal. On February 20, 2000, Plaintiff filed a grievance in which he alleged that he was a laid off employee who had not been contacted for work in Carlisle. The Union Defendants outline the following grievance procedure for grievances falling under Articles 1 through 39 of the NMFA:

> Traditionally, the Union Representative or Steward meets with the Employer in an attempt to resolve the grievance. If the Employer and the Union Representative or Steward fail to resolve the matter, the grievance is submitted to the Eastern Region Joint Area Committee. The Eastern Region Joint Area Committee will hear the grievance and either decide the matter or refer such grievances to the Change of Operations Committee. Article 8, Section 6 of the NMFA for the period of April 1, 1998 through March 31, 2003, provides in relevant part: The Change of Operations Committee shall have the authority to determine the seniority of employees affected and such determination shall be final and binding.

(Union Def. Stat. Mat. Facts at ¶ 15.) Plaintiff seems to dispute that the grievance path described above was not the appropriate path to be followed by Plaintiff

4

because he was laid off prior to April 1, 1998. (Pl. Resp. to Union Def. Stat. Mat. Facts at ¶ 15.)

Local 776 received the grievance and forwarded it to ABF. Charles Shughart, the Business Agent for Local 776 was responsible for handling Plaintiff's grievance, and Plaintiff never discussed it with anyone at IBT. Shughart notified Plaintiff on February 29, 2000 that the grievance had been forwarded to ABF. On April 5, 2000, Plaintiff and Shughart met with ABF representatives, and Plaintiff was informed that the grievance was denied. The ABF representatives told Plaintiff that he did not have recall rights under Article 5, Section 2 of the NMFA but had transfer rights under Article 5, Section 5. Plaintiff does not dispute that ABF took such a position, but does dispute ABF's interpretation of the NMFA. (Pl. Resp. to ABF's Stat. Mat. Facts at ¶ 17.) Shughart notified Plaintiff by letter dated April 5, 2000, that the grievance had been denied at the company level.

On May 17, 2000, Plaintiff requested a seniority list from Shughart. Shughart requested a seniority list from ABF on May 24, 2000, and responded to Plaintiff's request. On June 5, 2000, Shughart received a seniority list, and forwarded it to Plaintiff ten days later. Shughart also notified Plaintiff on June 15, 2000 that the grievance was scheduled to be heard before the Eastern Region Joint Area Committee ("ERJAC") during the week of July 24, 2000.

Prior to the ERJAC hearing, Plaintiff and Shughart prepared what Plaintiff wanted to have presented at the meeting. Plaintiff drafted language regarding why he should have five years of recall rights under the NMFA, and Plaintiff requested employment at the Carlisle terminal with full Carolina seniority. Shughart drafted a brief based on the language and information that Plaintiff

5

provided. Plaintiff read the brief and made further changes which were incorporated into the final brief. Plaintiff admitted in his deposition that the brief to ERJAC accurately represented his claim and that Local 776 had not omitted anything. (ABF's Stat. Mat. Facts at ¶ 19.) While Plaintiff does not dispute this, he does assert that "both the company and the local union in essence invidiously denied Bechtel information relevant to the framing[,] processing and status of his grievance in order to further promote the objective of obtaining new, cheaper employees . . . ." (Pl. Resp. to ABF's Stat. Mat. Facts at ¶ 19.)

The ERJAC heard Plaintiff's grievance on July 25, 2000. At the hearing, Shughart quoted from Plaintiff's brief and fielded questions. Shughart argued that Plaintiff had recall rights under the NMFA. Plaintiff also made a statement at the hearing. A Director of Industrial Relations for ABF, Steven Froias, presented ABF's case, arguing that Plaintiff had no recall rights under the NMFA. Froias argued that there was no merger of terminals in Carlisle because the Carolina terminal closed prior to the ABF/Carolina acquisition and merger. The ERJAC issued a decision and referred Plaintiff's grievance to the National Multi-Region Change of Operations Violations Committee ("NMRCOC").

On October 27, 2000, the NMRCOC heard Plaintiff's grievance. Shughart again represented Plaintiff by quoting from Plaintiff's brief. Shughart also read from the transcript of the September 1995 COC decision addressing the merger. Shughart presented the NMRCOC with a list of laid off Carolina employees, a letter from ABF confirming that Plaintiff declined a work opportunity, and a copy of the transcript from the September 1995 COC hearing. Plaintiff also made a statement, and he felt that he said everything he wanted to about his case. Again, Froias

presented ABF's case at the NMRCOC hearing and argued that Plaintiff has no recall rights because the Carolina Carlisle terminal had closed before the merger.

The NMRCOC denied Plaintiff's grievance. Plaintiff was notified on November 8, 2000 of the denial of his grievance. Plaintiff asked Shughart if there were any other avenues of grievance. Shughart responded by letter dated December 28, 2000 that Shughart understood the decision to be final, and that Plaintiff could not appeal the decision of the NMRCOC. Plaintiff states that Shughart always provided information within a reasonable amount of time, Shughart answered all of Plaintiff's questions, Shughart allowed Plaintiff to review all of the documents submitted to the ERJAC and the NMRCOC, Shughart did a thorough job of representing Plaintiff, and Shughart's brief fairly represented Plaintiff's arguments. (ABF's Stat. Mat. Facts at ¶ 26.)

The Union Defendants assert that Defendant Virtue "was not involved in the processing of Plaintiff's grievance and at no time represented himself as such; Plaintiff was unable to articulate any involvement of Mr. Virtue in the handling of Plaintiff's grievance." (Union Defs. Stat. Mat. Facts at ¶ 34.) Plaintiff responds, without reference to record evidence that "Defendant Virtue was, in fact, the individual who was 'calling the shots' and dictating the manner and fashion in which Plaintiff's grievance was handled and routed." (Pl. Resp. to Union's Stat. Mat. Facts at ¶ 32.) The Union Defendants assert that Daniel Virtue and IBT are not "parties" to the NMFA, while Plaintiff contends that they are parties. Plaintiff did not discuss his grievance with anyone from IBT.

Plaintiff filed the instant action on May 4, 2001. Plaintiff's complaint alleges that ABF and the Union Defendants breached the NMFA (Count I) and that

7

the Union breached its duty of fair representation by mishandling Plaintiff's grievance and/or the arbitration proceedings (Count II).

**II.**     **Legal Standard: Motion for Summary Judgment**

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 249. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the complaint; instead, it must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element

essential to that party's case and on which that party will bear the burden at trial." *Id.*

### III.     Discussion

#### A.     Union Defendants' Motion

Plaintiff contends that Defendants IBT, Local 776, and Virtue breached their duty of fair representation to Plaintiff. These Defendants move for summary judgment on the following grounds: (1) Defendant Virtue is not a proper party for a duty of fair representation claim; (2) Defendant IBT is not a proper Defendant for a duty of fair representation claim; and (3) no duty of fair representation has been breached. For the reasons that follow, the court finds that there has not been a breach of the duty of fair representation. Therefore, the court need not address whether Defendants Virtue and IBT are proper Defendants.

It is well settled that "[t]he duty of fair representation requires a union to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Marquez v. Screen Actors Guild*, 525 U.S. 33, 44 (1998) (citing *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). Plaintiff makes generalized assertions regarding the Union Defendants' failure to properly represent him, but makes no specific reference to record evidence in support of his contentions. In contrast, there is ample evidence that Shughart, Local 776's Business Agent, fully represented Plaintiff's interests throughout the grievance process.

After Local 776 received Plaintiff's grievance, Shughart notified Plaintiff that it had been forwarded to ABF. Shughart accompanied Plaintiff to meet

9

with ABF representatives on April 5, 2000. Shughart promptly notified Plaintiff by letter that ABF had denied the grievance.

In response to Plaintiff's request, Shughart contacted ABF for a seniority list that Shughart subsequently forwarded to Plaintiff in June 2000. Also in June 2000, Shughart notified Plaintiff that the ERJAC was going to hold a hearing on the grievance. In preparation for the ERJAC hearing, Shughart met with Plaintiff, drafted a brief incorporating language supplied by Plaintiff, and revised the draft after Plaintiff requested changes. Plaintiff has admitted that the brief to ERJAC accurately represented his claim, and that Local 776 had not omitted anything. (ABF's Stat. Mat. Facts at ¶ 19.)

At the July 2000 ERJAC hearing, Shughart quoted from Plaintiff's brief; fielded questions; and argued Plaintiff's position. Again, in October 2000, Shughart argued Plaintiff's position before the NMRCOC. Shughart always provided Plaintiff with information within a reasonable amount of time, answered all of Plaintiff's questions, and allowed Plaintiff to review all of the documents submitted to the ERJAC and the NMRCOC. Furthermore, Shughart did a thorough job of representing Plaintiff, and Shughart's brief fairly represented Plaintiff's arguments. (ABF's Stat. Mat. Facts at ¶ 26.)

Plaintiff responds to these facts with a series of unsupported allegations that Defendants had invidious motives and "collective machinations." (Pl. Amen. Resp. to Mot. Summ. Jud. at 3.) However, Plaintiff fails to present any record evidence in support of his allegations. Viewing all of the facts in the light most favorable to Plaintiff, no reasonable finder of fact could determine that the Union Defendants failed to "serve the interests of [Plaintiff] without hostility or

10

discrimination toward [him], to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Marquez*, 525 U.S. at 44.

The court will briefly address the outstanding issue of whether the Union Defendants failed to "further process [Plaintiff's] grievance up to and including arbitration proceedings." (Compl. at ¶ 7;) (*see also* Pl. Br. in Opp. Mot. Summ. Jud. at 4 ("[I]n this case no independent, final and binding arbitration occurred.").) Under Article 8, Section 6 of the NMFA, "[t]he Change of Operations Committee shall have the authority to determine the seniority of the employees affected [by the change of operations] and such determination shall be final and binding." (Shughart Aff., Ex. 8.) The court agrees with the Union Defendants that the decision of the NMRCOC should be accorded the same deference as a third party arbitrator would receive from the court. The Third Circuit has "rejected an argument that a 'non-traditional' arbitration form, simply by virtue of its makeup, is entitled to less deference [than any other arbitration]." *Graphics Communications Int'l Union, Local 735-S v. North Am. Directory Corp. II*, 98 F.3d 97, 101 n.5 (3d Cir. 1996). Thus, the Union Defendants pursued Plaintiff's grievance through to a final and binding conclusion, and Plaintiff's allegations to the contrary are insufficient to survive a motion for summary judgment. Accordingly, the court will grant Defendants IBT, Local 776, and Virtue's motion for summary judgment.

### B.  Defendant ABF's Motion

Plaintiff's claim is a hybrid suit in which he contends that the Union Defendants breached their duty of fair representation, and ABF breached the collective bargaining agreement. In *Del Costello v. International Board of Teamsters*, the Supreme Court discussed hybrid suits:

11

> Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301 [of the Labor Management Relations Act], since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. "Yet the two claims are inextricably interdependent." To prevail against either the company or the Union . . . [Plaintiff] must not only show that [his] discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union."

462 U.S. 151, 164-65 (1983) (quoting *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66-67 (1981)); *see also Albright v. Virtue*, 273 F.3d 564, 576 (3d Cir. 2001) ("A breach of the duty of fair representation claim is a 'necessary condition precedent' to the [] claim [against the employer]; in hybrid suits where the employee sues both the employer and the union, an employee must still allege that the union refused to process his grievance as a condition precedent to the [] claim [against the employer].")

Thus, according to *Del Costello*, in order to prevail against Defendant ABF, Plaintiff must prove *both* that the Union Defendants breached their duty of fair representation *and* that ABF breached the collective bargaining agreement. The court has already determined that the Union Defendants did not breach their duty of fair representation. Thus, the court need not determine whether ABF violated the collective bargaining agreement. Accordingly, the court will grant summary judgment in favor of Defendant ABF as well.

## IV. Conclusion

The court finds that there is no material issue of fact as to whether Defendants IBT, Local 776 or Virtue breached the duty of fair representation that they owed Plaintiff. As this is an element that must be proved to prevail against any Defendants in this action, the court will grant the pending motions for summary judgment. An appropriate order will issue.

/s/ Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: July 10, 2002

13